No. 23-60216

# In the United States Court of Appeals for the Fifth Circuit

_____

John M. Barr; John McPherson,

*Petitioners*,

v.

Securities and Exchange Commission,

*Respondent*.

_____

On Petition for Review of a Final Order
of the U.S. Securities and Exchange Commission

_____

## OPENING BRIEF OF PETITIONER JOHN MCPHERSON

_____

Brian J. Leske
ASHCROFT LAW FIRM LLC
200 State Street, 7th Floor
Boston, MA 02109
Telephone: (617) 573-9400
bleske@ashcroftlawfirm.com

*Counsel for Petitioner
John McPherson*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. John McPherson, claimant and petitioner in this case.

    a. Brian J. Leske, counsel for petitioner McPherson.

    b. Michael J. Sullivan, counsel for petitioner McPherson.

    c. Kimberly P. West, counsel for petitioner McPherson.

    d. Ashcroft Sullivan LLC, counsel for petitioner McPherson.

2. John M. Barr, additional claimant and petitioner in this case.

    a. Daniel L. Geyser, counsel for petitioner Barr.

    b. Haynes and Boone, LLP, counsel for petitioner Barr.

    c. J. Kevin Edmundson, counsel for petitioner Barr.

    d. Edmundson Shelton Weiss PLLC, counsel for petitioner Barr.

3. U.S. Securities & Exchange Commission ("SEC"), respondent in this case.

    a. Gary Gensler, Chair, SEC.

    b. Caroline A. Crenshaw, Commissioner, SEC.

    c. Jaime Lizarraga, Commissioner, SEC.

    d. Hester M. Peirce, Commissioner, SEC.

    e. Mark T. Uyeda, Commissioner, SEC.

    f. Megan Barbero, General Counsel, SEC.

g.  Michael A. Conley, Solicitor, SEC.

h.  Stephen G. Yoder, Senior Appellate Counsel, SEC.

i.  Nicole C. Kelly, Chief, Office of the Whistleblower, SEC.

j.  Emily M. Pasquinelli, Assistant Director, Office of the Whistleblower, SEC.

k.  Kristina Guidi, Attorney, Office of the Whistleblower, SEC.


/s/ Brian J. Leske
Brian J. Leske

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Fifth Circuit Rule 28.2.3, Petitioner John McPherson respectfully submits that oral argument will substantially assist the Court in its consideration of this appeal.

This appeal presents several important questions of statutory interpretation of the predicate definitions and terms governing the securities whistleblower-incentive program established by Congress in the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 ("Dodd-Frank" or the "Act"). McPherson exposed one of the largest securities frauds in Texas history and "provided extraordinary and continuing assistance" to the Government "spanning several years," resulting in a $38.7 million Commission judgment and one of the largest investor recoveries in history—approximately $1 billion. ROA.1786.

In awarding McPherson essentially nothing, Respondent U.S. Securities and Exchange Commission (the "Commission" or "SEC") misreads the plain language of the Act, ignores the statutory structure designed broadly to compensate whistleblowers based upon a wide array of judicial and administrative actions, and undermines Congress's critical incentive to whistleblowers—the mandatory minimum award provisions.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...........................................................i

STATEMENT REGARDING ORAL ARGUMENT .............................................iii

TABLE OF CONTENTS ......................................................................................iv

TABLE OF AUTHORITIES ............................................................................. viii

ABBREVIATIONS AND RECORD REFERENCES ........................................xiv

INTRODUCTION.................................................................................................. 1

JURISDICTIONAL STATEMENT........................................................................ 6

STANDARD OF REVIEW .................................................................................... 7

STATEMENT OF THE ISSUES............................................................................ 8

STATEMENT OF THE CASE ............................................................................... 9

I.      STATUTORY BACKGROUND.................................................................. 9

        A.      Dodd-Frank Wall Street Reform
                and Consumer Protection Act ............................................................ 9

        B.      The Securities Whistleblower-Incentive Program............................10

        C.      Bankruptcy Law and Principles........................................................12

II.     FACTS & AGENCY HISTORY ...............................................................15

        A.      Parties ..............................................................................................15

        B.      The Life Partners Fraud....................................................................15

C.      McPherson Provides "Extraordinary"
        Assistance to the Government ........................................................... 17

D.      The Commission Files Life Partners Enforcement Action .............. 18

E.      The Commission Pursues Alternative Methods to Achieve its
        Enforcement Objectives Under the Securities Laws ........................ 19

F.      The Commission and DOJ Use Bankruptcy Proceedings
        to Pursue Life Partners ..................................................................... 21

G.      The OWB Posts Notice of Life Partners Covered Action ................ 22

H.      Under the Court-Ordered Reorganization Plan,
        Life Partners Satisfies the Commission's Civil Judgment
        and Defrauded Investors Begin to Receive Payments ..................... 23

I.      The Commission's 2018 Proposed Rulemaking ............................... 25

J.      The Commission's 2020 Final Rules ................................................. 26

K.      Five Days After the New Final Rules, Claims Review Staff
        Issues Its Preliminary Determination .............................................. 26

L.      Bankruptcy Proceedings Recover Almost $900 Million
        for Life Partners Investors ............................................................... 27

M.      The Final Order Denies McPherson a Meaningful Award .............. 27

SUMMARY OF ARGUMENT ............................................................................ 28

ARGUMENT ..................................................................................................... 31

I.      THE LIFE PARTNERS INVESTOR RECOVERIES IN THE
        BANKRUPTCY PROCEEDINGS QUALIFY AS "MONETARY
        SANCTIONS" UNDER THE WHISTLEBLOWER-INCENTIVE
        PROGRAM AWARD PROVISIONS ......................................................... 31

A.    The Commission Is Not Entitled to Deference................................31

   1.   The Commission is not entitled to *Auer* deference
        because it did not interpret a rule ................................................31

   2.   The Commission is not entitled to *Chevron* deference because it
        exercised no discretion, believing it lacked the authority ...........32

   3.   The Commission is not entitled to *Chevron* deference because its
        interpretation is wrong ................................................................33

B.    Life Partners Investor Recoveries Are "Monetary Sanctions Imposed
      in the Action or Related Action" ......................................................33

   1.   Life Partners investor recoveries in these bankruptcy proceedings
        are "monetary sanctions imposed in a … related action" brought
        by DOJ...........................................................................................34

        a.  *Life Partners bankruptcy proceedings
            are judicial or administrative actions
            brought by a statutorily described entity* ..............................35

        b.  *The Life Partners bankruptcy proceedings
            are "based upon the original information provided by a
            whistleblower … that led to the successful enforcement of the
            Commission action"*..............................................................38

        c.  *The Life Partners investor recoveries are
            "monetary sanctions imposed in the action" that have been
            "collected"* ............................................................................39

   2.   Life Partners investors recoveries in these bankruptcy proceedings
        are "monetary sanctions" imposed in "an action" brought by the
        Commission....................................................................................41

3. The statute's structure and stated purpose show that Congress intended the whistleblower award in this case to be based upon investor recoveries in bankruptcy................................................43

II.   THE $38.7 MILLION JUDGMENT IMPOSED BY THE DISTRICT COURT QUALIFIES UNDER THE WHISTLEBLOWER-INCENTIVE PROGRAM AWARD PROVISIONS ..........................................................46

A.   The Commission and Life Partners Investors "Collected" the "Monetary Sanctions" in the Bankruptcy Proceedings ...................46

B.   The Commission "Was Able to Collect" the $38.7 Million Judgment Under The Applicable Rule When McPherson Applied for an Award ......................................................................50

III.  THIS COURT SHOULD CORRECT THE COMMISSION'S MISUNDERSTANDING OF ITS EXEMPTIVE AUTHORITY................52

IV.   ALTERNATIVELY, THIS COURT SHOULD REMAND THE ORDER ...............................................................................53

CONCLUSION ...........................................................................................57

ADDENDUM: STATUTORY PROVISIONS INVOLVED ..................................58

CERTIFICATE OF SERVICE...................................................................62

CERTIFICATE OF COMPLIANCE...........................................................63

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Asadi v. G.E. Energy (USA), L.L.C.,*
    720 F.3d 620 (5th Cir. 2013) ....................................................................10

*Auer v. Robbins,*
    519 U.S. 452 (1997) ..................................................................................31

*Bass v. SEC,*
    No. 22-60674 (5th Cir. April 19, 2023) (Unpublished Order) ...................54

*Bowen v. Michigan Academy of Family Physicians,*
    476 U.S. 667 (1986) ................................................................................ 6-7

*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023) ....................................................................34

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) .............................................................................32, 33

*Czyzewski v. Jevic Holding Corp.,*
    580 U.S. 451 (2017) .............................................................................13, 14

*DHS v. Regents of the Univ. of Cal.,*
    140 S. Ct. 1891 (2020) ...............................................................................54

*Digital Realty Trust, Inc. v. Somers,*
    138 S. Ct. 767 (2018) .................................................................................10

*Elevator Corp. v. United States ex rel. Kirk,*
    563 U.S. 401 (2011) ...................................................................................36

*FCC v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021) ...............................................................................56

*Handley v. Chapman,*
    587 F.3d 273 (5th Cir. 2009) ....................................................................55

*Hanover Nat. Bank v. Moyses*,
  186 U.S. 181 (1902) ................................................................. 12

*Hong v. United States Sec. & Exch. Comm'n*,
  41 F.4th 83 (2d Cir. 2022) ....................................................... 41, 43

*In re Commonwealth Oil Ref. Co., Inc.*,
  461 F. Supp. 284 (W.D. Tex. 1978) ............................................. 20

*In re Life Partners Holdings, Inc.*,
  No. 15-40289-RFN, 2017 WL 5591631
  (N.D. Tex. Nov. 17, 2017) ......................................................... 15

*In re Life Partners Holdings, Inc.*,
  No. 15-40289-MXM-11, 2021 WL 9033047
  (N.D. Tex. Oct. 18, 2021) ......................................................... 15

*In re M.M. Winkler & Assocs.*,
  239 F.3d 746 (5th Cir. 2001) ..................................................... 52

*In re Sewell*,
  180 F.3d 707 (5th Cir. 1999) ................................................. 13-14

*In re U.S. Brass Corp.*,
  301 F.3d 296 (5th Cir. 2002) .................................... 12, 35, 37, 41

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) ........................................................ 31, 50

*Life Partners, Inc. v. Arnold*,
  464 S.W.3d 660 (Tex. 2015) ................................................. 25, 43

*Loper Bright Enterprises v. Raimondo*,
  143 S. Ct. 2429 (May 1, 2023) ..................................................... 33

*Mach Mining, LLC v. EEOC*,
  575 U.S. 480 (2015) ................................................................... 7

*Matter of Glenn*,
  900 F.3d 187 (5th Cir. 2018) ....................................................... 8

ix

*Matter of Life Partners Holdings, Inc.*,
    926 F.3d 103 (5th Cir. 2019) ...................................................................... 15

*Matter of Life Partners Holdings, Inc.*,
    No. 21-11231, 2022 WL 2462472 (5th Cir. July 6, 2022) ........................ 15

*Matter of Wood*,
    825 F.2d 90 (5th Cir. 1987) ........................................................................ 42

*Mexican Gulf Fishing Company v. U.S. Dept. of Commerce*,
    60 F.4th 956 (5th Cir. 2023) ....................................................................... 33

*Michigan v. EPA*,
    576 U.S. 743 (2015) ..................................................................................... 55

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ....................................................................................... 54

*Prill v. NLRB*,
    755 F.2d 941 (D.C. Cir. 1985) .................................................................... 32

*SEC v. Chenery Corp.* ("*Chenery I*"),
    318 U.S. 80 (1943) ....................................................................................... 54

*SEC v. Chenery Corp.* ("*Chenery II*"),
    332 U.S. 194 (1947) ..................................................................................... 55

*SEC v. Life Partners Holdings, Inc.*,
    71 F. Supp. 3d 615 (W.D. Tex. 2014) ........................................................ 15

*Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*,
    854 F.3d 765 (5th Cir. 2017) ...................................................................... 15

*SEC v. Life Partners, Inc.*,
    87 F.3d 536 (D.C. Cir. 1996) ...................................................................... 17

*Siegel v. Fitzgerald*,
    142 S. Ct. 1770 (2022) ................................................................................. 13

*Western Refining Southwest, Inc. v. FERC*,
    636 F.3d 719 (5th Cir. 2011)........................................................ 33

*Williams v. United States Fid. & Guar. Co.*,
    236 U.S. 549 (1915)..................................................................48

*Wright v. Union Central Life Ins. Co.*,
    304 U.S. 502 (1938)..................................................................12

**Statutes**

5 U.S.C. § 706(2)(A) ..................................................................... *passim*

11 U.S.C. § 101, *et seq*. (Bankruptcy Code) .........................................12

11 U.S.C. § 362 ........................................................................14

11 U.S.C. § 510(b) ........................................................... 14, 24-25

11 U.S.C. § 523(a)(2) ...................................................................52

11 U.S.C. § 541 ........................................................................13

11 U.S.C. § 726(a)(6) ...................................................................14

11 U.S.C. § 1101(1) ....................................................................14

11 U.S.C. § 1104 ....................................................................14, 38

11 U.S.C. § 1106 ........................................................................14

11 U.S.C. § 1107(a) ....................................................................14

15 U.S.C. § 78mm........................................................ 4, 9, 30, 52, 53

15 U.S.C. § 78u-6 ................................................................. *passim*

28 U.S.C. § 586(a)(3) ..................................................................13

28 U.S.C. § 586(c)......................................................................13

28 U.S.C. § 2112(a)(5) ................................................................. 6

U.S. Const. art. I, § 8, cl. 4 ..................................................... 12

## Regulations and Rules

24 C.F.R. § 240.21F-4 .......................................................... 37, 41

27 C.F.R. § 240.21F-5(b) ................................................ 11, 30, 46, 50

27 C.F.R. § 240.21F-13 ............................................................. 6

Federal Rule of Appellate Procedure 34(a)(2) ....................................... iii

Fifth Circuit Rule 28.2.3 ........................................................ iii

*SEC Whistleblower Program Proposed Rules*,
    Release No. 34-83557, 83 Fed. Reg. 34705,
    2018 WL 3474355 (July 20, 2018) ................................ 5, 25, 34, 38, 44-45

*SEC Whistleblower Program Rules*, Release No. 89963,
    2020 WL 5763381 (Sept. 23, 2020) ............................ 25, 26, 32, 37, 40, 56

*Securities Whistleblower Incentives and Protections*,
    Release No. 34-64545, 76 Fed. Reg. 34,300,
    2011 WL 2293084 (June 13, 2011) ........................................... 41

## Other Authorities

2006 Annual Survey of Bankruptcy Law ....................................... 20

2011 Annual Survey of Bankruptcy Law ....................................... 40

Ballentine's Law Dictionary (3d ed. 2010) .................................... 47

Black's Law Dictionary (11th ed. 2019) .................................... 36, 47

Collier on Bankruptcy (15th ed. rev. 2001) .................................. 12

H.R. Rep. No. 595, 95th Cong., 1st Sess. 115 (1977)............................................13

*In re Federal Water Service Corp.*,
  Release No. 5595, 18 S.E.C. 231, 1945 WL 26504 (1945) ........................55

Merriam-Webster Online Dictionary ........................................................47

OXFORD ENGLISH DICTIONARY (3d ed. 2009) ........................................51

Pub. L. No. 111-203, 124 Stat. 1376 ("Dodd-Frank")............................. 9

*In re Claim for Award*, Release No. 72727,
  2014 WL 3749705 (July 31, 2014) ............................................53

*In re Claims for Award*, Release No. 82897,
  2018 WL 1378788 (March 19, 2018) ..........................................53

*In re Claims for Award*, Release No. 84046,
  2018 WL 4488273 (Sept. 6, 2018) ............................................56

S. Rep. 111-176 (2010) ...................................................1, 10, 11, 25, 43

# ABBREVIATIONS AND RECORD REFERENCES

**Parties:**

"Barr" refers to Petitioner John M. Barr.

"McPherson" refers to Petitioner John McPherson.

"SEC" or the "Commission" refers to Respondent Securities and Exchange Commission.

**Record References:**

References to entries on this Court's docket shall be in the form of "Dkt. No. ___."

References to the Electronic Administrative Record shall be in the form of "ROA.___."[1]

References to the district court's docket in *SEC v. Life Partners Holdings, Inc., et al.*, No. 12-cv-00033 (W.D. Tex.) shall be abbreviated and captioned in the form of "*SEC v. Life Partners*" and accompanied by the filing date.

References to bankruptcy court's docket in *In re: Life Partners Holdings, Inc.*, No. 15-40289-RFN-11 (Bankr. N.D. Tex.) shall be abbreviated and captioned in the form of "*Life Partners Bankr.*" and accompanied by the filing date.

**Documents:**[2]

"2018 SEC Release" refers to SEC Whistleblower Program Proposed Rules, Release No. 34-83557, 2018 WL 3474355 (July 20, 2018).

"2020 SEC Release" refers to SEC Whistleblower Program Rules, Release No. 34-899963, 2020 WL 5763381 (Sept. 23, 2020).

---

[1] For the sake of brevity in the electronic administrative record, the Commission reproduced only the first page of documents that are publicly available (*e.g.*, on a federal judicial docket). *See* Dkt. No. 39. Citations in this brief therefore are often directly to a federal court docket.

[2] Documents marked with an "*" are included in McPherson's record excerpts.

"First Day Report" refers to Decl. of H. Thomas Moran II in Support of Voluntary Petitions, First Day Motions and Designation as Complex Chapter 11 Case, *Life Partners Bankr.*, Dkt. 347 (filed May 20, 2015).

"Final Judgment" refers to Final Judgment, *SEC v. Life Partners*, Dkt. No. 352 (filed Jan. 16, 2015).

"Final Judgment Order" refers to Final Judgment Order, *SEC v. Life Partners*, Dkt. No. 304 (filed Dec. 2, 2014).

"Final Order" refers to the SEC Order Determining Whistleblower Award Claims, Release No. 97202, File No. 2023-42 (filed Mar. 27, 2023).

"Order Confirming Plan" refers to Order Confirming Revised Third Amended Joint Plan, *Life Partners Bankr.*, Dkt. No. 3439 (filed Nov. 1, 2015).

"Order Granting Trustee LPI Mot." refers to Order Authorizing the Trustee To Amend the Governing Documents and To File Voluntary Chapter 11 Petitions for Debtor's Subsidiaries, *Life Partners Bankr.*, Dkt. 261 (filed Apr. 7, 2015).

"Order Granting Trustee Mot." refers to Order Granting Motion Of Securities And Exchange Commission For Appointment Of A Chapter 11 Trustee, *Life Partners Bankr.*, Dkt. No. 186 (filed Mar. 10, 2015).

"Order Approving PHT's Final Report" refers to Order To Deposit Unclaimed Funds, Approving Position Holder Trust's Final Report, And Granting Request For Discharge, *Life Partners Bankr.*, Dkt. No. 4681 (filed Dec. 16, 2022).

"Plan" refers to Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc., et al., *Life Partners Bankr.*, Dkt. No. 3427 (filed Oct. 27, 2016).

"SEC Receiver Mot." refers to Opposed Emergency Motion For Appointment of Receiver, *SEC v. Life Partners*, Dkt. No. 325 (filed Jan. 5, 2015).*

"SEC Trustee Mot." refers to SEC's Motion Under 11 U.S.C. § 1104(a) for Appointment of a Chapter 11 Trustee, *Life Partners Bankr.*, Dkt. No. 14 (filed Jan. 23, 2015).

"Trustee LPI Mot." refers to Trustee's Emergency Motion to Amend the Governing Documents and To File Voluntary Chapter 11 Petitions for Debtor's Subsidiaries, *Life Partners Bankr.*, Dkt. No. 240 (filed Mar. 25, 2015).*

"UST Trustee App." refers to Application of the U.S. Trustee To Approve Appointment Of Trustee, *Life Partners Bankr.*, Dkt. No. 225 (filed Mar. 19, 2015).

"UST Trustee Mot." refers to U.S. Trustee's Motion For An Order Directing The Appointment Of A Chapter 11 Trustee, *Life Partners Bankr.*, Dkt. No. 27 (filed Jan. 26, 2015).*

**INTRODUCTION**

In the wake of the 2008 financial crisis, the Bernard Madoff scandal and other highly publicized frauds perpetrated against investors, Congress enacted Dodd-Frank. The Act responded to numerous perceived deficiencies in financial regulation. Among them was the lack of adequate measures in the Securities Exchange Act of 1934 (the "Exchange Act") to "assist the Government [in] identify[ing] and prosecut[ing] persons who have violated securities laws." S. Rep. No. 111–176, at 110 (2010).

To help the Commission both in "identifying securities law violations" and obtaining the "recover[y] [of] money for victims of financial fraud," Congress "establish[ed] a new, robust whistleblower program designed to motivate people who know of securities law violations to tell the SEC." *Id*. at 38, 110. This incentive program offers substantial mandatory monetary rewards to whistleblowers who provide useful information that results in a wide array of successful judicial or administrative actions. 15 U.S.C. § 78u-6(b)(1).[3]

Petitioner John McPherson, an expert in insurance and forensic accountancy, came forward and uncovered one of the largest deceptions in Texas history: a systematic, billion-dollar securities fraud by Life Partners Holdings, Inc. ("LPHI")

---

[3] Section 922 of Dodd-Frank amended the Exchange Act to add a new section—Section 21F—entitled "Securities Whistleblower Incentives and Protection." Section 21F of the Exchange Act is codified in its entirety at 15 U.S.C. § 78u-6.

and its subsidiaries.[4] Life Partners carried out its fraud by using a materially underestimated, or "short," life expectancy ("LE") in connection with the sale of life insurance policies and fractional interests to retail investors. Beginning in 2010 and continuing until 2015, McPherson provided "extraordinary and continuing assistance" to the Government. ROA.1539; ROA.1559 (n.2). His "invaluable" contributions helped produce one of the most successful enforcement actions in the Commission's history: $38.7 million in civil penalties and disgorgement ordered by the district court and approximately $1 billion recovered for defrauded retail investors in bankruptcy actions brought by the Commission and the U.S. Department of Justice ("DOJ"), Office of the U.S. Trustee. ROA.1538; ROA.1786.

The Commission's path was not easy. To enforce the securities laws, the Commission first used LPHI's accounting and disclosure fraud to pursue a broader enforcement action against the Company and its subsidiaries. The Commission's primary objective from the very beginning was to protect LPI's retail fractional investors who were the real victims of the fraud. So, after securing its $38.7 million civil judgment against LPHI, the Commission moved the district court for the appointment of a receiver, or if necessary, a bankruptcy trustee, over LPHI and its subsidiaries, including LPI. ROA.1697. This step would allow the Commission to

---

[4] As the Commission did in its enforcement action, this brief will refer to LPHI jointly with its wholly-owned subsidiary, Life Partners, Inc. ("LPI") as "Life Partners" or the "Company." ROA.28.

address LPI's ongoing violations of the security laws and to recover monies for the defrauded retail investors.

LPHI sought to avoid this result by filing a chapter 11 bankruptcy petition the day before the motion hearing. Its gambit failed. Leading virtually every aspect of the ensuing bankruptcy proceedings, the Commission, along with the U.S. Trustee, moved for the appointment of a chapter 11 trustee based upon McPherson's analysis of Life Partners' fraud on fractional investors. This action, brought within the bankruptcy case, coupled with another action brought within the bankruptcy case that extended jurisdiction over LPI, paved the way for a court-confirmed reorganization plan that prevented the near-total collapse of Life Partners, satisfied the Commission's civil judgment, and paid the retail investors over $1 billion.

In 2023, thirteen years after McPherson began assisting the Government and eight years after he submitted his whistleblower claim, the Commission issued a final order in his case. ROA.1785. For his "extraordinary" assistance to the Commission and the bankruptcy trustee, the Commission calculated McPherson's payment to be "equal to over $21,000," sending its "congratulations and sincere thanks." ROA.1784; ROA.1785. The Commission declined to base the award on any monies collected by retail investors under the categorical and mistaken view that "orders to pay money that result from bankruptcy proceedings are not imposed in Commission covered actions or related actions." ROA.1791. It also declined to base

the award on the $38.7 million in civil penalties and disgorgement because they were not "actually collected" in bankruptcy. ROA.1790. Nor did the Commission find it could exercise its exemptive authority to fashion a fair award for McPherson, even "where a higher award amount might otherwise be warranted." ROA.1792; 15 U.S.C. § 78mm(a)(1).

The agency's three conclusions are based upon a misreading of the statute. The Commission's categorical exclusion of investor recoveries in bankruptcy suffers from a misunderstanding of bankruptcy law and procedure. Bankruptcy motions (such as a motion to appoint a trustee) are proceedings within a bankruptcy case and therefore qualify as "any judicial or administrative action" under a plain reading of the statute, so long as they are "brought" by the Commission or an enumerated entity, such as DOJ, which in this case they were. 15 U.S.C. § 78u-6(a)(1),(4).

The Commission and the retail investors also "collected" the full amount of the $38.7 million civil judgment pursuant to the agreed-to and court-approved terms of the reorganization plan. Congress was agnostic in Dodd-Frank with respect to how "monetary sanctions" are "collected" or who "collects" them. *Id*. § 78u-6(b)(1)&(2). The Commission's agreement to release its judgment and the investor's receipt of approximately $900 million in payments to date in bankruptcy fall comfortably within the text's meaning. *Id*. It also is moored to Congress's only

explicit requirement that the "monetary sanctions" be "imposed" in "an action or related action," which, again, they were. *Id*.

The Commission (alternatively) was wrong when it stated that it did not have the authority to exempt McPherson from a "statutory requirement" to make a fair award. ROA.1792. Congress provided the Commission with that power so long as it was in the public interest, and, in fact, the Commission has exercised that discretion in "extraordinary" circumstances.

Dodd-Frank's creation of a broad, incentive-based, mandatory award program further undermines the Commission's reading of the statute. Congress undoubtedly recognized that companies that are based entirely on a fraud (*e.g.*, Madoff's Ponzi scheme, or Life Partners' LE deception here) have no legitimate business upon which to rely and will invariably enter bankruptcy when that fraud is uncovered. The only way to incentivize and compensate whistleblowers in those circumstances is to base an award on the monies returned to defrauded investors in bankruptcy. The Commission's result here—which denies McPherson any meaningful recovery simply because Life Partners entered bankruptcy—conflicts with Congress's purpose as expressed in both the statute's text and structure. *See* 2018 SEC Release, at 34705 ("Congress did not intend for meritorious whistleblowers to be denied awards simply because of the procedural vehicle that the Commission (or the other authority) has selected to pursue an enforcement matter.").

## JURISDICTIONAL STATEMENT

The Commission had jurisdiction to issue the Final Order under 15 U.S.C. § 78u-6(b), which directs the Commission to pay awards to eligible whistleblowers. This Court has appellate jurisdiction pursuant to 15 U.S.C. § 78u-6(f). Petitioner McPherson timely petitioned for review in the U.S. Court of Appeals for the District of Columbia Circuit. 17 C.F.R. § 240.21F-13; Dkt. No. 23-1. Because Petitioner John M. Barr filed his petition one day earlier in this Court, the D.C. Circuit transferred McPherson's appeal, Dkt. No. 23-2, and this Court consolidated it with Barr's appeal. *See* 28 U.S.C. § 2112(a)(5).

The text of § 78u-6(f) broadly grants jurisdiction over "any" determination but excludes a narrow subcategory of determinations principally involving the Commission's consideration of factors to determine an award percentage. *See id*. (authorizing review of "[a]ny such determination, except the determination of the amount of an award if the award was made in accordance with subsection (b)"); *id.* § 78u-6(c) (entitled "Determination of amount of award").[5] The exception does not apply here for at least three reasons.

First, McPherson seeks review of the Commission's interpretation of Dodd-Frank's predicate definitions and terms used to carry out the whistleblower program,

---

[5] These two subsections, along with other key whistleblower-inventive program definitions and award provisions, are reproduced in the addendum to this brief.

not its "determination of the amount of an award." *See Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 675-76 (1986) (finding "the *method* by which such amounts are to be determined" is reviewable even though "the *determinations* themselves" may not be) (emphasis in original).

Second, the exception applies only "if the award was made in accordance with subsection (b)." 15 U.S.C. § 78u-6(f). McPherson's argument is that his award was *not* "made in accordance with" the award provisions because the agency misread the statutory terms and his award did *not* fall within the prescribed statutory range. *Id*. § 78u-6(b)(1)(A) & (B) ("the Commission … shall pay an award … not less than 10% … and … not more than 30% …").

Third, there is a strong presumption favoring judicial review of administrative action, and the Commission cannot meet its "heavy burden" of showing that the statute's "language or structure" forecloses this Court's review. *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015).

## STANDARD OF REVIEW

This Court reviews a final order determining a whistleblower award claim "in accordance with section 706" of the Administrative Procedure Act ("APA"), 15 U.S.C. § 78u-6(f), which requires a "reviewing court . . . to hold unlawful and set aside an agency action, findings, and conclusions found to be ... arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

This Court reviews questions of statutory interpretation *de novo*. *Matter of Glenn*, 900 F.3d 187, 189 (5th Cir. 2018).

## STATEMENT OF THE ISSUES

The Commission found McPherson eligible for a whistleblower award based upon his "extraordinary and continuing assistance" and awarded him twenty percent (20%) of the qualifying monetary sanctions, "equal to over $21,000." ROA.1785. McPherson challenges the Commission's interpretations of Dodd-Frank's programmatic definitions and terms. The questions presented are:

1.    Whether Dodd-Frank categorically precludes the Commission from basing a whistleblower-incentive award on monies recovered for defrauded securities investors in bankruptcy proceedings;

2.    Whether Dodd-Frank's text—broadly defining "monetary sanctions" as "any monies"—and its statutory structure—requiring the Commission to calculate awards to eligible whistleblowers based on monies imposed in "any administrative or judicial action," whether brought by the Commission or many other enumerated entities—buttressed by Congress's stated purpose to incentivize whistleblower participation by paying substantial monetary rewards without regard to the procedural vehicle that the Commission (or other authority) selects to pursue an

enforcement matter—show that the whistleblower award in this particular case must be based on court-ordered payments to defrauded securities investors under a reorganization plan designed by a chapter 11 bankruptcy trustee who was selected by the Commission and appointed by DOJ;

3.    Whether the whistleblower award calculation in this case must be based on $38.7 million in civil penalties and disgorgement imposed by the district court in the enforcement action either because it was "collected" in the bankruptcy proceedings under the plain language of the statute, or the Commission was "able to collect" it under the plain language of its applicable rule;

4.    Whether the Commission misunderstood its exemptive authority under 15 U.S.C. § 78mm(a)(1) when it concluded that Congress did not allow it to fashion an appropriate whistleblower award even where it would be "in the public interest," "consistent with the protection of investors," and, where, as the Commission believed, "a higher award amount might otherwise be warranted."

## STATEMENT OF THE CASE

## I.    STATUTORY BACKGROUND

### A. Dodd-Frank Wall Street Reform and Consumer Protection Act

Congress enacted Dodd-Frank to "promote the financial stability of the United States by improving accountability and transparency in the financial system." 124 Stat. 1376. Through its creation of a new securities whistleblower program,

Congress sought to achieve the dual aims of improving enforcement and facilitating the "recover[y] [of] money for victims of financial fraud." S. Rep. No. 111–176, at 110 (2010). Congress recognized that "whistleblowers often face the difficult choice between telling the truth and ... committing 'career suicide,'" and designed the program to provide substantial monetary rewards for facilitating recovery to investors and to provide legal safeguards for doing so. *Id.* at 111, 112.

Congress added two distinct measures to "afford[] covered whistleblowers both incentives and protection." *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 774 (2018). First, § 78u–6(b)(1) creates a mandatory "whistleblower-incentive program" for individuals who provide certain useful information to the Commission. *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 n.3, n.4 (5th Cir. 2013). Second, Section 78u-6(h) prohibits retaliation by employers against whistleblowers. 15 U.S.C. § 78u-6(h)(1)(A)(i)-(iii).

### B. The Securities Whistleblower-Incentive Program

Modeled on similar programs in other agencies, Congress mandated the payment of monetary awards to whistleblowers who voluntarily provide original information to the Commission related to violations of the securities laws resulting in monetary sanctions exceeding $1,000,000. 15 U.S.C. § 78u-6(b)(1). The Office of the Whistleblower ("OWB") administers the whistleblower-incentive program.

Subsection (a) defines six terms Congress intended to delineate the whistleblower-incentive program. 15 U.S.C. § 78u-6(a)(1)-(6). Of these terms, most pertinent here are the definitions of "covered judicial or administrative action," "related action," and "monetary sanctions."

Subsections (b)-(g) govern the operation of the whistleblower-incentive program. *Id*. § 78u-6(b)-(g). To achieve its programmatic goal of encouraging whistleblowers with substantial rewards, Congress included a mandatory minimum award provision. *Id*. § 78u-6(b)(1); *see* S. Rep. No. 111–176 (2010) at 112 (Congress "intends for this program to be used actively with ample rewards to promote the integrity of the financial markets"). The Commission must award a successful claimant or claimants between 10 percent and 30 percent "of what has been collected of the monetary sanctions imposed in the action or related actions." 15 U.S.C. § 78u-6(b)(1)(A)&(B). In implementing this section, the Commission's rule for calculating a whistleblower's award states that the award be based on "the monetary sanctions that the Commission and the other authorities are able to collect." 17 C.F.R. § 240.21F-5(b).

To "determine[]e the amount of an award," the Commission considers a list of non-exhaustive factors. 15 U.S.C. § 78u-6(c)(1)(B). Congress precludes the Commission from "tak[ing] into consideration the balance of the [SEC Investor

Protection Fund]" established by Congress to help fund whistleblower awards. *Id*. § 78u-6(c)(2).

## C. Bankruptcy Law and Principles

Exercising its plenary authority under the Bankruptcy Clause, Congress has enacted the "Bankruptcy Code," which is the primary source of law governing bankruptcies. U.S. CONST. art. I, § 8, cl. 4 ; 11 U.S.C. § 101, *et seq*.; *see Hanover Nat. Bank v. Moyses*, 186 U.S. 181, 187 (1902) (clause "grant[s] plenary power to Congress over the whole subject of 'bankruptcies'"); *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 513–14 (1938) (subject "includes nothing less than the subject of the relations between [a] debtor and his creditors"). The Code attempts to give honest debtors a "fresh start" by granting relief from certain debts while at the same time seeking to maximize total creditor return by distributing the debtor's assets or income to creditors in an orderly, fair, and efficient fashion.

To both administer and determine the substance of the debtor-creditor relationship, bankruptcy cases themselves are comprised of many different proceedings. This Court itself has observed that "'[a]nything that occurs within a case is a proceeding.'" *In re U.S. Brass Corp.*, 301 F.3d 296, 303 n.14 (5th Cir. 2002) (citing 1 Lawrence P. King et al., COLLIER ON BANKRUPTCY 3.01[4][b], at 3–19 (15th ed. rev. 2001) (quoting H.R. Rep. No. 95–595, at 445 (1977)).

"Bankruptcy cases involve both traditional judicial responsibilities and extensive administrative ones." *Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1772 (2022). Congress elected to separate the administrative and judicial function in bankruptcy-case administration by transferring the administrative functions to DOJ rather than the Administrative Office of the U.S. Courts. *Id.* at 1776. That division of responsibilities "place[d] the administrative duties in bankruptcy in the Branch of Government most capable of executing the laws." H.R. Rep. No. 595, 95th Cong., 1st Sess. 115 (1977).

The U.S. Trustees are charged with supervision of the federal bankruptcy system and have both administrative and enforcement authority. *See* 28 U.S.C. § 586(a)(3); U.S. Trustees Program, DOJ website, available at < https://www.justice.gov/ust > (last accessed Oct. 11, 2023). The U.S. Attorney General supervises the U.S. Trustees. 28 U.S.C. § 586(c).

In cases filed pursuant to chapter 11 of the Bankruptcy Code, the debtor and creditors may seek a bankruptcy court-confirmed plan to keep the business operating while, at the same time, helping creditors by providing for payments, including distributions made over time. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 978 (2017). To accomplish this objective, the filing of a petition generally creates an estate including all legal or equitable interests of the debtor in property existing on the filing date. 11 U.S.C. § 541. The assets in the estate are used "to satisfy claims

of creditors and costs of the proceedings." *In re Sewell*, 180 F.3d 707, 710 (5th Cir. 1999).[6]

The Code next installs a fiduciary to manage the estate in the interest of the creditors. *See* 11 U.S.C. §§ 1106, 1107(a). Typically, this is the debtor's existing management team, which acts as a "debtor in possession." *Id*. §§ 1101(1), 1104. In rare cases, on request of a party-in-interest or the U.S. Trustee, the bankruptcy court may appoint a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management." 11 U.S.C. § 1104(a)(1); *see also id*. § 1104(e) (U.S. Trustee must move for appointment of a trustee, where, as here, "there are reasonable grounds to suspect that current members of the governing body of the debtor . . . participated in actual fraud").

Finally, the Code imposes an "automatic stay" of all collection proceedings against the debtor. 11 U.S.C. § 362(a). The remains in effect until the bankruptcy court closes the case, dismisses the case, or grants or denies the debtor a discharge, whichever comes first. *Id*. § 362(c)(2).

---

[6] The Code "sets forth a basic system of priority, which ordinarily determines the order in which the bankruptcy court will distribute assets of the estate." *Czyzewski*, 137 S. Ct. at 979. Equity holders and defrauded investors are at the bottom of the priority list and receive nothing until all previously listed creditors have been paid in full. 11 U.S.C. § 726(a)(6); 11 U.S.C. § 510(b).

## II.    FACTS & AGENCY HISTORY

### A. Parties

Respondent is the U.S. Securities and Exchange Commission. The Commission issued the order under review. ROA.1785.

Petitioners are John McPherson and John M. Barr who independently claimed eligibility for an award in an action involving Life Partners and certain of its officers. ROA.33-34; ROA.83-85.

### B. The Life Partners Fraud

Both the magnitude and the complexity of the fraud committed by Life Partners is well known in this Circuit. In fact, this Court has been asked to resolve many questions in cases involving Life Partners at various stages of various proceedings. *See, e.g.*, *SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615 (W.D. Tex. 2014), *aff'd in part, vacated in part, rev'd in part by* 854 F.3d 765 (5th Cir. 2017); *In re Life Partners Holdings, Inc.*, No. 15-40289-RFN, 2017 WL 5591631 (N.D. Tex. Nov. 17, 2017), *aff'd in part, rev'd in part and remanded by* 926 F.3d 103 (5th Cir. 2019)*; In re Life Partners Holdings, Inc.*, No. 15-40289-MXM-11, 2021 WL 9033047 (N.D. Tex. Oct. 18, 2021), *aff'd by* No. 21-11231, 2022 WL 2462472 (5th Cir. July 6, 2022).

The Life Partners fraud in this case was pervasive, targeting tens of thousands of unsophisticated retail investors. Yet, because of the complex and arcane nature of

the "life settlement" industry, Life Partners and its officers were able to hide their fraud in plain sight. Put simply, Life Partners was engaged in the business of facilitating sales of life insurance policies to secondary market investors. Life Partners principally derived its income from commission fees it collected on "viatical" and "life settlement" products, including from the sale of fractional interests to individual and institutional investors. *Life Partners*, 854 F.3d at 772 n.2 (defining each product). Life Partners acted as both the broker and the seller for these viatical/life settlement policies—yielding exorbitant profits on both ends. ROA.1471.

The critical metric in these transactions is the insured's life expectancy estimate. The LE determined the policy's sale price. *Life Partners*, 854 F.3d at 772-73 (describing typical transaction). The shorter a particular life insurance policy's LE, the more profitable that policy would be because fewer premiums would need to be paid over the life of the policy. *Id*.

Life Partners "systematically used life expectancies that were materially short in brokering life settlements" by relying upon its own in-house life expectancy underwriter, Dr. Donald Cassidy. ROA.1786; ROA.1471. Dr. Cassidy suppressed LEs, as compared to industry peers whose LEs came from independent underwriters.

Before its successful enforcement efforts in this case, the Commission had a long history of seeking to regulate Life Partners under the securities laws. These

efforts failed when a federal appellate court found that "fractional interests in viatical settlements, in any of the three versions marketed or proposed by [Life Partners], are not securities." *SEC v. Life Partners, Inc.*, 87 F.3d 536, 549 (D.C. Cir. 1996).

## C. McPherson Provides "Extraordinary" Assistance to the Government

The Commission resumed investigating Life Partners for its investment fraud involving fractional investors in April 2010. ROA.1537 (¶ 4). Soon after, McPherson began providing ongoing, "extraordinary" assistance, ROA.1539, including information that was "invaluable" to the action. ROA.1538; ROA.1540; ROA.1559; *see also* ROA.1484-87 (detailing McPherson's assistance in investigation); ROA.1533-36 (same).[7] McPherson first helped resolve the Commission's threshold jurisdictional issue by explaining why "fractionalized policies were securities." ROA.1538 (¶ 7). McPherson next explained how Life Partners committed fraud on retail investors by knowingly mispricing its LEs, and on shareholders by failing to disclose its practices properly in its disclosures. ROA.1471-72; *see also* ROA.1538-39 (summarizing McPherson's explanations of

---

[7] The Final Order gives the importance of McPherson's assistance short shrift. To achieve a more complete understanding of the extent of McPherson's contributions in pursuing Life Partners, this Court need only review the declaration of Frank E. Goodrich, one of the primary Enforcement attorneys assigned to the Life Partners investigation. ROA.1537-42. In addition to Goodrich's frank and succinct conclusion that "McPherson's assistance was extraordinary," Goodrich provides a step-by-step account describing McPherson's contributions at each stage of the investigation and proceedings. Notably, his declaration (as do the Commission's complaints, ROA.27-28), intentionally refers to LPHI and LPI as "Life Partners," drawing no distinction between the two entities. ROA.1537.

the Life Partners fraud). McPherson shared with Commission staff "information that backed up his claim," including "specific policy examples." ROA.1538. This information showed that Life Partners' business model was based on a fraud.

Over the next eighteen months (from August 2010 through December 2011), McPherson communicated regularly and met with Commission staff (including on-site in Texas), provided written analyses, and reviewed documents obtained in the investigation. ROA.1539-41; ROA.1559 (n.2); ROA.1485. He also shared non-public information on virtually every aspect of Life Partners and its fraud. ROA.1539-40 (¶ 13) (listing fourteen examples of information McPherson provided); *see also* ROA.1540 (¶ 14).

### D. The Commission Files Life Partners Enforcement Action

The Commission initiated an enforcement action against Life Partners and its officers in early 2012 alleging "a disclosure and accounting fraud." ROA.28. McPherson's contributions helped form the basis for much of the "allegations that eventually led to a successful resolution of this matter." ROA.1541 (¶ 18). McPherson continued to assist the Commission throughout the action. ROA.1487.

On February 3, 2014, the jury returned a verdict finding that LPHI and its officers had violated multiple securities laws. The district court's final judgment order extensively discusses the fraud and concludes that LPHI "and LPI effectively operate as a single entity." Final Judgment Order, at 10. The district court ordered

Life Partners to pay disgorgement of $15 million and a civil penalty of $23.7 million, and certain officers to pay millions in civil penalties. ROA.1768; Final Judgment, at 2.

### E. The Commission Pursues Alternative Methods to Achieve its Enforcement Objectives Under the Securities Laws

Following the Final Judgment Order, the Commission believed that "investor interests—as well as the interests of LPHI's creditors including the Commission— will be much better protected by a Court-appointed Receiver or, if appropriate, a bankruptcy trustee." ROA.1697 (reproducing in part SEC Receiver Mot., at 6). A receiver or bankruptcy trustee has wide latitude in managing the wind-down of the Company's operations and distributing funds to all harmed investors, including the potentially 30,000 fractional (retail) investors. ROA.1475; *see* ROA.1475-76 (collecting Commission statements to that effect). For this reason, the Commission's motion requested a receiver to oversee not only LPHI but *all* its subsidiaries. ROA.1698 ("the Commission asks the Court to appoint a Receiver over LPHI and its affiliates, including Life Partners, Inc."); *see also* ROA.1698 (Commission seeks court-ordered "immediate analysis … whether the initiation of bankruptcy proceedings … would be appropriate such that creditor claims *against the entities* would be adjudged in a bankruptcy court.").

McPherson recommended Thomas Moran II to the Commission to serve as the nominee-receiver. ROA.1468. The Commission thereafter selected Moran to

serve in that capacity. ROA.1475. McPherson began working extensively with Moran, including in connection with the upcoming receivership hearing. ROA.1487.

The Commission's decision to take advantage of all available enforcement methods—including receiverships or bankruptcy proceedings—is neither novel nor surprising. In addition to receiverships, the Commission has aggressively assumed a key role in virtually every aspect of important bankruptcy proceedings in recent memory. *See* Alistaire Bambach & Samuel R. Maizel, The SEC's Role in Public Company Bankruptcy Cases Where There Is a Significant Enforcement Interest, 2006 ANN. SURVEY OF BANKRUPTCY LAW 99 (2006 ed.); *see also In re Commonwealth Oil Refining Co., Inc.*, 461 F. Supp. 284, 286 (W.D. Tex. 1978) (discussing Commission's important interest in bankruptcy proceedings through its role as protector of public investor interests).

The same day the district court was scheduled to hear the Commission's motion for appointment of a receiver—January 20, 2015—LPHI filed a voluntary petition under chapter 11 and immediately moved the bankruptcy court for appointment of an examiner of its choice. ROA.1786. LPHI openly admitted that it did so "in order to avoid the appointment of a receiver." ROA.1476. The district court denied the receiver motion without prejudice, agreeing with the Commission that it "will be able to effectively seek from the Bankruptcy Court the relief sought from this Court in the receivership motion." ROA.1465.

### F. The Commission and DOJ Use Bankruptcy Proceedings to Pursue Life Partners[8]

The Commission led virtually every aspect of the bankruptcy cases against LPHI, LPI and LPIFS, effectively making all key tactical and strategic enforcement decisions until a confirmed chapter 11 reorganization plan for the entities was in place. In fact, the Commission's enforcement strategy in bankruptcy changed only to the extent that the fraud against the fractional investors now took the lead over the accounting fraud.

The Commission immediately focused on the appointment of chapter 11 bankruptcy trustee—Moran, the same individual the Commission had nominally selected to lead the receivership— to take control of the Company's operations and, ultimately, to distribute funds to harmed investors. The Commission worked with DOJ to help accomplish this key objective. Within days of LPHI's petition, the Commission and U.S. Trustee separately filed emergency motions requesting the bankruptcy court to "order the United States Trustee to appoint a Chapter 11 Trustee." *See* UST Trustee Mot. at 9; *see also* SEC Trustee Mot. at 1. Relying upon McPherson's information detailing Life Partners' fraud, the bankruptcy court granted the request after a hearing spanning six (non-consecutive) days *See* Order

---

[8] Just as the Final Order minimizes McPherson's assistance, so, too, does the Final Order gloss over what happened after LPHI filed for bankruptcy. These facts are crucial to understanding why both Life Partners investor recoveries and the Commission's judgment qualifies under the award provisions.

Granting Trustee Mot., at 1. After consulting with the Commission, the U.S. Trustee selected and appointed Moran (the "Trustee") to serve in that capacity, which the court approved. *See* UST App., at 1-2 (¶ 3); Order Approving Appointment of Chapter 11 Trustee, *Life Partners Bankr.*, Dkt. No. 229 (filed Mar. 19, 2015).

McPherson helped the Trustee prepare a detailed "first day" declaration describing virtually every aspect of both LPHI's disclosure fraud and LPI's fractional fraud-based violations. ROA.1477-78; First Day Report, at 13-20. The information in the First Day Report largely mirrored McPherson's original analysis and findings, which he had provided the Trustee a month earlier. ROA.1478-79.

The Trustee next filed an emergency motion seeking an order to amend the governing documents of LPI and its subsidiary, LPI Financial Services, Inc. ("LPIFS"), and, once the Trustee became the sole director through amendments, to file chapter 11 petitions on their behalf. *See* Trustee LPI Mot., at 1. The bankruptcy court granted the motion, initiating a new case involving LPI, which the Trustee described as "LPHI's most valuable assets" because LPI owned the life insurance policies. *Id.* at ¶ 20; Order Granting Trustee LPI Mot. at 1-2.

### G. The OWB Posts Notice of Life Partners Covered Action

Shortly after the Trustee brought its action against LPI (and approximately five years after McPherson began assisting the Commission), the OWB posted a notice of covered action. ROA.24. McPherson timely submitted his whistleblower

application. ROA.88-89 (Form WB-APP Application dated June 29, 2015). McPherson's accompanying memorandum detailed his involvement from day one. *See* ROA.90-120.

### H. Under the Court-Ordered Reorganization Plan, Life Partners Satisfies the Commission's Civil Judgment and Defrauded Investors Begin to Receive Payments

The Commission (working alongside its chosen Trustee) led the effort to fashion a plan for the reorganization of LPHI, LPI, and LPIFS and distribution of assets to defrauded investors. The bankruptcy court confirmed a joint plan on November 1, 2016. *See* Plan; Order Confirming Plan, at 5-6.

The cornerstone of the confirmed reorganization plan was a liquidating trust to benefit the retail investors. *See* ROA.1480 (letter to SEC discussing implementation and legal entities created under Plan) ("Liquidating Trust Letter").[9] The key benefit of being a holder of a fractional interest in a life settlement policy is the possibility of a 100% payout of the death benefit. The Plan created a trust to collectively own thousands of policies and distribute the liquidated assets from those policies to investors as the policies matured over time, thereby maximizing near- and long-term payouts to the retail investors. Liquidating Trust Letter, at 3-5; *id*. at 3

---

[9] The letter is Exhibit 8 to McPherson's June 30, 2020 Supplemental Submission. ROA.1466. The agency takes the position that the OWB did not receive the exhibits and therefore they were not included in the administrative record before the Commission at the time the final order was issued. This particular document is publicly available at: < https://www.sec.gov/divisions/investment/noaction/2016/life-partners-120216-7a-incoming.pdf >

(observing there are approximately 22,000 investors who currently hold fractional positions and over 100,000 outstanding fractional positions). At the same time, it allowed the Commission to retain jurisdictional control over the massive fraud.

LPI's proceeds from the maturing life insurance policies provided the Plan's source of funding for all three bankruptcies. Plan, at 22 (§ 4.01). The Plan used these assets to create a "Position Holder Trust" ("PHT") that would pay the retail investors from the future death benefit proceeds.  Plan, at 42 (§ 5.01). The Plan created another entity, the "Creditor's Trust," which did not include LPI's assets or the investor claims but rather consolidated all other creditor claims (not related to the policies) of all three entities. *Id*. at 50 (§ 6.01). As such, it  had no source of income, and very few, if any, assets. Within weeks of the Plan's implementation, defrauded investors were paid over $100 million in death benefits.

With respect to the Commission's $38.7 million judgment claim for monetary sanctions, Life Partners and the Commission elected to settle it in its entirety. *See* Plan, at 7 ("in full and final satisfaction, settlement, release, and discharge of and in exchange for the SEC judgment claim, the SEC shall receive a Creditors' Trust Interest, up to the Allowed amount of its SEC Judgment Claim."). The Commission further "agreed that any distributions in respect of its Creditor's Trust Interest would be reallocated to investors." Plan, at 8. This is so even though its claim held priority over the claims by defrauded investors. ROA.1786; ROA.1728; *see* 11 U.S.C.

§ 510(b) ("a claim … for damages arising from the purchase or sale of such a security… shall be subordinated to all claims or interests); *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 684 (Tex. 2015) (holding life settlement agreements are an "investment contract" and therefore a "security" under the Texas Securities Act).[10]

## I.  The Commission's 2018 Proposed Rulemaking

While considering McPherson's meritorious whistleblower claim, the Commission proposed for public comment several amendments to the predicate definitions of "monetary sanctions" and "related actions." 2018 SEC Release, at 34,708. The release does not mention "bankruptcy," yet many commentators addressed the treatment of generic bankruptcies (*i.e.*, wherein a corporation files a petition and is later restructured in the ordinary course). Even in those ordinary situations, commentators stated that Congress intended those recoveries to be qualifying monetary sanctions and that it would undermine whistleblower participation not to include them. *See, e.g.*, 2020 SEC Release, at *10 (discussing comments, including letter by Harry Markopolos, who exposed the Madoff fraud); *see also* S. Rep. No. 111–176, at 110-11 (relying upon testimony of Mr. Markopolos in support of Dodd-Frank's whistleblower program).

---

[10] With respect to the Creditor's Trust, the Commission claims "there have been no collections or distributions." ROA.1559 (n.1). The Plan shows that the Trustee funded the Creditor's Trust with a $12 million contribution. Plan, at 51 (§ 6.02(b)). More recent filings show additional distributions to beneficiaries of the Trust. The Commission has never explained why these amounts were not "collected" or "distributed" for purposes of calculating am award.

### J.  The Commission's 2020 Final Rules

The Commission issued Final Rules on September 23, 2020. With respect to bankruptcies, the accompanying release states that "our statutory authority does not extend to paying whistleblower awards for recoveries in bankruptcy proceedings or other proceedings that may in some way 'result from' the Commission's enforcement action and the activities of the whistleblower." 2020 SEC Release, at *11. According to the Commission's new-found categorical rule, "[b]ankruptcy proceedings are not brought by either the Commission acting under the securities laws or by one of the designated related-action authorities, and orders to pay money that result from bankruptcy proceedings are not imposed 'in' Commission covered actions or related actions." *Id*.

### K. Five Days After the New Final Rules, Claims Review Staff Issues Its Preliminary Determination

Less than a week later, on September 28, 2020, the OWB's Claims Review Staff ("CRS") issued a preliminary determination in McPherson's case. It recommended a 23% award to McPherson (Claimant #1). ROA.1559. In a footnote, it recounted his "extraordinary and continuing assistance spanning several years." ROA.1559 (n.2). In another footnote, CRS concluded that the bankruptcy proceeding "initiated by a voluntary petition under Chapter 11 filed by [LPHI]" did not qualify under the award provisions. ROA.1559 (n.1).

CRS next concluded that: "the only bankrtupcy [sic] collections that can be counted in an award calculation are those collected in satisfaction of the SEC's judgment in the covered action. To date, there have been no collections or distributions under the SEC's Creditors' Trust Interest." *Id*. CRS calculated McPherson's payment to be $18,224, which McPherson learned through an email to staff. ROA.1730. McPherson timely contested the preliminary determination on February 1, 2021. ROA.1723.

### L. Bankruptcy Proceedings Recover Almost $900 Million for Life Partners Investors

The Plan's liquidating trust continued to make distributions to investors until September 2022 when the PHT's trustee arranged a sale of its "non-cash, policy related, assets." Position Holder Trust's Final Report, *Life Partners Bankr.*, Dkt. No. 4626 at 5 (¶ 17) (filed Nov. 22, 2022). The PHT's Final Report states that "since its inception to present," the PHT has paid over $736,500,000 in distributions to investors—"[a] successful outcome for all involved." *Id*. at 6 (¶ 20). When added to pre-Plan distributions, the investor recoveries approached $900 million. The bankruptcy case closed in December 2022. Order Approving PHT's Final Report, *Life Partners Bankr.*, Dkt. No. 4681 (filed Dec. 16, 2022).

### M. The Final Order Denies McPherson a Meaningful Award

On March 27, 2023, over two years after McPherson contested the preliminary determination, the Commission issued a Final Order. ROA.1785. The Order

determines that McPherson is entitled to an award of 20% of the qualifying monetary sanctions, which it calculated to be an amount "equal to over $21,000." The Order declines to base his award on the Life Partners investor recoveries. Instead of considering the particular facts of McPherson's case, the Final Order adopts the recent rule amendments concluding that Congress had precluded it. ROA.1791. With respect to the Commission's $38.7 million in disgorgement and civil penalties, the Final Order states that it would have only been able to recover a "fraction," and concludes that awards must be based on amounts "actually collected." ROA.1791. Last, the Final Order finds that the Commission's exemptive authority does not extend to requirements set by "[t]he text of the statute," and claims the agency has "never used our discretion under Section 36(a)(1) of the Exchange Act to exempt a whistleblower from a statutory requirement." ROA.1792.

Neither the record previously supplied by the Commission, nor the Final Order itself, provides any basis for understanding the Commission's calculation beyond its single conclusory sentence. ROA.1785.

## SUMMARY OF ARGUMENT

This Court should vacate and remand the agency order under review. The Commission's determinations are based upon a misreading of Dodd-Frank in three important respects.

First, the Final Order incorrectly finds that Congress categorically excluded investor recoveries in bankruptcy from the award provisions—which otherwise qualify as "monetary sanctions," 15 U.S.C. § 78u-6(a)(4)—because they are not imposed in "the action or related action." *Id*. § 78u-6(b)(1)&(2). This conclusion is based upon a misunderstanding of bankruptcy law. Motions seeking appointment of a chapter 11 trustee (for example) are proceedings within the bankruptcy case and fit comfortably within the statutory language "any judicial or administrative action." *Id*. § 78u-6(a)(1),(5) (defining "covered action" and "related action"). These "actions" also have been "brought by" the Commission and/or DOJ, one of the enumerated entities. *Id*.

In addition to conflicting with the statute's text, the agency's position conflicts with its structure mandating awards to eligible whistleblowers even if the Commission pursues an alternative mechanism for its enforcement under the securities laws. The Commission's illogical result here creates *no* incentive for whistleblowers to identify securities fraud in a company entirely based upon a fraud (because invariably it will enter bankruptcy) and a perverse incentive for whistleblowers *not* to identify all the securities fraud in a company with a legitimate business (because that revelation might force it into bankruptcy).

Second, the Commission's position that the $38.7 million judgment has not been "actually collected" in bankruptcy conflicts with the plain language of the

statute, the record, and the Commission's applicable rule. Dodd-Frank is agnostic with respect to how "monetary sanctions" are "collected" or who "collects" them. It only specifies that that they must be "imposed" in the "the action or related action." *Id*. § 78u-6(b)(1)&(2). Here, the district court initially imposed sanctions against Life Partners in the enforcement action and the Commission and the retail investors "collected" them through settlement or distributions in bankruptcy. Alternatively, the Commission "was able to collect" at least some, if not all, of the sanctions, satisfying the plain language of its rule. 17 C.F.R. § 240.21F-5.

Third, the Commission compounds its errors by misunderstanding the scope of its exemptive authority to waive statutory requirements to ensure a fair recovery. 15 U.S.C. § 78mm. The Commission has the power to do so and an agency's failure to exercise the discretion entrusted to it based on its misconception of law must be set aside, if necessary.

Upon remand, the Commission should recalculate McPherson's award based on the $38.7 million civil judgment and, at a minimum, the payments made to Life Partners securities investors in the bankruptcy, applying the whistleblower rules and interpretive positions and policies in place when he filed his claim.

## ARGUMENT

I. **THE LIFE PARTNERS INVESTOR RECOVERIES IN THE BANKRUPTCY PROCEEDINGS QUALIFY AS "MONETARY SANCTIONS" UNDER THE WHISTLEBLOWER-INCENTIVE PROGRAM AWARD PROVISIONS**

The Life Partners investor recoveries in bankruptcy proceedings following the Commission's judgment for violation of the securities laws are "collected" "monetary sanctions" that were "imposed" in "the action or related action" under a plain reading of the statute. 15 U.S.C. § 78u-6(b)(1). The Commission's application of a categorical rule—which is not entitled to deference—that those sanctions *never* qualify under the program's award provisions must be set aside. ROA.1791; 15 U.S.C. § 78u-6(f); 5 U.S.C. § 706(2)(A). Interpreting the statute *de novo*, this Court should instruct the Commission on remand to base McPherson's whistleblower award on the Life Partners investor recoveries.

### A. The Commission Is Not Entitled to Deference

The Commission cannot defend its determination regarding investor recoveries by invoking any deference regime.

#### 1. <u>The Commission is not entitled to *Auer* deference because it did not interpret a rule</u>

Deference under *Auer v. Robbins*, 519 U.S. 452 (1997), does not apply because the agency did not interpret its rules in making its determination. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019). In fact, amended Final Rule 21F-4(e) defining "monetary sanctions," and Final Rule 21F-3(b)(1) and defining "related

action," which, according to the Commission, now categorically exclude investor recoveries in bankruptcy from the whistleblower-incentive program provisions, do not apply to McPherson's case. *See* 2020 SEC Release, at \*46.

### 2. <u>The Commission is not entitled to *Chevron* deference because it exercised no discretion, believing it lacked the authority</u>

The Commission's interpretation is not entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The Commission claims that Congress excluded investor recoveries imposed in bankruptcy proceedings from the whistleblower-incentive program award provisions. Referencing its rulemaking release, the Final Order states:

> As we noted in connection with the adoption of several rule amendments, "*our statutory authority does not extend to* paying whistleblower awards for recoveries in bankruptcy proceedings or other proceedings that may in some way 'result from' the Commission's enforcement action and the activities of the whistleblower."

ROA.1791 (citing 2020 SEC Release, at \*12 (emphasis added)).[11]

Deference is appropriate only when the agency has exercised its own reasoned judgment, or made its own reasonable policy choice where Congress delegated that discretion, not where it believes that it lacks statutory authority or its action is compelled by Congress. *Chevron*, 467 U.S. at 843-44, 845, 865-66; *see also Prill v.*

---

[11] Should this Court have any doubt that the Commission is applying a categorical rule excluding "recoveries in bankruptcy proceedings," it may take judicial notice of the Commission's position on its website. *See* SEC, Frequently Asked Questions: Whistleblower Rule Amendments, Response to #6, available at: <https://www.sec.gov/page/frequently-asked-questions-whistleblower-rule-amendments>.

*NLRB*, 755 F.2d 941, 942 (D.C. Cir. 1985) ("judicial deference is not accorded…

when the [agency] acts pursuant to an erroneous view of law and, as a consequence,

fails to exercise the discretion delegated to it by Congress"); *see also Chevron*, 467

U.S. at 843 n.9 ("The judiciary is the final authority on issues of statutory

construction").[12]

### 3. <u>The Commission is not entitled to *Chevron* deference because its interpretation is wrong</u>

The final reason to decline to afford any deference to the Commission's

interpretation is that the agency got it wrong. *See, e.g.*, *Western Refining Southwest,*

*Inc. v. FERC*, 636 F.3d 719, 727 (5th Cir. 2011) ("[If] the statute's text is

unambiguous, we need not proceed to Step Two of *Chevron*."). As explained next,

the statutory text and structure, informed by Congress's stated purpose, show the

whistleblower-incentive program award provisions extend to the investor recoveries

in this particular case.

### B. Life Partners Investor Recoveries Are "Monetary Sanctions Imposed in the Action or Related Action"

A plain reading of the statute's text shows that the court-ordered payments to

defrauded investors in Life Partners bankruptcy proceedings are  "monetary

sanctions imposed in the action or related actions" that have been "collected." 15

---

[12] To the extent *Chevron* applies, the Supreme Court of the United States granted certiorari in *Loper Bright Enterprises v. Raimondo*, No. 22-451, 143 S. Ct. 2429 (May 1, 2023), to consider whether to overrule or modify *Chevron*. *See also Mexican Gulf Fishing Company v. U.S. Dept. of Commerce*, 60 F.4th 956, 976 (5th Cir. 2023) (Oldman, J., concurring in part).

U.S.C. § 78u–6(a)(1)(4)&(5), (b)(1)(A)&(B). There is nothing in Dodd-Frank that supports the Commission's categorical exclusion. ROA.1791; *see* 2018 SEC Release, at 34705 (whistleblower award does not turn on "the procedural vehicle that the Commission (or the other authority) has selected to pursue an enforcement matter").

Because a correct reading of Dodd-Frank shows that the monies were imposed in qualifying "actions" or "related actions" brought by the Commission and/or DOJ, the Life Partners investor recoveries fall within the whistleblower-incentive program award provisions. *See Cargill v. Garland*, 57 F.4th 447, 458 (5th Cir. 2023) (*en banc*) (a statute's meaning should be determined using traditional statutory-interpretation tools).

### 1. **Life Partners investor recoveries in these bankruptcy proceedings are "monetary sanctions imposed in a … related action" brought by DOJ**

The Life Partners investor payments ordered in the bankruptcy proceedings involving LPHI and LPI (and its subsidiary, LPIF) are "monetary sanctions," 15 U.S.C. § 78u–6(a)(4), that were "imposed in … a related action." 15 U.S.C. § 78u–6(a)(4); *id*. § 78u-6(b)(1). "Related actions" include "any judicial or administrative action brought by" certain enumerated entities" that is "based upon the [whistleblower's] original information" in the cover action "that led to the successful enforcement of the Commission action." 15 U.S.C. § 78u–6(a)(5). DOJ's actions

within the bankruptcy cases, to move to appoint a trustee over LPHI, to request entry of an order approving its appointment of a trustee, and to initiate a new bankruptcy case against LPI, which all were based on McPherson's original information provided to the Commission in the district court action, satisfy each statutory element.

> a. *Life Partners bankruptcy proceedings are judicial or administrative actions brought by a statutorily described entity*

The Life Partners bankruptcy proceedings meet threshold statutory requirement to qualify as "related actions." The text of § 78u-6(a)(5) broadly states that "related actions" are "*any* judicial or administrative action brought by [certain described entities]." *Id*. (emphasis added). DOJ is among the entities whose actions may qualify as "related" for purposes of the whistleblower-incentive program. *Id*. § 78u-6(a)(5), (h)(2)(D)(i)(I).

Under a plain reading of the statute, the LPHI bankruptcy is a "related action" because DOJ moved for the appointment of a trustee in the bankruptcy case, and thereafter filed an application for entry of an order approving the appointment of that trustee. UST Trustee Mot. at 1; UST Trustee App. at 1-2. Bankruptcy cases are comprised of many different proceedings and the U.S. Trustee's motion was a "proceeding" within that case that qualifies as "any judicial or administrative action brought by [DOJ]." 15 U.S.C. § 78u-6(b)(5); *In re U.S. Brass Corp.*, 301 F.3d at 304

n.14 ("[a]nything that occurs within a case is a proceeding") (quotations and citations omitted); UST Trustee Mot. at 2 (¶ 1) (trustee appointment is a proceeding).

The word "action" is not defined in the statute, but the word is often used as a synonym for "[t]he process of doing something" or "conduct." *See* "Action," BLACK'S LAW DICTIONARY (11th ed. 2019); *see Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011) (courts "look first to the word's ordinary meaning"). In this context (*i.e.*, "action brought by," *see* 15 U.S.C. § 78u-6(a)(5)), the meaning of the noun "action" refers some form of legal process initiated to seek a remedy, such as a proceeding, and the verb "to bring" means the initiation of that proceeding. *See id.* (listing numerous uses of the word "action," including as a synonym for a proceeding); "Bring Suit," BLACK'S LAW DICTIONARY (although a somewhat different context, "bring suit" refers to "institute legal proceedings").

The entity that "brought" the "action" is best understood (at the very least) to be the one substantively and procedurally responsible for initiating it. In this case, that entity is DOJ (and the Commission), which initially filed trustee appointment motions within days of each other to address the Company's violations of the securities laws and to begin to recover monies for its defrauded retail investors. *See* UST Trustee Mot. at 1-2, 7-8; SEC Trustee Mot. at 1. DOJ additionally moved the bankruptcy court to approve its appointment of Moran as trustee for the same purpose. UST App. at 1.

The LPI and LPIF bankruptcies (later consolidated with the LPHI proceeding) also satisfy the statutory language as a "related action." After appointment by the U.S. Trustee and court approval, the Commission and DOJ's hand-picked chapter 11 trustee (recommended by McPherson) brought a motion before the bankruptcy court to bring LPI and its subsidiary within its jurisdiction. That would allow the Trustee to address the entities' securities fraud and to recover investor funds because "LPI's business is LPHI's business, as well as the source of its revenues." Trustee LPI Mot. at 4 (¶ 12). That bankruptcy motion, too, thus is a "proceeding" that qualifies as "any judicial or administrative action brought by [DOJ]." 15 U.S. § 78u-6(b)(5); Trustee Mot. at 1 (¶ 1); *In re U.S. Brass Corp.*, 301 F.3d at 304 n.14.

The Commission's preliminary determination states that "the proceeding was not brought by a qualifying entity but rather was initiated by a voluntary petition." ROA.1559 (n.1). The Final Order states that bankruptcy proceedings are not "brought by" either the Commission or one of the designated related-action authorities but it does not explain why. Those approaches misapprehend bankruptcy law principles. They also adopt a cramped reading of the key statutory language—"action brought by," *see* 15 U.S.C. § 78u-6(a)(5)—in contradiction to the Commission's prior positions. SEC Release 34-89963, 2020 WL 5763381 at *8-9, 85 Fed. Reg. 70898 (Nov. 5, 2020); 17 CFR § 240.21F-4(d)(3)(i)&(ii) (concluding certain deferred-prosecution agreements (DPAs), nonprosecution agreements

(NPAs) and similar Commission settlement agreements are qualifying "actions" for purposes of an award).

> ### b. The Life Partners bankruptcy proceedings are "based upon the original information provided by a whistleblower … that led to the successful enforcement of the Commission action"

The Life Partners "related actions" are based upon the same "original information" McPherson provided to the Commission that resulted in the successful enforcement of the "covered action." ROA.1789; 15 U.S.C. § 78u-6(a)(5).

The appointment of a chapter 11 trustee requires a showing of fraud by current management. 11 U.S.C. § 1104(a)(1). McPherson supplied that information to the Commission in the enforcement action. ROA.1789. Both the Commission and the U.S. Trustee next based their respective trustee appointment motions on that information and relied upon it at the lengthy hearings that followed. UST Trustee Mot. at 4-5 (¶ 12); SEC Trustee Mot. at 2-3, 4-6; Order Granting Trustee Mot., at 1. The Trustee also used McPherson's information to pursue LPHI and its subsidiaries. ROA.1478-79 (information used in First Day Report); Trustee LPI Mot. at 5-6 (information used in action against LPI and LPIF).

Both the predicate "covered action" and "related actions" were a "success." 2018 SEC Release, at 34,708 ("relief against wrongdoers is perhaps the essential measure of an action's success."). The Commission succeeded in its Life Partners enforcement objectives, having remedied improper disclosure and fraud-related

violations, secured a $38.7 million judgment, and recovered approximately $1 billion for defrauded investors.

> *c. The Life Partners investor recoveries are "monetary sanctions imposed in the action" that have been "collected"*

The Life Partners investor recoveries are "monetary sanctions" that have been "imposed" and "collected" in the "related actions." 15 U.S.C. § 78u-6(b)(1). When used with respect to "any judicial or administrative action," Congress broadly defined the term "monetary sanctions" to mean "any monies … ordered to be paid." *Id*. § 78u–6(a)(4). Congress specified that those sanctions must be "imposed" in either "the action or related actions." *Id*. § 78u–6(b)(A) & (B). Congress did not define the term "collected;" nor did it specify that the imposed monetary sanctions be "collected" by any particular person, entity or authority, such as the United States.

The Life Partners investor recoveries under the court-ordered bankruptcy reorganization plan in this case fall comfortably within the meanings of "monetary sanction" that have been "imposed" and "collected" to qualify under the award provisions. First, the maturing policy payments that were ordered to be distributed to defrauded securities investors in the Plan are "any monies … ordered to be paid." *Id*. § 78u–6(a)(4)(A); *see* Order Confirming Plan, at 1 ("The following constitutes the ruling of the court …."). Next, those sanctions were "imposed" in the bankruptcy proceedings, which, as explained above, qualify as "the action or related actions" under Dodd-Frank's text and scheme. *Id*. § 78u–6(b)(A)&(B).

Last, the "monetary sanctions" were "collected" by the retail investors themselves. The Commission itself has found that investor recoveries in receiverships in enforcement actions qualify as "monetary sanctions" that have been both "imposed" and "collected" in a "covered action." 2020 SEC Release, at *10 ("a court order approving a receiver's plan to distribute money to injured investors would be treated as a monetary sanction"). The Commission recognizes—including in this very case—that there is little, if any, practical difference between "a Court-appointed Receiver or … a bankruptcy trustee" to protect its enforcement interests and the investors in this case. ROA.1697-98.[13] Just as a court-approved "receiver's plan to distribute money to injured investors" qualifies under the award provisions, so, too, does a court-confirmed bankruptcy reorganization plan to return money to injured investors. Order Confirming Plan, at 6.[14]

---

[13] While there are procedural differences, "receiverships are the historical progenitor of the modern Chapter 11" and "[t]he 1978 Bankruptcy Code incorporated many aspects of the equity receivership and authorized the appointment of a trustee with powers similar to that of a receiver." *See* Kevin Moore, The SEC's Role in American Corporate Reorganization: A Historical Analysis, 2011 ANN. SURVEY OF BANKRUPTCY LAW 6 (2011 ed.); *see also* ROA.1396-97.

[14] This reasoning is instructive; because it post-dates his claim, McPherson does not concede that the Commission's new approach to "monetary sanctions" retroactively applies to his case.

**2.** <u>**Life Partners investor recoveries in these bankruptcy proceedings are "monetary sanctions" imposed in "an action" brought by the Commission**</u>

For many of the same reasons explained above (and by Co-Petitioner Barr),[15] the investor recoveries here were imposed in an "action" brought by the Commission itself. 15 U.S.C. § 78u-6(b)(1) (award based upon "the monetary sanctions imposed in the action or related actions"). In addition to "related actions," whistleblower awards extend to a "covered action," which means "*any* judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000." *Id*. § 78u(6)(a)(1) (emphasis added).

The Commission's motion for an appointment of a trustee (and its leadership role in those and ensuing "proceedings" up to and including the LPI action and court-ordered reorganization plan) satisfy the statute's requirement of "any administrative or judicial action brought by the Commission." *Id*. § 78u-6(a)(1); SEC Trustee Mot., at 1; *see In re U.S. Brass Corp.*, 301 F.3d at 304 n.14 (motion "within a case is a proceeding") (citation and quotation omitted)); *see also Hong v. United States Sec. & Exch. Comm'n*, 41 F.4th 83, 98 (2d Cir. 2022) ("for an action to be 'brought by the Commission,' the SEC must have led that action in some respect").[16]

---

[15] To avoid duplicative briefing, McPherson respectfully adopts and incorporates all arguments made in Barr's brief, including, but not limited to, the Commission's bankruptcy determination.

[16] This reading also is consistent with the Commission's own broad approach of the term "action" for purposes of "determining the collected sanctions on which the awards are based." Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34,300, 34,327 (June 13, 2011); *see* 17 C.F.R. § 240.21F-4(d)(1) ("For purposes of making an award under [Rule 21F-10], the

The "action" also was "under the securities laws" and "result[ed] in monetary sanctions exceeding $1,000,000." 15 U.S.C. § 78u-6(a)(1). This Court has recognized that bankruptcy "proceedings" do not themselves have to arise under the Bankruptcy Code. *See* 28 U.S.C. § 157(b)(1) (proceedings may "aris[e] under title 11 or aris[e] in a case under chapter 11); *see also Matter of Wood*, 825 F.2d 90, 96 (5th Cir. 1987). The meaning of "arising in" proceedings are a "reference to those 'administrative' matters that arise *only* in bankruptcy cases." *Id*. (emphasis added).

Here, the Commission sought the appointment of a trustee to administer the totality of the bankruptcy estate (and particularly to reach LPI's assets) to continue its enforcement objectives "under the securities laws." The Commission's pursuit of Life Partners began in its district court action and only ended when the bankruptcy court confirmed the reorganization plan. The Commission's successful efforts in the actions were based upon a single overarching scheme perpetrated by the Company's leadership and a single enforcement strategy by the Commission to remedy it. In other words, the bankruptcy proceedings merely continued the Commission's enforcement "under the securities law," which the Commission cannot plausibly

Commission will treat as a Commission action two or more administrative or judicial proceedings brought by the Commission if these proceedings arise out of the same nucleus of operative facts."); Whistleblower Program Rules, SEC Release No. 34-83557 n.32 (June 28, 2018) (clarifying that it in certain circumstances it would treat two or more separate cases that arise out of the same nucleus of operative facts as a single "action" for purposes of making an award).

deny it led every step of the way. *See Hong*, 41 F.4th at 99 (observing "'brought by' the SEC calls for some form of leadership by the SEC in the action itself'").

The retail investor's fractional interests, moreover, are "securities" and the resulting recoveries based upon Life Partners' fraudulent conduct—even if accomplished through a reorganization plan—is anchored firmly to the securities laws and the statutory text defining "covered action." *Life Partners, Inc*, 464 S.W.3d at 662. This is particularly true given the district court's recognition that relief in the bankruptcy proceedings would be the same relief as in the enforcement action. ROA.1465.

**3.** **The statute's structure and stated purpose show that Congress intended the whistleblower award in this case to be based upon investor recoveries in bankruptcy**

Congress designed Dodd-Frank to capture a myriad of circumstances under which the Commission "shall" pay a substantial award. *See* 15 U.S.C. § 78u-6(b)(1). It did so by structuring the Act, its definitions and award provisions to sweep broadly. *See, e.g.*, 15 U.S.C. § 78u-6(a)(5) ("monetary sanction" are "any monies"); *id*. § 78u-6(a)(1), (4) (using "any" to define judicial, administrative, covered, and related actions, whether brought by Commission or many other entities).

This was no accident. Congress intended its program to "robust[ly]" incentivize whistleblowers by paying "ample rewards" for successful enforcement efforts and  the "recover[y] [of] money for victims of financial fraud," S. Rep. No.

43

111–176, at 38, 110, 112; *id.* at 112 ("[w]henever" monies that have been collected "are determined to be distributed to the victims of the fraud," a "whistleblower" should be rewarded "at the same time as paying such victims"). Members of Congress recognized that "were it not for the whistleblower's actions, there would have been no discovery of the harm to the investors." *Id.* at 112.

The agency's position conflicts with Dodd-Frank's scheme and stated purpose. Tellingly, the result in this case does not turn on the fact that the agency itself, or another "related" authority, declined to initiate or pursue an enforcement action against Life Partners. Nor does it turn on the fact that the Commission's activities were far removed from "any judicial or administrative action" or the securities laws themselves. 15 U.S.C. § 78u-6(b)(1). Instead, the result turns on the fact that the authorities used a particular procedural mechanism—*i.e.*, actions brought in bankruptcy—to achieve in their securities enforcement objectives. The Commission's result is therefore based upon a misreading of the statute. *See* 2018 SEC Release, at 34705 (meritorious whistleblowers cannot be denied awards "simply because of the procedural vehicle that the Commission (or the other authority) has selected").

There is an additional problem with the Commission's position. Whistleblowers help the Commission successfully enforce the securities laws against two kinds of companies. The first company is based upon a legitimate

business but has some bad actors; the second is based upon a fraud. The former pays the Commission's penalties and disgorgement, either in the action itself or by selling some of its business assets in bankruptcy. In that case, there is a recovery for defrauded investors and an award payment to the whistleblower. But when the entire business is a fraud—such as a company based upon a Ponzi scheme (Madoff) or similar systematic fraud (Life Partners)—it has no legitimate business upon which to rely. In that case, there often is little or no money to pay penalties or disgorgements (because there will be no continuing business to make these payments), and the only way to pay a whistleblower award is to base it upon the investor recoveries. The Commission's contrary position in this case thus creates the perverse incentive—contrary to Dodd-Frank—for whistleblowers *not* to identify securities fraud because they believe that company will wind up in bankruptcy, or to stop assisting the Commission in identifying fraud because it might push a company under investigation into bankruptcy. That cannot be what Congress envisioned.

Finally, a ruling in this case would not establish a bright-line rule that whistleblower awards must always be based upon investor recoveries in bankruptcy. That determination would remain with the Commission after considering the particular facts of each bankruptcy case, including any proceedings and recoveries in them. *See* 2018 SEC Release at 34704 (Commission's objective "to help ensure that an eligible, meritorious whistleblower is appropriately rewarded for his or her

efforts when the Commission or a related-action authority recovers monetary sanctions from wrongdoing that violates the securities laws.").

## II.   THE $38.7 MILLION JUDGMENT IMPOSED BY THE DISTRICT COURT QUALIFIES UNDER THE WHISTLEBLOWER-INCENTIVE PROGRAM AWARD PROVISIONS

The Commission misreads the statute by failing to base McPherson's whistleblower award on the $38.7 million in civil penalties and disgorgement imposed by the district court against Life Partners. ROA.1790-91; Final Judgment, at 2. Both the award provisions and the Commission's applicable rule show that those were "monetary sanctions imposed in the action," which either had been "collected," or, alternatively, the Commission "was able to collect." 15 U.S.C. § 78u-6(b)(1)(A) &(B); 17 C.F.R. § 240.21F-5(b). The Commission's position that these amounts were not "actually collected" conflicts with the statutory text and misunderstands the factual record in this case.

### A. The Commission and Life Partners Investors "Collected" the "Monetary Sanctions" in the Bankruptcy Proceedings

The Commission does not dispute that penalties and disgorgement ordered by the district court were "monetary sanctions imposed in the action." ROA.1786; 15 U.S.C. § 78u-6(b)(A)&(B); Final Judgment, at 2. It declined to count those "monetary sanctions" when calculating McPherson's award on the grounds these "amounts" were never "actually collected." *Compare* ROA.1790-91 (claiming a "whistleblower award is based on the amount actually collected in connection with

the Covered Action"), *with* 15 U.S.C. § 78u-6(b) (basing award on "what has been collected"). In reaching its conclusion, the Commission misreads the statutory text, overlooks the bankruptcy record, and fails to apply its own prior meanings of key terms to this case.

Congress directed the Commission to calculate an award to an eligible whistleblower based upon a "monetary sanction" (in this case, the $38.7 million in civil penalties and disgorgement judgment) if it meets two conditions: first, it has been "imposed in the action or related actions," and second, it "has been collected." 15 U.S.C. § 78u-6(b)(1)(A)&(B). Here, the plain meaning of "collected" unambiguously shows that the "monetary sanctions" were "collected" by the Commission, or the retail investors, or both, in bankruptcy.

The term "collected" is not defined in the statute but is best understood as meaning is "to receive payment for." "Collect." Merriam-Webster Online Dictionary, <https://www.merriam-webster.com/dictionary/collect> (last accessed Oct. 11, 2023); BALLENTINE'S LAW DICTIONARY (3d ed. 2010) (defining ''collect'' as ''to receive payment''). The term "payment," in turn, broadly refers not solely to "amounts" but to: "1. Performance of an obligation by the delivery of money *or some other valuable thing* accepted in partial or full discharge of the obligation. 2. The money or other valuable thing so *delivered in satisfaction of an obligation*." *See* "Payment," BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Dodd-

Frank does not specify who must "collect" the sanctions. Nor did Congress specify that the sanctions had to be "collected" in any particular manner.

Applying a plain reading of the text, the Commission "received payment for" the entirety of the penalties and disgorgement reflected in the judgment—and therefore "collected" the "monetary sanctions"—by agreeing to settle its judgment claim "in full … and in exchange for" a creditor's interest established by the Plan and dismissal of Life Partners' appeal. Plan, at 7; *see id*. at 8 ("[t]he SEC has consented to this treatment in support of the Plan"); ROA.1786 ("[i]n return, the Company dismissed its appeal"). The statute does not require more. Indeed, this accomplished a key purpose of the Bankruptcy Code, which is to permit the debtor "to start afresh free from [pre-bankruptcy] obligations and responsibilities." *Williams v. United States Fid. & Guar. Co.*, 236 U.S. 549, 554-55 (1915).

Nor does the Commission's voluntarily subordination of that claim and agreement to "reallocate" distributions to investors alter the statutory analysis. ROA.1786; *see also* ROA.1490 (arguing "the Commission's decision to forgo collection" does not impact obligation to pay eligible whistleblowers like McPherson) (citation omitted). Whether the Commission's creditor's interest later was funded is irrelevant to the threshold statutory inquiry whether the Commission "collected" the money judgment, which it plainly did, having extinguished LPHI's

responsibility to pay and having received various forms of valuable consideration for it.

Next, the defrauded investors additionally "collected" the "monetary sanctions" under the court-confirmed Plan distributing hundreds of millions of dollars in payments from the maturing life insurance policies. Reallocation by the Commission, Life Partners' largest creditor, *see* SEC Trustee Mot. at 1, and receipt of those distributions to investors is more than sufficient to bring an approximately $40 million judgment within the meaning of "collected" in the statute.

The Commission misreads the statute to require that "amounts" must be "actually collected." ROA.1790-92. That approach is unavailing because those terms do not appear in the statute's text. Had Congress wanted to extend the whistleblower award provisions only to "amounts," for example, "actually deposited" into certain governmental accounts, it certainly knew how to do so. Likewise, excluding recovered monies because they technically were not applied to a "Creditor's Interest," or because the Commission unilaterally declined to accept them (at the whistleblower's expense), is unpersuasive because it conflicts with the Act, elevates form over substance, and, of course, is fundamentally unfair.

Nor is this the case where a judgment-debtor has insufficient assets to satisfy the Commission's judgment and a whistleblower seeks to count the sanctions on the sole basis they have been "imposed." Neither does this approach somehow require

the Commission to speculate in any respect. Instead, it properly bases a whistleblower award when the company satisfies the "imposed" civil judgment. It also vindicates two important principles that a whistleblower should not be denied a recovery based on either (a) improper and potentially vindicative tactics by a debtor, or (b) the Commission's own unilateral actions in bankruptcy, which may have the effect of turning a mandatory program into a permissive one.

### B. The Commission "Was Able to Collect" the $38.7 Million Judgment Under The Applicable Rule When McPherson Applied for an Award

In the event this Court does not conclude the sanctions were "collected" in the bankruptcy proceeding under the plain language of the Act (which it should), the Commission's rule that applies to McPherson's case provides an alternate basis for doing so. That rule provides that his whistleblower award will be based upon "the monetary sanctions that the Commission and the other authorities *are able to collect*." 17 C.F.R. § 240.21F-5(b) (emphasis added). That standard is met here.[17]

Of course, agency rules must be construed according to the traditional principles of statutory interpretation. *See Kisor*, 139 S. Ct. at 2419. The critical language in the rule is the phrase "able to collect." The Commission could have said

---

[17] To be sure, § 78u-6(b)(1) uses the words "has been collected," whereas 17 C.F.R. § 240.21F-5(b) uses the words "are able to collect." To the extent the Commission argues the statutory language is ambiguous, the Commission should be required to follow the plain language of its own unambiguous rule.

"actually collected" if it wanted to consider only actual collections received in determining a whistleblower's award (as it suggests now), but it did not.

The word "able" means "having the means, capacity, or qualifications to do something; having sufficient power; in such a position that a particular action is possible; worthy, qualified, competent, capable." OXFORD ENGLISH DICTIONARY (3d ed. 2009) (reproduced at ROA.1741). Applying this meaning, the Commission was "able to collect" its $38.7 million claim judgment. ROA.1790-91. Had the Commission declined to reallocate and subordinate its interests and structure the Plan to prioritize the defrauded fractional investors, the sheer magnitude of Life Partners' assets would have readily paid the judgment claim.

The Commission's final contention that McPherson's approach would bring "uncertainty, inconsistency, and could delay the processing of award claims" is a red herring. ROA.1791. As a practical matter, few whistleblower cases present these unusual circumstances, *i.e.*, where the Commission arguably elects not to seek actual collection of millions of dollars of sanctions, or otherwise subordinates its claim. Even so, in those instances, the agency should not complain about any additional time or effort where the failure to do so may deprive whistleblowers of the meaningful award to which they are entitled. Any institutional or programmatic

concerns, moreover, are self-inflicted, because delay in the processing of claims, uncertainty, or inconsistency is largely within the hands of the Commission.[18]

## III.  THIS COURT SHOULD CORRECT THE COMMISSION'S MISUNDERSTANDING OF ITS EXEMPTIVE AUTHORITY

In the event this Court does not vacate the Commission's two key determinations—whose effect is to deprive McPherson of a meaningful recovery—this Court should clarify the extent of the Commission's exemptive authority under Section 36 of the Exchange Act and remand on that basis. 15 U.S.C. § 78mm(a)(1) (authorizing agency to unconditionally exempt McPherson from any provision "to the extent that such exemption is necessary or appropriate in the public interest, and is consistent with the protection of investors").

Even though the Commission believed "a higher award amount might otherwise be warranted" in this case, it declined to exercise its discretion because "the amount of the award … was set by statute." ROA.1792. According to the Commission, it "[has] never used our discretion under Section 36(a)(1) of the Exchange Act to exempt a whistleblower from a statutory requirement or to approve

---

[18] The Commission disputes the recoverable sanctions amount, claiming that the $23.7 million civil penalty "would have been disallowed or subordinated," ROA.1790, but it is not correct. Congress generally made debts arising from fraud and securities law violations, non-dischargeable. *See* 11 U.S.C. §§ 523(a)(2), (4), (19); *see In the Matter Of: M. M Winkler & Associates*, 239 F.3d 746, 751 (5th Cir. 2001) (if a debt arises from fraud then the debt is nondischargeable). The Commission's claims (without accompanying legal or factual support) that it would only "have been able to recover a fraction of the disgorgement," ROA.1790-91—which it believes "at best would have been $375,000," ROA.1791 (n.8)—also is incorrect, and, in any event, does not provide a basis to decline to count them either.

an award amount above the statutory limit." ROA.1792; *see also id*. (suggesting the "text of the statute" and "statutory scheme" precludes the exercise of discretion).

The agency's position conflicts with the text of the statute and its prior positions. First, there is no limitation in the general grant of exemptive authority in either § 78u-6 or Section 36(a) that would preclude the Commission from fashioning a meaningful award where it would be "in the public  interest" and "consistent with the protection of investors." 15 U.S.C. 78mm(a)(1).

Second, the Commission *has* exempted whistleblowers from statutory requirements. *Compare* 15 U.S.C. § 78u-6(b)(1) (whistleblowers must "voluntarily provided original information to the Commission") with SEC Order Determining Whistleblower Award Claim, Release No. 72727 (July 31, 2014) (relying upon Section 36(a) to waive the voluntary' requirement based upon "the unique acts of this award claim and to make an award to Claimant"); *see also* SEC Order Determining Whistleblower Award Claims, Release No. 89897, at 8 n.12, 2018 WL 1378788 (Mar. 19, 2018) (Commission may waive substantive requirements to permit an applicant to obtain an award under "unusual factual situations").

## IV.  ALTERNATIVELY, THIS COURT SHOULD REMAND THE ORDER

Alternatively, if necessary, this Court should find the determinations violate the APA and return the case to the Commission with instructions to reconsider McPherson's whistleblower-incentive award: (1) with a correct understanding of (a)

the broad reach of Dodd-Frank's statutory definitions and (b) the scope of its Congressional authority; and (2) based upon the (a) applicable whistleblower rules and (b) interpretative and policy positions language that existed when he filed his claim. *Accord Bass v. SEC*, No. 22-60674. Dkt. No. 33-2 (5th Cir. April 19, 2023) (Unpublished Order).

First, because the Commission believed that Congress compelled its interpretations on the bankruptcy and exemptive authority questions, ROA.1791-92, and did not analyze the statutory text when it declined to count the $38.7 million judgment, the Commission cannot now defend the Final Order on other grounds. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (court only may consider only the reasoning "articulated by the agency itself" and cannot consider *post hoc* rationalizations). The Commission cannot argue that the statute is ambiguous, and its interpretation is permissible, or otherwise explain the facts in McPherson's case, because the agency gave both a wrong and different reason for its decision. *See SEC v. Chenery Corp.* ("*Chenery I*"), 318 U.S. 80, 94 (1943) (agency action that is premised on a misconception of the agency's authority must be reversed and cannot be sustained on new grounds); *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) ("judicial review of agency action

is limited to 'the grounds that the agency invoked when it took the action.'" (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).[19]

Application of this rule helps ensure that agencies are accountable for their decisions. If agencies are entrusted with discretionary power on the grounds that they are more accountable than courts, then judicial review should encourage agencies to take responsibility for their determinations, including accountability for an unpopular policy rather than claiming that the choice was compelled by Congress (or the courts).

Second, the Commission's determination gave impermissible retroactive effect to certain amended Rules and also was arbitrary and capricious. *Handley v. Chapman*, 587 F.3d 273, 283 (5th Cir. 2009) (a regulation is impermissibly retroactive when it would "impair rights a party possessed when he acted"). The Commission here recognized it could not directly apply or otherwise interpret amended rules to resolve the critical bankruptcy question presented by McPherson's case. *See In re Federal Water Service Corp.*, 18 S.E.C. 231 (1945) (new rule has only prospective effect). Instead, the Commission purported to reserve the right in

---

[19] For example, the district court ordered millions in individual civil penalties and reimbursements. ROA.1786. The Final Order does not explain whether and to what extent these amounts were "collected" by the Commission. *See also* n.8 (Commission provided no explanation of Creditor's Trust contributions and distributions).

its earlier rulemaking to "use its adjudicatory authority to apply the same principles to pending award applications." *See* 2020 SEC Release, at 60.

This is improper. The Commission's new-found claim of a "lack of statutory authority"—arrived while considering McPherson's substantial claim—conveniently has allowed the agency to avoid considering McPherson's bankruptcy arguments, or conceding a change in position, or making a difficult policy decision. Failure to consider the facts of a case contravenes long-standing administrative law principles, including the APA's requirement that an agency "has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021); *see SEC v. Chenery Corp.* ("*Chenery II*"), 332 U.S. 194, 201 (1947) ("The absence of a general rule or regulation … did not affect the Commission's duties in relation to the particular proposal before it" and in making any determination, "[the Commission] could do that only in the form of an order, entered after a due consideration of the particular facts …."); *see also* 2020 SEC Release, at 17 n.81 (the Commission will consider the "unique facts and circumstances" "in assessing whether an action brought by another entity qualifies as a related action").

It also is unfair. This Court should set it aside. *See* SEC Whistleblower Program Order, Release No. 84046, at 7 n.16, 2018 WL 4488273 (Sept. 6, 2018) (even where Commission adopts a prior rulemaking's articulation, due process

requires Commission to "carefully consider" claimant's arguments against those interpretations to determine whether any arguments are persuasive).

## CONCLUSION

This Court should vacate the Final Order and remand with instructions to re-calculate McPherson's award based on the $38.7 million civil judgment and the payments made to Life Partners securities investors in bankruptcy. Any calculation should be based upon the agency's interpretive positions and rules in place when McPherson filed his claim.

Respectfully submitted,

/s/ Brian J. Leske
Brian J. Leske
ASHCROFT LAW FIRM LLC
200 State Street, 7th Floor
Boston, MA 02109
Telephone: (617) 573-9400
bleske@ashcroftlawfirm.com

*Counsel for Petitioner*
*John McPherson*

# ADDENDUM: STATUTORY PROVISIONS INVOLVED

15 U.S.C. § 78u–6 - Securities whistleblower incentives and protection

(a) Definitions

In this section the following definitions shall apply:

(1) Covered judicial or administrative action

The term "covered judicial or administrative action" means any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000.

* * *

(4) Monetary sanctions

The term "monetary sanctions", when used with respect to any judicial or administrative action, means—

(A) any monies, including penalties, disgorgement, and interest, ordered to be paid; and

(B) any monies deposited into a disgorgement fund or other fund pursuant to section 308(b) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(b)), as a result of such action or any settlement of such action.

(5) Related action

The term "related action", when used with respect to any judicial or administrative action brought by the Commission under the securities laws, means any judicial or administrative action brought by an entity described in subclauses (I) through (IV) of subsection (h)(2)(D)(i) that is based upon the original information provided by a whistleblower pursuant to subsection (a) that led to the successful enforcement of the Commission action.

* * *

(b) Awards

    (1) In general

        In any covered judicial or administrative action, or related action, the Commission, under regulations prescribed by the Commission and subject to subsection (c), shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to—

        (A) not less than 10 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions; and

        (B) not more than 30 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions.

(c) Determination of amount of award; denial of award

    (1) Determination of amount of award

        (A) Discretion

        The determination of the amount of an award made under subsection (b) shall be in the discretion of the Commission.

        (B) Criteria

            In determining the amount of an award made under subsection (b), the Commission—

            (i) shall take into consideration—

                (I) the significance of the information provided by the whistleblower to the success of the covered judicial or administrative action;

                (II) the degree of assistance provided by the whistleblower and any legal representative of the whistleblower in a covered judicial or administrative action;

59

(III) the programmatic interest of the Commission in deterring violations of the securities laws by making awards to whistleblowers who provide information that lead to the successful enforcement of such laws; and

(IV) such additional relevant factors as the Commission may establish by rule or regulation; and

(ii) shall not take into consideration the balance of the Fund.

\* \* \*

(f) Appeals

Any determination made under this section, including whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission. Any such determination, except the determination of the amount of an award if the award was made in accordance with subsection (b), may be appealed to the appropriate court of appeals of the United States not more than 30 days after the determination is issued by the Commission. The court shall review the determination made by the Commission in accordance with section 706 of title 5.

\* \* \*

(h) Protection of whistleblowers

\* \* \*

(2) Confidentiality

\* \* \*

(D) Availability to government agencies

(i) In general

Without the loss of its status as confidential in the hands of the Commission, all information referred to in subparagraph (A) may, in the discretion of the Commission, when determined by the Commission to be necessary to

accomplish the purposes of this chapter and to protect investors, be made available to—

(I) the Attorney General of the United States;

(II) an appropriate regulatory authority;

(III) a self-regulatory organization;

(IV) a State attorney general in connection with any criminal investigation;

(V) any appropriate State regulatory authority;

(VI) the Public Company Accounting Oversight Board;

(VII) a foreign securities authority; and

(VIII) a foreign law enforcement authority.

## CERTIFICATE OF SERVICE

I certify that on October 13, 2023, the foregoing document was served, via the Court's CM/ECF Document Filing System, upon the following registered CM/ECF users:

Stephen G. Yoder
Megan Barbero
Kristina Guidi
Nicole C. Kelly
Emily True Parise
Emily Pasquinelli
U.S. Securities & Exchange Commission
100 F Street, N.E.
Washington, DC 20549

/s/ Brian J. Leske
Brian J. Leske

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 12,985 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: it has been prepared in a proportionally spaced typeface using Microsoft Word (Version 16.78) in 14-point Times New Roman.

/s/ Brian J. Leske
Brian J. Leske