No. 23-60216

# In the United States Court of Appeals for the Fifth Circuit

---

JOHN M. BARR; JOHN MCPHERSON,
*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

---

On Petition for Review of a Final Order
of the U.S. Securities and Exchange Commission

---

## OPENING BRIEF FOR PETITIONER JOHN M. BARR

---

J. Kevin Edmundson
EDMUNDSON SHELTON WEISS PLLC
600 East Highway 290
Dripping Springs, TX  78620
Tel.:  (512) 720-0782
*kevin@eswpllc.com*

Daniel L. Geyser
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Ste. 2300
Dallas, TX  75201
Tel.:  (303) 382-6219
*daniel.geyser@haynesboone.com*

*Counsel for Petitioner John M. Barr*

No. 23-60216

# In the United States Court of Appeals for the Fifth Circuit

---

JOHN M. BARR; JOHN MCPHERSON,
*Petitioners,*

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

---

On Petition for Review of a Final Order
of the U.S. Securities and Exchange Commission

---

### CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. John M. Barr, petitioner in this case.

   a. Daniel L. Geyser, counsel for Mr. Barr.

   b. Haynes and Boone, LLP, counsel for Mr. Barr.

   c. J. Kevin Edmundson, counsel for Mr. Barr.

      d.  Edmundson Shelton Weiss PLLC, counsel for Mr. Barr.

2.      U.S. Securities and Exchange Commission, respondent in this case.

      a.  Gary Gensler, Chair, SEC.

      b.  Caroline A. Crenshaw, Commissioner, SEC.

      c.  Jaime Lizarraga, Commissioner, SEC.

      d.  Hester M. Peirce, Commissioner, SEC.

      e.  Mark T. Uyeda, Commissioner, SEC.

      f.  Megan Barbero, General Counsel, SEC.

      g.  Michael A. Conley, Solicitor, SEC.

      h.  Stephen G. Yoder, Senior Appellate Counsel, SEC.

      i.  Nicole C. Kelly, Chief, Office of the Whistleblower, SEC.

      j.  Emily M. Pasquinelli, Assistant Director, Office of the Whistleblower, SEC.

      k.  Kristina Guidi, Attorney, Office of the Whistleblower, SEC.

3.      John McPherson, another claimant and petitioner in *Doe* v. *SEC*, No. 23-1121 (D.C. Cir.), which has since been consolidated with this case.

      a.  Brian J. Leske, counsel for petitioner McPherson.

      b.  Michael J. Sullivan, counsel for petitioner McPherson.

      c.  Kimberly P. West, counsel for petitioner McPherson.

d. Ashcroft Sullivan LLC, counsel for petitioner McPherson.

Respectfully submitted.

/s/ *Daniel L. Geyser*
Daniel L. Geyser
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Ste. 2300
Dallas, TX 75201
Tel.: (303) 382-6219
*daniel.geyser@haynesboone.com*

*Counsel for Petitioner John M. Barr*

October 14, 2023

## STATEMENT REGARDING ORAL ARGUMENT

This case presents exceptionally important and recurring legal questions regarding the proper construction of the whistleblower-award provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 922(a), 124 Stat. 1376, codified at 15 U.S.C. 78u-6. These questions arise against the backdrop of the SEC's successful pursuit of a massive securities fraud involving life settlements—a pursuit which ultimately recovered approximately $1 billion for defrauded investors. Notwithstanding that significant recovery, the SEC determined that John Barr's material assistance was worth $5,000—despite tirelessly working to build the government's case and exposing himself and his family to severe retaliation. The SEC reached this decision by misreading the plain text of the operative statute, engaging in arbitrary and irrational decisionmaking, and committing multiple legal errors.

We respectfully submit the Court may benefit from oral argument in light of the importance and complexity of these substantial federal questions.

# TABLE OF CONTENTS

**Page**

Certificate of interested persons ...........................................................i

Statement regarding oral argument ....................................................iv

Table of contents..................................................................................v

Table of authorities...........................................................................vii

Opening brief for petitioner John M. Barr .........................................1

Jurisdictional statement......................................................................1

Statement of the issues ......................................................................2

Statement of the case .........................................................................3

Summary of argument ........................................................................6

Standard of review..............................................................................9

Argument.............................................................................................9

    I.    The SEC misconstrued Section 78u-6, committed multiple legal errors, and failed to apply the correct statutory baseline in calculating Barr's whistleblower award........................9

        A.    The agency misconstrued key provisions of the operative statute ......................................................9

        B.    The agency erred in failing to include the full amount of the district-court judgment as the baseline for the whistleblower award............................................16

        C.    The agency erred in failing to include the full recovery of defrauded investors under the trustee-orchestrated bankruptcy plan.............................23

## TABLE OF CONTENTS
### (continued)

**Page**

II.     Adoption of arguments ....................................................................27

Conclusion....................................................................................................28

Certificate of service..................................................................................29

Certificate of compliance ..........................................................................30

# TABLE OF AUTHORITIES

**Cases:**

*Bowen* v. *Mich. Acad. of Family Physicians*, 476 U.S. 667 (1986) .................2

*Hong* v. *U.S. SEC*, 41 F.4th 83 (2d Cir. 2022)..........................................11, 13, 26

*Kisor* v. *Wilkie*, 139 S. Ct. 2400 (2019) .................................................14

*Liquidating Tr. Comm. of the Del Biaggio Liquidating Tr.* v.
 *Freeman (In re Del Biaggio)*, 834 F.3d 1003 (9th Cir. 2016) ....................22

*Loper Bright Enters.* v. *Raimondo*, No. 22-451
 (pet. granted May 1, 2023) ..................................................................14

*Mach Mining, LLC* v. *EEOC*, 135 S. Ct. 1645 (2015)........................................15

*Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137 (1803) ..........................................13

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc.* v. *State Farm Mut. Auto
 Ins. Co.*, 463 U.S. 29 (1983) ..................................................................23

*Relentless, Inc.* v. *Dep't of Commerce*, No. 22-1219
 (pet. granted Oct. 13, 2023).................................................................14

*Ritzen Grp., Inc.* v. *Jackson Masonry, LLC (In re Jackson
 Masonry, LLC)*, 906 F.3d 494 (6th Cir. 2018) .................................................26

*Russello* v. *United States*, 464 U.S. 16 (1983)...............................................12

*Salinas* v. *United States R.R. Ret. Bd.*, 141 S. Ct. 691 (2021)..........................12

*SEC* v. *Chenery*, 332 U.S. 194 (1947) ........................................................23

*Smith* v. *Berryhill*, 139 S. Ct. 1765 (2019) ...........................................15

**Statutes, regulations, and rule:**

Administrative Procedure Act, 5 U.S.C. 701 *et seq.* .............................15, 16, 27

    5 U.S.C. 706 ..............................................................................16, 27

    5 U.S.C. 706(2)(A) ..................................................................................15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Dodd-Frank Wall Street Reform and Consumer Protection Act,
Pub. L. No. 111-203, § 922(a), 124 Stat. 1376 ...................................................iv

11 U.S.C. 510(b) ...........................................................................................................22

Securities Exchange Act of 1934, 15 U.S.C. 78a *et seq.* ............................*passim*

15 U.S.C. 78u-6 ........................................................................................*passim*

15 U.S.C. 78u-6(a)(1) ....................................................................10, 16, 25

15 U.S.C. 78u-6(a)(4) ....................................................................10, 16, 23

15 U.S.C. 78u-6(a)(4)(A) ....................................................................10, 23

15 U.S.C. 78u-6(a)(5) ...............................................................10, 11, 24

15 U.S.C. 78u-6(b) ...................................................................................*passim*

15 U.S.C. 78u-6(b)(1) .............................................................................*passim*

15 U.S.C. 78u-6(b)(2) .......................................................................10, 14

15 U.S.C. 78u-6(f) ...................................................................1, 14, 16

15 U.S.C. 78u-6(g) ...................................................................................10

15 U.S.C. 78u-6(g)(3)(A)(i) .....................................................................11

15 U.S.C. 78u-6(g)(3)(B) ...........................................................................11

15 U.S.C. 78u-6(h)(2)(D)(i)(I)-(IV) .........................................................11

17 C.F.R. 240.21F-13 .........................................................................................1

17 C.F.R. 240.21F-5(b) ....................................................................................20

Fed. R. App. P. 28(i) ........................................................................................3, 9, 27

**Miscellaneous:**

83 Fed. Reg. 34,705 (July 20, 2018) ............................................................27

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

85 Fed. Reg. 70,898 (Nov. 5, 2020) .................................................................9, 13

S. Rep. No. 111-176 (2010) ......................................................................................9

S. Rep. No. 79-752 (1945) ........................................................................................2

No. 23-60216

# In the United States Court of Appeals for the Fifth Circuit

JOHN M. BARR; JOHN MCPHERSON,
*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

On Petition for Review of a Final Order
of the U.S. Securities and Exchange Commission

## OPENING BRIEF FOR PETITIONER JOHN M. BARR

### JURISDICTIONAL STATEMENT

The SEC had jurisdiction to issue its final order under 15 U.S.C. 78u-6(b), and this Court has jurisdiction to review the SEC's decision under 15 U.S.C. 78u-6(f) and 17 C.F.R. 240.21F-13. Barr filed a timely petition for review on April 24, 2023, which was within 30 days of the SEC's decision (entered

on March 27, 2023). Venue is proper in this Court because Barr resides in this circuit.[1]

## STATEMENT OF THE ISSUES

1.  Whether the SEC erred in failing to include the full amount of a district-court judgment as the baseline for the whistleblower award—even though the SEC reallocated the "monies * * * ordered" to defrauded investors, those investors did indeed collect the funds, the SEC received a legal interest in a trust in exchange for its claim, and the SEC was in fact "able to collect" if it so wished.

2.  Whether the SEC erred in failing to include the full recovery of defrauded investors under a trustee-orchestrated bankruptcy plan—even though the "monies" were ordered in an action run by a trustee appointed by the U.S. Trustee (operating under the Attorney General), and the SEC itself

---

[1] As petitioner McPherson separately established (Opening Br. 6-7), Congress did not cut off judicial review over any of the issues presented in either petition, which is unsurprising: "'Very rarely do statutes withhold judicial review,'" and "'[i]t has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of the authority granted or to the objectives specified.'" *Bowen* v. *Mich. Acad. of Family Physicians*, 476 U.S. 667, 671 (1986) (quoting S. Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)).

initiated a successful proceeding within the bankruptcy case to appoint that trustee.

## STATEMENT OF THE CASE

1. McPherson's opening brief recounts the background of Life Partners' sweeping fraud, the SEC's enforcement efforts, and the procedural history behind the SEC's decision. See Opening Br. 15-28; see also Fed. R. App. P. 28(i) (hereby incorporating McPherson's discussion). As McPherson explained, the SEC targeted Life Partners for securities violations and obtained substantial relief in district court; it sought a receiver only to have Life Partners declare bankruptcy, with the district court instructing the SEC to seek and obtain identical relief in bankruptcy court; SEC accordingly sought the appointment of a trustee, justified that request by citing Life Partners' ongoing securities misconduct, relitigated the case it had just tried in the enforcement action, and ultimately succeeded in having a trustee appointed (by the U.S. Trustee).

This set the stage for one of the most successful enforcement actions in history—with defrauded investors set to recover $1 billion through a confirmed bankruptcy plan. The trustee initiated new bankruptcy proceedings involving Life Partners' subsidiaries, and justified the effort by outlining the

organization's fraudulent activity. As part of the confirmed plan, the SEC voluntarily subordinated its $38.7 million claim to reallocate funds to injured investors, and accepted in exchange a legal interest in a creditors' trust. The SEC's role in having the trustee appointed was instrumental in shaping the course (and success) of the bankruptcy proceedings.

2. While Barr will not repeat the full history here, he will briefly highlight his critical role in the SEC's efforts to protect investors and secure their recovery. Suffice it to say that Barr provided significant assistance on multiple levels. ROA.1775 (noting Barr "significantly contributed to the success of the Covered Action"). He devoted countless hours to tracking down evidence, secretly recording Life Partners' officers, advising the SEC's trial team on strategy and tactics, identifying witnesses for the team, and ultimately testifying in bankruptcy court—as a key witness in having a trustee appointed. See, *e.g.*, ROA.1761-1762 ("Mr. Barr testified to great effect in LPHI's bankruptcy proceedings, and his testimony advanced the Commission's effort in seeking the appointment of a trustee."); ROA.1765 (outlining the critical consequences and benefits of the relief Barr's efforts helped the SEC secure). His activity subjected him to retaliation by Life Partners' officers, who targeted him for helping the government. ROA.1582.

Yet when it came time to seek a whistleblower award, the SEC initially denied his application—on the ground that he failed to provide any material information. ROA.1549, ROA.1554. This was based in part on a declaration by a member of the SEC trial team, who inexplicably failed to recount Barr's critical involvement. When Barr objected to the preliminary determination (ROA.1568-1585), the same SEC member submitted further declarations—this time apparently recalling Barr's material contributions. Barr thus became one of the few whistleblowers under the program to successfully seek reconsideration of an initial denial. ROA.1760-1765.

But the success was short lived. Despite acknowledging his significant role in securing relief in district court and the appointment of a bankruptcy trustee (ROA.1761), the SEC deemed his contribution worthy of a 5% share (ROA.1766)—by excluding his bankruptcy participation and misapplying the controlling statutory framework to drastically limit the amounts credited for an award. ROA.1762-1763 (Barr's actions were "extremely helpful in the receivership effort and subsequent bankruptcy proceedings"); ROA.1773.

Barr now seeks judicial review to correct the SEC's profound misreading of the operative statute.

## SUMMARY OF ARGUMENT

The SEC issued a decision contrary to law by misconstruing multiple provisions of the operative statute, and refusing to apply the correct legal baseline in a rational and non-arbitrary way. Its decision should be set aside, and the Court should remand to the agency to recalculate Barr's appropriate award under the proper legal framework.

A. Section 78u-6 details clear legal authority for issuing whistleblower awards. It requires whistleblowers to materially participate in a qualifying action; that action must produce a "monetary sanction"—meaning "monies" must be ordered; and the SEC is instructed it "shall" pay when those conditions are met, setting the award as a percentage of what is "collected" of the "monetary sanctions" "imposed in the action." 15 U.S.C. 78u-6(b)(1).

According to its plain text, it thus makes no difference *who* collects the owed funds or *where* those funds are collected (in the covered action or elsewhere). So long as someone collects funds imposed in the qualifying action, the SEC is required to award whistleblowers a percentage of the collected amounts.

In setting out this legal framework, Congress did not leave any room to defer to the agency's statutory construction of the operative provisions. The

provisions at issue here are unambiguous—there are no gaps to fill under *Chevron* (should *Chevron* still apply). And while Congress expressly granted the SEC discretion to make certain determinations, those determinations were cabined by the *legal structure of the statute*. The SEC thus had to operate within the bounds set by Congress; it had no license to rewrite Congress's work.

B. The agency initially erred in failing to include the $38.7 million judgment from the enforcement action in setting the baseline award amount. That amount was collected in the bankruptcy case—just not by the SEC. The SEC voluntarily subordinated its claim, redirecting any owed funds to defrauded investors. Because those investors did indeed collect funds, the statutory requirements were met.

The SEC also neglected to recognize that it received legal consideration for its claim—by exchanging its right to a direct monetary outlay for an interest in a creditor's trust. Whatever the value of that trust, the SEC thus did "collect" on its claim—and there is nothing in the statute that refuses to accept non-cash consideration when deciding whether any "collect[ion]" has occurred.

Finally, the SEC failed to faithfully apply its own regulation, which asks whether the agency is "able to collect" the monetary sanction. On its face, that

means the SEC was required to issue an award so long as it was *capable* of collecting on the judgment. And it was the SEC's voluntary decision to let harmed investors go first—rather than the inability to collect on its claim—that explains the SEC's failure to obtain a monetary payment.

C. The agency further erred in refusing to credit the full amounts distributed in the bankruptcy case—where harmed investors recovered $1 billion under the confirmed bankruptcy plan.

First, the bankruptcy proceedings were a qualifying "related" action. Per the SEC's request, the court instructed the U.S. Trustee to appoint a Chapter 11 trustee. That trustee then obtained control over the debtor's subsidiaries, and initiated bankruptcy proceedings on their behalf that led to the investor recoveries. Because the U.S. Trustee operates under the Attorney General, the action falls squarely within the statutory requirement for "related" actions—and the SEC failed to explain why the amounts recovered in that trustee-led action did not satisfy the statute.

Second, at a minimum, the SEC initiated its own "covered" proceeding within the bankruptcy case by having the trustee appointed. That action ultimately "result[ed]" in the judicial protection and recovery of $1 billion for defrauded investors—precisely the relief the SEC had originally sought in its

8

own enforcement action. There is no reason the change in scenery should affect the legal result: Barr was entitled to a share of the monies recovered in that qualifying proceeding.

## STANDARD OF REVIEW

Barr incorporates the standard of review correctly set out in McPherson's brief (at 7-8). Fed. R. App. P. 28(i).

## ARGUMENT

### I. THE SEC MISCONSTRUED SECTION 78u-6, COMMITTED MULTIPLE LEGAL ERRORS, AND FAILED TO APPLY THE CORRECT STATUTORY BASELINE IN CALCULATING BARR'S WHISTLEBLOWER AWARD

#### A. The Agency Misconstrued Key Provisions Of The Operative Statute

The whistleblower statute was designed to reward individuals who invest significant time and assume serious personal risk to enforce federal securities laws against wrongdoers. See, *e.g.*, *Whistleblower Program Rules*, 85 Fed. Reg. 70,898, 70,898 (Nov. 5, 2020). In enacting this provision, Congress set out to create clear and fair incentives to encourage whistleblowing activity. *E.g.*, S. Rep. No. 111-176, at 110-111 (2010). The SEC's statutory interpretation flouts the statute's plain text and undermines Congress's objectives.

1. The statutory requirements are straightforward. As relevant here, the whistleblower must participate in a qualifying "covered action" or "related action" (15 U.S.C. 78u-6(a)(1), (5)); that action must produce a "monetary sanction," which is broadly defined as "any monies * * * ordered to be paid" (15 U.S.C. 78u-6(a)(4)(A)); and Congress directed the Commission "shall" pay an award when those conditions are met, specifying the amount as a percentage of what is "collected" of the "monetary sanctions" "imposed in the action or related actions" (15 U.S.C. 78u-6(b)(1)).[2]

In further defining those terms, Congress often spoke broadly, repeatedly using inclusive language (*e.g.*, "any monies"). It declared that "covered" actions include "*any* judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000." 15 U.S.C. 78u-6(a)(1) (emphasis added). And it specified that "related" actions include "*any* judicial or administrative action" brought by an enumerated list of entities—"the Attorney General of the United States"; "an appropriate regulatory authority"; "a self-regulatory organization"; or "a

---

[2] Awards are paid out of a designated government fund (15 U.S.C. 78u-6(b)(2), (g)), which ensures that whistleblower awards do not detract or reduce the recovery of anyone harmed by a defendant's violations.

State attorney general in connection with any criminal investigation." 15 U.S.C. 78u-6(a)(5), (h)(2)(D)(i)(I)-(IV) (emphasis added). The SEC itself has recognized that qualifying "actions" sweep beyond formal or freestanding proceedings, which is consistent with the term's common meaning—"'[t]he taking of legal steps to establish a claim or obtain a judicial remedy.'" *Hong* v. *U.S. SEC*, 41 F.4th 83, 95 (2d Cir. 2022) (quoting *Oxford English Dictionary*); see also *ibid.* ("'action' * * * refers to some form of legal process initiated to seek a remedy").

The statutory framework is not hard to understand, and the upshot is critical for this case: Barr must simply show that "any monies" were "imposed" in a qualifying "action," and those monies were "collected." By its plain text, Congress did not say *who* must "collect[]" those funds—the language is framed in the passive voice ("has been collected"); this ensures that certain "monies" (think restitution or disgorgement) can be returned to injured parties, rather than pocketed by the government itself.[3]

---

[3] Congress separately imposed *other* requirements in the statute where the Commission itself was required to collect. See, *e.g.*, 15 U.S.C. 78u-6(g)(3)(A)(i) ("any monetary sanction *collected by the Commission*") (emphasis added); 15 U.S.C. 78u-6(g)(3)(B) (same). But it conspicuously omitted that type of language in the critical subsection authorizing mandatory whistleblower awards.

[Footnote continued on next page]

Also by its plain text, while Congress required monetary sanctions be "imposed in the action or related action" (15 U.S.C. 78u-6(b)(1)), it did not say that the *collection itself* must occur in that same action. It restricted the condition to where the sanction was *imposed*, but not where it was "collected"—the collection could occur anywhere (in the same action, a different action, or elsewhere entirely). If Congress wished to say amounts collected *in the action*, it assuredly knew how to do it.

In unambiguous language, the statute accordingly does not say *who* must "collect[]" or *where* funds must be collected. If "any monies" ordered in the qualifying action "ha[ve] been collected," the whistleblower is entitled to an award—and a percentage of those "amount[s]." 15 U.S.C. 78u-6(b)(1). Yet as explained below, in confronting this plain text, the agency failed even to ask the right questions. It did not acknowledge that where money is collected is irrelevant—it instead adopted a categorical (and atextual) prohibition on any recoveries in "bankruptcy" cases (ROA.1791). And it likewise did not acknowledge that who collects the money is irrelevant—it instead insisted that

---

"'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Salinas* v. *United States R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021); *Russello* v. *United States*, 464 U.S. 16, 23 (1983).

because the SEC itself did not collect funds allocated to its bankruptcy claim, the full collection by defrauded investors did not count (ROA.1790-1791).

The only relevant question (per the plain statutory text) ought to have been whether the money was imposed in a qualifying action, and whether that money was collected by someone. Had the SEC simply read the statute to mean what it says, it would have reached a different outcome.

2. In response, the SEC cannot justify its statutory (mis)construction by claiming its interpretation is entitled to deference. This fails on every level.

First, the SEC cannot properly claim *Chevron* deference in this context. Contra *Hong*, 41 F.4th at 93. Unlike other settings, the questions here turn on straightforward questions of statutory construction. The operative provisions are not ambiguous, and there are no gaps for the agency to fill. Indeed, the agency itself confirmed it was not exercising discretion—it declared its hands tied by the statutory text, which it demonstrably misread. See, *e.g.*, 85 Fed. Reg. 70,904 ("[w]ith respect to comments relating to bankruptcy proceedings, our statutory authority does not extend to paying whistleblower awards for recoveries in bankruptcy proceedings").

Contrary to the SEC's position, it is the role of Article III courts to "say[] what the law is." *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

The judiciary is not bound to defer to an administrative agency's interpretation of a federal statute. See, *e.g.*, *Kisor* v. *Wilkie*, 139 S. Ct. 2400, 2432 (2019) (Gorsuch, J., concurring in the judgment) ("[d]etermining the meaning of a statute or regulation * * * presents a classic legal question"). If the SEC wishes to prevail here, it must convince this Court that its statutory reading is actually correct.[4]

Second, nor does Section 78u-6 independently confer any discretion to define the operative statutory terms. To be sure, Congress granted the SEC limited discretion in defined areas—such as determining "the amount of an award made under subsection (b)" (which requires balancing certain factors), and other "determination[s] made under this section." 15 U.S.C. 78u-6(b)(2), (f). But those charges do *not* include the right to unilaterally define the operative text, a task traditionally reserved to Article III courts. The agency is merely empowered to exercise judgment *within legal bounds*.

---

[4] In any event, Barr respectfully submits that *Chevron* (if it indeed applies) was incorrectly decided, a question now pending before the Supreme Court. See *Relentless, Inc.* v. *Dep't of Commerce*, No. 22-1219 (pet. granted Oct. 13, 2023); *Loper Bright Enters.* v. *Raimondo*, No. 22-451 (pet. granted May 1, 2023). Barr reserves his right to challenge *Chevron*, if necessary, upon further review.

In short, the SEC has discretion to make determinations "under this section"—but its powers are cabined *by that section*. That is not a boundless delegation, and Congress nowhere conferred an authority to rewrite the text or redefine the statutory framework. See, *e.g.*, *Smith* v. *Berryhill*, 139 S. Ct. 1765, 1777 (2019) (without Article III review, an agency would become "the unreviewable arbiter" of whether it had complied with limits on its own power); *Mach Mining, LLC* v. *EEOC*, 135 S. Ct. 1645, 1652 (2015) (refusing to permit an agency's "compliance with the law" to "rest in the [agency's] hands alone").

3. At bottom, the statute provides an unambiguous legal framework setting out the mandatory requirements to qualify for a whistleblower award. If those requirements are met, the agency "shall" issue an award within a specified range. While Congress granted the SEC discretion to determine awards within that range, it did not grant the agency leeway to displace this Court's ultimate role in saying what the law is. The agency is required to accept the statutory parameters and rules as written, and then exercise discretion within that binding statutory framework—just as Congress intended.

As explained below, the SEC profoundly failed in that task here. Because its decision was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law" (5 U.S.C. 706(2)(A)), this Court should set

it aside and remand for a new award calculation under the proper legal framework. See 15 U.S.C. 78u-6(f) (authorizing judicial review under 5 U.S.C. 706).

## B. The Agency Erred In Failing To Include The Full Amount Of The District-Court Judgment As The Baseline For The Whistleblower Award

In its district-court enforcement action, the SEC obtained a final judgment imposing a quintessential "monetary sanction[]" (15 U.S.C. 78u-6(a)(4)) of $38.7 million. For multiple reasons, that full total should have been included as the baseline "aggregate amount" for determining Barr's award. 15 U.S.C. 78u-6(b)(1).

1. a. The monetary sanctions imposed in the district-court action were "collected" in the bankruptcy proceedings, qualifying those amounts for an award.

As established above (see Part A), this follows from a straightforward application of the statute. The SEC initiated its enforcement action under the securities laws, an obvious "covered" action (15 U.S.C. 78u-6(a)(1)); it secured a final judgment "order[ing]" the payment of "any monies, including penalties, disgorgement, and interest," an indisputable "monetary sanction" (15 U.S.C. 78u-6(a)(4)); and the SEC later "reallocated" its rights, voluntarily, so those amounts would be "collected" by defrauded investors (Bankr. Doc. No. 3427 at

16

7-8 (ROA.1637); ROA.1728 (so explaining))—and the designated funds were indeed "collected" (15 U.S.C. 78u-6(b)(1)).

As again established above, the statute requires the collection of "monies" imposed in the covered action; it does not say *who* must collect those funds, and it does not say *where* those funds may be collected. The fact that the SEC delegated its collection rights to "defrauded investors" thus makes no difference (*e.g.*, ROA.1786)—the monies were still collected. And the fact that the collection occurred in the related bankruptcy case is likewise irrelevant—the statute dictates that the "monetary sanctions" must be "imposed" in the covered action, but it says nothing about where they may be collected.

The SEC's voluntary subordination of its claim permitted others (by design) to recover the funds otherwise allocated to the SEC's claim. That decision effectively designated the defrauded investors as the proper recipients of the funds—and when those recipients collected those funds, the statutory requirements were satisfied.

b. In its decision, the SEC suggests that bankruptcy cases cannot yield any qualifying recoveries, which (apparently) categorically precludes counting

17

the amounts collected via the agreed treatment of the SEC's claim. ROA.1791.[5]

But if the SEC truly means what it says in adopting a categorical prohibition, its reading is assuredly wrong. Does the SEC genuinely mean, for example, that a penalty imposed in an enforcement action and *collected by the SEC* via a bankruptcy plan is off-limits? Does it truly believe that a monetary judgment ordered via an adversary proceeding (necessarily conducted during the bankruptcy case) would likewise be off-limits—even if that action mirrors precisely, in every respect, the exact enforcement action that would be conducted in district court? There is not one whit of textual support for the SEC's mistaken view that sanctions imposed and funds collected in bankruptcy cases are somehow exempt from Section 78u-6's otherwise inclusive language.

In the end, the factual record readily satisfies the statutory requirements. The SEC voluntarily reallocated owed funds to injured investors. Those "monies" do not have to be collected in the enforcement action; they could be collected anywhere, and the bankruptcy proceeding will surely do. The SEC designated investors to receive the cash; the SEC voluntarily

---

[5] The SEC also offered separate reasons that (debatably) address this argument. Those separate reasons are addressed immediately below.

subordinated its claim knowing the amounts would be allocated to those investors; and those investors did indeed collect the cash. The SEC committed legal errors in misreading the statute to block recovery, and it acted arbitrarily, capriciously, and contrary to law in reading the record not to map precisely onto the (correct) legal standard.

2. Aside from the investors' collection, the SEC further overlooks that it did indeed collect on its claim—it received a tangible interest in the creditors' trust in full exchange for its direct right to a monetary recovery. See Bankr. Doc. 3427, at 7-8 (ROA.1637) (explaining the SEC obtained this legal interest "[i]n full and final satisfaction, settlement, release, and discharge of and in exchange for the SEC Judgment Claim").

The SEC's obtainment of that interest itself qualifies as "collect[ing]" on its claim. Whether the *value* of that interest ultimately equals the monetary value of the judgment is besides the point. For centuries, the law recognizes consideration in all various forms, and the SEC received consideration for its claim as part of the confirmed bankruptcy plan. That, again, constitutes full collection—even putting aside the monies actually collected by defrauded investors.

3. a. In any event, even if those monies were not in fact "collected," the SEC was still "*able* to collect" them—which is all the SEC's own operative regulation requires: "The amount will be at least 10 percent and no more than 30 percent of the monetary sanctions that the Commission and the other authorities are *able to collect*." 17 C.F.R. 240.21F-5(b) (emphasis added). The SEC cannot ignore the plain language of its own regulations, and the regulation's text is unmistakable—it says that actual collection is not required if the agency is "able to collect" the funds.

That direct phrase means exactly what it says: the plain and ordinary meaning of "able to collect" is *capable* of being collected—"having the means, capacity, or qualifications to do something; having sufficient power; in such a position that a particular action is possible." ROA.1741 (*Oxford English Dictionary*). The SEC could have said that only collection itself, full stop, qualified for an award. But it elected to promulgate governing rules that require payouts when the agency *could* collect—a principle that advances Congress's statutory objective (encouraging whistleblowers to come forward) and that is easy to administer—as it is the unusual case where it is not apparent whether collection is possible.

The fact that the SEC voluntarily subordinated its claim—and agreed to reallocate payments to defrauded investors—does not change the fact that the wrongdoers had amassed a billion-dollar asset pool that easily would have satisfied the SEC's full "monetary sanction" from the district-court case. That, again, easily checks off each statutory box justifying a full award—and one based on the proper baseline of at least $38.7 million.

b. The SEC rejected this argument below in a sparse discussion offered without any concrete substantiation. ROA.1772-1773. According to the SEC, its claim was effectively worthless because it would have been "disallowed" (for unknown reasons) and "subordinated" (also for unknown reasons) anyway. ROA.1772. This is mystifying. The agency's claim was rooted in a final judgment in a case that had already made one roundtrip to this Court. ROA.1768 (describing the enforcement action's history). The basis of its claim was unassailable—indeed, the same fraud and misconduct was identified by the appointed trustee. It is puzzling on what ground the SEC believes this penalty would have been set aside—which is likely why the SEC was prepared to defend the judgment on appeal rather than admit it was somehow invalid or unenforceable.

Moreover, the agency's contention that its claim would be subordinated (for unspecified reasons) is likewise baseless. The Bankruptcy Code does have a clear subordination provision—and it specifies that wronged investors (even those wronged by fraud) collect *last in line*. 11 U.S.C. 510(b) ("a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor," or "for damages arising from the purchase or sale of such a security," "shall be subordinated to all claims or interests that are senior to or equal the claim or interest"). That is the simple risk that investors assume when contributing equity to an enterprise: they are entitled to the upside benefits if the entity performs, but they accept the downside risks if the entity fails—and that means other creditors collect first. See, *e.g.*, *Liquidating Tr. Comm. of the Del Biaggio Liquidating Tr.* v. *Freeman (In re Del Biaggio)*, 834 F.3d 1003, 1010 (9th Cir. 2016) (describing "the dissimilar risk and return expectations of shareholders and creditors"). There is every reason to think that the investors here would be paid after the SEC, which likely explains why the plan itself described the SEC's priority placement as *voluntary*—not as a mandatory downgrade under some (unknown) Code provision.

If the SEC had a reasoned basis for believing its claim was worthless and would be paid last, it had every opportunity to specify its rationale. But it

is too late now for the SEC to conjure up new post-hoc justifications supporting its decision. *E.g.*, *SEC* v. *Chenery*, 332 U.S. 194, 196 (1947) (reviewing courts must "judge the propriety of [agency] action solely by the grounds invoked by the agency"); accord *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.* v. *State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983) ("an agency's action must be upheld, if at all, on the basis articulated by the agency itself"). The APA requires agencies to act rationally and consistent with the law—a bald assertion that its claim would somehow go last fails to satisfy that fundamental obligation of responsible agency decision-making.

### C. The Agency Erred In Failing To Include The Full Recovery Of Defrauded Investors Under The Trustee-Orchestrated Bankruptcy Plan

1. Even more fundamentally, the SEC further erred in refusing to include the full amounts distributed under the confirmed plan—which were "monies * * * ordered to be paid" in a qualifying "related" action. 15 U.S.C. 78u-6(a)(4)(A), (5), (b)(1).

In granting the SEC's motion to appoint a trustee, the United States Trustee appointed a Chapter 11 trustee (Bankr. Doc. 186 at 1-2), who then initiated the full bankruptcy proceedings—where the total "monies" were both imposed and collected. The United States Trustee operates within the U.S.

Department of Justice, which acts under the Attorney General—an enumerated "entity" capable of bringing "covered" actions under the statute. 15 U.S.C. 78u-6(a)(5). The trustee conducted the bankruptcy proceeding; he sought and obtained authority to take control of the debtor's subsidiaries, including the key subsidiary (LPI) where the relevant assets were held. Bankr. Doc. 240. He initiated the bankruptcy case for those subsidiaries, recognized the rampant fraud and misconduct infecting all the debtors, and endorsed a bankruptcy plan to return funds to the "defrauded investors." ROA.1768.

That plan was approved by the court, and it required "monies" paid to the victims, who did indeed ultimately collect those funds—amounting for approximately $1 billion.

Every statutory requirement is thus met for a qualifying "related" action: The bankruptcy case was brought by the representative appointed by the U.S. Trustee (who serves under the Attorney General); that trustee initiated the bankruptcy proceedings involving the relevant subsidiaries; the trustee secured a confirmed plan ordering payments to defrauded investors; and those defrauded investors have since collected substantial sums—reflecting "monies" imposed in the qualifying action.

The SEC failed to adequately explain why those collections should not count—aside from its view that the initial bankruptcy was filed by a debtor, not an appointed trustee. ROA.1773. That meager explanation cannot excuse including the full monies collected when the statutory criteria are otherwise met.

2. At a minimum, the SEC initiated its own "covered" proceeding within the bankruptcy case to have the trustee appointed—and the investors ultimately collected as a direct "result[]" of that judicial action. 15 U.S.C. 78u-6(a)(1).

In granting the SEC's motion to appoint a trustee, the SEC effectively converted the bankruptcy proceeding into the same kind of receivership it sought in the earlier enforcement proceedings. More specifically: the SEC sought the same relief in bankruptcy court that it had just sought in district court—and sought that relief at the district court's direction (*e.g.*, D. Ct. Doc. 365); the SEC confirmed it was "relitigating" that same case; it sought the appointment of the same person to perform the same tasks and achieve the same results—protecting the public from Life Partners' ongoing securities

violations;[6] it justified the request by reference to those same securities violations; and it ultimately accomplished precisely what it set out to achieve—just as the district court (in the enforcement action) confirmed when instructing the SEC to go to bankruptcy court and seek that same relief. *E.g.*, D. Ct. Doc. 363 at 35-36.

While the SEC did not "file" the voluntary bankruptcy, bankruptcy actions are merely an umbrella for a series of "case[s] within a case." *Ritzen Grp., Inc.* v. *Jackson Masonry, LLC (In re Jackson Masonry, LLC)*, 906 F.3d 494, 498 (6th Cir. 2018) (Thapar, J.). As established above, a qualifying "action" is not limited to freestanding judicial cases—they include embedded "proceedings" seeking judicial relief. *E.g.*, *Hong*, 41 F.4th at 95-96. And there is no doubt this proceeding qualified: the SEC initiated the proceeding with a formal motion; the court entertained briefing, hearings, witnesses, testimony, argument, and a trial; and the court concluded with formal findings and conclusions, including the appointment order. That judicial proceeding then set the course for the entire bankruptcy—including bringing in the subsidiaries and resolving the defrauded investors' claims with a plan that paid out $1 billion.

---

[6] See D. Ct. Doc. 353 at 2 n.1 (SEC was acting "to protect the interests of more than 30,000 investors").

As the SEC itself has acknowledged, a whistleblower's recovery should not turn on the technicalities of where or how the SEC pursues relief: "Congress did not intend for meritorious whistleblowers to be denied awards simply because of the procedural vehicle that the Commission (or the other authority) has selected to pursue an enforcement matter." 83 Fed. Reg. 34,705 (July 20, 2018). That acknowledgement describes this situation exactly: this was a trustee taking over a company to protect defrauded investors because of securities violations; and the trustee accomplished the same results that a receiver would have obtained in the direct enforcement action.

The SEC has not identified any principled basis for declining an award based on the collections here when it would presumably authorize precisely such an award had the identical steps been taken in the enforcement case—simply with a different label slapped on the officer in charge of the proceeding (receiver versus trustee). The agency's action flunks the APA standards for rational and non-arbitrary decisionmaking (5 U.S.C. 706), and the decision accordingly should be set aside.

## II.    ADOPTION OF ARGUMENTS

Barr hereby adopts the substantive arguments in McPherson's opening brief. Fed. R. App. P. 28(i).

## CONCLUSION

The Court should vacate the SEC's order and remand with instructions to recalculate Barr's award percentage and amount based on a proper understanding and application of the correct legal framework—including the full amounts recovered in the enforcement and bankruptcy proceedings.

Respectfully submitted.

J. Kevin Edmundson
EDMUNDSON SHELTON WEISS PLLC
600 East Highway 290
Dripping Springs, TX  78620
Tel.: (512) 720-0782
*kevin@eswpllc.com*

/s/ *Daniel L. Geyser*
Daniel L. Geyser
HAYNES AND BOONE, LLP
2323 Victory Avenue, Ste. 700
Dallas, TX  75219
Tel.: (303) 382-6219
*daniel.geyser@haynesboone.com*

*Counsel for Petitioner*
*John M. Barr*

October 14, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2023, an electronic copy of the foregoing Opening Brief was filed with the Clerk of Court for the U.S. Court of Appeals for the Fifth Circuit, using the appellate CM/ECF system. I further certify that all parties in the case are represented by lead counsel who are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Daniel L. Geyser*
Daniel L. Geyser
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Ste. 2300
Dallas, TX  75201
Tel.: (303) 382-6219
*daniel.geyser@haynesboone.com*

October 14, 2023

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,474 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Expanded BT font.

/s/ Daniel L. Geyser
Daniel L. Geyser
HAYNES AND BOONE, LLP
2801 N. Harwood Street, Ste. 2300
Dallas, TX  75201
Tel.: (303) 382-6219
daniel.geyser@haynesboone.com

October 14, 2023