No. 23-60216

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JOHN M. BARR; JOHN MCPHERSON,

Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION,

Respondent.

On Petition for Review of a Final Order
of the Securities and Exchange Commission

**UNOPPOSED MOTION
OF THE SECURITIES AND EXCHANGE COMMISSION
FOR JUDICIAL NOTICE**

STEPHEN G. YODER
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-4532

# CERTIFICATE OF INTERESTED PERSONS

*Barr v. SEC*, No. 23-60216

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of the case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    John M. Barr, petitioner

    a.    Daniel L. Geyser, counsel for Barr

    b.    Haynes and Boone, LLP counsel for Barr

    c.    J. Kevin Edmundson, counsel for Barr

    d.    Edmundson Shelton Weiss PLLC, counsel for Barr

2.    John McPherson, petitioner

    a.    Brian J. Leske, counsel for McPherson

    b.    Michael J. Sullivan, counsel for McPherson

    c.    Kimberly P. West, counsel for McPherson

    d.    Ashcroft Sullivan LLC, counsel for McPherson

3.    Securities and Exchange Commission ("Commission"), respondent

a. Megan Barbero, General Counsel, Commission

b. Michael A. Conley, Solicitor, Commission

c. Caroline A. Crenshaw, Commissioner, Commission

d. Gary Gensler, Chair, Commission

e. Kristina Guidi, Attorney, Office of the Whistleblower ("OWB"), Commission

f. Nicole C. Kelly, Chief, OWB, Commission

g. Jaime Lizárraga, Commissioner, Commission

h. Emily M. Pasquinelli, Assistant Director, OWB, Commission

i. Hester M. Peirce, Commissioner, Commission

j. Mark T. Uyeda, Commissioner, Commission

k. Stephen G. Yoder, Senior Appellate Counsel, Commission

/s/ Stephen G. Yoder
STEPHEN G. YODER
Attorney of Record for Respondent
Securities and Exchange Commission

Dated:  December 11, 2023

The Commission respectfully moves the Court, pursuant to Fed. R. App. P. 27 and 5th Cir. R. 27.1.1, to take judicial notice of certain documents filed on the public dockets of the Commission's enforcement action against Life Partners Holdings, Inc. ("LPHI") and of LPHI's subsequent voluntary Chapter 11 bankruptcy petition. Petitioners John M. Barr and John McPherson do not oppose this motion.

This case is a petition for review of the Commission's final order granting petitioner Barr's and petitioner McPherson's respective applications for a whistleblower award in connection with the Commission's enforcement action and denying their award claims in connection with LPHI's bankruptcy case. *See generally SEC v. Life Partners Holdings, Inc.*, Nos. 12-cv-00002 and 12-cv-00033 (W.D. Tex.); *In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11 (Bankr. N.D. Tex.). In their opening briefs before this Court, Barr and McPherson make certain assertions about these two cases that are difficult to address in the Commission's response brief in the absence of greater contextual information from filings in the cases. Accordingly, taking judicial notice of additional filings on the public dockets of those two cases, above and beyond the filings already included in the

administrative record, would assist the Court in its review of the

Commission's final order.  To that end, the additional filings cited in the

Commission's response brief are attached as exhibits to this motion.

For the foregoing reasons, the Court should supplement the record

to include the additional filings attached here as exhibits.

Respectfully submitted,

/s/ Stephen G. Yoder
STEPHEN G. YODER
Senior Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-4532

Dated:  December 11, 2023

# EXHIBIT 1

*SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00002,

Dkt. 5 (W.D. Tex. Jan. 11, 2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. W-12-CA-00002 |
| | § | |
| LIFE PARTNERS HOLDINGS, INC., et al., | § § | |
| Defendants. | § | |

## O R D E R

On this date, the Court, *sua sponte*, considers this case. Brian Pardo, a defendant in this civil action and a major stockholder in Life Partners, Inc., has been a close personal friend of the undersigned for several years. The nature of that friendship mandates recusal. The undersigned has conferred with Chief Judge Jones and Chief Judge Biery regarding transfer of this case. Accordingly, it is

**ORDERED** that the Clerk of the Court shall transfer this case to Senior U.S. District Judge James R. Nowlin of the Austin Division of the U.S. District Court for the Western District of Texas.

**SIGNED** this __11__ day of January, 2012.

_____
**WALTER S. SMITH, JR.**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 2

*SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00033,

**Dkt. 321 (W.D. Tex. Dec. 30, 2014)**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

_____

SECURITIES AND EXCHANGE COMMISSION, §
§
                  Plaintiff, §      Civil Action No. 1-12-cv-00033-JRN
§
    v. §
§
LIFE PARTNERS HOLDINGS, INC., §
BRIAN PARDO, AND R. SCOTT PEDEN §
§
             Defendants. §
_____§

### DEFENDANTS' JOINT NOTICE OF APPEAL

Notice is hereby given that Life Partners Holdings, Inc., Brian Pardo, and R. Scott Peden, Defendants in the above-referenced case, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Final Judgment Order (hereinafter "Judgment") entered in this case on December 2, 2014 (Dkt. No. 304), as well as all other orders that merged into the Judgment, including, but not limited to, the Order (Dkt. No. 156) denying Defendants' Motion for Summary Judgment (Dkt. No. 110), and the Order (Dkt. No. 279) denying in part Defendants' Post-Verdict Renewed Motion for Judgment as a Matter of Law (Dkt. No. 271).

This Notice of Appeal is technically premature due to the pendency of a post-judgment motion of the type listed in Fed. R. App. P. 4(a)(4)(A)(iv) (Defendants' Joint Motion Under Rule 59(e) to Alter or Amend the Judgment, Dkt. No. 320).

Respectfully submitted,

J Pete Laney
State Bar No. 24036942
E-Mail: jpete@jpetelaney.com
LAW OFFICES OF J PETE LANEY
1122 Colorado Street, Suite 111
Austin, Texas 78701-2159
Tel.: (512) 473-0404
Fax: (512) 672-6123

/s/ Charles T. Frazier, Jr.
Charles T. Frazier, Jr.
E-Mail: cfrazier@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
4925 Greenville Avenue, Suite 510
Dallas, TX 75206-4026
Tel: (214) 369-2358
Fax: (214) 369-2359

Dana Livingston
E-Mail: dlivingston@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701
Tel.: (512) 482-9304
Fax: (512) 482-9303

**ATTORNEYS FOR DEFENDANT
LIFE PARTNERS HOLDINGS, INC**.

/s/ S. Cass Weiland
S. Cass Weiland
State Bar No. 21081300
E-mail: cweiland@pattonboggs.com
Robert A. Hawkins
State Bar No. 00796726
E-mail: rhawkins@pattonboggs.com
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
Tel.: (214) 578-1500
Fax: (214) 578-1550

/s/ Jay Ethington
Jay Ethington
State Bar No. 06692500
E-mail: jay@jayethington.com
THE LAW FIRM OF JAY ETHINGTON
3131 McKinney Avenue, Suite 800
Dallas, TX 75204
Tel.: (214)740-9955
Fax: (214) 749-9912

**ATTORNEY FOR BRIAN PARDO**

**ATTORNEYS FOR SCOTT PEDEN**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court. All others were served a copy via U.S. mail.

/s/ *Charles T. Frazier, Jr.*

# EXHIBIT 3

*SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00033,

Dkt. 325 (W.D. Tex. Jan. 5, 2015)

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No.: 1:12-cv-00033-JRN |
| | § | |
| LIFE PARTNERS HOLDINGS, INC., | § | ***HEARING REQUESTED*** |
| BRIAN PARDO, R. SCOTT PEDEN | § | |
| | § | |
| Defendants. | § | |

_____

## OPPOSED EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER

The Securities and Exchange Commission asks the Court to appoint a Receiver for Life

Partners Holdings, Inc. and its affiliates (collectively, "LPHI"), and shows the following.

## I.
## SUMMARY OF REQUESTED RELIEF

On December 29, 2014, LPHI filed motions that make it clear that the company is

financially unstable. Yet nothing has changed at the company in spite of the jury verdicts entered

against it a year ago, a final judgment concluding that Defendants "deprived the investing public

of information it needed," and sharply declining revenues. LPHI has not informed the public, on

Form 8-K or otherwise, of the entry of the Final Judgment or its impact on the company, nor has

it made any changes to its roster of officers and directors.

In order to protect investors and LPHI's creditors, including the Commission, the Court

should appoint a Receiver to ensure that its current officers including Defendants Brian D. Pardo

("Pardo") and R. Scott Peden ("Peden), are unable to continue to waste assets and to ensure that

LPHI is operated in compliance with the federal securities laws.  Pardo and Peden, along with

LPHI's remaining officers and board members, continue to ignore the federal securities laws, as

discussed below.     Alternatively, the Court should appoint an independent Monitor to oversee

and assess LPHI's ongoing business operations, subject to periodic status reporting to this Court

**II.**
**ARGUMENT AND AUTHORITY**

**A.      LPHI CARRIES ON BUSINESS AS USUAL DESPITE DIRE FINANCIAL CONDITIONS AND THE IMPACT OF THE FINAL JUDGMENT ON THE COMPANY'S SUSTAINABILITY.**

The Court entered its Final Judgment based on Defendants "egregious" and "serious

violations" of the federal securities laws.  [Doc. 304, pp. 3, 4]  Defendants "knowingly – or at

least recklessly – violated the securities laws of this nation" and that "oversight and compliance

at Life Partners were non-existent." *Id.* Nevertheless, LPHI announced victory in materially

misleading press releases and Forms 8-K after trial, and Pardo continues to claim "we won" and

"the jury poured the SEC out on every legitimate claim they brought" in a book he recently

published about, among other things, this litigation. *See* Feb. 4, 2014 Form 8-K, attached hereto

as Exhibit A; March 14, 2014 Form 8-K, attached hereto as Exhibit B; Pardo, Brian D., *Junkyard*

*Dog*,  Hill Print Solutions, 2014, attached hereto in pertinent part as Exhibit C.

Apart from their self-serving press releases, Forms 8-K, and Pardo's version of events in

this case, Defendants remain conspicuously silent about the actual result and LPHI's current

financial condition.   Tellingly, LPHI has never disclosed, on Form 8-K or otherwise, the Final

Judgment, the Court's findings therein, or its impact on the company.[1]  Rather, LPHI's last

statement to the public on Form 8-K announced a quarterly dividend on September 2, 2014.

While LPHI continues to tout that it exists as a public company "purely to provide

 transparency for its life settlements clients," it is concealing basic information about the Final

---

[1] The Forms 8-K LPHI *has* filed with the Commission over the last 18 months routinely announce positive events in litigation.  *See* http://ir.lphi.com /sec.cfm?DocType=Current&Year=]. It seems obvious that Defendants perceive the Final Judgment to be a material event affecting LPHI and that selective disclosure of only positive litigation events – and the decision not to file Form 8-K for the Final Judgment – reflects an ongoing effort to mislead the public.

Judgment and the company's sustainability, including requests to seal critical information about the possibility of bankruptcy and efforts to prevent enforcement of the judgment without posting any supersedeas bond. *See* http://ir.lphi.com/faq.cfm; *see generally* Doc. 314, 316, and 318.

While concealing key information from the public, LPHI continues to waste corporate assets through issuance of dividends. As Pardo testified at trial, LPHI has issued dividends every quarter since 2007. See 1-28-14pm Tr., p. 5; *see also* http://ir.lphi.com/dividends.cfm. LPHI paid out more than $68 million in dividends between February 2, 2002 and September 17, 2014 without missing a quarter. *See* http://ir.lphi.com/dividends.cfm. Since this case began, LPHI has issued nearly $15 million in dividends, including more than $2.7 million in three separate dividends issued *after* the jury returned its verdicts against Defendants. *Id.*

Importantly, Pardo admitted at trial that Pardo Family Holdings, Ltd. – the family trust he directs and which is located offshore in Gibraltar ("Pardo Trust") – owns more than half of LPHI's stock and, whenever LPHI issues dividends, the Pardo Trust receives more than half of the funds. *See* 1-28-14pm Tr., at p. 5.[2] Hence, the Pardo Trust has received more than $34 million since February 2, 2002 including $30 million since Mark Embry highlighted the issue of short LEs to Defendants in August 2008 [Ex. G-134], and $1.4 million since Defendants lost at trial. Equally troubling, LPHI failed to withhold taxes on dividends paid to the Pardo Trust in 2008, 2009, and 2010, as required by 26 U.S.C. § 1461.[3]

LPHI also continues to pay Pardo and Peden's sizeable salaries and bonuses,[4] though each of them claims extreme financial hardship and asks the Court to relieve them of their

---

[2] Pardo is the beneficial owner of the Pardo Trust which means he has "sole or shared power to vote or dispose of the stock." *See* http://www.nasdaq.com /investing/glossary/b/beneficial-owner. Pardo admitted at trial that Peden acted as the Pardo Trust's attorney-in-fact. *See* 1-28-14pm Tr., at pp. 8-9; Ex. G-435. He further admitted that he exercises the shareholder vote for the Pardo Trust, has authority to act for the Pardo Trust and has directed transactions of LPHI stock by the Pardo Trust. *See* 1-28-14pm Tr., at pp. 11-12, 13-14; Ex. G-209.

[3] http://files.shareholder.com/downloads/LPHI/3714485070x0xS1144204-14-61250/49534/filing.pdf , at p. 16

[4] Pardo was paid $667,261 in salary and bonuses in FY 2014 according to LPHI's July 2, 2014 Proxy Statement, which omits any reference to Peden's executive compensation. Peden was paid $204,528 in FY 2013.

obligation to pay the judgments, or post a bond securing the judgments, entered against them.[5]

Indeed, it is business as usual at LPHI regardless of the jury's verdicts, the Final Judgment, and the company's dire financial circumstances. Defendants have made no changes to LPHI's roster of officers and directors: Pardo is still CEO and Chairman of LPHI's Board of Directors, and Tad Ballantyne is still a Director and the Chairman of its Audit Committee.

Defendants have announced *one* key change in Life Partners' business model. On October 14, 2014, Pardo informed retail investors of their newly-created obligation to pay administrative policy maintenance fees in order to maintain their investment interests. *See* Letter of October 14, 2014, attached hereto as Exhibit D. In response to unrest among the thousands of retail investors due to the new fee, Pardo told *The Dallas Morning News* that, if investors fail to pay the fees, "we will sever them from the system and all communications with us as well." *See* Lieber, Dave, *Watchdog: Death Bet Investors Ambushed by Surprise Fees*, Dallas Morning News, November 22, 2014, attached hereto as Exhibit E. Thus, Defendants' retail investors face not only the possibility of LPHI's bankruptcy, but also a likelihood that LPHI will follow through on its clear threat to cut off investors' life settlement interests.

**B.** **A RECEIVER IS NECESSARY TO PROTECT LPHI'S INVESTORS AND CREDITORS.**

**1. Legal Standard for Appointment of Receiver**

Courts have broad discretion in ordering equitable relief in Commission actions, and "the appointment of a receiver is a well-established equitable remedy available to the [Commission] in [its] civil enforcement proceedings for injunctive relief." *SEC v. First Fin. Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981).[6] Courts will appoint a receiver where necessary to: (1)

---

[5] The Commission incorporates by reference its Response in Opposition to Defendants' Motions to Set Amount and Type of Security and for Alternate Security to Stay Enforcement of Final Judgment.

[6] Under Section 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act") "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and

preserve the status quo while transactions are being unraveled in order to determine an accurate picture of a defendant's misconduct, *Id.*; (2) protect "those who have already been injured by a violator's actions from further despoliation of their property or rights," *Esbitt v. Dutch-American Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964); (3) prevent the dissipation of a defendant's assets pending further action by the court, *First Fin.*, 645 F.2d at 438; *see also SEC v. American Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987); or (4) install a responsible officer of the court who could bring the companies into compliance with the law, *Id.* at 437.  An evidentiary hearing is not required where the record discloses sufficient facts to warrant such an appointment.  *Bookout v. Atlas Fin. Corp.,* 395 F. Supp. 1338, 1342 (N.D. Ga. 1974), *aff'd sub nom. Bookout v. First Nat'l Mortgage & Disc. Co., Inc*., 514 F.2d 757 (5th Cir. 1975).

Proof of fraud is not required in order for a district court to exercise its broad discretion to appoint a Receiver.  *See Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 317 (8th Cir. 1993) (upholding appointment of receiver on motion of judgment creditor when it appeared that judgment debtor was hiding assets); *Citronelle-Mobile Gathering, Inc. v. Watkins,* 934 F.2d 1180, 1184 (11th Cir. 1991) (transfers to related entities and sending money out of the country); *Chase Manhattan Bank v. Turabo Shopping Ctr., Inc*., 683 F.2d 25, 26-27 (1st Cir. 1982) (evidence of unfair dealing); *New York Life Ins. Co. v. Watt West Inv. Corp*., 755 F. Supp. 287, 292-93 (E.D. Cal. 1991) (diversion of assets to pay unrelated obligations).

> **2. A Receiver is needed to maintain the status quo, to bring LPHI into compliance with the reporting requirements of the federal securities laws, to protect investors and creditors, and to prevent further dissipation of assets.**

On December 29, 2014, Defendants each asked the Court to bar enforcement of the Final Judgment during their appeals without requiring them to post any supersedeas bond, arguing

---

any federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." *SEC v. First Financial Group of Texas*, 645 F.2d 429, 439 (5th Cir. 1981) (appointment of a receiver is a well-established equitable remedy available to the Commission in civil enforcement proceedings for injunctive relief).

financial hardship and the threat of bankruptcy.[7]  In their efforts to avoid paying the judgments –
or any bond securing the judgments on appeal – while continuing to operate LPHI, Defendants
essentially ask the Court to maintain the status quo for their benefit, even though it will unfairly
further harm LPHI's retail investors and creditors, including the Commission. Rather, the best
mechanism to maintain the status quo is the appointment of a Receiver.

LPHI's December 29, 2014 filing shows an imminent danger exists that it will continue
to deplete assets if immediate action is not taken to appoint a Receiver. Indeed, LPHI's own
public filings demonstrate a steady but sharp decline in LPHI's total and current assets:[8]

| Balance Sheet Date | Cash and Cash Equivalents | Total Current Assets |
|---|---|---|
| 2/28/11 | $27.6 million | $35.3 million |
| 2/29/12 | $11.4 million | $18.5 million |
| 2/28/13 | $7.5 million | $15.7 million |
| 2/28/14 | $6.1 million | $8.4 million |
| 8/31/14 | $3.06 million | $5.2 million |

Yet even during this time, LPHI declared and paid cash dividends of more than $25 million,
more than half of which went directly to the Pardo Trust.

Without a Receiver, it is likely that LPHI will cut off retail investors' interests as it has
expressly threatened to do.  And while LPHI contends that investors will be harmed in the event
of a bankruptcy, the Commission contends that investor interests – as well as the interests of
LPHI's creditors including the Commission – will be much better protected by a Court-appointed
Receiver or, if appropriate, a bankruptcy trustee.

Moreover, a Receiver is needed to bring LPHI into compliance with the Exchange Act's
reporting requirements including, but not limited to, announcing material events on Form 8-K,

---

[7] As the Commission establishes in its response to Defendants' Motions to Set Security and for Alternate Security to
Stay Enforcement of Final Judgment, any financial hardship at LPHI is self-inflicted.
[8] *See* LPHI's Forms 10-K for FYs 2011—2014, http://ir.lphi.com/sec.cfm?DocType=Annual&Year= , and October
15, 2014 Form 10-Q for the period ended August 31, 2014, http://ir.lphi.com/sec.cfm?DocType=Quarterly&Year=.

and to prevent further violations of the Securities Act and the Exchange Act.[9]

As a last resort, LPHI is "willing to accept" what it considers "reasonable financial restrictions" to stay enforcement of the Final Judgment during their appeal.  [Doc. 319, p. 20].  But the restrictions LPHI proposes are insufficient to protect investors or the Commission's Final Judgment and, instead, highlight a total disregard of the jury's verdicts and the Final Judgment and only confirm that the independent oversight of a Receiver is necessary.  For instance, LPHI claims it is only capable of depositing $250,000 in cash with the Court, but reserves the right to freely transfer assets up to $500,000 as it wishes and then only to limit transfers of assets exceeding $500,000 to its "ordinary course of business."[10]  LPHI's ordinary course of business, however, includes a longstanding pattern of wrongdoing that includes misleading shareholders and retail investors and failing to disclose necessary information to the investing public.  Thus, for all of these reasons, the Commission asks the Court to appoint a Receiver over LPHI and its affiliates, including Life Partners, Inc.  Further, given the company's financial condition, the Commission believes in this instance that it would be prudent to direct the appointed Receiver to conduct an immediate analysis of the companies and make a recommendation to the Court, within 30 days of appointment, as to whether the initiation of bankruptcy proceedings under Chapter 7 or 11 of the Bankruptcy Code, would be appropriate such that creditor claims against the entities would be adjudged in a bankruptcy court.

---

[9] The Commission contends LPHI should have announced as material events on Form 8-K the Final Judgment on as well as, among other things, the impact of the judgment, the findings made about LPHI's lack of compliance and Tad Ballantyne's ineffective directorship, and the company's apparent or imminent insolvency and possible bankruptcy.  LPHI's 10-Q for the period ended November 30, 2014 is due January 15, 2015.

[10] LPHI relies on *Miami Int'l Realty v. Paynter*, 807 F.2d 871, 872-874 (10th Cir. 1986), a case that is factually distinct from this action.  There, defendant could not post a full bond but nevertheless provided value equal to approximately 25% of the judgment against him and was enjoined from transferring all but mere cost-of-living or occupational expenses.  Here, LPHI essentially asks the Court to waive its bond requirement when it proposes a cash deposit of $250,000 – 0.65%  of the $38 million judgment against it.

**D.    A HIGHLY QUALIFIED RECEIVER CANDIDATE IS PREPARED TO ACT IMMEDIATELY.**

The Commission recognizes that the selection of a Receiver of course lies within the Court's discretion.  But, given the exigent circumstances, the Commission vetted several qualified candidates who: (i) possess superior skill and experience serving as court-appointed Receivers; (ii) agree to standard billing and reporting requirements; (iii) agree to reduce their professional fees; (iv) have personnel and counsel poised for immediate action; and (v) have cleared conflicts.

The Commission recommends appointment of H. Thomas ("Tom") Moran II as Receiver. Mr. Moran is the Chief Executive Officer of Asset Servicing Group ("ASG"), located in Oklahoma City, Oklahoma.  *See* Exhibit F.  ASG is a market leader in the life settlement industry focused on servicing life insurance policies and portfolios of policies for a wide variety of clients and is a member of key industry organizations including the Institutional Life Markets Association ("ILMA") and the Life Insurance Settlement Association ("LISA").  *Id.*  Mr. Moran's work focuses specifically on the asset settlement industry.  *Id.*

Mr. Moran has extensive experience serving as a court-appointed Receiver, as well as assisting other Receivers, most relevantly in *State of Texas v. Retirement Value, LLC, et al.,* a 2010 action in which a Texas court concluded that Retirement Value – a New Braunfels, Texas life settlements company – lied to life settlement purchasers about the validity of its life expectancies, qualifications of its life expectancy provider, and historical performance.  *See http://www.rvllcreceivership.com/.*  In connection with the *Retirement Value* Receivership, Moran and ASG: (1) act as portfolio managers; (2) advise the Receiver as to insurance policies' value and viability; (3) provide critical industry and asset management experience including: obtaining updated health information and life expectancies for insureds, death tracking, claims

processing, policy verification and valuation, and premium optimization. *See* Exhibit G, Receiver's Thirteenth Motion for Approval of Payment of Professionals.

For these reasons, the Commission respectfully submits that Mr. Moran is uniquely qualified to oversee LPHI as this Court's Receiver. Most importantly, he possesses significant experience evaluating, valuing, and managing life settlement assets, which positions him to protect the interests of LPHI's retail life settlement investors – the same investors the company has threatened to cut off.[11] For the Court's convenience, we have submitted with this Motion a proposed order appointing Mr. Moran as Receiver. Alternatively, the Commission stands ready to assist the Court in identifying another qualified candidate should the Court so desire.

**E.      ALTERNATIVELY, THE COURT SHOULD APPOINT A MONITOR TO OVERSEE AND APPROVE ALL LPHI FINANCIAL TRANSACTIONS.**

If the Court elects not to appoint a Receiver to protect the interests of LPHI's investors and to prevent dissipation of assets, the Commission asks the Court to appoint a Monitor to oversee LPHI and its affiliates and report activities that are inconsistent with the company's obligations to its investors and creditors. A Court-appointed monitor will provide an independent resource to observe LPHI's operations, advise the company on how to comply with the law, and report observations and recommendations to the Court.

**F.      IF THE COURT WILL NOT APPOINT AN EQUITABLE RECEIVER OR MONITOR, IT SHOULD APPOINT A RECEIVER UNDER THE TEXAS TURNOVER STATUTE.**

Defendants' deadline to pay the amounts ordered in the Final Judgment expired on December 30, 2014. Defendants are in contempt of the Court's order, and their assets available

---

[11] In its post-judgment motions, LPHI fails to inform the Court that it announced a new policy in October 2014, requiring retail life settlement purchasers to immediately begin paying administrative fees associated with monitoring insurance policies until the time of insureds' deaths, resulting in newly filed lawsuits against the company and the company's threat – quoted in *The Dallas Morning News* – that, if investors fail to pay the newly required fees, "we will sever them from the system and all communications with us as well."

to satisfy the Final Judgment are at risk of further loss.[12]

As a judgment creditor, the Commission is entitled to appointment of a Receiver to aid

execution, pursuant to TEX. CIV. PRAC. & REM. CODE §31.002(a) and (b)(3), made applicable to

these proceedings by FED. R. CIV. P. 69(a).  Section 31.002 provides in pertinent part:

> (a)    A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:
>
> > (1)    cannot readily be attached or levied on by ordinary legal process; and
> >
> > (2)    is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b)    The court may: . . .
>
> > (3)    appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

Federal courts in Texas have construed the turnover statute to authorize appointment of

receivers over judgment debtors and their property to aid the execution of final judgments.  *See,*

*e.g.*, *United States v. Messervey,* 182 Fed. Appx. 318, 321 (5th Cir. 2006);[13]  *Santibanez v.*

*McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997); *RTC v. Smith*, 53 F.3d 72, 77 (5th Cir.

1995); *World Fuel Services Corp. v. Moorehead*, 229 F. Supp. 2d 584, 589 (N.D. Tex. 2002).

---

[12] A district court has continuing jurisdiction in support of its judgment, and until the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions.  *See Santibanez v. Wier McMahon & Co.*, 105 F.3d 234 (5th Cir. 1997); *R.T.C. v. Smith*, 53 F.3d 72, 76 (5th Cir. 1995); *Alberti v. Klevenhagen*, 46 F.3d 1347, 1358 (5th Cir.1995); *United States v. Revie*, 834 F.2d 1198, 1205 (5th Cir.1987), *cert. denied*, 487 U.S. 1205, 108 S. Ct. 2845, 101 L. Ed. 2d 882 (1988)))(internal quotations omitted).

[13] Relevantly, the Fifth Circuit rejected a claim by the defendant in *Messervey* that property seized under the turnover order belonged to a "trust created by him  . . . and thus was not subjected to" the court's turnover order. *Messervey,* 182 Fed. Appx. at 321. The Court held that "[t]he issue whether the seized property was transferred to a trust was never ruled upon by the district court . . . [and] because the district court could not have resolved whether the property was part of a trust, this claim does not survive plain error review." *Id.*

### III.
### <u>CONCLUSION</u>

The Commission requests emergency appointment of an equitable Receiver over LPHI and recommends that H. Thomas Moran, II be considered to serve in that capacity. Alternatively, the Commission requests appointment of a Court-appointed Monitor over LPHI. Finally, in the further alternative, the Commission respectfully requests appointment of a statutory turnover Receiver in accordance with TEX. CIV. PRAC. REM. CODE § 31.002.

Dated: January 5, 2015

Respectfully submitted,

*/s/ Jessica B. Magee*
Jessica B. Magee
Texas Bar No. 24037757
Matthew J. Gulde
Illinois Bar No. 6272325
B. David Fraser
Texas Bar No. 24012654
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6465 (JBM)
(817) 978-4927 (fax)
*MageeJ@sec.gov*
Attorneys for Plaintiff Securities and
Exchange Commission

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 5, 2015, Plaintiff's counsel conferred with counsel for Defendants in a good-faith attempt to resolve the matter by agreement.  Counsel for Plaintiff certifies that Defendants are opposed to the relief sought by this motion.

*/s/ Jessica B. Magee*
Jessica B. Magee

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel who have registered with the Court. All others were served a copy by U.S. mail.

*/s/ Jessica B. Magee*
Jessica B. Magee

# EXHIBIT 4

*SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00033,

Dkt. 354 (W.D. Tex. Jan. 20, 2015)

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

_____

SECURITIES AND EXCHANGE COMMISSION, §
                                        §
                Plaintiff, §       Civil Action No. 1-12-cv-00033-JRN
                                          §
     v. §
                                          §
LIFE PARTNERS HOLDINGS, INC., §
BRIAN PARDO, AND R. SCOTT PEDEN §
                                          §
              Defendants. §
_____§

## <u>DEFENDANTS' AMENDED JOINT NOTICE OF APPEAL</u>

      This Amended Joint Notice of Appeal amends Defendants' previously filed Joint Notice of Appeal (Dkt. 321).

      Notice is hereby given that Life Partners Holdings, Inc., Brian Pardo, and R. Scott Peden, Defendants in the above-referenced case, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Final Judgment (Dkt. 352) entered in this case on January 16, 2015, and all orders that merged into the Final Judgment, including, but not limited to the Final Judgment Order entered in this case on December 2, 2014 (Dkt. 304), the Order (Dkt. 156) denying Defendants' Motion for Summary Judgment (Dkt. 110), and the Order (Dkt. 279) denying in part Defendants' Post-Verdict Renewed Motion for Judgment as a Matter of Law (Dkt. 271).

      Additionally, all Defendants appeal from the Order (Dkt. 351) entered on January 16, 2015 denying Defendants' Joint Motion to Alter or Amend the Judgment (Dkt. 320).

Respectfully submitted,

J Pete Laney
State Bar No. 24036942
E-Mail: jpete@jpetelaney.com
LAW OFFICES OF J PETE LANEY
1122 Colorado Street, Suite 111
Austin, Texas 78701-2159
Tel.: (512) 473-0404
Fax: (512) 672-6123

/s/ Charles T. Frazier, Jr.
Charles T. Frazier, Jr.
E-Mail: cfrazier@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
4925 Greenville Avenue, Suite 510
Dallas, TX 75206-4026
Tel: (214) 369-2358
Fax: (214) 369-2359

Dana Livingston
E-Mail: dlivingston@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON &
TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701
Tel.: (512) 482-9304
Fax: (512) 482-9303

**ATTORNEYS FOR DEFENDANT
LIFE PARTNERS HOLDINGS, INC**.

/s/ S. Cass Weiland
S. Cass Weiland
State Bar No. 21081300
E-mail: cweiland@pattonboggs.com
Robert A. Hawkins
State Bar No. 00796726
E-mail: rhawkins@pattonboggs.com
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas 75201
Tel.: (214) 578-1500
Fax: (214) 578-1550

**ATTORNEYS FOR SCOTT PEDEN**

/s/ Jay Ethington
Jay Ethington
State Bar No. 06692500
E-mail: jay@jayethington.com
THE LAW FIRM OF JAY ETHINGTON
3131 McKinney Avenue, Suite 800
Dallas, TX 75204
Tel.: (214)740-9955
Fax: (214) 749-9912

**ATTORNEY FOR BRIAN PARDO**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel who have registered with the Court. All others were served a copy via U.S. mail.

/s/ Charles T. Frazier, Jr.

# EXHIBIT 5

*SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00033,

**Dkt. 355 (W.D. Tex. Jan. 20, 2015)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Civil Action No.** |
| | § | **1:12-cv-00033-JRN-AWA** |
| LIFE PARTNERS HOLDINGS, INC., BRIAN | § | |
| PARDO, and R. SCOTT PEDEN, | § | |
| | § | |
| Defendants. | § | |

## SUGGESTION OF BANKRUPTCY

TO THE HONORABLE JAMES R. NOWLIN:

Comes now Defendant Life Partners Holdings, Inc. ("LPHI") and files this Suggestion of

Bankruptcy, thus notifying the Court that it filed a Voluntary Petition under Chapter 11 of the

Unites States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, on January 20, 2015, in the United

States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, as Case No.

15-40289-rfn-11   A copy of the Notice of Filing of Bankruptcy Case is attached hereto as **Exhibit**

**"A"**.

Dated:   January 20, 2015.

Respectfully submitted,

/s/ Jeff P. Prostok
J. Robert Forshey
State Bar No. 07264200
Jeff P. Prostok
State Bar No. 16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Fort Worth, Texas   76102
Telephone:     817-877-8855
Facsimile:     817-877-4151
bforshey@forsheyprostok.com
jprostok@forsheyprostok.com

PROPOSED BANKRUPTCY COUNSEL FOR
LIFE PARTNERS HOLDINGS, INC.,
DEBTOR AND DEBTOR IN POSSESSION

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served upon parties requesting service via ECF Notification and via email on the parties listed below on this the 20th day of January, 2015.

B. David Fraser
U.S. Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102
fraserb@sec.gov

Jessica B. Magee
U.S. Securities and Exchange Commission
801 Cherry St., Suite 1900, Unit 18
Fort Worth, TX 76102
mageej@sec.gov

Matthew J. Gulde
U.S. Securities and Exchange Commission
801 Cherry St., Suite 1900, Unit 18
Fort Worth, TX 76102
guldem@sec.gov

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION

S. Cass Weiland
Robert A. Hawkins
Squire Patton Boggs (US) LLP
2000 McKinney Ave., Suite 1700
Dallas, TX 75201
cass.weiland@squirepb.com
robert.hawkins@squirepb.com

ATTORNEYS FOR DEFENDANT
R. SCOTT PEDEN

Jay Ethington
The Law Firm of Jay Ethington
3131 McKinney Ave., Suite 800
Dallas, TX 75204
jay@jayethington.com

ATTORNEYS FOR DEFENDANT
BRIAN D. PARDO

Sabrina L. Streusand
Streusand, Landon & Ozburn, LLP
811 Barton Springs Rd., Suite 811
Austin, Texas 78704
streusand@slollp.com

ATTORNEYS FOR DEFENDANT
LIFE PARTNERS HOLDINGS, INC.

/s/ Jeff P. Prostok
Jeff P. Prostok

L:\BFORSHEY\Life Partners (C11) #5729\# 1-12-CV-33-JRN SEC v Life Partners\Suggestion of Bankruptcy (1.20.15).docx

# EXHIBIT "A"

United States Bankruptcy Court
Northern District of Texas

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed
below was filed under Chapter 11 of the United
States Bankruptcy Code, entered on 01/20/2015 at
12:26 PM and filed on 01/20/2015.

**FILED**
**01/20/2015**
**12:26 PM**

**Life Partners Holdings, Inc.**
204 Woodhew Drive
Waco, TX 76712
Tax ID / EIN: 74-2962475

The case was filed by the debtor's attorney:

**J. Robert Forshey**
Forshey & Prostok, LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102
817-877-8855

The case was assigned case number 15-40289-rfn11 to Judge Russell F. Nelms.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page www.txnb.uscourts.gov or at the Clerk's Office, 501 W. Tenth
Street, Fort Worth, TX 76102.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**Tawana C. Marshall**
**Clerk, U.S. Bankruptcy**
**Court**

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/20/2015 12:27:04 | | |
| **PACER Login:** | fp0166:2550726:0 | **Client Code:** | 1059 |
| **Description:** | Notice of Filing | **Search Criteria:** | 15-40289-rfn11 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT 6

*SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00033,

**Dkt. 365 (W.D. Tex. Feb. 5, 2015)**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 FEB -5 PM 3: 35

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| V. | § § | CIVIL ACTION NO. 1-12-CV-33-JRN |
| LIFE PARTNERS HOLDINGS, INC., BRIAN PARDO, and R. SCOTT PEDEN | § § | |

## ORDER

Before the Court is Securities and Exchange Commission's ("SEC") Opposed Emergency Motion for Appointment of Receiver (Dkt. No. 325). The SEC argues that in order to protect Life Partners' investors and creditors, including the SEC, the Court should appoint a receiver over Life Partners to ensure that its current officers "are unable to continue to waste assets and to ensure that LPHI is operated in compliance with the federal securities laws." Dkt. No. 325 at 1.

On January 20, 2015, Defendant Life Partners Holdings, Inc. ("Life Partners") filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. *See In re Life Partners Holdings, Inc.*, Case No. 4:15-bk-40289 (Bankr. N.D. Tex.). Based on the Court's review of the motions and pleadings filed in that court over the past two weeks, it appears that the SEC will be able to effectively seek from the Bankruptcy Court the relief sought from this Court in the receivership motion. Accordingly, the Court **HEREBY DENIES WITHOUT PREJUDICE** the SEC's Opposed Emergency Motion for Appointment of Receiver (Dkt. No. 325).

SIGNED this _____ 5ᵗʰ _____ day of February, 2015.

JAMES R. NOWLIN
SENIOR UNITED STATES DISTRICT JUDGE

# EXHIBIT 7

*SEC v. Life Partners Holdings, Inc.*, No. 12-cv-00033,

Dkt. 370 (W.D. Tex. Mar. 16, 2015)

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **vs.** | § **Case No.: 1:12-cv-00033-JRN** |
| | § |
| **LIFE PARTNERS HOLDINGS, INC.,** | § |
| **BRIAN PARDO, R. SCOTT PEDEN** | § |
| | § |
| **Defendants.** | § |

_____

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**NOTICE OF CROSS-APPEAL**

Consistent with Fed. R. Civ. P. 4(a)(1)(B)(ii) and (a)(3), notice is given that the Securities and Exchange Commission, plaintiff in this civil law enforcement action, appeals to the United Court of Appeals for the Fifth Circuit from the Final Judgment entered in this case on January 16, 2015 (Dkt.#352) and other orders merged into that Judgment, including, but not limited to, the January 16, 2015 Order (Dkt.#351) denying the Commission's Motion to Alter or Amend the Judgment (Dkt.#322), the December 2, 2014 Final Judgment Order (Dkt.#304), granting in part and denying in part the Commission's Motion to Enter Judgment (Dkt.#293), the April 22, 2014 Order (Dkt.#283) denying the Commission's Opposed Motion for Reconsideration (Dkt.#280), and the March 12, 2014 Order (Dkt.#279) granting in part Defendants' Motion for Judgment as a Matter of Law (Dkt.#271).

Dated:  March 16, 2015

Respectfully submitted,

*/s/ Jessica B. Magee*
Jessica B. Magee
Texas Bar No. 24037757
Matthew J. Gulde
Illinois Bar No. 6272325
B. David Fraser
Texas Bar No. 24012654
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6465 (JBM)
(817) 978-4927 (fax)
*MageeJ@sec.gov*
Attorneys for Plaintiff
Securities and Exchange Commission

### CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel who have registered with the Court. All others were served a copy by U.S. mail.

*/s/ Jessica B. Magee*
Jessica B. Magee

# EXHIBIT 8

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

**Dkt. 1 (Bankr. N.D. Tex. Jan. 20, 2015)**

B1 (Official Form 1) (04/13)

| UNITED STATES BANKRUPTCY COURT **Northern District of Texas** | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>Life Partners Holdings, Inc. | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>74-2962475 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>204 Woodhew Drive<br>Waco, TX<br>ZIP CODE 76712 | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>McLennan | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other | ☐ Chapter 7    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☑ Chapter 11<br>☐ Chapter 12    ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 13 |

| Chapter 15 Debtors | Tax-Exempt Entity<br>(Check box, if applicable.) | Nature of Debts<br>(Check one box.) |
|---|---|---|
| Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | ☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☑ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☑ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | **Name of Debtor(s):** Life Partners Holdings, Inc. |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) |||
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) |||
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) <br><br> ☑ Exhibit A is attached and made a part of this petition. | **Exhibit B** (To be completed if debtor is an individual whose debts are primarily consumer debts.) <br><br> I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). <br><br> X _____ <br> Signature of Attorney for Debtor(s) (Date) |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No.

---

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

---

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

---

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1) (04/13)                                                                                              Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>Life Partners Holdings, Inc. |
|---|---|

| Signatures | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>    Signature of Debtor<br><br>X _____<br>    Signature of Joint Debtor<br><br>    _____<br>    Telephone Number (if not represented by attorney)<br><br>    _____<br>    Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only **one** box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>    (Signature of Foreign Representative)<br><br>    _____<br>    (Printed Name of Foreign Representative)<br><br>    _____<br>    Date |

| **Signature of Attorney*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____<br>    Signature of Attorney for Debtor(s)<br>    J. Robert Forshey    State Bar No. 07264200<br>    Printed Name of Attorney for Debtor(s)<br>    Forshey & Prostok, LLP<br>    Firm Name<br>    777 Main St., Suite 1290<br>    Fort Worth, TX 76102<br>    Address<br>    817-877-8855    817-877-4151 fax<br>    Telephone Number<br>    01/20/2015<br>    Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>    _____<br>    Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>    _____<br>    Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>    Signature of Authorized Individual<br>    Brian D. Pardo<br>    Printed Name of Authorized Individual<br>    President and CEO<br>    Title of Authorized Individual<br>    01/20/2015<br>    Date |     _____<br>    Address<br><br>X _____<br>    Signature<br><br>    _____<br>    Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

B 1A (Official Form 1, Exhibit A) (9/97)

*[If debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 of the Bankruptcy Code, this Exhibit "A" shall be completed and attached to the petition.]*

# UNITED STATES BANKRUPTCY COURT

### Northern District of Texas

In re  Life Partners Holdings, Inc. _____,          )          Case No. 15-_____

                      Debtor          )

                                  )

                                  )          Chapter 11

## EXHIBIT "A" TO VOLUNTARY PETITION

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is  0-7900 _____.

2. The following financial data is the latest available information and refers to the debtor's condition on November 30, 2014 .  (Taken from Form 10-Q filed January 14, 2015 for the period ending November 30, 2014.)

   a. Total assets                         $    20,315,796.00  (see Footnote 1 attached)

   b. Total debts (including debts listed in 2.c., below)   $    7,411,235.00  (see Footnotes 1 and 2 attached)

   c. Debt securities held by more than 500 holders:         Approximate number of holders:

| | | | | |
|---|---|---|---|---|
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | _____ |

   d. Number of shares of preferred stock                 None

   e. Number of shares common stock                 18,647,468

     Comments. if anv:

3. Brief description of debtor's business:

The Debtor is a specialty financial services company and the parent of Life Partners, Inc. ("LPI").  LPI is engaged in the secondary market for life insurance known generally as "life settlements".

4. List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor: _____

   Pardo Family Holdings Limited

[1] The above information is taken from Debtor's Form 10-Q quarterly report dated January 14, 2015, and which reflects the Debtor's financial condition as November 30, 2014. This includes the financial information reflected at pages 3 through 5 of such quarterly report.

[2] The information reflected on pages 3 through 5 of such quarterly report, which reflects the Debtor's position as of November 30, 2014, does not include the claims of the Securities Exchange Commission ("SEC") in Civil Action No. 1-12-DC-33-JRN in the United States District Court for the Western District of Texas, Austin Division. The Final Judgment in such cause was entered on January 16, 2015, and awarded relief to the SEC against the Debtor, including (a) an order for the Debtor to disgorge $15.0 million to the SEC, and (b) ordered the Debtor to pay a civil penalty to the SEC of $23.7 million.

L:\BFORSHEY\Life Partners (C11) #5729\Pleadings\Footnotes to Exhibit A to Voluntary Petition 1.18.15.docx

# EXHIBIT 9

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 14 & Exh. G (Bankr. N.D. Tex. Jan. 23, 2015)

Jessica B. Magee
Texas Bar No. 24037757
Matthew J. Gulde
Illinois Bar No. 6272325
B. David Fraser
Texas Bar No. 24012654
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6465 (JBM)
(817) 978-4927 (fax)
MageeJ@sec.gov
Attorneys for Plaintiff Securities and
Exchange Commission

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **In re:** | § |
| | § |
| | §   **Chapter 11 Case** |
| | § |
| **LIFE PARTNERS HOLDINGS, INC.,** | §   **Case No. 15-40289-rfn-11** |
| | § |
| | §   **Expedited Hearing Requested** |
| **Debtor.** | § |

### MOTION OF SECURITIES AND EXCHANGE COMMISSION UNDER
### 11 U.S.C. § 1104(a)  FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

The Securities and Exchange Commission ("SEC"), the largest unsecured judgment

creditor in this case, files this motion, pursuant to Sections 1104(a) and (c) of the Bankruptcy

Code, for appointment of a Chapter 11 trustee for Life Partners Holdings, Inc. ("LPHI" or the

"Debtor"),  and respectfully states the following:

# I.
## PRELIMINARY STATEMENT

This case is in a unique procedural posture.  From the outset,  the Debtor has admitted that in order to assure that  management "(i) complies with federal securities laws and regulations, and (ii) does not declare any dividends, make distributions to shareholders, or otherwise dissipate assets while in bankruptcy,"  the Court needs to appoint a fiduciary to "exercise a certain degree of oversight and control" over the Debtor.  *See* "Debtor's Motion for Entry of an Order Appointing Tracy A. Bolt as Examiner with Expanded Powers," dated January 21, 2015 (Dkt. #6) ("Debtor's Examiner Motion").  In other words, the Debtor effectively concedes that current management cannot be trusted to protect the interests of the estate or its creditors, or to follow the law, and therefore needs a court-supervised fiduciary to keep watch on management's actions.  This is an astonishing admission by management that seeks to stay in possession.  The SEC wholeheartedly agrees that LPHI's management cannot be trusted and that a fiduciary must be appointed  to protect the interests of all constituencies.  But we contend that the appropriate fiduciary is an independent Chapter 11 Trustee selected by the Office of the United States Trustee.  Given management's extensive history of self-enrichment, illegal conduct and utter disdain for interests other their own, half-hearted measures like those suggested by the Debtor simply will not suffice.

In addition to the concerns already admitted by the Debtor, the SEC submits that cause exists for immediate appointment of a Chapter 11 Trustee based on the following facts, which are discussed in detail below:

- After trial, the United States District Court for the Western District of Texas (Nowlin, J.) (the "District Court"), found by order entered on December 2, 2014 (the "Final Judgment Order"), that LPHI, its CEO, President and single-largest shareholder Brian Pardo ("Pardo") and another controlling officer, Scott Peden ("Peden") committed "egregious" and "serious violations" of the federal

securities laws, and that they "knowingly – or at least recklessly – violated the securities laws of this nation."[1]

- The District Court also found that "oversight and compliance at Life Partners were non-existent," and that "[e]ven after all of the problems it has had with regulators and the outcome of the trial in this case, LPHI remains a company run and controlled by a man with a history of violating the securities laws, and overseen by an apparently blind Board of Directors. Plainly, the court would be naïve to assume that anything will change at Life Partners absent intervention by outside forces." Final Judgment Order, Ex. A, at 7.

- It is undisputed that Debtor paid to Pardo Family Holdings, Ltd., an offshore family trust located in Gibraltar and controlled by Pardo, more than $34 million in dividends since 2002 including over $12.5 million between February 2011 and August 2014 when the Debtor's current assets were reduced from $35.3 million to $5.2 million, and distributed approximately $1.4 million since LPHI lost at trial in the SEC Action. In addition, Debtor failed to withhold required taxes in 2008, 2009, 2010 when it paid dividends to the offshore Pardo Trust. Ex. B, LPHI's 1/14/15 Form 10-Q, at p. 25. As evidenced by the proposed scope of the Debtor's Examiner Motion, LPHI's management has no intention of seeking to avoid or even investigate its prepetition dividends.

- The non-stop distribution of dividends combined with sizeable salaries and bonuses to Pardo and Peden is extraordinary in the face of rapidly declining revenues of the company, and the general decline in the market for life settlements; the issuance of dividends has likely substantially contributed to the Debtor's current desperate financial condition.

- Due to its mismanagement, LPHI is now resorting to require its retail investors to pay administrative policy maintenance fees to maintain their investment interests on pain of "sever[ing] them from the system and all communications with us as well." See Pardo Letter of 10/14/14, attached hereto as Ex. C; Dallas Morning News 11/22/14, "Death Bet Investors Ambushed by Surprise Fees," attached hereto as Ex. D; see also Declaration of Clyde Jones, attached hereto as Ex. E. LPHI admits in SEC filings that this newly imposed "ministerial fee," and not its profit from operations, is far and away its largest source of income. Investors who have not paid this additional unexpected fee have been, and continue to be, denied access to information about their investments.

- This administrative fee is being collected by LPI Financial Services, Inc. ("LPFSI"), a newly formed subsidiary of Life Partners, Inc. ("LPI"), which itself is the Debtor's wholly-owned subsidiary and which is also the Debtor's sole source of revenue. Notwithstanding that the District Court found that LPHI and

---

[1]    See Final Judgment Order, entered December 2, 2014 in SEC v. Life Partners Holdings, Inc., et al., 12-cv-33-JRN (W.D.Tex.) at pp. 1-2 & n.1, attached hereto as Exhibit A.

LPI are one and the same, and the fact that the new fees represent LPI's largest source of revenues by far, Pardo did not cause LPI and LPFSI to file for bankruptcy. Accordingly, LPI and LPFSI are continuing to collect and spend these fees without any oversight or control whatsoever.

- After entry of the Final Judgment Order, Pardo has demonstrated disdain for the rule of law, the district court, and the basis for the verdict and final judgment. His inability to appreciate his prior violations indicates that he poses a serious risk for investors and creditors, and there is a risk of future violations if he is permitted to run the company while LPHI serves as debtor in possession. In recorded public statements to LPHI's sales staff, Pardo characterized the verdicts against LPHI, Pardo and Peden as "minor" and "the equivalent of a traffic ticket in the securities world." *See* Declaration of Senior Trial Counsel J. Magee Transcribing Pardo's Post-Judgment Quotes, attached hereto as Ex. F. Pardo further questioned the District Court's competence by calling it, among other things, "a crazy, out of left field, bizarre ruling," containing "ridiculous fines and sanctions," and stating his belief that the SEC, and not Judge Nowlin, wrote the opinion and that Judge Nowlin "signed it without probably looking at it." *See Id.*

- LPHI admitted in a press release that it filed for bankruptcy protection as an end-run around the District Court's jurisdiction to avoid the appointment of a receiver, stating "[t]he Securities and Exchange Commission had filed a motion with the Federal trial court to appoint a receiver for the Company. Faced with this possibility and having received no other protection requested from the Federal trial court, the Company elected to seek protection under Chapter 11 in order to avoid the appointment of a receiver"). *See* 1/20/15 LPHI Press Release, attached hereto as Ex. G. The record shows that Pardo and Peden are singularly interested in remaining in control of the Company. But the record shows them to be inappropriate fiduciaries for creditors and shareholders.

## II.
## FACTS

### A.      The Final Judgment Order

On December 2, 2014, after a trial by jury, the District Court entered the Final Judgment Order, finding that LPHI violated Section 13(a) of the Securities Exchange Act of 1934 ("Exchange Act") by filing forms with the SEC that contained materially false statements and/or omissions of fact, and also finding that Pardo and Peden aided and abetted LPHI's violations of Section 13(a) and also violated Rule 13a-4 of the Exchange Act [17 C.F.R. § 240.13a-14] by knowingly filing false and/or misleading certifications with quarterly or annual reports filed with

the SEC.  *See* Ex. A.  The District Court found that Peden's and Pardo's serious misconduct

warranted permanent injunctions against further violations.  *Id.*  The Debtor was ordered to pay

$15 million in disgorgement and $23.7 million in civil penalties, whereas Pardo and Peden were

ordered to pay $6 million and $2 million, respectively, in civil penalties.[2]

The jury found that LPHI, Pardo and Peden committed fraud by violating Section

17(a)(1) of the Exchange Act in connection with the offer or sale of securities.  *See* 2/3/14

Verdict Form, attached hereto as Ex. H.  Although the Court set aside that verdict because it

determined that LPHI's and Pardo's securities fraud was committed during a time that was

outside of the temporal scope of the SEC's Section 17(a) charge, the Court nonetheless found

that "[t]he record did indeed contain evidence that Defendants knowingly—or at least

recklessly—violated the securities laws of this nation."  Final Judgment Order at 4, n.1.

The Court further found facts that go to the heart of LPHI's management's lack of

competence to stay in possession.  For example, the Court found

> "LPHI, Pardo, and Peden deprived the investing public of information that is needed to make an informed decision about whether to invest in Life Partners.  Given that disclosure is the basis of American Securities law, these are serious violations."

Final Judgment Order at 3. It also found "a great deal of evidence . . . that Defendants

understood that Life Partners may not have been complying with the company's legal

obligations," but nonetheless "resisted any change of course" by, for example, Pardo's

"threaten[ing] to sue his own auditor unless it signed off on LPHI's accounting methods" after

the outside auditor informed Pardo that "it could not sign off on LPHI's financial disclosures due

to its belief that LPHI's accounting practices were not in compliance with GAAP."  Final

Judgment Order at 4.

---

[2]  On January 16, 2015, the District Court denied all parties' motions to alter or amend the judgment under FED. R. CIV. P. 59(e) and entered a standalone Final Judgment against Debtor, Pardo, and Peden reiterating the relief ordered in its prior Final Judgment Order, attached hereto as Ex. I.

Importantly, the Court noted the lack of oversight and compliance by LPHI's management and Board of Directors, notwithstanding a history of securities issues with the SEC and the Colorado Securities regulator.  Notwithstanding LPHI's "ouster from the Colorado market," the District Court found that "oversight and compliance at Life Partners were non-existent."  Final Judgment Order, Ex. A, at 5.  Noting that Mr. Pardo controls the Board of Directors of LPHI, the Court found that

> So far as the Court can tell, nothing has changed at LPHI as a result of the failures that are the subject of this case, and the Court can only assume that this is because Pardo [who holds a 51% stake in LPHI] does not want anything to change.  Even after all of the problems it has had with regulators and the outcome of the trial in this case, LPHI remains a company run and controlled by a man with a history of violating the securities laws, and overseen by an apparently blind Board of Directors.  Plainly, the Court would be naïve to assume that anything will change at Life Partners absent intervention by outside forces."

*Id.* at 6-7.

**B.      The Company's Issuance, and Pardo's Receipt, of Millions of Dollars in Dividends During the Litigation Has Contributed to the Company's Current Insolvency.**

LPHI's public filings confirm a steady but sharp decline in LPHI's total and current assets:[3]

| Balance Sheet Date | Cash and Cash Equivalents | Total Current Assets |
|---|---|---|
| 2/28/11 | $27.6 million | $35.3 million |
| 2/29/12 | $11.4 million | $18.5 million |
| 2/28/13 | $7.5 million | $15.7 million |
| 2/28/14 | $6.1 million | $8.4 million |
| 8/31/14 | $3.06 million | $5.2 million |

It is undisputed that LPHI recognizes income from life settlements at the time settlement closes; *i.e.*, when the investor purchases his or her interest in a life insurance policy.  It is also undisputed that, whereas LPHI brokered six settlements in the third quarter of last year, it closed

---

[3] *See* LPHI's Forms 10-K for FYs 2011—2014, http://ir.lphi.com/sec.cfm?DocType=Annual&Year= , and October 15, 2014 Form 10-Q for the period ended August 31, 2014, http://ir.lphi.com/sec.cfm?DocType=Quarterly&Year=.

only two this year. *See* 1/14/15 10-Q, Ex. B, at 18. Without the inclusion of the newly assessed administrative fees charged to retail investors beginning in the most recent quarter but assessing charges dating back to September 2013 (as explained more fully *infra* at pp. 9-11), the Company would have suffered a net loss of $2.6 million. *Id.*. The Company recognizes that the SEC's action has impacted demand for the Company's services, and a "general decline in the life settlement markets." *Id.* at 19, 21. Moreover, "recurring operations are not currently generating sufficient cash to support operations." *Id.*

Despite steeply declining assets, a downturn in its business, and falling stock prices, Pardo testified at trial in the SEC Action that LPHI has issued dividends every quarter since 2007. *See* 1-28-14pm D.Ct. Tr., attached hereto as Ex. J, p. 5; *see also* http://ir.lphi.com/dividends.cfm. LPHI paid out more than $68 million in dividends between February 2, 2002 and September 17, 2014 without missing a quarter. *See* http://ir.lphi.com/dividends.cfm. Since the SEC Action was filed, LPHI has issued nearly $15 million in dividends, including more than $2.7 million in three separate dividends issued *after* the jury returned its verdicts against the Debtor, Pardo and Peden. *Id.* And yet, now that the SEC has a substantial judgment, LPHI is cash-poor, cannot secure a bond to stay execution of the District Court's judgment pending its appeal, and has sought relief in bankruptcy – on the eve of the District Court's hearing on its Emergency Motion for Appointment of Receiver no less, which hearing neither Debtor nor its counsel attended.[4]

Importantly, Pardo admitted at trial that Pardo Family Holdings, Ltd. – the family trust he directs and which is located offshore in Gibraltar ("Pardo Trust") – owns more than half of

---

[4] Western District of Texas Magistrate Judge Andrew Austin presided over a January 21, 2014 hearing on Pardo and Peden's motions to set supersedeas bond and the SEC's emergency motion for appointment of receiver. Judge Austin refrained from deciding the SEC's motion to appoint receiver in favor of the agency first seeking the same or similar remedy herein. It is undisputed that neither LPHI nor its bankruptcy counsel attended or participated in the hearing.

LPHI's stock and, whenever LPHI issues dividends, the Pardo Trust receives more than half of

the funds.  *See* 1-28-14pm D.Ct. Tr., attached hereto as Ex. J, at p. 5.[5]  Hence, the Pardo Trust

has received more than $34 million since February 2, 2002, including $7.5 million since the SEC

filed its case in January 2012, and $1.4 million just since Debtor, Pardo, and Peden lost at

trial.  There is no doubt this money is for Pardo's benefit.  For example, during just the time

period of November 2010 through June 2011, transfers totaling $1.4 million were made for the

benefit of Pardo's personal companion.  [See financial transfer records attached hereto as Ex. X].

Equally troubling, LPHI failed to withhold taxes on dividends paid to the Pardo Trust in 2008,

2009, and 2010, as required by 26 U.S.C. § 1461.[6]  LPHI also continues to pay Pardo and

Peden's sizeable salaries and bonuses,[7] though each of them claimed extreme financial hardship

before the District Court and asked the Court to relieve them of their obligation to pay the

judgments, or post any bond securing the judgments, entered against them.  *See* Pardo and

Peden's respective motions to Set Amount and Type of Security Pending Appeal, filed under

seal over the SEC's opposition in the District Court. [See Case No. 1:12-cv-00033-JRN-AWA

Docket Nos. 328 and 326].

**C.     LPHI's Management is Incompetent to Stay in Possession.**

    **1.     The District Court Found Pardo's Hand-Picked Audit Committee Chair to be "Profoundly Dishonest or Amazingly Uninformed."**

---

[5] Pardo is the beneficial owner of the Pardo Trust which means he has "sole or shared power to vote or dispose of the stock."  *See* http://www.nasdaq.com /investing/glossary/b/beneficial-owner.  Pardo admitted at trial that Peden acted as the Pardo Trust's attorney-in-fact.  *See* D.C. Trial Tr., 1-28-14pm Tr., at pp. 8-9, attached hereto as Ex. K; D.C. Tr. Ex. G-435, attached hereto as Ex. L.  He further admitted that he exercises the shareholder vote for the Pardo Trust, has authority to act for the Pardo Trust and has directed transactions of LPHI stock by the Pardo Trust. *See* D.C. Trial Tr. 1-28-14pm at pp. 11-12, 13-14, attached hereto as Ex. M.; D.C. Trial Ex. G-209, attached hereto as Ex. N.

[6] http://files.shareholder.com/downloads/LPHI/3714485070x0xS1144204-14-61250/49534/filing.pdf , at p. 16

[7] Pardo was paid $667,261 in salary and bonuses in FY 2014 according to LPHI's July 2, 2014 Proxy Statement, which omits any reference to Peden's executive compensation.  Peden was paid $204,528 in FY 2013.

Indeed, it is business as usual at LPHI regardless of the jury's verdicts in the SEC Action,

the Final Judgment Order, and the company's dire financial circumstances.  LPHI has made no

changes to its roster of officers and directors: Pardo is still CEO and Chairman of LPHI's Board

of Directors, and Tad Ballantyne, whom the District Court found to be "a man whose testimony

revealed him to be either profoundly dishonest or amazingly uninformed about the company

whose shareholders he has a fiduciary responsibility to protect," (Final Judgment Order, Ex. A,

at 6), is still a Director, Chairman of its Audit Committee, and a member of the Compensation

Committee.  *See http://lphi.com/Officers.htm.*

> **2.      LPHI Imposed a New Fee on its Retail Investors on Pain of Severing Them From Their Investments to Make up for its Revenue Shortfall, and has Kept Those Revenues Outside of the Jurisdiction of the Court.**

Since losing at trial, LPHI has announced *one* key change in Life Partners' business

model.  On October 14, 2014, Pardo informed retail investors of their newly-created obligation

to pay administrative policy maintenance fees in order to maintain their investment interests.  *See*

Letter of October 14, 2014, Ex. C.  In response to unrest among the thousands of retail investors

due to the new fee, Pardo told *The Dallas Morning News* that, if investors fail to pay the fees,

"we will sever them from the system and all communications with us as well."  *See* Dallas

Morning News Article, Ex. D.  Thus, LPHI's retail investors face the likelihood that LPHI will

follow through on its clear threat to cut off investors' life settlement interests.  Indeed, LPHI has

already cut off many investors' access to their online accounts and caused them to abandon their

property interests.  *See, e.g.,* Declaration of Clyde Jones, attached hereto as Ex. E; Declaration of

Magdalena Stovel, attached hereto as Ex. O.

LPHI admits that LPHI's far-and-away largest current source of income ($4,399,591 for

the third quarter of fiscal year 2015 ended November 30, 2014) is derived from its newly devised

"ministerial fee" now charged to every single one of its retail investors. *See* 1/14/15 LPHI

Form10-Q, Ex. B, at p. 18. LPHI further admitted that, "without this billing, [they] would have

realized a net loss, before taxes, of ($2,687,719) for the Third Quarter of this year." *Id.* This

practice may itself be improper and appears to flow from the very misconduct at issue in the SEC

Action. Certainly, the fee was not presented or disclosed to retail investors when they purchased

Life Partners' uniquely illiquid investments. *See* Declarations of Marshall Amis, Kathy

Hellstrom, Clyde Jones, and Paula Wingate, attached hereto as Ex. P, Q, E, and R, respectively.

And the fee – truly a ransom against retail investors' property interests – is the central issue in a

recent lawsuit filed by investors. *See* Amended Original Petition filed in the 414th Judicial

District Court of McLennan County, Cause No. 2014-4564-5, styled *William S. Eastwood,*

*Russell J. Bowman and Kristina A. Bowman v. Life Partners, Inc. & LPI Financial Services,*

*Inc.*, attached hereto as Ex. S. This fee, of course, is the result of LPHI's knowing sale of life

settlements with underestimated life expectancies. As the District Court found, Life Partners

sold life settlements they could foresee would fail to mature within the timeframe represented to

investors and, now, it is requiring those investors to pony up additional fees to maintain their

investments – in addition to their unanticipated but considerable, ongoing premium obligations

just to maintain the policies – lest their interests be deemed "abandoned" by Life Partners and

resold to new investors as another revenue stream for the Debtor.

Equally important is the fact that this fee is being collected by LPFSI and paid to LPI,

the Debtor's operating subsidiary that is the only source of the Debtor's revenues and which

Pardo has not put into Chapter 11, notwithstanding the fact that the District Court found that

LPHI and LPI are one and the same. *See* D.Ct. Order, dated November 19, 2013, attached hereto

as Ex. T, at pp. 4-5 Right now, LPFSI and LPI are continuing to collect, and spend, those fees without any oversight or control whatsoever.

> **3.     LPHI's Actions Have Harmed its Public Shareholders and its Retail Investors.**

In filings in the SEC Action, LPHI argued that "[t]he SEC has not identified anyone who has 'already been injured' by LPHI's actions." *See* D.Ct. Doc. 347, LPHI's Response in Opposition to Emergency Motion for Appointment of Receiver, attached hereto as Ex. U, at p. 4. This statement is, unfortunately, not surprising.  After all, Pardo has touted that the jury's verdict amounted to a "traffic ticket" and that the Court's Final Judgment is a "crazy, out of left field, bizarre ruling" that he is confident Judge Nowlin did not himself write, but was somehow duped by his law clerk and the Commission into signing.  *See* Pardo's Post Judgment Statements, Ex. F. These statements alone are compelling evidence that Pardo is not fit to lead LPHI (or any public company) and cannot be trusted to protect the interests of current or future investors or Debtor's creditors.  Additionally, as the jury found and the Court upheld, Pardo and Peden lied to everyone outside of LPHI about their use of materially misstated life expectancies.  *See* D.Ct. Doc. 247, pp. 30-31; D.Ct. Doc. 279, pp. 11-12, attached hereto as Ex. V and W, respectively. The District Court was explicit about who was harmed by this conduct: both Life Partners' retail investors and LPHI's shareholders (who, ironically, "obtained a windfall on the backs of LPI retail customers' ignorance" until "the music finally stopped").   Final Judgment Order, Ex. A, at pp. 10-11.

Finally, Pardo's recent statements about the jury verdict and the final remedies judgment show that he has no appreciation for his violations of the securities laws, or for the importance of those laws.  *See* Pardo's Post Judgment Statements, Ex. F.

In view of the foregoing, creditors, investors and all parties-in-interest have been, and continue to be, injured and put at risk under the stewardship of LPHI's current management.

### III.
### THE COURT SHOULD ORDER THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

**A.**    **Cause Exists To Appoint Based on the District Court's Findings and the Debtor's Dissipation of Assets by Paying Dividends to Insiders.**

Section 1104(a)(1) of the Bankruptcy Code requires the appointment of a Chapter 11 trustee, for cause. Once the court finds by clear and convincing evidence that cause exists under Section 1104(a)(1), the appointment of a trustee becomes mandatory; there is no discretion. *In re Cajun Electric Power Coop, Inc.*, 191 B.R. 659, 661 & 662 (Bankr. M.D. La. 1995), *aff'd*, 74 F.3d 599 (5th Cir. 1996). *See also In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ("11 U.S.C. § 1104(a) mandates appointment of a trustee when the bankruptcy court finds cause").

Cause includes, but is not limited to, fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management. *See* 11 U.S.C. §1104(a)(1). Such fraud, dishonesty, incompetence or gross mismanagement may be demonstrated "either before or after the commencement of the case." *See In re Oklahoma Refining Company*, 838 F.2d 1133, 1136 (10th Cir. 1988). Because the examples of cause in Section 1104(a)(1) are non-exclusive, cause may exist, even in the absence of fraud, dishonesty, incompetence or gross mismanagement. *Cajun*, 191 B.R. at 661. Moreover, "a determination of cause is within the discretion of the court." *Sharon Steel*, 871 F.2d at 1226.

Here, cause exists for the appointment of a Chapter 11 trustee under Section 1104(a)(1). The District Court made explicit findings that LPHI lacks competent oversight by current management and that it "would be naïve to assume that anything will change at Life Partners absent intervention by outside forces." Final Judgment Order at p. 7. Moreover, the Debtor's

prepetition payment of dividends, most of which went to insiders, while the Debtor's current

assets were diminishing is further evidence of gross mismanagement of the Debtor.   In *Sharon*

*Steel*, the Third Circuit affirmed appointment of a Chapter 11 Trustee where the bankruptcy

court found that the debtor's bankruptcy was caused, at a minimum, by the debtor's "careless

management practices" which included payment of substantial sums to insiders for no

consideration at a time when the company was cash poor, and transfers of cash and assets to

affiliates which the debtor failed to seek to recover in the bankruptcy case. *Sharon Steel*,  871

F.2d at 1226-27.  Pardo's recent statements about the verdict and the district court's orders

demonstrate a lack of appreciation for his prior misconduct, and underscore that he is an

inappropriate leader of a debtor that has sought to reorganize under Chapter 11 as debtor in

possession.  The Debtor's attempt to install a cherry-picked examiner with limited duties while

its current management stays in possession is simply insufficient to overcome the factual record

here, which amply demonstrates cause to appoint a Chapter 11 Trustee. *See Sharon Steel*, 871

F.2d at 1227 (rejecting debtor's argument that the court's authorization of the creditors'

committee to sue to recover the transfers and the installation of a new chief operating officer

obviated the need for a Chapter 11 Trustee).

**B.     Appointing A Chapter 11 Trustee Is In The Best Interests Of The Debtor's
         Creditors.**

Even if cause does not exist to appoint a trustee under Section 1104(a)(1), the Court

possesses broad discretion to appoint a trustee "if such appointment is in the interests of

creditors, any equity security holders and other interests of the estate." See 11 U.S.C. 1104(a)(2).

*See also Sharon Steel*, 871 F.2d at 1226 ("Subsection (a)(2) also creates a flexible standard,

instructing the court to appoint a trustee when doing so addresses 'the interests of the creditors,

equity security holders, and other interests of the estate.").  When analyzing whether a trustee is

in the creditors' best interests, the court should consider both the protections that will be afforded

by the appointment of a trustee and the relative cost that is associated with the appointment.  *See*

*Cajun*, 191 B.R. 659, 661.  But when the need for a trustee becomes unavoidable to protect

parties in interest, then the cost/benefit factor carries little weight, since the goal of protecting

creditor interests is paramount to the goal of minimizing costs to the estate.  *In re SunCruz*

*Casinos, LLC*, 298 B.R. 821, 829 (Bankr. S.D. Fla. 2003) ("If the appointment of a trustee

becomes unavoidable in the protection of parties in interest, the cost/protection factor must

necessarily supersede a cost/benefit factor, even to the extent of a depletion of the estate.")

(citations and internal quotations omitted).

Here, the Debtor has already admitted that an independent fiduciary should be appointed

to alleviate concerns by the SEC, other creditors, and parties-in-interest.  A Chapter 11 Trustee is

necessary to instill confidence that the Debtor properly exercises its fiduciary duties to the estate.

### IV.
### CONCLUSION

The District Court correctly anticipated the need for an independent fiduciary to be

appointed over LPHI in its remedies order: "the Court would be naïve to assume that anything

will change at Life Partners absent intervention by outside forces." Final Judgment Order at p. 7.

Since the SEC case began, LPHI has stripped the company of millions in dividends that enriched

the Pardo Trust.  Since the verdicts were returned against LPHI, Pardo and Peden in the SEC

Action, they continued to issue dividends and claimed – and today continue to claim – total

victory at trial and complete exoneration by Judge and Jury.  And even after the District Court's

harsh criticisms of LPHI and its unchanged Board of Directors, Defendants ignore the fact that

they violated important federal securities laws and went to great efforts to persuade the public,

through its trusted sales force, that it is business as usual at Life Partners because the Court's

"ridiculous" Final Judgment represents a mere "speeding ticket" that the District Court did not itself consider or write and which will surely be overturned.  Finally, when Pardo decided to put LPHI into bankruptcy to avoid the appointment of an equity receiver, he ensured that he could continue to control LPI, LPFSI and their income stream outside of the purview of the bankruptcy court by failing to include them in the bankruptcy filing.  Simply put, LPHI, Pardo and Peden have revealed themselves to be altogether unwilling to accept responsibility, admit wrongdoing, and work to protect the interests of their creditors, public shareholders, and their retail investors who they intentionally misled and harmed and are continuing to harm today.

For all of the foregoing reasons, the SEC respectfully requests that the Court (i) order the appointment of a Chapter 11 Trustee over LPHI and (iii) order such other and further relief as is just.

Dated: January 23, 2015                                    Respectfully submitted,

*/s/ Jessica B. Magee*
Jessica B. Magee
Texas Bar No. 24037757
Matthew J. Gulde
Illinois Bar No. 6272325
B. David Fraser
Texas Bar No. 24012654
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6465 (JBM)
(817) 978-4927 (fax)
*MageeJ@sec.gov*
Attorneys for Plaintiff Securities and
Exchange Commission

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 23, 2015, Plaintiff's counsel conferred with counsel for Defendants in a good-faith attempt to resolve the matter by agreement.  Counsel for Plaintiff certifies that Defendants are opposed to the relief sought by this motion.

*/s/ Jessica B. Magee*
Jessica B. Magee

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel who have registered with the Court.  All others were served a true and correct copy by overnight delivery via United Parcel Services.

S. Cass Weiland
Robert A. Hawkins
Squire Patton Boggs (US) LLP
2000 McKinney Ave., Suite 1700
Dallas, Texas  75201
*Attorneys for Defendant*
*R. Scott Peden*

Jay Ethington
The Law Firm of Jay Ethington
3131 McKinney Ave., Suite 800
Dallas, Texas  75204
*Attorney for Defendant*
*Brian D. Pardo*

J. Robert Forshey
Jeff P. Prostok
Forshey & Prostok, LLP
777 Main Street, Suite 1290
Fort Worth, Texas  76102
*Attorneys for Debtor*
*Life Partners Holdings, Inc.*

*/s/ Jessica B. Magee*
Jessica B. Magee

Service List
Life Partners Holding, Inc.
#5729

Life Partners Holding, Inc.
Brian D Pardo
204 Woodhew Drive
Waco TX 76712

US Trustee
Elizabeth Ziegler
1100 Commerce St Rm 976
Dallas TX 75242-1011

AFCO
5600 N River Rd #400
Rosemont IL 60018-5187

AFCO
PO Box 4795
Carol Stream IL 60197-4795

Aquirre Law APC
501 Broadway #800
San Diego CA 92101

Alexander Dubose Jefferson & Townsend
515 Congress Ave #2350
Austin TX 78701

Alexander Dubose Jefferson & Townsend
1844 Harvard Street
Houston TX 77008

Baker & McKenzie LLP
2001 Ross Ave #2300
Dallas TX 75201

Broadridge ICS
PO Box 416423
Boston MA 02241-6423

C Alfred Mackenzie
PO Box 2003
Waco TX 76703

Horwood Marcus & Berk
500 W Madison St #3700
Chicago IL 60661

HSPG & Associates PC
5400 N Grand Blvd #330
Oklahoma City OK 73112

Internal Revenue Service
Dept of the Treasury
4050 Alpha Road
Farmers Branch TX 75244

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia PA 19101-7346

Kevin Buchanan & Associates
G Kevin Buchanan
900 Jackson St #350
Dallas TX 75202

Law Office of Douglas M Berman
4925 Greenville Ave #200
Dallas TX 75206

Law Offices of Trey Martinez Fischer
IBC Centre
130 E Travis St #425
San Antonio TX 78205

McLennan County Tax Office
PO Box 406
Waco TX 76703

Meadows Collier
Attorneys at Law
901 Main St #3700
Dallas TX 75202

Mediant Communications
PO Box 29976
New York NY 10087-9976

Squire Patton Boggs (US)
S Cass Weiland / Robert A Hawkins
200 McKinney Ave #1700
Dallas TX 76703

Squire Patton Boggs (US)
2550 M St NW
Washington DC 20037

Strasburger & Price LLP
PO Box 50100
Dallas TX 75250-9989

The NASDAQ Stock Market
One Liberty Plaza
New York NY 10006

US Security & Exchange Commission
B David Fraser
801 Cherry St #1900 Unit 18
Fort Worth TX 76102-6882

US Security & Exchange Commission
Jessica B Magee
801 Cherry St #1900 Unit 18
Fort Worth TX 76102-6882

US Securities & Exchange Commission
Matthew J Gulde
801 Cherry St #1900 Unit 18
Fort Worth TX 76102-6882

Whitley Penn LLP
8343 Douglas Ave #400
Dallas TX 75225

Heygood Orr & Pearson
James Craig Orr Jr / John Chapman
2331 W NW Hwy 2nd Floor
Dallas TX 75220

James D Hurst ESQ
1202 Sam Houston Avenue
Huntsville TX 77340

Michael J Legamaro PC
2241 N Leavitt Street
Chicago IL 60647

Hagens Berman Sobol Shapiro LLP
Steve W Berman
1918 Eighth Ave #3300
Seattle WA 98101

Hagens Berman Sobol Shapiro LLP
Reed Kathrein / Peter Borkon
715 Hearst Ave #202
Berkeley CA 94710

Shields, Britton & Fraser PC
John D Fraser
5401 Village Creek Drive
Plano TX 75039

Pomerantz Haudek Grossman & Gross LLP
Marc Gross / Jeremy Lieberman
100 Park Ave  26th Floor
New York NY 10017-5516

Glancy Binkow & Goldberg LLP
Lionel Glancy / E Sams / R Prongay
1801 Avenue of the Stars #311
Los Angeles CA 90067

Harwood Feffer LLP
Samuel Rosen
488 Madison Ave  8th Floor
New York NY 1002

Advance Trust & Life Escrow Services LTA
J David Dickson
Beard Kultgen Brophy et al
220 South Fourth St
Waco TX 76701

The Law Firm of Jay Ethington
Jay Ethington
3131 McKinney Ave #800
Dallas TX 75204

Streusand Landon & Ozburn LLP
Sabrina L Streusand
811 Barton Springs Rd #811
Austin TX 78704

# EXHIBIT G



 Print page   Email page   Download PDF

« Previous Release

## Life Partners Holdings Files for Chapter 11 Bankruptcy Protection

WACO, Texas--(BUSINESS WIRE)-- Life Partners Holdings, Inc. (Nasdaq GS: LPHI), parent company of Life Partners, Inc., today announced that it has filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") on January 20, 2015. The Company will continue to operate its business as "debtor-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and the orders of the Bankruptcy Court. Its primary operating subsidiary, Life Partners, Inc., will continue to operate as a life settlement provider.

In connection with the Chapter 11 case, Life Partners Holdings has also filed for the appointment of a Chief Restructuring Officer who will oversee the implementation of the Company's plan for reorganization.

The Company elected to seek protection under Chapter 11 while it pursues an appeal of a $46 million judgment against the Company and two of its executive officers in favor of the Securities and Exchange Commission as previously disclosed in the Company's latest quarterly filing with the Commission.

The Securities and Exchange Commission had filed a motion with the Federal trial court to appoint a receiver for the Company. Faced with this possibility and having received no other protection requested from the Federal trial court, the Company elected to seek protection under Chapter 11 in order to avoid the appointment of a receiver which could have liquidated the Company and prevented the effective prosecution of the appeal.

In connection with the bankruptcy filing, the Company is seeking customary authority from the Bankruptcy Court that will enable it to continue to operate and for its subsidiaries to continue to serve its clients.

As of January 20, 2015 the Company and its subsidiaries had approximately $18.9 million in assets, including approximately $2.9 million of cash and cash equivalents and approximately $352,000 of certificates of deposit.

Brian Pardo, CEO of Life Partners Holdings, Inc., stated, "After careful consideration, the Board of Directors unanimously concluded that filing for Chapter 11 was the appropriate course of action for the Company, given the importance of continuing to pursue the appeal of the final judgment in the SEC's case as well as the prosecution and resolution of other pending litigation. We continue to believe in life settlements as a valuable and attractive asset class and we remain committed to continuing to serve our clients. In fact, during 2014, we saw over $71 million paid out to thousands of LPI clients and over $200 million in payouts since 2001. And, we expect to see additional payouts in the coming years. This was a strategic move intended to protect the value of the Company and its shareholders from the damaging litigation which we believe would otherwise have destroyed all shareholder value. We look forward to working towards the successful and prompt emergence of the Company from Chapter 11."

The Company indicated that it expects to provide additional details with respect to the Chapter 11 plan of reorganization as soon as they are available. Such a plan may involve the sale of one or more subsidiaries of Life Partners Holdings or other Company assets with Bankruptcy Court approval.

**Life Partners Holdings, Inc.** is the parent company of the world's oldest company engaged in the secondary market for life insurance, commonly called "life settlements." Since its incorporation in 1991, Life Partners, Inc. has completed over 162,000 transactions for its worldwide client base of over 30,000 high net worth individuals and institutions in connection with the purchase of over 6,500 policies totaling over $3.2 billion in face value.

**Safe Harbor**

SAFE HARBOR STATEMENT UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995: This news release contains forward-looking statements as that term is defined in the Private Securities Litigation Reform Act of 1995. These forward-looking statements include statements that relate to the intent, beliefs, plans or expectations of the Company or its management, as well as any estimates or projections for the outcome of events that have not yet occurred at the time of this news release. All statements other than statements of historical fact are forward-looking statements. All forward-looking statements made by the Company are predictions and not guarantees of future performance, involve material risks and uncertainties and are subject to change based on factors that are difficult to predict and that may be beyond the Company's control. Such factors include, but are not limited to: those described under the "Risk Factors" section and elsewhere in the Company's most recent Quarterly Report on Form 10-Q filed with the Securities Exchange Commission on January 14, 2015, as well as in other past filings with the Securities and Exchange Commission; the risk that the Company may not be able to successfully execute its strategic steps, including for reasons outside of the Company's control; risks and uncertainties relating to the bankruptcy filing by the Company, including but not limited to, (i) the Company's ability to obtain Bankruptcy Court approval with respect to motions in the Chapter 11 cases including maintaining strategic control as debtor-in-possession, (ii) the ability of the Company and its subsidiaries to prosecute, develop and consummate a plan of reorganization, (iii) the effects of the Company's bankruptcy filing on the Company and on the interests of various constituents, (iv) Bankruptcy Court rulings in the Chapter 11 cases as well the outcome of all other pending litigation and the outcome of the Bankruptcy case in general, (v) the length of time the Company will operate under the Chapter 11 protection, (vi) risks associated with third party motions in the Chapter 11 cases, which may interfere with the Company's ability to develop and consummate a plan of reorganization, (vii) the potential adverse effects of the Chapter 11 proceedings on the Company's liquidity or results of operations, (viii) the potential adverse effects of the Chapter 11 proceedings on regulatory and licensing agencies of our primary operating subsidiary, Life Partners, Inc., and (ix) increased legal costs to execute the Company's reorganization, and other risks and uncertainties. The Company cautions that the trading in the Company's securities during the pendency of the Chapter 11 cases is highly speculative and poses substantial risks. A plan of reorganization could result in the Company's outstanding common stock to be diluted or extinguished and the holders of the Company's common stock may not receive any consideration. Accordingly, the Company's future performance and financial results may differ materially and/or adversely from those expressed or implied in any such forward-looking statements. You should not place undue reliance on forward-looking statements. The Company will not undertake to publicly update or revise its forward-looking statements even if experience or future changes make it clear that any projected results expressed or implied therein will not be realized.

LPHI-G

Life Partners Holdings, Inc.
Andrea Atwell, 254-751-7797
Shareholder Relations
info@LPHI.com
www.lphi.com

Source: Life Partners Holdings, Inc.

News Provided by Acquire Media

Close window | Back to top

# EXHIBIT 10

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 27 (Bankr. N.D. Tex. Jan. 26, 2015)

United States Department of Justice
Office of the United States Trustee
1100 Commerce Street
Dallas, Texas 75242
(214) 767-1080

Lisa L. Lambert,
For the United States Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | § |
| | § **Chapter 11 Case** |
| | § |
| **LIFE PARTNERS HOLDINGS, INC.,** | § **Case No. 15-40289-rfn-11** |
| | § |
| | § **Hearing Date: Jan. 26, 2015 at 2:30 pm** |
| **Debtor.** | § |

## UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DIRECTING
## THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

**TO THE HONORABLE RUSSELL F. NELMS,**
**UNITED STATES BANKRUPTCY JUDGE:**

The United States Trustee for Region 6 moves for an order directing the appointment of a

Chapter 11 Trustee based on cause and the best interests of the creditors. *11 U.S.C. § 1104(a).*

The United States Trustee would show:

### <u>Overview</u>

The United States District Court has entered a judgment finding that the Debtor's

management has repeatedly violated securities laws and has attempted to constrain its

independent auditors.  The board of directors and its audit committee ignored their fiduciary

responsibilities to monitor audit issues and remedy them.  While SEC allegations were pending

against the Debtor and even after the jury rendered an adverse judgment, the Debtor continued to

make large dividend payments, and these payments benefitted the 51% stockholder, a trust controlled by Pardo, the Debtor's chief executive officer who has repeatedly violated securities laws.  In an examiner motion, the Debtor has put the interest of creditors and other parties in interest in issue, 11 U.S.C. §1104(a)(2).  In addition, "cause" exists to appoint a trustee.  11 U.S.C. §1104(a)(1).   The motion to appoint an examiner with expanded powers should be denied, and a trustee should be appointed.

## **Jurisdiction**

1.     The Court has subject matter jurisdiction under 28 U.S.C. § 1334, 28 U.S.C. § 157(a)(1), and the standing order of reference.  Appointing a trustee or examiner impacts the case administration and therefore is a core matter that the Court has the power to resolve.  28 U.S.C. § 157(b)(2)(A).

2.     The United States trustee has standing to seek appointment of a trustee or examiner.  11 U.S.C. §§ 307, 1104.

## **Facts**

3.      In this case, the same facts are relevant when evaluating whether a trustee or examiner should be appointed, so the United States Trustee alleges the same facts here as in his Objection to Debtor's Examiner Motion.

4.     Life Partners Holding, Inc. (Debtor) is the parent company of Life Partners Inc. (LPI).  A question exists about veil piercing.  In SEC v. Life Partners Holding, Brian Pardo, and R. Scott Peden, the United States District Court found that the Debtor "and LPI effectively operate as a single entity."  *"SEC Judgment," p. 10; ECF No. 304 in 12-cv-33, United States District Court for the Western District of Texas*

5.      On Tuesday, January 20, 2015, the Debtor filed a voluntary petition under chapter 11 of

the Bankruptcy Code.  The Debtor listed 68 parties in its matrix, approximately $20 million in

assets, and $7,411,235 in liabilities.  In a footnote, the Debtor indicates the liabilities are based

on SEC filings made before the federal district court entered a judgment requiring the Debtor to

disgorge $15 million and pay a $23 million penalty to the SEC.  *Petition, ECF No. 1, Bankr. No.*

*15-40289.*

6.      The petition is signed by Brian D. Pardo ("Pardo"), the president and chief executive

officer of the debtor.

7.      The petition discloses that only one party holds more than five percent of the Debtor's

stock: Pardo Family Holdings Limited (PFHL).  In the December 2, 2014 SEC Judgment, the

Court found that Pardo or PFHL owns 51% of the Debtor's stock.  *SEC Judgment, p. 4. n. 7.*

8.      The United States Trustee solicited a committee and set the formation meeting for

Thursday, January 29, 2015.  In broad overview, the SEC alleges that the retail investors

purchased life insurance policies using erroneous actuarial data, so the retail investors are not

collecting funds.  The SEC Judgment notes that the *Wall Street Journal* reported policy holders

were living two and three times beyond projections.  *SEC Judgment, pp. 5-6, n. 2.*  The SEC

Judgment emphasizes that the retail investors, those who purchased life insurance policies as

opposed to public investors, could be the primary victims of faulty disclosures.  *SEC Judgment,*

*p. 10.* These retail investors are not listed in the list of twenty largest creditors, but they may be

included on the matrix, and the United States Trustee has discovered some pending litigation.

The United States Trustee is attempting to reach these retail investors so they can inform the

United States Trustee whether they believe they have standing to participate on a committee.

***The Bankruptcy Filing Results from SEC Judgment and Receivership Motion***:

9.      Before the bankruptcy filing, a jury returned a verdict in favor of the SEC.  On December 2, 2014, the United States District Court entered a judgment requiring the Debtor to disgorge $15 million and pay $23.7 million in civil penalties.  *SEC Judgment, p. 20* .

10.      The SEC sought appointment of a receiver, and that motion was set for hearing the day after the bankruptcy filing.  The matter was abated so this Court could consider the scope of the automatic stay.

11.      The Debtor's press release acknowledges that the bankruptcy filing resulted from the desire to appeal the judgment and avoid a receiver. *http://ir.lphi.com/releasedetail.cfm?ReleaseID=892086, Exhibit G to SEC Motion to Appoint a Trustee*.

***SEC Judgment Contains Findings Relevant to Examiner or Trustee Issues:***

12.      Summarizing the SEC Judgment as to the Debtor, the following findings are relevant:

    a.   Pardo threatened Ernst & Young, the independent auditors, with suit if they did not approve the Debtor's accounting, and Pardo did not investigate the auditor's findings, *SEC Judgment, p. 4*;

    b.   Pardo agreed to a permanent injunction against violating section 13 in 1991, *SEC Judgment, p. 4;*

    c.   In 2007, Colorado obtained an agreed judgment about securities violations, and the Debtor and LPI were ousted from Colorado, *SEC Judgment, pp. 4-5;*

    d.   Despite this history, Pardo did not increase vigilance regarding securities law compliance; "He is a repeat offender who shows no signs that he has learned his lesson;" *SEC Judgment, pp. 5, 14.*

    e.   The Debtor committed securities fraud but not during the specific time period that the SEC alleged, *SEC Judgment, p. 4 n. 1.*

    f.   Pardo received escalated civil penalties for providing, "knowing and substantial assistance in LPHI's filing of seventeen separate, false reports, and his knowingly false certifications thereof, as discrete violations of five separate provisions of the Exchange Act: Section 13(a), Rule 12b-20, Rule 13a-1, Rule 13a-13, and Rule 13a-14, for a total of 85 individual violations."

    g.   Ballantyne, a member of the board of directors as well as the audit committee, did not monitor financial publications and testified he was unaware of (i) a *Wall Street Journal* article questioning whether the Debtor was systematically defrauding retail investors, (ii) the public auditors requiring Pardo to retract statements, *SEC Judgment, pp. 5-6.*

***Public Filings Contain Information Relevant to Appointment of Trustee or Examiner:***

13.    According to the website, Pardo, Peden, and Ballantyne remain three of the Debtor's five directors.  http://ir.lphi.com/directors.cfm.

14.    Pardo remains chief executive officer.  Peden remains general counsel and secretary. Peen is listed as president, but Pardo signed the petition as president. http://ir.lphi.com/management.cfm.

15.    PFHI, Pardo's offshore family trust, received $12.5 million between February 2011 and August 2014.  The SEC alleges an additional $1.4 million has been distributed since the jury verdict.  *See Jury Verdict, dated February 2, 2014, ECF No. 258 in SEC Action; quarterly dividend press release dated September 15, 2014, providing for $.05 dividend on September 17, 2014,http://ir.lphi.com/releasedetail.cfm?ReleaseID=868660; 10-Q for unaudited nine months*

ending November 30, 2014, reflecting 2014 dividend of 2,797,236 and 2013 dividend of

$3,729,569. (As 51% equity holder, PFHI would have received half of each dividend.)

### Legal Analysis and Argument

30.　　The United States Trustee is charged with monitoring the federal bankruptcy

system. *See* 28 U.S.C. § 586(a)(3), *See also United States Trustee v. Columbia Gas Sys., Inc.* (*In*

*re Columbia Gas Sys., Inc.*) 33 F.3d 294, 295-96 (3d Cir. 1994).

31.　　Before confirmation, the Court "shall order the appointment of a trustee . . . for

cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the

debtor by current management, either before or after the commencement of the case, or similar

cause." 11 U.S.C. §1104(a)(1).   In addition, by adding appointment of a trustee as a remedy in

section 1112, "cause" also may be factors traditionally resulting in dismissal or conversion.  11

U.S.C. §1112(b)(1). Here, appointing a trustee is in the interest of creditors because the filing is

in bad faith.  Alternatively, the Court must appoint a trustee "if such appointment is in the

interest of the creditors, any equity security holders, and other interests of the estate."  11 U.S.C.

§ 1104(a)(2).

32.　　The Fifth Circuit has indicated that the burden of proof for appointment of a

trustee is "clear and convincing" evidence, but the Court later adopted the dissent's opinion.

*Cajun Elec. Co. v. Louisiana Elec. Co.* (*In re Cajun Electric Power Co-Op, Inc.*), 69 F.3d 746,

*on reh'g*, 74 F.3d 599 (5th Cir. 1996) (adopting dissent).[1]

33.　　The duties of a trustee are defined in section 1106, and the Court has the ability to

tailor some of them.  11 U.S.C. § 1106(a).

---

[1]  In *Grogan v. Garner*, the United States Supreme Court held that the burden of proof for dischargeability fraud
actions was preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991).  In reaching this holding,
the Supreme Court cataloged both bankruptcy and non-bankruptcy fraud statutes and held that Congress generally
imposed a preponderance standard for fraud in civil proceedings.

34.     The "cause" to appoint an examiner or a trustee may be a reason other than the enumerated factors. *Oklahoma Ref. Co. v. Blaik (In re Oklahoma Ref. Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988); *cf. Little Creek Dev. Corp. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Corp.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (defining "cause" in context of dismissal statute).

35.     For example, courts have appointed trustees or examiners when the debtor's insiders have conflicts of interest arising from the sale of the Debtor's assets.  In *Cajun Electric*, the Fifth Circuit affirmed the appointment of a trustee, in part, because the co-operative members were interested in purchasing part or all of Cajun Electric's assets.  *Cajun Elec. Power Cooperative, Inc. v. Central Louisiana Elec. Co., Inc. (In re Cajun Elec. Power Cooperative, Inc.)*, 69 F.3d 746, 751 (5th Cir. 1995) (Garza, J., dissenting), *adopted as majority opinion on reh'g*, 74 F.3d 599 (5th Cir. 1996).  The Fifth Circuit held that "a trustee may be the only effective way to pursue reorganization" when the management has cross-purposes. *Cajun Elec.*, 69 F.2d at 751.

*Cause exists to appoint a chapter 11 trustee:*

36.     Here, both express statutory standards and the common law case standards for "cause" exist.  Specifically, "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor" and bad faith exist under the facts of this case.[2]

37.     While the Debtor was not found guilty of securities fraud, the District Court emphasized that the evidence reflected that the Debtor was guilty of securities fraud but not during the time periods alleged by the SEC.  *SEC Judgment, p. 4, n. 1.*

---

[2]  "The United States trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive officer . . . participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting."  11 U.S.C. §1104(e).

38.    The District Court specified that the Pardo, the Debtor's chief executive officer, has had a history of both federal and state securities violations since 1991 and that he has behaved recklessly.  *SEC Judgment, pp. 14-15.*

39.    The record regarding the lack of oversight by the board of directors and audit committee reflects both incompetence and gross mismanagement.  *SEC Judgment*, *pp. 5-7.*

40.    Other "cause" exists to appoint a trustee because the management has conflicts of interest in assessment of tort actions and avoidance actions against the insiders.

*It is in the best interests of creditors to appoint a chapter 11 trustee.*

41.    Appointment of chapter 11 trustee is also in the interests of creditors, equity security holders, and other interests of the estate.  The Court should direct the appointment of a chapter 11 trustee to serve the "interests of creditors, any equity security holders, and other interests of the estate."  11 U.S.C. §1104(a)(2).

42.    First, it is in the best interest of the creditors to have an independent trustee to assume control over the estate in order to evaluate any alter ego claims, avoidance actions, and other tort claims.

43.    Second, it is in the best interest of the creditors and other parties-in-interest to have accurate financial information.  Accurate financial information insures parties understand the facts of the case and avoids post-petition liabilities for violations.  Like the information provided to investors in securities filings, the information provided in a bankruptcy case depends on affirmative disclosure.  On a lengthy history of decades of non-compliance by the chief executive officer and a record of lack of oversight by the board of directors, a trustee serves the best interests of creditors and non-insider investors.

For the foregoing reasons, the United States Trustee requests the Court to

(1) order the United States Trustee to appoint a Chapter 11 Trustee; or

(2) grant to the United States Trustee such other and further relief as is just and

proper.

Dated: January 26, 2015

Respectfully Submitted,
WILLIAM T. NEARY
UNITED STATES TRUSTEE

*/s/Lisa L. Lambert*
Lisa L. Lambert
Assistant U.S. Trustee, TX 11844250
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas  75242
(214) 767-1080

**Certificate of Service**

I certify that I sent copies of the foregoing document on January 26, 2015, to the attached service lists by first class United States mail and by ECF notification to those listed below.

*/s/  Lisa L. Lambert*
Lisa L. Lambert

J. David Dickson
Beard Kultgen Brophy Bostwick Dickson
220 South 4th Street
Waco TX 76701
Dickson@thetexasfirm.com

Laurie Spindler Huffman
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons, Ste 1000
Dallas TX 75207
Laurie.Spindler@publicans.com

Jessica B. Magee
U.S. Securities and Exchange Commission
801 Cherry Street, Unit 18, Suite 1900
Fort Worth TX 76102
mageej@sec.gov

J. Robert Forshey
Forshey & Prostok, LLP
777 Main St., Suite 1290
Ft. Worth TX 76102
jrf@forsheyprostok.com

Jeff P. Prostok
Forshey & Prostok, LLP
777 Main St., Suite 1290
Ft. Worth TX 76102
jpp@forsheyprostok.com

Rod L. Poirot
Cavazos Hendricks Poirot & Smitham, P.C.
900 Jackson St., Suite 570,
Dallas TX 75202
rpoirot@chfirm.com

Service List
Life Partners Holding, Inc.
#5729

Life Partners Holding, Inc.
Brian D Pardo
204 Woodhew Drive
Waco TX 76712

US Trustee
Elizabeth Ziegler
1100 Commerce St Rm 976
Dallas TX 75242-1011

AFCO
5600 N River Rd #400
Rosemont IL 60018-5187

AFCO
PO Box 4795
Carol Stream IL 60197-4795

Aquirre Law APC
501 Broadway #800
San Diego CA 92101

Alexander Dubose Jefferson & Townsend
515 Congress Ave #2350
Austin TX 78701

Alexander Dubose Jefferson & Townsend
1844 Harvard Street
Houston TX 77008

Baker & McKenzie LLP
2001 Ross Ave #2300
Dallas TX 75201

Broadridge ICS
PO Box 416423
Boston MA 02241-6423

C Alfred Mackenzie
PO Box 2003
Waco TX 76703

Horwood Marcus & Berk
500 W Madison St #3700
Chicago IL 60661

HSPG & Associates PC
5400 N Grand Blvd #330
Oklahoma City OK 73112

Internal Revenue Service
Dept of the Treasury
4050 Alpha Road
Farmers Branch TX 75244

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia PA 19101-7346

Kevin Buchanan & Associates
G Kevin Buchanan
900 Jackson St #350
Dallas TX 75202

Law Office of Douglas M Berman
4925 Greenville Ave #200
Dallas TX 75206

Law Offices of Trey Martinez Fischer
IBC Centre
130 E Travis St #425
San Antonio TX 78205

McLennan County Tax Office
PO Box 406
Waco TX 76703

Meadows Collier
Attorneys at Law
901 Main St #3700
Dallas TX 75202

Mediant Communications
PO Box 29976
New York NY 10087-9976

Squire Patton Boggs (US)
S Cass Weiland / Robert A Hawkins
200 McKinney Ave #1700
Dallas TX 76703

Squire Patton Boggs (US)
2550 M St NW
Washington DC 20037

Strasburger & Price LLP
PO Box 50100
Dallas TX 75250-9989

The NASDAQ Stock Market
One Liberty Plaza
New York NY 10006

US Security & Exchange Commission
B David Fraser
801 Cherry St #1900 Unit 18
Fort Worth TX 76102-6882

US Security & Exchange Commission
Jessica B Magee
801 Cherry St #1900 Unit 18
Fort Worth TX 76102-6882

US Securities & Exchange Commission
Matthew J Gulde
801 Cherry St #1900 Unit 18
Fort Worth TX 76102-6882

Whitley Penn LLP
8343 Douglas Ave #400
Dallas TX 75225

Heygood Orr & Pearson
James Craig Orr Jr / John Chapman
2331 W NW Hwy 2nd Floor
Dallas TX 75220

James D Hurst ESQ
1202 Sam Houston Avenue
Huntsville TX 77340

Michael J Legamaro PC
2241 N Leavitt Street
Chicago IL 60647

Hagens Berman Sobol Shapiro LLP
Steve W Berman
1918 Eighth Ave #3300
Seattle WA 98101

Hagens Berman Sobol Shapiro LLP
Reed Kathrein / Peter Borkon
715 Hearst Ave #202
Berkeley CA 94710

Shields, Britton & Fraser PC
John D Fraser
5401 Village Creek Drive
Plano TX 75039

Pomerantz Haudek Grossman & Gross LLP
Marc Gross / Jeremy Lieberman
100 Park Ave   26th Floor
New York NY 10017-5516

Glancy Binkow & Goldberg LLP
Lionel Glancy / E Sams / R Prongay
1801 Avenue of the Stars #311
Los Angeles CA 90067

Harwood Feffer LLP
Samuel Rosen
488 Madison Ave   8th Floor
New York NY 1002

Advance Trust & Life Escrow Services LTA
J David Dickson
Beard Kultgen Brophy et al
220 South Fourth St
Waco TX 76701

The Law Firm of Jay Ethington
Jay Ethington
3131 McKinney Ave #800
Dallas TX 75204

Streusand Landon & Ozburn LLP
Sabrina L Streusand
811 Barton Springs Rd #811
Austin TX 78704

# EXHIBIT 11

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 76 (Bankr. N.D. Tex. Feb. 5, 2015)

Joseph J. Wielebinski
Texas Bar No. 21432400
Jay H. Ong
Texas Bar No. 24028756
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
E-mail:  jwielebinski@munsch.com
E-mail:  jong@munsch.com

(PROPOSED) ATTORNEYS FOR
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | Chapter 11 |
| | § | CASE NO. 15-40289-rfn-11 |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| | § | |
| | § | **Hearing Date:  February 9-10, 2015** |
| **DEBTOR.** | § | **Hearing Time:  9:30 a.m. (Central)** |
| | § | |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS': (I) JOINDER IN MOTIONS OF THE SECURITIES AND EXCHANGE COMMISSION AND UNITED STATES TRUSTEE FOR APPOINTMENT OF CHAPTER 11 TRUSTEE; (II) OBJECTION TO DEBTOR'S (EMERGENCY) MOTION FOR ENTRY OF AN ORDER APPOINTING TRACY A. BOLT AS EXAMINER WITH EXPANDED POWERS; AND (III) OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER <u>AUTHORIZING IMPLMEMENTATION OF CHIEF RESTRUCTURING OFFICER</u>

TO THE HONORABLE RUSSELL F. NELMS, U.S. BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") duly appointed in the

above-captioned chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>") of Life Partners Holdings,

Inc. (the "<u>Debtor</u>" or "<u>LPHI</u>") hereby files its: *(I) Joinder* ("<u>Joinder</u>") *in and to the Motions filed*

*by the Securities and Exchange Commission* ("<u>SEC</u>") *and the United States Trustee* ("<u>UST</u>") *for*

*the Appointment of a Chapter 11 Trustee; (II) Objection to the Debtor's (Emergency) Motion for*

*the Entry of an Order Appointing Tracy A. Bolt as Examiner With Expanded Powers; and (III)*

*Objection to the Debtor's Motion for Entry of an Order Authorizing Implementation of Chief*

*Restructuring Officer* (this "Joinder and Related Objections"), and in support hereof would

respectfully show the Court as follows:

# I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Bankruptcy Case and Joinder and Related

Objections pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Bankruptcy Case in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Joinder and Related Objections

constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The legal predicates for the relief sought herein are sections 105 and 1104 of Title

11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "Bankruptcy Code"),

and Rule 2007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# II. BACKGROUND

3.      On January 20, 2015 ("Petition Date"), the Debtor filed with this Court its

voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby initiating its

Bankruptcy Case.

4.      As of the date of filing of this Joinder and Related Objections, the Debtor remains

in control of its business and affairs as a debtor-in-possession pursuant to sections 1107 and

1108 of the Bankruptcy Code.

5.      The Debtor is a holding company whose sole business and income is derived from

the operations of its wholly owned subsidiary, Life Partners, Inc. ("LPI"), which is not in

bankruptcy.  *See Debtor's (Emergency) Motion for the Entry of an Order Appointing Tracy A.*

*Bolt as Examiner With Expanded Powers* [Docket No. 6] ("Examiner Motion"), at ¶ 7; *Motion*

*of SEC Under 11 U.S.C. § 1104(a) for Appointment of a Chapter 11 Trustee* [Docket No. 14]

("SEC's Trustee Motion"), at p. 10.

6.      LPI is primarily in the business of facilitating "life settlement" transactions of life insurance policies, under which an insured's interests in death benefits provided by the policy are sold to a purchaser or purchasers interested in investing in such benefits at a discount. Examiner Motion, at ¶ 8. Through such transactions, insureds are able to monetize their interests in such policies, which may be spread into fractional interests among purchaser-investors. *Id*. LPI appears to act as a broker in facilitating sales of policies and as a service provider to escrow companies who, upon information and belief, rely upon investor and other policy information provided by LPI in order to administer policies and prevent their lapse. Examiner Motion, at ¶¶ 9, 10.

**A.      The Examiner Motion**

7.      On the Petition Date, the Debtor filed its Examiner Motion, seeking the appointment of Tracy A. Bolt ("Bolt") of the firm of BDO USA, LLC ("BDO"), to serve as Examiner.  In addition to seeking Bolt's appointment as examiner and authorization for him to retain professionals to be paid by the estate, the Debtor proposes that Bolt be charged to: (i) advise the Debtor regarding its compliance with applicable securities laws, including reporting requirements, and report to the Court regarding same; (ii) investigate and analyze LPHI's operations and financial condition and report back to the Court regarding same; and (iii) advise the Court immediately in the event the Debtor declares dividends, makes distributions to shareholders, or otherwise dissipates assets.  Examiner Motion, at ¶ 16.

8.      While the Examiner Motion does, in a wholly conclusory and general fashion, address Bolt's "disinterestedness" to serve as an examiner in the Bankruptcy Case, no details

regarding any prior relationships of Bolt or BDO with the Debtor or any related persons are included with the Motion.

9.     On January 23, 2015, the Debtor filed Bolt's *Declaration in Support* of the Examiner Motion [Docket No. 20] ("Bolt Declaration").

10.     Given that the role of an examiner to is to investigate a debtor's affairs, which investigation is – by the express provisions of section 1104(c) – customarily directed towards mismanagement, irregularity and potential malfeasance by a debtor's management, a request by a debtor-in-possession for the appointment of an examiner at the inception of its case is unusual, to say the least. This is especially concerning where the Debtor specifically requests that an examiner be installed for the purpose of ensuring that Debtor's management does not cause the Debtor to commit any potential misuse of estate property in violation of section 363 of the Bankruptcy Code.[1]

11.     Here, this unusual dynamic results entirely from: (i) the Debtor's and its senior management's actions which led to the SEC Judgment (as defined below); and (ii) the Debtor's need to preempt and prevent the appointment of a Chapter 11 trustee to act as a truly independent fiduciary of the estate, knowing that the Debtor's current circumstances and recent pre-petition history make a very compelling case for such a trustee.

12.     On January 23, 2015, the SEC filed its Objection to the Examiner Motion [Docket No. 12] (the "SEC Objection"). Therein, the SEC details that the Bankruptcy Case was substantially precipitated by the SEC's enforcement efforts in connection with that certain civil enforcement action styled *SEC v. Life Partners Holdings, Inc., et al.,* 12-cv-33-JRN (W.D.

---

[1] Of course, an examiner under the Debtor's proposal would be powerless to prevent or  respond to same other than informing the Court.

---

Tex.) (the "SEC Action"), and specifically to stay a hearing in the SEC Action scheduled for

January 21, 2015, to consider the appointment of a receiver over the Debtor.  SEC Objection, at

p. 1.

**B.      The SEC's and UST's Motions Seeking the Appointment of a Trustee**

13.      Later that day, the SEC filed the SEC's Trustee Motion, wherein the SEC details

the subject matter of the SEC Action, involving allegations of numerous, repeated and knowing

violations of federal securities laws by the Debtor, and specifically by the Debtor's controlling

principal, Brian Pardo ("Pardo"), and other senior management of the Debtor's, including Scott

Peden and Tad Ballentyne.[2]  SEC's Trustee Motion, at pp. 2-4.

14.      The District Court's Final Judgment entered on December 2, 2014 in the SEC

Action, a copy of which is included with the SEC's Trustee Motion ("SEC Judgment"),

memorializes the jury's findings in the SEC Action that the Debtor, Pardo and Peden committed

fraud in violation of Section 17(a)(1) of the Securities Act of 1933 and knowingly or recklessly

filed numerous false and misleading statements in violation of Section 13(a) of the Securities

and Exchange Act of 1934, and that Pardo was guilty of additional violations for having

knowingly certified false public reports by the Debtor with the SEC.  SEC Judgment, at pp. 1-2.

Accordingly, the District Court enjoined the Debtor, Pardo and Peden from future securities

laws violations, ordered the Debtor to disgorge $15 million, and ordered civil penalties against

the Debtor in the amount of $23.7 million, against Peden in the amount of $2 million, and

against Pardo for over $6 million.  *See Id.*, at pp. 20-21.

---

[2] Pardo Family Holdings, Ltd., an offshore trust controlled by Pardo, owns over 50% of the Debtor, while Pardo acts
as the Debtor's President, CEO, and a member of its Board of Directors.  *See* SEC Judgment (as defined herein), at
pp. 5-7; SEC's Trustee Motion, pp. 3, 7-8.

15.     The SEC's Trustee Motion further alleges that, despite serious financial and
operational difficulties, the Debtor has declared a dividend to its equity holders every quarter
since 2007, totaling over $68 million from 2007-2014, and including nearly $15 million
following the initiation of the SEC Action, and more than $2.7 million issued after the jury
returned its verdicts against the Debtor, Pardo and Peden. SEC's Trustee Motion, at p. 7.

16.     As further alleged by the SEC, the Debtor has responded to these financial
difficulties by recently, unilaterally implementing a previously undisclosed "administrative fee"
charged against every single individual retail customer of the Debtor in order to maintain their
insurance policy investments.  SEC's Trustee Motion, at p. 9.  The Debtor apparently has
publicly declared that any investor who fails to pay such recurring fee will be entirely "locked"
out of the Debtor's systems and the Debtor's provision of information needed to maintain and
preserve their investments, and has begun to implement this threat.[3]  *Id.*  The SEC further
alleges that this practice may be improper, flows from the same misconduct at issue in the SEC
Action, and has already spawned investor litigation against the Debtor's operating subsidiaries.
*Id.*, at p. 10.  Absent this administrative fee, LPI operates at a loss.  *Id.*

17.     On January 25, 2015, the UST filed its Objection to the Examiner Motion [Docket
No. 25] (the "UST Objection").  Therein, the UST observes that the Debtor's Examiner Motion
at least implicitly concedes that the SEC Judgment implicates the enumerated cause set forth in
section 1104(a) for the appointment of a trustee, but attempts to define the remedy that should

---

[3] The Committee recognizes that the Debtor is a holding company and that all operations are conducted through the
Debtor's wholly owned subsidiary (or subsidiaries).  The Committee refers to these entities as the Debtor for
convenience and pursuant to the District Court's findings that LPHI and LPI operate as a single business
enterprise.

flow from that cause by self-selecting and proposing Bolt to serve instead as an examiner.  UST

Objection, at p. 2.

18.     Moreover, in addition to detailing the SEC Judgment and related request for a

receiver which precipitated the filing of this Bankruptcy Case, the UST further raises the issue

of substantial, potential estate causes of action as to which the circumstances indicate that

Debtor's existing management is highly conflicted and cannot be reasonably entrusted to

investigate, evaluate and pursue: (i) the possibility that the Debtor's or LPI's corporate veil may

be pierced; and (ii) the fact that Pardo Family Holdings received approximately $12.5 million

between February 2011 and August 2014, as well as an additional $1.4 million alleged by the

SEC to have been distributed following entry of the SEC Judgment.  UST Objection, at ¶¶ 2, 13.

In addition, the UST observes that Pardo and Peden continue to occupy their executive positions

with the Debtor and together with Ballentyne, continue to comprise a majority of the Debtor's

Board of Directors. *Id*., at ¶¶ 11-12.

19.     On January 26, 2015, the UST filed its *Motion for an Order Directing the*

*Appointment of a Chapter 11 Trustee* [Docket No.27] ("UST Trustee Motion" and collectively

with the SEC's Trustee Motion, the "Trustee Motions").  While the UST's Trustee Motion relies

upon the same foregoing bases for the SEC's and UST's objections to the Examiner Motion, the

UST further observes that the cause enumerated under section 1104 for the appointment of a

trustee is not exclusive, and such other cause may include bases  such as conflicts of interests of

insiders in estate assets.  UST Trustee Motion, ¶ 35.  Here, such conflicts would certainly arise

with respect to potential tort and avoidance actions against Pardo and other insiders of the

Debtor's. *Id*., at ¶ 40.

---

**C.    Additional Examiner Matters**

20.    Meanwhile, the Bolt Declaration filed on January 23, 2015, discloses that Bolt's partner at BDO (Mr. Johnson) was retained by the Debtor's litigation firm on a pre-petition basis to serve as an expert for the Debtor in the SEC Action, but did not actually testify.  Bolt Declaration, at ¶ 14(a).

21.    On January 25, 2015, the Debtor then filed its Reply in Support of its Examiner Motion [Docket No. 23] ("Debtor's Reply"), in which the Debtor attempts to diminish the magnitude of the SEC Judgment by characterizing it as only doing two things: (i) enjoining future violations; and requiring $38 million in disgorgement and civil penalties.  Debtor's Reply, at ¶¶ 1, 5-6.  As further characterized by the Debtor, the SEC notably "did not prevail on any of its securities fraud claims against the Debtor", the SEC Judgment does not enjoin the Debtor or LPI from operating, and it does not oust the Debtor's existing management.  *Id.*, at ¶ 1. Additionally, the Debtor contends that it disagrees with the District Court's findings and intends to appeal, but submits the Examiner Motion as a way to address the SEC's fraud allegations without unnecessarily detracting from the Bankruptcy Case, and would agree to specify that the Examiner may fully investigate fraud and mismanagement, as well as performing any other duties the Court may order.  *Id.*, at ¶¶ 1, 7, 10, 11.  Finally, the Debtor asserts a desperate, misleading and erroneous argument that, although not "necessary", the appointment of an examiner is mandatory under section 1104(c).  *Id.*, at ¶¶ 3, 12.

22.    The SEC responded to the Bolt Declaration with its supplemental objections filed on January 26, 2015 [Docket No. 28] ("Supplemental Objection").  Therein, the SEC complains of Bolt's failure to specify that the expert engagement generated billings of over $200,000 from the Debtor, that the subject matter of BDO's engagement expressly included issues of the

Debtor's compliance with SEC regulations, and that the District Court in the SEC Action had

excluded in part the expert testimony of BDO.  Supplemental Objection, at pp. 2-4.

### D.    The Debtor's CRO Motion

23.    On January 26, 2015, this Court held a preliminary hearing on the Debtor's

Examiner Motion, at which the Court determined to continue the hearing to February 9-10,

2015.

24.    On January 29, 2015, the Debtor filed its *Motion for Entry of an Order*

*Authorizing Implementation of Chief Restructuring Officer* [Docket No. 38] ("CRO Motion"),

seeking authorization to install an unidentified chief restructuring officer with "operational

control over the Debtor, as well as executive control over management."  CRO Motion, at ¶ 9.

25.    Although the Debtor's CRO Motion contains no proposed order, engagement

terms or other document to specify the precise terms of the proposed CRO's role and authority,

the Debtor includes a detailed list of the CRO's proposed managerial and oversight

responsibilities and authority, including but not limited to:  (i) oversight of operations, financial

reporting, and regulatory compliance; (ii) management and direction of professionals and

reporting activities; (iii) investigating and pursuing estate causes of action; and (iv) "evaluating"

the "administrative fee" newly being charged to the Debtor's customers.  CRO Motion, at ¶ 10.

It *appears* that the CRO would have virtually all of the powers of a Chapter 11 trustee, but

critically, there is no mention of any control over the Debtor's subsidiaries, and it appears that

the CRO would still be subject to the ultimate direction of the Debtor's equity interest holders,

led by Pardo.

26.    It is unclear whether the Debtor has abandoned its Examiner Motion and advances

the CRO motion in lieu of the relief requested in the prior Examiner Motion.  The Debtor makes

no effort to justify the relief requested in the CRO Motion on the specific facts of this case,

other than to assert that such relief falls within its reasonable business judgment. CRO Motion,

at ¶¶ 12-14. Indeed, while the Debtor goes to great lengths to provide case law citations for the

proposition that relief under section 363 of the Bankruptcy Code is based on sound business

judgment, the Debtor offers no examples of any such judgment in support of the Motion.

### III.  RELIEF REQUESTED AND MEMORANDUM IN SUPPORT

27.     The Committee joins in the Trustee Motions and objects to the Examiner Motion

(including joinder in the SEC Objection and UST Objection) and CRO Motion as pretextual,

preemptive, self-serving and inadequate attempts to diminish the compelling case here for the

appointment of a Chapter 11 trustee as a true estate fiduciary.

### B.     Joinder in Trustee Motions

28.     Contrary to the Debtor's misleading argument, section 1104 does not mandate the

appointment of an examiner under the circumstances of this case due to the Debtor meeting

certain specified debt levels set forth in section 1104(c).  Rather, that section expressly begins

with the clause, "If the court does not order the appointment of a trustee under this section…the

court shall order the appointment of an examiner….".  11 U.S.C. § 1104(c).  Thus, this statute

requires the appointment of an examiner in this case if the Court determines not to appoint a

trustee.  That structure therefore directs the Court to begin its analysis first by considering

whether to appoint a trustee in this case, as requested by the SEC, UST and Committee.

29.     Section 1104(a) of the Bankruptcy Code in pertinent part provides:

At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a trustee –

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(2).

30.     The enumerated "cause" under section 1104(a) is not exhaustive, and courts have wide latitude and discretion to determine whether cause exists under the circumstances. *In re Cajun Elec. Power Co-op., Inc.*, 191 B.R. 659, 661 (M.D. La. 1995); *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 473 (3d Cir. 1998). However, under the plain language of section 1104(a), and while the Committee acknowledges that the appointment of a trustee is considered extraordinary relief, once a court finds that cause exists (or that such an appointment is in the best interest of creditors, equity holders, and the estate), the appointment of a trustee is mandatory. *Cajun Elec. Power Co-op., Inc.*, 191 B.R. at 661.

31.     Here, contrary to the Debtor's attempts to diminish the significance of the SEC Judgment, and as this Court has recognized, a review of the District Court's opinion reveals shocking findings that the Debtor's management has recently committed and caused the Debtor to commit <u>repeated, knowing and reckless violations of securities laws</u> including the intentional

filing of false reports.  *See* SEC Judgment, at pp. 1-2, 4.  <u>This by itself, is cause under the express language of section 1104(a).</u>

32.     However, there is much more detail illuminating these concerns and establishing cause for the appointment of a trustee.  As cited by the SEC and UST, and as detailed in the SEC Judgment: (i) Pardo attempted to protect the pattern of violations he caused the Debtor to commit by expressly threatening his own auditor to approve the Debtor's accounting methods after it determined that the Debtor's accounting was not GAAP compliant; (ii) "Life Partners exhibited – at best – a casual attitude toward ensuring that it followed the law"; (iii) "Tad Ballantyne – a man whose testimony revealed him to be either profoundly dishonest or amazingly uninformed about the company whose shareholders he has a fiduciary responsibility to protect" remains on the Debtor's board; (iv) "Defendants committed serious violations of the nation's securities laws and the evidence more than suffices to establish that their conduct was- at the very least reckless; and (v) Pardo "is a repeat offender who shows no signs that he has learned his lesson."  Final Judgment, at pp. 4, 5, 13, 14.

33.     Of course, the Debtor has attempted to repeatedly tout the apparent fact that the SEC did not prevail on its claims for fraud by the Debtor and its management.  However, the District Court expressly recites in its SEC Judgment that the jury did, in fact, determine that the defendants in the SEC Action had committed securities fraud, but the District Court had no choice but to dismiss the claim solely because the SEC's allegations were insufficient to encompass that determination of securities fraud.  SEC Judgment, at pp. 1, 4 (note 1).

34.     While these foregoing findings and bases constitute cause within the meaning of section 1104 (which expressly contemplates both pre-petition <u>and</u> post-petition cause), it cannot

be ignored that the District Court has also already determined that if management is not displaced, future violations by the Debtor and its management are likely to occur:

> So far as the Court can tell, nothing has changed at LPHI as a result of the failures that are the subject of this case, and the Court can only assume that this is because Pardo does not want anything to change. Even after all of the problems it has had with regulators and the outcome of the trial in this case, LPHI remains a company run and controlled by a man with a history of violating securities laws, and overseen by an apparently blind Board of Directors. Plainly, the Court would be naïve to assume that anything will change at Life Partners absent intervention by outside forces.

Final Judgment, at p. 7.

35.     In entering its SEC Judgment and permanently enjoining the Debtor and its management from future violations of SEC regulations, the District Court expressly recognized that such injunctions may issue only where the evidence establishes a "reasonable likelihood" that a Defendant will engage in future violation of the securities laws. SEC Judgment, at 2-3 (citing *SEC v. Zale Corp.*, 650 F.2d 718, 720 ((5th Cir, 1981); *SEC v. Caterinicchia*, 613 F.2d 102 (5th Cir. 1980); *SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1973)).

36.     The District Court did issue that permanent injunction.  Therefore, the District Court has already determined that there is a reasonable likelihood that under existing management, the Debtor will commit future violations of securities laws, and has expressly based this determination on its prior findings confirming the pre-existing fraud, dishonesty, mismanagement, and incompetence of its current management.  Therefore, it is impossible to determine that cause does not exist in this case within the meaning of section 1104(a), for the appointment of a trustee, without collaterally attacking the determination of the District Court.[4]

---

[4] Doctrines of preclusion bar action when the foundation upon which the claims rest has already been litigated (or there has been a full and fair opportunity to litigate same).  *In re Earned Capital Corp.*, 331 B.R. 208, 225 (Bankr. W.D. Pa. 2005).  *See also In re Continental Airlines, Inc.*, 145 B.R. 404, 411 (D.Del. 1992) (distinguishing between claim preclusion and issue preclusion); *In re Super Van*, 92 F.3d 366, 370 n. 11 (5th Cir. 1996).

## C.     Additional Cause Exists to Appoint a Trustee Due to Animosity Between Management of the Debtor and the Debtor's Major Creditor Constituency

37.     Here, even apart from the culpability of the Debtor and its management for the fraud and repeated securities violations found by the District Court, cause exists to appoint a trustee in this case due to the acrimonious relationship of the Debtor with its major creditor groups, comprised of the SEC, and certain of the Debtor's retail customer investors who have been subjected to the Debtor's improper "administrative fee".

38.     As alleged by the SEC, this administrative fee is substantially the source of the Debtor's income, and the Debtor cannot operate at a profit absent these fee collections.  SEC's Trustee Motion, at pp. 9-10.  At the same time, the SEC contends that these fees appear to be improper and stem from the same illegal conduct as is at issue.  Certain of the Debtor's investor customers are seeking to consolidate litigation against the Debtor regarding these fees into a class action.  If these allegations are true, the Debtor may have no ability to reorganize absent these fees.

39.     As explained by the Third Circuit Court of Appeals in *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d. Cir. 1998), animosity and acrimony among a debtor's management and its material creditor groups constitutes an independent basis to find cause for the mandatory appointment of a trustee pursuant to section 1104, where these conflicts exceed the normal conflicts inherent in the debtor creditor relationship.  *Id*., at 472-73.  There, the Court of Appeals dealt with a similar situation as here, where material groups of estate

---

Issue preclusion, also referred to as collateral estoppel, prevents the same parties (or their privies) from relitigating issues that were litigated and decided in a prior action. *In re Supertrail Mfg. Co., Inc.*, 383 Fed.Appx. 475, 479 (5th Cir. 2010).  It applies where: (i) the facts / issues sought to be litigated in the second action were fully and fairly litigated in the first action regardless of whether the claims are the same; (ii) those facts / issues were essential to the judgment in the first action; and (iii) the parties or their privies were adversaries in the first action. *In re Plunk*, 481 F.3d 302, 307 (5th Cir. 2007); *Matter of Miller*, 156 F.3d 598, 602 (5th Cir. 1998).

---

creditors had "deep-seeded" animosity towards the controlling equity interest holder of the debtor, as is the case here.  *Id.*, at 473. *See also In re Cajun Elec. Power Coop., Inc.*, 74 F.3d 599, 600 (5th Cir. 1996) (adopting on rehearing the opinion of dissent in 69 F.3d at 751), cert. denied, 519 U.S. 808, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996).

40.    Applying the foregoing authorities to the instant case reveals an archetypal case for the appointment of a trustee based on the acrimonious relationship between existing management – ultimately controlled by Pardo – and major estate creditors.  Needless to say, the SEC, as the apparent creditor with the most substantial stake in the estate, has an extremely acrimonious relationship with Pardo.  Also as detailed hereinabove, the Debtor's relationship with its retail customers is absolutely fundamental to the Debtor's prospects for rehabilitation but the Debtor is involved in litigation by certain of these customers over its newly charged "administrative" fees.

41.    While recognizing that matters arising under section 1104 are fact specific inquiries, the Third Circuit Court of Appeals further held that such circumstances constitute cause under section 1104 where the debtor's controlling equity interest holder would be required to cause the debtor to evaluate its owner's interests and claims as part of a plan of rehabilitation – an "awkward" dynamic resulting in creditors' lack of confidence that these controlling parties could act as estate fiduciaries.  *Marvel Entertainment Group, Inc.*, 140 F.3d at 473. (further explaining that cause exists to appoint a trustee where conflicts between creditors and management render management unable to resolve same).  *See also Cajun Elec.*, 74 F.3d at 600; *In re Colorado-Ute Electric Ass'n, Inc.*, 120 B.R. 164, 176 (D. Colo. 1990) (conflict between

cooperative's customers/members and board, combined with lack of creditor confidence were grounds for the appointment of a trustee).[5]

42.    Here, the circumstances certainly indicate that Debtor's management is hopelessly conflicted.  Issues in this Bankruptcy Case will likely include potential estate claims: (i) against the Debtor's managers and controlling persons for damages resulting from the same improper conduct as is at issue in the SEC Action; and (ii) for the avoidance and recovery of tens of millions in dividends paid to its equity holders, including Pardo's family trust, and potentially other transfers made to insiders.  Given the District Court's very recent findings, it would be more than difficult for any objective person to entrust Pardo and the Debtor's other managers to fully and properly investigate and prosecute such claims.

**D.    Objections to Examiner and CRO Motions**

43.    As this Court is well aware, and as indicated in section 1104, the role of examiners and chief restructuring officers in bankruptcy cases are generally exclusive of an estate trustee.  The circumstances clearly show that the Debtor seeks the appointment of an examiner and/or CRO here, in order to prevent appointment of a true estate fiduciary with power to administer the estate.

44.    They further show that an examiner is not appropriate here.  It is incredible that the Debtor itself would immediately assert that an examiner is warranted to investigate the

---

[5] The authorities supporting this proposition are legion.  *See In re United States Mineral Products Co.*, 105 F. App'x 428, 430 (3d. Cir. 2004) (bankruptcy court properly appointed trustee *sua sponte* based on "…contentiousness and acrimonious nature of the relationship among the parties, the lack of trust, [and] the lack of progress...."); *In re Celeritas Technologies, LLC*, 446 B.R. 514, 519 (Bankr. D. Kan. 2011) ("Acrimony between debtor and creditor which impedes the reorganization effort is cause to appoint a Chapter 11 trustee."); *In re Taub*, 427 B.R. 208, 227-28 (Bankr. E.D.N.Y. 2010) (creditor acrimony with management, or lack of confidence in management's ability to appropriately progress restructuring, are each cause for trustee appointment); *In re Eurospark Industries, Inc.*, 424 B.R. 621, 632-33 (Bankr. E.D.N.Y. 2010) (discussing management deadlock as independent, "no fault" basis for appointment of trustee); *In re New Towne Development, LLC*, 404 B.R. 140, 149 (Bankr. M.D. La. 2009) (same).

Debtor's own financial affairs and operations, to ensure compliance with the law, and to report

to the Court if the Debtor improperly disposes of estate assets, all the while simultaneously

contending that no such concerns are valid.  If the Debtor requires an examiner for ANY such

purposes, that indicates that a trustee is instead warranted.

45.     Of course, the traditional role of an examiner is to investigate, and as set forth in

section 1104, this investigation often revolves around whether the circumstances justify a

trustee appointment.  *See* 11 US.C. § 1104(c). It is for this reason that the Bankruptcy Code now

prohibits examiners from acting as trustees in the same case, because examiners being primarily

investigative in function, Congress determined that it would be inequitable to allow an examiner

to profit from its own investigation and findings through a resulting trustee engagement.   *In re*

*Big Rivers Elec. Corp.*, 355 F.3d 415, 430 (6th Cir. 2004).

46.     Here however, as detailed above, the District Court has through binding

adversary litigation already made the requisite findings to resolve any such issue.  No further

investigation is warranted.

47.     In addition, the Debtor's proposal that Bolt serve as examiner further reveals that

the Debtor is not interested in installing a truly independent fiduciary, but rather, to keep control

within the same existing management group notwithstanding what optical measures are

implemented.  As this Court is well aware, conflicts matters in bankruptcy are extremely strict,

and conflicts are imputed across an entire professional firm.  *See In re American Intern.*

*Refinery, Inc.*, 676 F.3d 455, 462 (5th Cir. 2012); *In re ProEducation Intern., Inc.*, 587 F.3d 296,

300 (5th Cir. 2009).  Here, the Debtor's proposal to have Bolt ensure the Debtor's regulatory

compliance is incredible.  Bolt's partner at BDO has already been retained by the Debtor in

connection with the SEC Action to provide expert testimony to the effect that the Debtor had

not committed any such regulatory violations, a position that was rejected by the District Court. Thus, Bolt will be under an actual conflict to make any determination regarding regulatory compliance that is not consistent with BDO's position in the SEC Action, and that position has already been found to be judicially unreliable (and erroneous).

48.      The Debtor's CRO Motion is simply more of the same.   It proposes an unidentified CRO to exercise "*operational* control over the Debtor, as well as *executive* control over management."  While it appears that the Debtor is requesting that its proposed CRO be given meaningful authority, these nuanced passages are, in fact, reflective of the Debtor's disingenuous approach.  Nowhere does the Debtor propose a truly <u>independent</u> CRO who would not be subject to the directives of the Debtor's equity interest holders or Board of Directors in exerting operational control over the Debtor or executive control over management.  A CRO who remains subject to direction or limitations imposed by the Debtor's equity holders (controlled by Pardo) will not resolve the concerns justifying its appointment.  If the Debtor is seriously proposing to implement a truly independent CRO then it should simply be given control over the Debtor and its management without any need for these vague and potentially limiting modifiers of "operational" and "executive" control over management.  In other words, it should effectively have the powers of a trustee.  Instead, these modifiers only raise the possibility, perhaps as the Debtor intends, that the CRO exercising "operational" and "executive" control will still be subject to the directives of the Debtor's Board (controlled by Pardo, Peden and Ballentyne) and/or the directives of the Debtor's equity interest holders.

49.      The Debtor is clearly, through the Examiner Motion and CRO Motion, seeking to create an alternative to a trustee that appears to provide the estate with many of the same

benefits and protections, but not that which is most meaningful: true independence from the Debtor's controlling shareholder and management.

50.     Despite the Debtor's attempts, none of the justifications offered detract from the mandatory structure of section 1104 regarding trustee and examiner appointments.  In fact, they seem to promote the case for a trustee.  A debtor in possession's own management acknowledges that an examiner is warranted to investigate matters over which they themselves have presided without interruption.  It admits that the circumstances at least support the need for a compliance officer and to prevent dissipation of assets, at least for appearance purposes.  It now proposes to install a CRO.  Under the provisions of section 1104, this Court must now either appoint a trustee or an examiner.  It makes no sense to appoint both an examiner and a CRO in this case, where it more strongly argues for a Chapter 11 trustee in any event.

**E.     Conclusion**

51.     Very recent pre-petition history as found by the District Court through fully contested litigation appears to establish that this Debtor is led by reckless managers and owners who have repeatedly committed and caused the Debtor to commit fraud and multiple securities violations.  The District Court has determined less than a month ago that if management is not displaced, future violations are likely to occur.  The Debtor's management appears to have an acrimonious relationship with the Debtor's major creditors, who, in turn, appear to have little confidence in management.  For these reasons, and the other reasons detailed above, a Chapter 11 trustee should be appointed.

WHEREFORE, PREMISES CONSIDERED, the Official Committee of Unsecured Creditors respectfully requests that this Court enter its orders denying the Debtor's Examiner

Motion and CRO Motion, granting the Trustee Motions, and granting the Committee such other

and further relief as to which it may be justly entitled.

RESPECTFULLY SUBMITTED this 5th day of February, 2015.

**MUNSCH HARDT KOPF & HARR, P.C**.

_/s/ Jay H. Ong_
Joseph J. Wielebinski
Texas Bar No. 21432400
Jay H. Ong
Texas Bar No. 24028756
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone (214) 855-7500
Facsimile (214) 978-4335

**ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2015, I personally caused to be served a true and correct copy of the foregoing document: (i) electronically upon those parties registered to receive notice via the Court's CM/ECF system, by filing same through such system; and (ii) upon the parties listed on the attached service list via First Class United States mail, postage prepaid.

_/s/ Jay H. Ong_
Jay H. Ong

**Service List (2-2-15)**
*Life Partners Holdings, Inc.*
*Case No. 15-40289-rfn-11*

**DEBTOR**
Life Partners Holdings, Inc.
Brian D. Pardo
204 Woodhew Dr.
Waco, TX 76712

**DEBTOR'S COUNSEL**:
J Robert Forshey/Jeff P Prostok/Suzanne Rosen
Forshey & Prostok LLP
777 Main St Ste 1290
Fort Worth TX  76102

U.S. Trustee
Lisa Lambert/Elizabeth Ziegler
1100 Commerce St., Room 976
Dallas, TX 75242-1011

Internal Revenue Service
Dept. of the Treasury
4050 Alpha Rd.
Farmers Branch, TX 75244

Internal Revenue Service
Centralized Insolvency Operations
P O Box 7346
Philadelphia, PA 19101-7346

20 largest unsecured creditors

U.S. Securities and Exchange Commission
Attn: B. David Fraser
801 Cherry St. Ste 1900, Unit 18
Fort Worth, TX 76102-6882

U.S. Securities and Exchange Commission
Attn: Jessica B. Magee
801 Cherry St., Ste 1900, Unit 18
Fort Worth, TX 76102

U.S. Securities and Exchange Commission
Attn: Matthew J. Gulde
801 Cherry St., Ste 1900, Unit 18
Fort Worth, TX 76102

AFCO
5600 N. River Rd., Suite 400
Rosemont, IL 60018-5187

AFCO
P O Box 4795
Carol Stream, IL 60197-4795

Aguirre Law, APC
501 Broadway, Suite 800
San Diego, CA 92101

Alexander Dubose Jefferson & Townsend
515 Congress Ave., Suite 2350
Austin, TX 78701

Alexander Dubose Jefferson & Townsend
1844 Harvard St.
Houston, TX 77008

Baker & McKenzie, LLP
2001 Ross Ave., Suite 2300
Dallas, TX 75201

Broadridge ICS
P O Box416423
Boston, MA 02241-6423

C. Alfred Mackenzie
Attorney at Law
~~P O Box 2003~~
~~Waco, TX 76703~~
Email only: amackenzie@texas-appeals.com

Horwood, Marcus & Berk
500 W. Madison St., Suite 3700
Chicago, IL 60661

HSPG & Associates, PC
5400 N. Grand Blvd., Suite 330
Oklahoma City, OK 73112

Kevin Buchanan & Associates
G. Kevin Buchanan
900 Jackson St., Suite 350
Dallas, TX 75202

Law Office of Douglas M. Berman
4925 Greenville Ave., Suite 200
Dallas, TX 75206

Law Offices of Trey Martinez Fischer
IBC Centre
130 E. Travis St., Suite 425
San Antonio, TX 78205

McLennan County Tax Office
P O Box406
Waco, TX 76703

Meadows Collier Attorneys at Law
901 Main St., Suite 3700
Dallas, TX 75202

Mediant Communications
P O Box 29976
New York, NY 10087-9976

Squire Patton Boggs (US)
2550M St. NW
Washington, DC 20037

Strasburger & Price, LLP
P O Box 50100
Dallas, TX 75250-9989

The Nasdaq Stock Market
One Liberty Plaza
New York, NY 10006

Whitley Penn LLP
8343 Douglas Ave., Suite 400
Dallas, TX 75225

**PARTIES REQUESTING NOTICE**

Advance Trust & Life Escrow
Services, LTA c/o J. David Dickson
Beard Kultgen Brophy, et al.
220 South Fourth St.
Waco, TX 7670

Advance Trust & Life Escrow
Services, LTA c/o R. Mark Dietz
Dietz & Jarrard, PC
106 Fannin Avenue East
Round Rock, TX 78664

Squire Patton Boggs (US)
S. Cass Weiland/Robert A Hawkins
2000 McKinney Ave., Suite 1700
Dallas, TX 75201

Scott Carlson c/o Rod L. Poirot
Cavazos Hendricks Poirot & Smitham
900 Jackson St. #570
Dallas, TX  75202

John Willingham MDL Group
c/o Heygood, Orr & Pearson
James Craig Orr, Jr./John Chapman
2331 W. Northwest Hwy, 2nd Floor
Dallas, TX 75220

James D. Hurst, Esq.
1202 Sam Houston Ave.
Huntsville, TX 77340

Michael J. Legamaro, PC
2241 North Leavitt St.
Chicago, IL 60647

Hagens Berman Sobol Shapiro LLP
Steve W. Berman
1918 Eighth Ave., Suite 3300
Seattle, WA 98101

Hagens Berman Sobol Shapiro LLP
Reed Kathrein/Peter Borkon
715 Hearst Ave., Suite 202
Berkeley, CA 94710

Shields, Britton & Fraser, PC
John D. Fraser
5401 Village Creek Dr.
Plano, TX 75039

Pomerantz Haudek Grossman & Gross,
LLP
Marc Gross/Jeremy Lieberman
100 Park Ave., 26th Floor
New York, NY 10017-5516

Glancy Binkow & Goldberg LLP
Lionel Glancy /E. Sams /R. Prongay
1801 Avenue of the Stars, Ste 311
Los Angeles, CA 90067

Harwood Feffer LLP
Samuel Rosen
488 Madison Ave., 8th Floor
New York, NY 10022

Tarrant County
c/o Laurie Spindler Huffman
Linebarger Goggan et al
2777 N. Stemmons Fwy. Ste 1000
Dallas TX  75207

The Law Firm of Jay Ethington
Jay Ethington
131 McKinney Ave., Suite 800
Dallas, TX 75204

Streusand, Landon & Ozburn, LLP
Sabrina L. Streusand
811 Barton Springs Rd., Suite 811
Austin, TX 78704

McLennan County
c/o Diane W. Sanders
Linebarger Goggan et al
P O Box 17428
Austin TX  78760-7428

# EXHIBIT 12

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 180 (Bankr. N.D. Tex. Mar. 10, 2015)

B6A (Official Form 6A) (12/07)

In re  **Life Partners Holdings, Inc.**                                    Case No.   **15-40289-RFN-11**
                                                                                        (if known)

## SCHEDULE A - REAL PROPERTY

| Description and Location of Property | Nature of Debtor's Interest in Property | | Current Value of Debtor's Interest in Property, Without Deducting Any Secured Claim or Exemption | Amount Of Secured Claim |
|---|---|---|---|---|
| Land, Building and Improvements 204 Woodhew Dr. Waco, TX | Real property | | $1,079,495.09 | $35,350.26 |
| Building and Improvements 8225 Central Park Dr. Waco, TX | Real property | | $1,109,143.75 | $26,424.47 |
| | | Total: | **$2,188,638.84** | |

(Report also on Summary of Schedules)

B6B (Official Form 6B) (12/07)

In re **Life Partners Holdings, Inc.**                    Case No.    **15-40289-RFN-11**
                                                                            (if known)

## SCHEDULE B - PERSONAL PROPERTY

| Type of Property | None | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|:---:|---|---:|
| 1. Cash on hand. | X | | |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Bank of America<br>401 Hewitt Dr.<br>Waco, TX 76712<br>Checking Account No. XXXX1078<br><br>Alliance Bank Central Texas<br>P.O. Box 7554<br>Waco, TX 75714<br>Savings Account No. XXXX0613*<br>*Funds from this account were rolled over into the DIP account with<br>Bank of America | $20,498.19<br><br><br><br>$30,750.09 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | |
| 4. Household goods and furnishings, including audio, video and computer equipment. | X | | |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | | Woolly Mammoth Artifacts - 20% ownership | $166,250.00 |
| 6. Wearing apparel. | X | | |
| 7. Furs and jewelry. | X | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | |

B6B (Official Form 6B) (12/07) – Cont.

In re  **Life Partners Holdings, Inc.**                                   Case No.     **15-40289-RFN-11**
                                                                                                      (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 1*

| Type of Property | None | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Indian Harbor Insurance Company<br>505 Eagleview Blvd., Suite 100<br>Dept: Regulatory<br>Exton, PA 19341-0636<br>Error and Omissions<br>Policy No. MPP9031324 | $0.00 |
| | | Allied Insurance<br>Depositors Insurance Co.<br>1100 Locust St., Dept 1100<br>Des Moines, IA 50391-2000<br>Comm Pkg - Business Owners<br>Policy No. ACPBPOD7206202440 | $0.00 |
| | | Allied Property and Casualty Insurance Co.<br>1100 Locust St., Dept 1100<br>Des Moines, IA 50391-2000<br>Comm Pkg - Comm Inland Marine<br>Policy No. ACPCIMP7206202440 | $0.00 |
| | | Allied Insurance<br>Depositors Insurance Co.<br>1100 Locust St., Dept 1100<br>Des Moines, IA 50391-2000<br>Comm Pkg - Excess Liability<br>Policy No ACPCAD7206202440 | $0.00 |
| | | Allied Insuranace<br>Depositors Insurance Co.<br>1100 Locust St., Dept 1100<br>Des Moines, IA 50391-2000<br>Business Auto<br>Policy No. ACPBAPD7206202440 | $0.00 |
| | | Illinois National Insurance Co.<br>175 Water St.<br>New York, NY 10038-4969 | $0.00 |

B6B (Official Form 6B) (12/07) -- Cont.

In re **Life Partners Holdings, Inc.**                    Case No.    **15-40289-RFN-11**
                                                                                  (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 2*

| Type of Property | None | Description and Location of Property | | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|:---:|---|---|---:|
| | | Directors and Officers<br>Policy No. 01-563-45-30<br><br>Travelers<br>One Tower Square<br>Hartford, Connecticut 06183<br>Artifacts/Commercial Fine Arts<br>Policy No. QT-660-8486L615-TLC-14 | | $0.00 |
| | | Beasley Insurance Co., Inc.<br>1270 Avenue of the Americas, 12th Floor<br>New York, NY 10020<br>Cyber Liability<br>Policy No. V1598814010 | | $0.00 |
| | | Texas Mutual Insurance Co.<br>6210 E. Highway 290<br>Austin, TX 78723-1098<br>Workers Compensation<br>Policy No. TSF-0001198651 20140614 | | $0.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Life Partners Holdings, Inc.**                                  Case No.   **15-40289-RFN-11**
                                                                                                (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 3*

| Type of Property | None | Description and Location of Property | | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | Life Partners, Inc.<br>204 Woodhew<br>Waco, TX 76712 | | Unknown |
| | | LPHI Management Services, LLC<br>204 Woodhew<br>Waco, TX 76712<br>Dormant - Never Organized | | $0.00 |
| | | Life Settlement Fund 1, LP<br>204 Woodhew Dr.<br>Waco, TX 76712<br>Dormant - Never Organized | | $0.00 |
| | | LPHI Portfolio Management Services, LLC<br>204 Woodhew Dr.<br>Waco, TX 76712 | | $0.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re **Life Partners Holdings, Inc.**                                           Case No.    **15-40289-RFN-11**
                                                                                                     (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 4*

| Type of Property | None | Description and Location of Property | | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Potential claims in lawsuit styled Life Partners Holdings, Inc., et al v. Wedbush Securties, Inc., et al; Case No. BC558646<br><br>Potential claims in lawsuit styled Life Partners, Inc., et al v. optionsXpress, Inc., et al; Civil Action No. 1-14-cv-03137 | | Unknown<br><br><br>Unknown |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re **Life Partners Holdings, Inc.**                    Case No.     **15-40289-RFN-11**
                                                                          (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 5*

| Type of Property | None | Description and Location of Property | | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|:---:|---|---|---|
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed.  Itemize. | X | | | |

_____**5**_____ continuation sheets attached      **Total  >**      **$217,498.28**

(Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules.)

B6C (Official Form 6C) (4/13)

In re **Life Partners Holdings, Inc.**                    Case No.    **15-40289-RFN-11**
                                                                    (If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:        ☐  Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                            $155,675.*

☐  11 U.S.C. § 522(b)(2)
☐  11 U.S.C. § 522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| Not Applicable | | | |

| | | | |
|---|---|---|---|
| *Amount subject to adjustment on 4/01/16 and every three years thereafter with respect to cases commenced on or after the date of adjustment.* | | **$0.00** | **$0.00** |

B6D (Official Form 6D) (12/07)

In re **Life Partners Holdings, Inc.**                    Case No. __**15-40289-RFN-11**__
                                                                              (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|
| ACCT #: <br><br>**AFCO**<br>**P.O. Box 4795**<br>**Carol Stream, IL 60197-4795** | | DATE INCURRED:<br>NATURE OF LIEN:<br>**Promissory Note**<br>COLLATERAL:<br>**Debtor's Unearned Premium Interests**<br>REMARKS:<br>**in Illinois National D&O and Indian Harbor E&O Policies**<br><br>VALUE: **$0.00** | | | | **$205,730.13** | **$205,730.13** |
| **Representing:**<br>**AFCO** | | **AFCO**<br>**5600 N. River Road, Suite 400**<br>**Rosemont, IL 60018-5187** | | | | **Notice Only** | **Notice Only** |
| ACCT #: <br><br>**McLennan County**<br>**c/o Diane W. Sanders**<br>**Linebarger Goggan Blair & Sampson, LL**<br>**P.O. Box 17428**<br>**Austin, TX 78760-7428** | | DATE INCURRED: **2014**<br>NATURE OF LIEN:<br>**Property Taxes**<br>COLLATERAL:<br>**204 Woodhew Dr. and 8225 Central Park Dr., Waco**<br>REMARKS:<br><br>VALUE: **$2,188,638.84** | | | | **$61,774.73** | |
| | | | | | | | |
| | | Subtotal (Total of this Page) > | | | | **$267,504.86** | **$205,730.13** |
| | | Total (Use only on last page) > | | | | **$267,504.86** | **$205,730.13** |

_____**No**_____ continuation sheets attached

|  |  |
|---|---|
| (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

In re  **Life Partners Holdings, Inc.**                                    Case No.   15-40289-RFN-11
                                                                                    (If Known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

## TYPES OF PRIORITY CLAIMS   (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic Support Obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief.  11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,775* for deposits for the purchase, lease or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).

☑ **Taxes and Certain Other Debts Owed to Governmental Units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507(a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance.  11 U.S.C. § 507(a)(10).

☐ **Administrative allowances under 11 U.S.C. Sec. 330**
Claims based on services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by such person as approved by the court and/or in accordance with 11 U.S.C. §§ 326, 328, 329 and 330.

*Amounts are subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

_____1_____continuation sheets attached

In re  **Life Partners Holdings, Inc.**                                           Case No.    **15-40289-RFN-11**
                                                                                                      (If Known)

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

| TYPE OF PRIORITY | Taxes and Certain Other Debts Owed to Governmental Units |
|---|---|

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCT #: <br> **Internal Revenue Service** <br> **P.O. Box 7346** <br> **Philadelphia, PA 19101-7346** | | DATE INCURRED: <br> CONSIDERATION: <br> **Taxes** <br> REMARKS: | X | X | X | $3,991,351.00 | $3,991,351.00 | $0.00 |
| **Representing:** <br> **Internal Revenue Service** | | **Department of the Treasury** <br> **Internal Revenue Service** <br> **4050 Alpha Road** <br> **Farmers Branch, TX 75244** <br> **Attn:  James F. McCarthy, Jr.** | | | | **Notice Only** | **Notice Only** | **Notice Only** |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| | | |
|---|---|---|
| Sheet no. _____1_____ of _____1_____ continuation sheets attached to Schedule of Creditors Holding Priority Claims | **Subtotals (Totals of this page) >** | $3,991,351.00    $3,991,351.00    $0.00 |
| | **Total >** <br> **(Use only on last page of the completed Schedule E. Report also on the Summary of Schedules.)** | $3,991,351.00 |
| | **Totals >** <br> **(Use only on last page of the completed Schedule E. If applicable, report also on the Statistical Summary of Certain Liabilities and Related Data.)** | $3,991,351.00    $0.00 |

In re  **Life Partners Holdings, Inc.**                                      Case No.   **15-40289-RFN-11**
                                                                                    (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**Aguirre Law, APC**<br>**501 W. Broadway, Suite 800**<br>**San Diego, CA 92101** | | DATE INCURRED: **11/1/14 - 1/20/15**<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$17,384.64** |
| ACCT #:<br>**Alexander Dubose Jefferson & Townsend**<br>**1844 Harvard St.**<br>**Houston, TX 77008** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | X | X | X | **$40,045.00** |
| **Representing:**<br>**Alexander Dubose Jefferson & Townsend** | | **Alexander Dubose Jefferson & Townsend**<br>**515 Congress Ave., Suite 2350**<br>**Austin, TX 78701** | | | | **Notice Only** |
| ACCT #:<br>**American Stock Transfer & Trust**<br>  **Company, LLC**<br>**P.O. Box 12893**<br>**Philadelhia, PA 19176-0893** | | DATE INCURRED: **1/18/15**<br>CONSIDERATION:<br>**Stock Transfer Fee**<br>REMARKS: | | | | **$1,050.00** |
| ACCT #:<br>**Arthur W. Morrow, et ux**<br>**c/o James Craig Orr, Jr.**<br>**Heygood, Orr & Pearson**<br>**2331 W. Northwest Hwy, 2nd Floor**<br>**Dallas, TX 75220** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |
| ACCT #:<br>**Baker & McKenzie, LLP**<br>**2001 Ross Avenue, Suite 2300**<br>**Dallas, TX 75201** | X | DATE INCURRED: **4/2014 - 10/2014**<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$1,056,241.49** |

Subtotal >  **$1,114,721.13**

_____**9**_____ continuation sheets attached

Total >
**(Use only on last page of the completed Schedule F.)**
**(Report also on Summary of Schedules and, if applicable, on the**
**Statistical Summary of Certain Liabilities and Related Data.)**

B6F (Official Form 6F) (12/07) - Cont.

In re   **Life Partners Holdings, Inc.**                                                    Case No.   **15-40289-RFN-11**
                                                                                                                    (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**Brian D. Pardo**<br>**908 Arlington**<br>**Waco, TX 76712** | | DATE INCURRED:<br>CONSIDERATION:<br>**Officer Remuneration**<br>REMARKS: | | | | **$6,161,834.00** |
| ACCT #:<br>**Broadridge ICS**<br>**P.O. Box 416423**<br>**Boston, MA 02241-6423** | | DATE INCURRED:<br>CONSIDERATION:<br>**Trade Debt**<br>REMARKS: | | | | **Unknown** |
| ACCT #:<br>**Carrington Coleman Sloman & Blumenthal,**<br>**901 Main Street, Suite 5500**<br>**Dallas, TX 75202** | | DATE INCURRED:  **12/1/14 - 12/31/14**<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$18,593.50** |
| ACCT #:<br>**Charles E. Baruch**<br>**Law Office of Chad Baruch**<br>**3201 Main St.**<br>**Rowlett, TX 75088** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | X | X | X | **Unknown** |
| ACCT #:<br>**Danny Birtcher**<br>**c/o James Craig Orr, Jr.**<br>**Heygood, Orr & Pearson**<br>**2331 W. Northwest Hwy, 2nd Floor**<br>**Dallas, TX 75220** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |
| ACCT #:<br>**David Whitmire, et al**<br>**c/o James Craig Orr Jr.**<br>**Heygood, Orr & Pearson**<br>**2331 W. Northwest Hwy, 2nd Floor**<br>**Dallas, TX 75220** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Lawsuit**<br>REMARKS: | X | | X | **Unknown** |

Sheet no. _____**1**_____ of _____**9**_____ continuation sheets attached to                                   **Subtotal >**   | **$6,180,427.50** |
Schedule of Creditors Holding Unsecured Nonpriority Claims

                                                                                                                           **Total >**
                                                        **(Use only on last page of the completed Schedule F.)**
                                      **(Report also on Summary of Schedules and, if applicable, on the**
                                              **Statistical Summary of Certain Liabilities and Related Data.)**

B6F (Official Form 6F) (12/07) - Cont.

In re  **Life Partners Holdings, Inc.**

Case No.  **15-40289-RFN-11**

(if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**First Advantage Litigation Consulting, LLC dba Consilio**<br>P.O. Box 935411<br>Atlanta, GA 31193-5411 | | DATE INCURRED: **2/1/14 - 1/31/15**<br>CONSIDERATION:<br>**Document Storage**<br>REMARKS: | | | | **$89,246.04** |
| ACCT #:<br>**Forshey & Prostok**<br>777 Main St., Suite 1290<br>Ft Worth, TX 76102 | | DATE INCURRED: **12/2014 - 1/20/15**<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$15,642.68** |
| ACCT #:<br>**Gregory Griswold, et al**<br>c/o Joe Kendall and Jamie Jean McKey<br>Kendall Law Group<br>3232 McKinney Ave., Suite 700<br>Dallas, TX 75204 | X | DATE INCURRED:<br>CONSIDERATION:<br>**Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |
| **Representing:**<br>Gregory Griswold, et al | | **Gregory Griswold**<br>c/o Brian J. Robbins<br>Robbins Arroyo LLP<br>600 B. Street, Suite 1900<br>San Diego, CA 92101 | | | | **Notice Only** |
| **Representing:**<br>Gregory Griswold, et al | | **Harriet Goldstein**<br>c/o Andrew D. Abramowitz<br>Spector Roseman Kodroff & Willis, P.C.<br>1818 Market St., Suite 2500<br>Philadelphia, PA 19103 | | | | **Notice Only** |
| **Representing:**<br>Gregory Griswold, et al | | **Paul Berger**<br>c/o Laurence D. Paskowitz<br>Paskowitz Law Firm, P.C.<br>60 East 42nd St., 46th Floor<br>New York, NY 10165 | | | | **Notice Only** |

Sheet no. _____**2**_____ of _____**9**_____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal > **$104,888.72**

Total > 
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re **Life Partners Holdings, Inc.**                                    Case No. **15-40289-RFN-11**
                                                                                                      (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| **Representing:** **Gregory Griswold, et al** | | **Paul Berger** c/o Roy L. Jacobs 60 East 2nd St., 46th Floor New York, NY 10165 | | | | **Notice Only** |
| **Representing:** **Gregory Griswold, et al** | | **Paul Berger** c/o Kevin Michael Young Prichard, Hawkins, McFarland & Young Union Squire, Suite 600 San Antonio, TX 78216 | | | | **Notice Only** |
| ACCT #: **Horwood, Marcus & Berk** 500 W. Madison St., Suite 3700 Chicago, IL 60661 | | DATE INCURRED: CONSIDERATION: **Legal Fees** REMARKS: | | | | **$1,205.00** |
| ACCT #: **HSPG & Associates, PC** 5400 N. Grand Blvd., Suite 330 Oklahoma City, OK 73112 | | DATE INCURRED: CONSIDERATION: **Accounting Services** REMARKS: | X | X | X | **$19,578.00** |
| ACCT #: **Jay Ethington, Attorney at Law** 3131 McKinney Ave., Suite 800 Dallas, TX 75204 | X | DATE INCURRED: **4/26/13 - 1/14/15** CONSIDERATION: **Legal Fees** REMARKS: | | | | **$84,375.00** |
| ACCT #: **JMD Resources, LLC** c/o James D. Hurst, Esq. 1202 Sam Houston Ave. Huntsville, TX 77340 | X | DATE INCURRED: CONSIDERATION: **Lawsuit** REMARKS: | X | X | X | **Unknown** |

Sheet no. ____3____ of ____9____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal > | **$105,158.00**

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re   **Life Partners Holdings, Inc.**                                        Case No.   **15-40289-RFN-11**
                                                                                                    (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**John Willingham, et al**<br>**c/o James Craig Orr, Jr.**<br>**Heygood, Orr & Pearson**<br>**2331 W. Northwest Hwy, 2nd Floor**<br>**Dallas, TX 75220** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Class Action Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |
| ACCT #:<br>**John Woelfel, et al**<br>**c/o John Chapman**<br>**Heygood, Orr & Pearson**<br>**2331 W. Northwest Hwy, 2nd Floor**<br>**Dallas, TX 75220** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |
| ACCT #:<br>**Kevin Buchanan & Associates**<br>**900 Jackson St., Suite 350**<br>**Dallas, TX 75202** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | X | X | X | **$37,340.21** |
| ACCT #:<br>**Kyle Mathis & Lucas LLP**<br>**8226 Douglas Ave., Suite 450**<br>**Dallas, TX 75225** | X | DATE INCURRED:  **11/1/14 -12/31/14**<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$38,604.62** |
| ACCT #:<br>**Law Office of Douglas M. Berman**<br>**4925 Greenville Ave., Suite 200**<br>**Dallas, TX 75206** | | DATE INCURRED:  **January 2015**<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$4,631.25** |
| ACCT #:<br>**Law Offices of Trey Martinez Fischer**<br>**IBC Centre**<br>**130 E. Travis St., Suite 425**<br>**San Antonio, TX 78205** | | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$2,500.00** |

Sheet no. ____4____ of ____9____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >   **$83,076.08**

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re **Life Partners Holdings, Inc.**                    Case No.   **15-40289-RFN-11**
                                                                        (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**Meadows Collier Attorneys at Law 901 Main St., Suite 3700 Dallas, TX 75202** | | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | X | X | X | **$33,579.50** |
| ACCT #:<br>**Mediant Communications P.O. Box 29976 New York, NY 10087-9976** | | DATE INCURRED:<br>CONSIDERATION:<br>**Trade Debt**<br>REMARKS: | | | | **Unknown** |
| ACCT #:<br>**Price L. Johnson, PC 8750 N. Central Expressway, Suite 1010 Dallas, TX 75231** | X | DATE INCURRED:  **1/1/15-1/19/15**<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | | | | **$23,845.60** |
| ACCT #:<br>**R. Scott Peden 1117 Charring Cross Waco, TX 76712** | | DATE INCURRED:<br>CONSIDERATION:<br>**Officer Remuneration**<br>REMARKS: | | | | **$2,000,000.00** |
| ACCT #:<br>**Robert Whitehurst c/o James Craig Orr, Jr. Heygood, Orr & Pearson 2331 W. Northwest Hwy, 2nd Floor Dallas, TX 75220** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |
| ACCT #:<br>**Selma Stone (proposed class) c/o Steve W. Berman Hagens Berman Sobol Shapiro LLP 1918 Eighth Ave., Suite 3300 Seattle, WA 98101** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Class Action Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |

Sheet no. ____**5**____ of ____**9**____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal > | **$2,057,425.10** |
| Total > | |
| (Use only on last page of the completed Schedule F.) (Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | |

B6F (Official Form 6F) (12/07) - Cont.

In re **Life Partners Holdings, Inc.**                                      Case No.   **15-40289-RFN-11**
                                                                                       (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| **Representing:** **Selma Stone (proposed class)** | | **David Santacroce** c/o Marc Gross/Jeremy Lieberman Pomerantz Haudek Grossman & Gross, LLP 100 Park Ave., 26th Floor New York, NY 10017-5516 | | | | **Notice Only** |
| **Representing:** **Selma Stone (proposed class)** | | **Joy Dittberner** c/o Gregory Naspole Wolfe Haldenstein, Adler, Freeman & Herz 270 Madison Ave. New York, NY 10016 | | | | **Notice Only** |
| **Representing:** **Selma Stone (proposed class)** | | **Malcolm Gray** c/o Samuel Rosen Harwood Feffer LLP 488 Madison Ave., 8th Floor New York, NY 10022 | | | | **Notice Only** |
| **Representing:** **Selma Stone (proposed class)** | | **Selma Stone (proposed class)** c/o Reed Kathrein/Peter Borkon Hagens Berman Sobol Shapiro LLP 715 Hearst Ave., Suite 202 Berkley, CA 94710 | | | | **Notice Only** |
| **Representing:** **Selma Stone (proposed class)** | | **Stewart Scothorn** c/o John D. Fraser Shields, Britton & Fraser, PC 5401 Village Creek Dr. Plano, TX 75039 | | | | **Notice Only** |
| ACCT #: **Shackelford Melton McKinley & Norton LLP** **3333 Lee Parkway, Tenth Floor** **Dallas, TX 75219** | | DATE INCURRED: **9/16/14-12/31/14** CONSIDERATION: **Legal Fees** REMARKS: | | | | **$570.00** |

Sheet no. _____**6**_____ of _____**9**_____ continuation sheets attached to          Subtotal >          **$570.00**
Schedule of Creditors Holding Unsecured Nonpriority Claims

Total >
**(Use only on last page of the completed Schedule F.)**
**(Report also on Summary of Schedules and, if applicable, on the**
**Statistical Summary of Certain Liabilities and Related Data.)**

B6F (Official Form 6F) (12/07) - Cont.

In re **Life Partners Holdings, Inc.**

Case No. ___15-40289-RFN-11___

(if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #: <br> **Shareholder.com** <br> **Lockbox 30200** <br> **P.O. Box 8500** <br> **Philadelphia, PA 19178-0200** | | DATE INCURRED: **1/1/15 - 3/31/15** <br> CONSIDERATION: <br> **Investor Relations Website Hosting** <br> REMARKS: | | | | **$5,624.48** |
| Representing: <br> Shareholder.com | | **Nasdaq Office of General Council** <br> **805 King Farm Boulevard** <br> **Rockville MD 20850** | | | | **Notice Only** |
| ACCT #: <br> **Squire Patton Boggs (US)** <br> **P.O. Box 511269** <br> **Los Angeles, CA 90051** | X | DATE INCURRED: <br> CONSIDERATION: <br> **Legal Fees** <br> REMARKS: | X | X | X | **Unknown** |
| Representing: <br> **Squire Patton Boggs (US)** | | **Squire Patton Boggs (US)** <br> **2000 McKinney Avenue, Suite 1700** <br> **Dallas, TX 75201** | | | | **Notice Only** |
| Representing: <br> **Squire Patton Boggs (US)** | | **Squire Patton Boggs (US)** <br> **2550 M St. NW** <br> **Washington, DC 20037** | | | | **Notice Only** |
| ACCT #: <br> **State of Texas** <br> **c/o Texas Attorney General** <br> **P.O. Box 12548** <br> **Austin, TX 78711** | X | DATE INCURRED: <br> CONSIDERATION: <br> **Lawsuit** <br> REMARKS: | X | X | X | **Unknown** |

Sheet no. ___7___ of ___9___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal > | $5,624.48

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re **Life Partners Holdings, Inc.**  Case No.  **15-40289-RFN-11**
                                                    (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**Strasburger & Price, LLP**<br>**P.O. Box 50100**<br>**Dallas, TX 75250-9989** | | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | X | X | X | $124.00 |
| ACCT #:<br>**Streusand, Landon, Ozburn, LLP**<br>**811 Barton Springs Rd., Suite 811**<br>**Austin, TX 78704** | | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | X | X | X | $15,780.00 |
| ACCT #:<br>**The Nasdaq Stock Market**<br>**One Liberty Plaza**<br>**New York, NY 10006** | | DATE INCURRED:<br>CONSIDERATION:<br>**Trade Debt**<br>REMARKS: | | | | $40,000.00 |
| **Representing:**<br>**The Nasdaq Stock Market** | | **Nasdaq Office of General Council**<br>**805 King Farm Boulevard**<br>**Rockville MD 20850** | | | | **Notice Only** |
| ACCT #:<br>**The Vintage Group**<br>**350 Hudson St., Suite 300**<br>**New York, NY 10014** | | DATE INCURRED:  **1/15/15**<br>CONSIDERATION:<br>**Electronic Filing Services**<br>REMARKS: | | | | $1,658.00 |
| ACCT #:<br>**Todd McClain, et al**<br>**c/o James Craig Orr, Jr.**<br>**Heygood, Orr & Pearson**<br>**2331 W. Northwest Hwy, 2nd Floor**<br>**Dallas, TX 75220** | X | DATE INCURRED:<br>CONSIDERATION:<br>**Lawsuit**<br>REMARKS: | X | X | X | **Unknown** |

Sheet no. ____**8**____ of ____**9**____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >  **$57,562.00**

Total >
**(Use only on last page of the completed Schedule F.)**
**(Report also on Summary of Schedules and, if applicable, on the**
**Statistical Summary of Certain Liabilities and Related Data.)**

B6F (Official Form 6F) (12/07) - Cont.

In re **Life Partners Holdings, Inc.**                    Case No. **15-40289-RFN-11**

(if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**U.S. Securities and Exchange Commission**<br>**Attn:  B. David Fraser**<br>**801 Cherry St., Suite 1900**<br>**Fort Worth, TX 76102-6882** | | DATE INCURRED:<br>CONSIDERATION:<br>**Judgment**<br>REMARKS: | X | X | | **$38,700,000.00** |
| **Representing:**<br>**U.S. Securities and Exchange Commission** | | **U.S. Securities and Exchange Commission**<br>**Attn:  Jessica B. Magee**<br>**801 Cherry St., Suite 1900, Unit 18**<br>**Fort Worth, TX 76102-6882** | | | | **Notice Only** |
| **Representing:**<br>**U.S. Securities and Exchange Commission** | | **U.S. Securities and Exchange Commission**<br>**Attn: Matthew J. Gulde**<br>**801 Cherry St., Suite 1900, Unit 18**<br>**Fort Worth, TX 76102-6882** | | | | **Notice Only** |
| ACCT #:<br>**West & Associates LLP**<br>**320 South R.L. Thornton Freeway,**<br>**Suite 300**<br>**Dallas, TX 75203** | | DATE INCURRED:<br>CONSIDERATION:<br>**Legal Fees**<br>REMARKS: | X | X | X | **Unknown** |
| ACCT #:<br>**Whitley Penn LLP**<br>**8343 Douglas Ave, Suite 400**<br>**Dallas, TX 75225** | | DATE INCURRED:<br>CONSIDERATION:<br>**Accounting Services**<br>REMARKS: | X | X | X | **$103,999.87** |
| | | | | | | |

Sheet no. ____9____ of ____9____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| **Subtotal >** | **$38,803,999.87** |
| **Total >**<br>**(Use only on last page of the completed Schedule F.)**<br>**(Report also on Summary of Schedules and, if applicable, on the**<br>**Statistical Summary of Certain Liabilities and Related Data.)** | **$48,513,452.88** |

B6G (Official Form 6G) (12/07)

In re **Life Partners Holdings, Inc.**                                                    Case No.    **15-40289-RFN-11**
                                                                                                                                      (if known)

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property.  Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc.  State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to
one of the leases of contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a
minor child, by John Doe, guardian."  Do not disclose the child's name.  See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐  Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST.  STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY.  STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| **Allied Insurance**<br>Depositors Insurance Co.<br>1100 Locust St., Dept 1100<br>Des Moines, IA 50391-2000 | Comm Pkg - Business Owners<br>Policy No. ACPBPOD7206202440 |
| **Allied Insurance**<br>Depositors Insurance Co.<br>1100 Locust St., Dept 1100<br>Des Moines, IA 50391-2000 | Comm Pkg - Excess Liability<br>Policy No. ACPCAD7206202440 |
| **Allied Insurance**<br>Depositors Insurance Co.<br>1100 Locust St., Dept 1100<br>Des Moines, IA 50391-2000 | Business Auto<br>Policy No. ACPBAPD7206202440 |
| **Allied Property and Casualty**<br>  Insurance Co.<br>1100 Locust St., Dept. 1100<br>Des Moines, IA 50391-2000 | Comm Pkg - Comm Inland Marine<br>Policy No. ACPCIMP7206202440 |
| **Beasley Insurance Co., Inc.**<br>1270 Avenue of the Americas, 12th Floor<br>New York, NY 10020 | Cyber Liability<br>Policy No. V1598814010 |

B6G (Official Form 6G) (12/07)

In re **Life Partners Holdings, Inc.**

Case No. <u>15-40289-RFN-11</u>
(if known)

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*Continuation Sheet No. 1*

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| **Illinois National Insurance Co.**<br>175 Water St.<br>New York, NY 10038-4969 | Directors and Officers<br>Policy No. 01-563-45-30 |
| **Indian Harbor Insurance Company**<br>505 Eagleview Blvd., Suite 100<br>Dept: Regulatory<br>Exton, PA 19341-0636 | Error and Omissions Policy No MPP9031324 |
| **Life Partners, Inc.**<br>P.O. Box 21596<br>Waco, TX 76712 | Commercial Lease Agreement between Life Partners Holdings, Inc. and Life Partners, Inc. dated 12/31/14 |
| **Texas Mutual Insurance Co.**<br>6210 E. Highway 290<br>Austin, TX 78723-1098 | Workers Compensation<br>Policy No. TSF-0001198651 20140614 |
| **Travelers**<br>One Tower Square<br>Hartford, CT 06183 | Artifacts/Commmercial Fine Arts<br>Policy No. QT-660-8486L615-TLC-14 |

B6H (Official Form 6H) (12/07)

In re **Life Partners Holdings, Inc.**          Case No. **15-40289-RFN-11**

(if known)

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Advance Trust & Life Escrow**<br>  Services, LTA<br>4125 West Waco Dr., Suite 200<br>Waco, TX 76710 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **American Stock Transfer & Trust Co.**<br>P.O. Box 12893<br>Philadelphia, PA 19176-0893 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **Arthur W. Morrow, et ux**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **Danny Birtcher**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 78712 | **David Whitmire, et al**<br>c/o James Craig Orr Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **Gregory Griswold, et al**<br>c/o Joe Kendall and Jamie Jean McKey<br>Kendall Law Group<br>3232 McKinney Ave., Suite 700<br>Dallas, TX 75204 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **Jay Ethington, Attorney at Law**<br>3131 McKinney Ave., Suite 800<br>Dallas, TX 75204 |

B6H (Official Form 6H) (12/07) - Cont.

In re **Life Partners Holdings, Inc.**                    Case No.   **15-40289-RFN-11**

                                                                          (if known)

# SCHEDULE H - CODEBTORS

*Continuation Sheet No. 1*

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **John Willingham, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **John Woelfel, et al**<br>c/o John Chapman<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **Robert Whitehurst**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Brian Pardo**<br>908 Arlington Drd.<br>Waco, TX 76712 | **Selma Stone (proposed class)**<br>c/o Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Ave., Suite 3300<br>Seattle, WA 98101 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **Brian Pardo**<br>908 Arlington Dr.<br>Waco, TX 76712 | **Todd McClain, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **David Martin**<br>3801 Herwol Avenue<br>Waco, TX 78710 | **Gregory Griswold, et al**<br>c/o Joe Kendall and Jamie Jean McKey<br>Kendall Law Group<br>3232 McKinney Ave., Suite 700<br>Dallas, TX 75204 |

In re **Life Partners Holdings, Inc.**                    Case No.  **15-40289-RFN-11**
                                                                    (if known)

# SCHEDULE H - CODEBTORS
*Continuation Sheet No. 2*

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **David Martin**<br>3801 Herwol Ave.<br>Waco, TX 76710 | **Selma Stone (proposed class)**<br>c/o Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Ave., Suite 3300<br>Seattle, WA 98101 |
| **Donald Cassidy M.D., Ltd.**<br>4795 Cauglin Parkway, Suite 200<br>Reno, NV 89519 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **Fred Dewald**<br>428 Riverview Dr.<br>Waco, TX 76712 | **Gregory Griswold, et al**<br>c/o Joe Kendall and Jamie Jean McKey<br>Kendall Law Group<br>3232 McKinney Ave., Suite 700<br>Dallas, TX 75204 |
| **Harold E. Rafuse, Ph.D.**<br>111 Laurel Oaks Lane<br>Crawford, TX 76638 | **Gregory Griswold, et al**<br>c/o Joe Kendall and Jamie Jean McKey<br>Kendall Law Group<br>3232 McKinney Ave., Suite 700<br>Dallas, TX 75204 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Alexander Dubose Jefferson & Townsend**<br>1844 Harvard St.<br>Houston, TX 77008 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Arthur W. Morrow, et ux**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Baker & McKenzie, LLP**<br>2001 Ross Avenue, Suite 2300<br>Dallas, TX 75201 |

In re **Life Partners Holdings, Inc.**                    Case No. **15-40289-RFN-11**
                                                                       (if known)

# SCHEDULE H - CODEBTORS
*Continuation Sheet No. 3*

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Charles E. Baruch**<br>Law Office of Chad Baruch<br>3201 Main St.<br>Rowlett, TX 75088 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Danny Birtcher**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **David Whitmire, et al**<br>c/o James Craig Orr Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **JMD Resources, LLC**<br>c/o James D. Hurst, Esq.<br>1202 Sam Houston Ave.<br>Huntsville, TX 77340 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **John Willingham, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **John Woelfel, et al**<br>c/o John Chapman<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Kevin Buchanan & Associates**<br>900 Jackson St., Suite 350<br>Dallas, TX 75202 |

In re **Life Partners Holdings, Inc.**                    Case No.  **15-40289-RFN-11**
                                                          (if known)

## SCHEDULE H - CODEBTORS
*Continuation Sheet No. 4*

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Robert Whitehurst**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **Life Partners, Inc.**<br>204 Woodhew<br>Waco, TX 76712 | **Todd McClain, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Pardo Family Holdings Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **Danny Birtcher**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Pardo Family Holdings Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **David Whitmire, et al**<br>c/o James Craig Orr Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Pardo Family Holdings Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **John Willingham, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Pardo Family Holdings Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **John Woelfel, et al**<br>c/o John Chapman<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |

In re  **Life Partners Holdings, Inc.**                                          Case No.  __15-40289-RFN-11__
                                                                                              (if known)

# SCHEDULE H - CODEBTORS
*Continuation Sheet No. 5*

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Pardo Family Holdings Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **Kyle Mathis & Lucas LLP**<br>8226 Douglas Ave., Suite 450<br>Dallas, TX 75225 |
| **Pardo Family Holdings Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **Price L. Johnson, PC**<br>8750 N. Central Expressway, Suite 1010<br>Dallas, TX 75231 |
| **Pardo Family Holdings, Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **Arthur W. Morrow, et ux**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Pardo Family Holdings, Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New YOrk, NY 10019 | **Robert Whitehurst**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Pardo Family Holdings, Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **Pardo Family Holdings, Ltd.**<br>c/o SKP, 1745 Broadway<br>18th Floor<br>New York, NY 10019 | **Todd McClain, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Pardo Family Trust**<br>unknown | **John Willingham, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |

B6H (Official Form 6H) (12/07) - Cont.

In re  **Life Partners Holdings, Inc.**                    Case No.  __15-40289-RFN-11__

                                                                            (if known)

# SCHEDULE H - CODEBTORS

*Continuation Sheet No. 6*

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Pardo Family Trust**<br>unknown | **Todd McClain, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Purchase Escrow Services, LLC**<br>205 M&B Industrial<br>Woodway, TX 76712 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **Arthur W. Morrow, et ux**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **Danny Birtcher**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **David Whitmire, et al**<br>c/o James Craig Orr Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **Gregory Griswold, et al**<br>c/o Joe Kendall and Jamie Jean McKey<br>Kendall Law Group<br>3232 McKinney Ave., Suite 700<br>Dallas, TX 75204 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **John Willingham, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |

In re **Life Partners Holdings, Inc.**                                    Case No.   **15-40289-RFN-11**

# SCHEDULE H - CODEBTORS

*Continuation Sheet No. 7*

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **John Woelfel, et al**<br>c/o John Chapman<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **R. Scott Peden**<br>1117 Charriing Cross<br>Waco, TX 76712 | **Robert Whitehurst**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **Selma Stone (proposed class)**<br>c/o Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Ave., Suite 3300<br>Seattle, WA 98101 |
| **R. Scott Peden**<br>908 Arlington Dr.<br>Waco, TX 76712 | **Squire Patton Boggs (US)**<br>P.O. Box 511269<br>Los Angeles, CA 90051 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 7672 | **State of Texas**<br>c/o Texas Attorney General<br>P.O. Box 12548<br>Austin, TX 78711 |
| **R. Scott Peden**<br>1117 Charring Cross<br>Waco, TX 76712 | **Todd McClain, et al**<br>c/o James Craig Orr, Jr.<br>Heygood, Orr & Pearson<br>2331 W. Northwest Hwy, 2nd Floor<br>Dallas, TX 75220 |
| **Tad M. Ballantyne**<br>5118 Hunt Club Road<br>Racine, WI 53402-2333 | **Gregory Griswold, et al**<br>c/o Joe Kendall and Jamie Jean McKey<br>Kendall Law Group<br>3232 McKinney Ave., Suite 700<br>Dallas, TX 75204 |

B 6 Summary (Official Form 6 - Summary) (12/14)

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

In re  **Life Partners Holdings, Inc.**                    Case No.    **15-40289-RFN-11**

                                          Chapter    **11**

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $2,188,638.84 | | |
| B - Personal Property | Yes | 6 | $217,498.28 | | |
| C - Property Claimed as Exempt | No | | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | $267,504.86 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | $3,991,351.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 10 | | $48,513,452.88 | |
| G - Executory Contracts and Unexpired Leases | Yes | 2 | | | |
| H - Codebtors | Yes | 8 | | | |
| I - Current Income of Individual Debtor(s) | No | | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | | | | N/A |
| TOTAL | | 30 | $2,406,137.12 | $52,772,308.74 | |

B6 Declaration (Official Form 6 - Declaration) (12/07)

In re **Life Partners Holdings, Inc.**    Case No. **15-40289-RFN-11**
                                                        (if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the _____ **President** _____ of the _____ **Corporation** _____
named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of
_____ **32** _____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.
(Total shown on summary page plus 1.)

Date **3/10/2015** _____    Signature __ **/s/ Colette Pieper** _____

                                                    **Colette Pieper**
                                                    **President**

*[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]*

---

*Penalty for making a false statement or concealing property:  Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571.*

# EXHIBIT 13

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 225 (Bankr. N.D. Tex. Mar. 19, 2015)

United States Department of Justice
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas  75242
(214) 767-1075

Erin Marie Schmidt,
for the United States Trustee

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Chapter 11 Case** |
| | § | |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | **Case No. 15-40289-rfn-11** |
| | § | |
| **Debtor.** | § | |

## APPLICATION OF THE UNITED STATES TRUSTEE
## TO APPROVE APPOINTMENT OF TRUSTEE

NOW COMES the United States Trustee for Region 6 and files this Application to
Approve the Appointment of a Trustee in the above entitled cases.  In support of this
Application, the United States Trustee would show as follows:

1.       The above styled and numbered case was commenced by the filing of voluntary petition
under Chapter 11 of the Bankruptcy Code on January 20, 2015.

2.       On March 10, 2015, the Court ordered the United States Trustee to appoint a Trustee for
the case. [docket no. 186].

3.       After consulting with Joseph Wielebinski, Jr., counsel for the Official Committee of
Unsecured Creditors; Neal Jacobson, counsel for Securities Exchange Commission; J. David
Dickson, counsel for Advance Trust & Life Escrow Services, LTA; Erin B. Shank, counsel for

Brian Pardo; Gerrit Pronske, counsel for the Debtor; and J. Mitchell Little, the United States

Trustee selected H. Thomas Moran II to serve as Trustee.

4.      Except as disclosed in the verified statement accompanying this application, H. Thomas

Moran II has no connection with the Debtor, creditors, parties in interest, their respective

attorneys and accountants, the United States Trustee, or any person employed by the United

States Trustee.

5.       Mr. Moran agrees to an hourly rate of $300 subject not to exceed the statutory cap set

out under 11 U.S.C. § 326(a).  Mr. Moran also agrees that his fees and expenses as chapter 11

trustee shall be subject to review by interested parties and the Court under 11 U.S.C. § 330.

        The United States Trustee respectfully requests entry of an order approving the

appointment of H. Thomas Moran as Trustee of the above-referenced estate.

March 19, 2015                                    Respectfully submitted,

                                                  WILLIAM T. NEARY,
                                                  UNITED STATES TRUSTEE


                                                  /s/ Erin Marie Schmidt
                                                  Erin Marie Schmidt
                                                  Texas State Bar No. 24033042
                                                  Office of the United States Trustee
                                                  1100 Commerce St.,  Room 976
                                                  Dallas, TX  75242
                                                  Erin.Schmidt2@usdoj.gov
                                                  (214) 767-1075

<u>Certificate of Service</u>

I certify that on March 19, 2015, I served both the parties listed below and on the attached service lists via either ECF or U.S. Mail, first class, postage prepaid.

<u>/s/ Erin Marie Schmidt</u>
Erin Marie Schmidt

Aquirre Law, APC
c/o Jason T. Rodriguez
Higier Allen & Lautin, PC
5057 Keller Springs Road, Ste. 600
Addison, TX  75001

Creditors Committee
c/o Joseph J. Wielebinski, Jr.
3800 Lincoln Plaza
500 North Akard Street
Dallas, TX  75201-6659

Forshey & Prostok LLP
c/o J. Robert Forshey
777 Main Street, Ste. 1290
Fort Worth, TX  76102

Advance Trust & Life Escrow Services, LTA
c/o J. David Dickson
Beard Kultgen
220 South Fourth Street
Waco, TX  76701

Advance Trust & Life Escrow Services, LTA
c/o R. Mark Dietz
Dietz & Harrard PC
106 Fannin Avenue E
Roundrock, TX  78664

Matthew J. Gulde
Securities and Exchange Commission
801 Cherry Street, Unit 18, Ste. 1900
Fort Worth, TX  76102

John Willingham MDL Group
c/o James Craig Orr, Jr.
Heygood Orr & Pearson
2331 West Northwest Highway, 2nd Floor
Dallas, TX  75220

McLennan County
c/o Diane W. Sanders
Linebarger Goggan Blair & Sampson, LLP
P. O. Box 17428

2700 Via Fortuna, Ste. 400
Austin, TX  78741

Tarrant County
c/o Laurie Spindler Huffman
Linebarger Goggan Blair & Sampson, LLP
2777 North Stemmons Frwy., Ste. 1000
Dallas, TX  75207

U. S. Securities and Exchange Commission
c/o Hope H. Augustini
United States Securities & Exchange Commission
100 F Street, NE
Washington, DC  20549-5985

U. S. Securities and Exchange Commission
c/o Brian David Fraser
U.S. Securities and Exchange Commission
801 Cherry Street, Unit 18, Ste. 1900
Fort Worth, TX  76102

Matthew J. Gulde
U.S. Securities & Exchange Commission
801 Cherry Street, Unit 18, Ste. 1900
Fort Worth, TX  76102

Neal Jacobson
U.S. Securities and Exchange Commission
200 Vesey Street, Ste. 400
New York, NY  10281

Jessica B. Magee
U.S. Securities and Exchange Commission
801 Cherry Street, Unit 18, Ste. 1900
Fort Worth, TX  76102

AFCO Credit Corporation
c/o Weiting HSU
Winstead PC
500 Winstead Building
2728 North Harwood Street
Dallas, TX  75201

Official Committee of Unsecured Creditors

c/o Jay Ong
Munsch Hardt Kopf & Harr, P.C.
401 Congress Avenue, Ste. 3050
Austin, TX  78701

Joseph J. Wielebinski, Jr.
Munsch, Hardt, Kopf, & Harr, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, TX  75201-6659

Certain Shareholders of Life Partners Holdings, Inc.
c/o Gary J. Aguirre
501 West Broadway, Ste. 800
San Diego, CA  92101

Jason T. Rodriguez
Higier Allen & Lautin, P.C.
5057 Keller Springs Road, Ste. 600
Addison, TX  75001

Estate of Kenneth L. Musgrave, Deceased
c/o Thomas W. Choate
Choate Law Firm, PLLC
P. O. Box 206
Abilene, TX  79604

Life Partners Holdings, Inc.
c/o G. Kevin Buchanan
Kevin Buchanan & Associates, PLLC
900 Jackson Street, Ste. 350
Dallas, TX  75202

J. Robert Forshey
Forshey & Prostok, LLP
777 Main Street, Ste. 1290
Fort Worth, TX  76102

Melanie Pearce Goolsby
Pronske Goolsby & Kathman, P.C.
2200 Ross Avenue, Ste. 5350
Ddallas, TX  75201

Jason Patrick Kathman
Pronske Goolsby & Kathman, P.C.
2200 Ross Avenue, Ste. 5350
Dallas, TX  75201

Gerrit M. Pronske
Pronske Goolsby & Kathman, P.C.
2200 Ross Avenue, Ste. 5350
Dallas, TX  75201

Jeff P. Prostok

Forshey & Prostok, LLP
777 Main Street, Ste. 1290
Fort Worth, TX  76102

Purchase Escrow Services, LLC
c/o Andy McSwain
Fulbright Winniford
P. O. Box 445
Waco, TX  76703

Regent Wealth Management
c/o Patric J. Kelly
Adleson, Hess & Kelly, APC
577 Salmar Avenue, Second Floor
Campbell, CA  95008

Steve South
c/o Keith L. Langston
Langston Law Firm
109 West Tyler Street
Longview, TX  75601

Scott Coleman Skelton
Skelton Slusher Barnhill Watkins Wells
1616 South Chestnut
Lufkin, TX  75901

Ad Hoc Committee of Fractional Insurance
Beneficiaries of Life Partners, Inc.
c/o David D. Ritter
Ritter Legal, PLLC
1255 West 15th Street, Ste. 805
Plano, TX  75075

Christine Duncan
c/o Keith L. Langston
Langston Law Firm
109 West Tyler Street
Longview, TX  75601

Christine Duncan
c/o Scott Coleman Skelton
Skelton Slusher Barnhill Watkins Wells
1616 South Chestnut
Lufkin, TX  75901

Jared M. Elson
c/o Patric J. Kelly
Adleson, Hess & Kelly, APC
577 Salmar Avenue, Second Floor
Campbell, CA  95008

John S. Ferris
c/o Keith L. Langston

Langston Law Firm
109 West Tyler Street
Longview, TX  75601

John S. Ferris
c/o Scott Coleman Skelton
Skelton Slusher Barnhill Watkins Wells
1616 South Chestnut
Lufkin, TX  75901

Janet Arnold
c/o Keith L. Langston
Langston Law Firm
109 West Tyler Street
Longview, TX  75601

Janet Arnold
c/o Scott Coleman Skelton
Skelton Slusher Barnhill Watkins Wells
1616 South Chestnut
Lufkin, TX  75901

Michael Arnold
c/o Keith L. Langston
Langston Law Firm
109 West Tyler Street
Longview, TX  75601

Don B. Bergis
c/o Patric J. Kelly
Adleson, Hess & Kelly, APC
577 Salmar Avenue, Second Floor
Campbell, CA  95008

Scott Carlson
c/o Rod L. Poirot
Cavazos Hendricks Poirot & Smitham, P.C.
Suite 570, Founders Square
900 Jackson Street
Dallas, TX  75202

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| **In re:** | § |
|  | § **Chapter 11 Case** |
|  | § |
| **LIFE PARTNERS HOLDINGS, INC.,** | § **Case No. 15-40289-rfn-11** |
|  | § |
| **Debtor.** | § |
|  | § |

## VERIFIED STATEMENT OF H. THOMAS MORAN II

BEFORE ME, the undersigned authority on this day personally appeared H. Thomas Moran II who being by me duly sworn upon this oath, deposes and says as follows:

"My office is located at 521 West Wilshire Blvd., Ste. 200, Oklahoma City, OK  73116."

"The U. S. Trustee has contacted me in an effort to appoint me as the Chapter 11 Trustee in the above-referenced case.  Said bankruptcy was filed voluntarily on January 20, 2015, and bears Case No. 15-40289-rfn-11."

"To the best of my knowledge, after diligent investigation, I hereby state that I do not have any connection with the Debtor, its creditors, any parties in interest, their respective attorneys and accountants, the U. S. Trustee or any person employed in the Office of the U. S. Trustee."

_____
H. Thomas Moran II

SUBSCRIBED AND SWORN to before me this 16th day of March, 2015.

_____
Notary Public, State of Texas

My Commission Expires:



CHARLES E. LEE III
Notary Public, State of Texas
My Commission Expires
MARCH 15, 2017

_____
Charles E Lee III
Notary's Name – Printed or Typed

Label Matrix for local noticing
0539-4
Case 15-40289-rfn11
Northern District of Texas
Ft. Worth
Thu Mar 19 11:59:47 CDT 2015

Advance Trust & Life Escrow Services, LTA
c/o J. David Dickson
220 South Fourth Street
Waco, TX 76701-2225

Aguirre Law, APC
501 W. Broadway
Suite 800
San Diego, CA 92101-3546

Certain Shareholders of Life Partners Holdin
Aguirre Law, APC
501 W. Broadway, Ste. 800
San Diego, CA 92101-3546

Creditors Committee
Munsch Hardt
500 N. Akard St.
Suite 3800
Dallas, TX 75201-6659

Estate of Kenneth L. Musgrave, Deceased
co Thomas W. Choate
P.O. Box 206
P.O.
Abilene, TX 79604 United States

Forshey & Prostok LLP
777 Main Street Suite 1290
Ft. Worth, TX 76102-5316

Life Partners Holdings, Inc.
204 Woodhew Drive
Waco, TX 76712-6529

Local counsel for Gary Aguirre as Counsel fo
Higier Allen & Lautin, P.C.
5057 Keller Springs Road, Suite 600
Addison, TX 75001-6352

Tarrant County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie Spindler Huffman
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

U.S. Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street
Unit 18, Suite 1900
Fort Worth, TX 76102-6882

501 W. Tenth Street
Fort Worth, TX 76102-3637

AFCO
5600 N. River Rd., Suite 400
Rosemont, IL 60018-5187

AFCO
PO Box 4795
Carol Stream, IL 60197-4795

Advance Trust & Life Escrow
Services, LTA
4125 West Waco Dr., Suite 200
Waco, TX 76710-7110

Aguirre Law, APC
501 Broadway, Suite 800
San Diego, CA 92101-5205

Alexander Dubose Jefferson & Townsend
1844 Harvard St.
Houston, TX 77008-4342

Alexander Dubose Jefferson & Townsend
515 Congress Ave., Suite 2350
Austin, TX 78701-3562

(p)ALLIED INSURANCE
1100 LOCUST STREET D1-7C-0301
DES MOINES IA 50391-1100

Allied Property and Casualty
Insurance Co.
1100 Locust St., Dept. 1100
Des Moines, IA 50391-1100

American Stock Transfer & Trust Co.
P.O. Box 12893
Philadelphia, PA 19176-0893

Arthur Morrow, et ux
c/o James Craig Orr, Jr.
Heygood, Orr & Pearson
2331 W. Northwest Hwy., 2nd Floor
Dallas, TX 75220-4415

Baker & McKenzie, LLP
2001 Ross Ave., Suite 2300
Dallas, TX 75201-2968

Beasley Insurance Co., Inc.
1270 Avenue of the Americas, 12th Floor
New York, NY 10020-1702

Brian Pardo
908 Arlington Dr.
Waco, TX 76712-3205

Broadridge ICS
PO Box 416423
Boston, MA 02241-6423

Carrington Coleman Sloman & Blumenthal,
901 Main Street, Suite 5500
Dallas, TX 75202-3767

Charles E. Baruch
Law Office of Chad Baruch
3201 Main St.
Rowlett, TX 75088-7508

Danny Birtcher
c/o James Craig Orr, Jr.
Heygood, Orr & Pearson
2331 W. Northwest Hwy, 2nd Floor
Dallas, TX 75220-4415

David Martin
3801 Herwol Ave.
Waco, TX 76710-7103

David Santacroce
c/o Marc Gross/Jeremy Lieberman
Pomerantz Haudek Grossman & Gross, LLP
100 Park Ave., 26th Floor
New York, NY 10017-5539

David Whitmire, et al
c/o James Craig Orr Jr.
Heygood, Orr & Pearson
2331 W. Northwest Hwy, 2nd Floor
Dallas, TX 75220-4415

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Donald Cassidy M.D., Ltd.
4795 Cauglin Parkway, Suite 200
Reno, NV 89519-0994

First Advantage Litigation Consulting,
LLC dba Consilio
P.O. Box 935411
Atlanta, GA 31193-5411

Fred Dewald
428 Riverview Dr.
Waco, TX 76712-7606

Gary L & Linda R Clifton
4455 County Road 862
McKinney, TX 75071-7353

Gregory Griswold
c/o Brian J. Robbins
Robbins Arroyo LLP
600 B. Street, Suite 1900
San Diego, CA 92101-4507

Gregory Griswold, et al
c/o Joe Kendall and Jamie Jean McKey
Kendall Law Group
3232 McKinney Ave., Suite 700
Dallas, TX 75204-7416

HSPG & Associates, PC
5400 N. Grand Blvd., Suite 330
Oklahoma City, OK 73112-5702

Harold E. Rafuse, Ph.D.
111 Laurel Oaks Lane
Crawford, TX 76638-2767

Harriet Goldstein
c/o Andrew D. Abramowitz
Spector Roseman Kodroff & Willis, P.C.
1818 Market St., Suite 2500
Philadelphia, PA 19103-3650

Horwood, Marcus & Berk
500 W. Madison St., Suite 3700
Chicago, IL 60661-4591

INTERNAL REVENUE SERVICE
1100 COMMERCE ST.
DALLAS, TX 75242-1100
MC5027 DAL

Illinois National Insurance Co.
175 Water St.
New York, NY 10038-4969

Indian Harbor Insurance Company
505 Eagleview Blvd., Suite 100
Dept: Regulatory
Exton, PA 19341-1199

JMD Resources, LLC
c/o James D. Hurst, Esq.
1202 Sam Houston Ave.
Huntsville, TX 77340-4638

Jay Ethington, Attorney at Law
3131 McKinney Ave., Suite 800
Dallas, TX 75204-2432

John Willingham MDL Group
c/o James Craig Orr, Jr.
Heygood, Orr & Pearson
2331 W. Northwest Hwy., 2nd Floor
Dallas, TX 75220-4415

John Woelfel, et al
c/o John Chapman
Heygood, Orr & Pearson
2331 W. Northwest Hwy, 2nd Floor
Dallas, TX 75220-4415

Joy Dittberner
c/o Gregory Naspole
Wolfe Haldenstein, Adler, Freeman & Herz
270 Madison Ave.
New York, NY 10016-0601

Kevin Buchanan & Associates
900 Jackson St., Suite 350
Dallas, TX 75202-4486

Kyle Mathis & Lucas LLP
8226 Douglas Ave., Suite 450
Dallas, TX 75225-5950

Law Office of Douglas M. Berman
4925 Greenville Ave., Suite 200
Dallas, TX 75206-0500

Law Offices of Trey Martinez Fischer
IBC Centre
130 E. Travis St., Suite 425
San Antonio, TX 78205-1715

Life Partners, Inc.
204 Woodhew
Waco, TX 76712-6529

Life Partners, Inc.
P.O. Box 21596
Waco, TX 76702-1596

Malcolm Gray
c/o Samuel Rosen
Harwood Feffer LLP
488 Madison Ave., 8th Floor
New York, NY 10022-5726

McLennan County
c/o Diane W. Sanders
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 17428
Austin, TX 78760-7428

Meadows Collier Attorneys at Law
901 Main St., Suite 3700
Dallas, TX 75202-3725

Mediant Communications
PO Box 29976
New York, NY 10087-9976

Meyer Unkovic & Scott LLP
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222-2315

Nasdaq Office of General Council
805 King Farm Boulevard
Rockville MD 20850-6162

Office Depot
6600 N. Military Trail-S413G
Boca Raton FL 33496-2434

Pardo Family Holdings, Ltd.
c/o SKP, 1745 Broadway
18th Floor
New York, NY 10019

Paul Berger
c/o Kevin Michael Young
Prichard, Hawkins, McFarland & Young
Union Squire, Suite 600
San Antonio, TX 78216

Paul Berger
c/o Laurence D. Paskowitz
Paskowitz Law Firm, P.C.
60 East 42nd St., 46th  Floor
New York, NY 10165-0043

Paul Berger
c/o Roy L. Jacobs
60 East 2nd St., 46th Floor
New York, NY 10003

Price L. Johnson, PC
8750 N. Central Expressway, Suite 1010
Dallas, TX 75231-6409

Purchase Escrow Services, LLC
205 M&B Industrial
Woodway, TX 76712-6461

R. Scott Peden
1117 Charring Cross
Waco, TX 76712-7562

Robert Whitehurst
c/o James Craig Orr, Jr.
Heygood, Orr & Pearson
2331 W. Northwest Hwy, 2nd Floor
Dallas, TX 75220-4415

Selma Stone (proposed class)
c/o Reed Kathrein/Peter Borkon
Hagens Berman Sobol Shapiro LLP
715 Hearst Ave., Suite 202
Berkeley, CA 94710-1948

Selma Stone (proposed class)
c/o Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1918 Eigth Ave., Suite 3300
Seattle, WA 98101

Shackelford Melton McKinley & Norton LLP
3333 Lee Parkway, Tenth Floor
Dallas, TX 75219-5111

Shareholder.com
Lockbox 30200
P.O. Box 8500
Philadelphia, PA 19178-0200

Squire Patton Boggs (US)
2000 McKinney Ave., Suite 1700
Dallas, TX 75201-2085

Squire Patton Boggs (US)
2550 M St. NW
Washington, DC 20037-1301

Squire Patton Boggs (US)
P.O. Box 511269
Los Angeles, CA 90051-7824

State of Texas
c/o Texas Attorney General
P.O. Box 12548
Austin, TX 78711-2548

Stewart Scothorn
c/o John D. Fraser
Shields, Britton & Fraser, PC
5401 Village Creek Dr.
Plano, TX 75093-4812

Strasburger & Price, LLP
PO Box 50100
Dallas, TX 75250-0100

Streusand, Landon & Ozburn, LLP
811 Barton Springs Rd., Suite 811
Austin, TX 78704-1166

Tad M. Ballantyne
5118 Hunt Club Road
Racine, WI 53402-2333

Texas Mutual Insurance Co.
6210 E. Highway 290
Austin, TX 78723-1026

The Nasdaq Stock Market
One Liberty Plaza
New York, NY 10006-1405

The Vintage Group
350 Hudson St., Suite 300
New York, NY 10014-5827

Todd McClain, et al
c/o James Craig Orr, Jr.
Heygood, Orr & Pearson
2331 W. Northwest Hwy, 2nd Floor
Dallas, TX 75220-4415

Travelers
One Tower Square
Hartford, CT 06183-0002

(c)U.S. SECURITIES AND EXCHANGE COMMISSION
ATTN:  B. DAVID FRASER
801 CHERRY ST UNIT 18
FORT WORTH TX  76102-6882

(c)U.S. SECURITIES AND EXCHANGE COMMISSION
ATTN:  JESSICA B. MAGEE
801 CHERRY ST UNIT 18
FORT WORTH TX  76102-6882

(c)U.S. SECURITIES AND EXCHANGE COMMISSION
ATTN:  MATTHEW J. GULDE
801 CHERRY ST UNIT 18
FORT WORTH TX  76102-6882

United States Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-0996

West & Associates LLP
320 South R.L. Thornton Freeway,
Suite 300
Dallas, TX 75203-1842

Whitley Penn LLP
8343 Douglas Ave., Suite 400
Dallas, TX 75225-5801

Christine Duncan
c/o Skelton Slusher Barnhill
Watkins Wells, PLLC
1616 S. Chestnut
Lufkin, tx 75901-5732

G. Kevin Buchanan
Kevin Buchanan & Associates, PLLC
900 Jackson Street
Suite 350
Dallas, TX 75202-4486

Gerrit M. Pronske
Pronske Goolsby & Kathman, P.C.
2200 Ross Avenue
Suite 5350
Dallas, TX 75201-7903

J. Robert Forshey
Forshey & Prostok, LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102-5316

Janet Arnold
c/o Skelton Slusher Barnhill
Watkins Wells, PLLC
1616 S. Chestnut
Lufkin, TX 75901-5732

Jared M. Elson

Jason Patrick Kathman
Pronske Goolsby & Kathman, P.C.
2200 Ross Ave.,Ste. 5350
Dallas, TX 75201-7903

Jeff P. Prostok
Forshey & Prostok, LLP
777 Main St., Suite 1290
Ft. Worth, TX 76102-5316

John S Ferris
c/o Skelton Slusher Barnhill
Watkins Wells, PLLC
1616 S. Chestnut
Lufkin, TX 75901-5732

Matthew J. Gulde
Securities and Exchange Commission
801 Cherry St., Unit 18, Suite 1900
Fort Worth, TX 76102-6882

Melanie Pearce Goolsby
Pronske Goolsby & Kathman, P.C.
2200 Ross Avenue, Suite 5350
Dallas, TX 75201-7903

Michael Arnold
c/o Skelton Slusher Barnhill
Watkins Wells, PLLC
1616 S. Chestnut
Lufkin, TX 75901-5732

Scott Carlson

Steve South
c/o Skelton Slusher Barnhill
Watkins Wells, PLLC
1616 S. Chestnut
Lufkin, TX 75901-5732

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Allied Insurance
Depositors Insurance Co.
1100 Locust St., Dept 1100
Des Moines, IA 50391-2000

Department of the Treasury
Internal Revenue Service
4050 Alpha Road
Farmers Branch, TX 75244
Attn:  James F. McCarthy, Jr.

(d)Internal Revenue Service
Dept. of the Treasury
4050 Alpha Rd.
Farmers Branch, TX 75244

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

U.S. Securities and Exchange Commission
Attn: B. David Fraser
801 Cherry St., Suite 1900
Fort Worth, TX 76102-6882

U.S. Securities and Exchange Commission
Attn: Jessica B. Magee
801 Cherry St., Suite 1900, Unit 18
Fort Worth, TX 76102

U.S. Securities and Exchange Commission
Attn: Matthew J. Gulde
801 Cherry St., Suite 1900, Unit 18
Fort Worth, TX 76102

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)AFCO Credit Corporation

(u)Ad Hoc Committee of Fractional Insurance B

(u)John Willingham MDL Group

(u)McLennan County

(u)Official Committee of Unsecured Creditors

(u)Purchase Escrow Services, LLC

(u)Regent Wealth Management

(d)Advance Trust & Life Escrow Services, LTA
4125 West Waco Dr., Suite 200
Waco, TX 76710-7110

(d)Baker & McKenzie LLP
2001 Ross Avenue
Suite 2300
Dallas, TX 75201-2968

(d)David Martin
3801 Herwol Avenue
Waco, TX 76710-7103

(d)Forshey & Prostok
777 Main St., Suite 1290
Ft Worth, TX 76102-5316

(u)Pardo Family Trust
unknown

(u)Brian Pardo

(u)Don B. Bergis

End of Label Matrix
Mailable recipients    108
Bypassed recipients     14
Total                  122

# EXHIBIT 14

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 229 (Bankr. N.D. Tex. Mar. 19, 2015)



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 19, 2015**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **In re:** | § |
| | § **Chapter 11 Case** |
| | § |
| **LIFE PARTNERS HOLDINGS, INC.,** | § **Case No. 15-40289-rfn-11** |
| | § |
| **Debtor.** | § |

### ORDER APPROVING APPOINTMENT OF CHAPTER 11 TRUSTEE

Came on for consideration, the United States Trustee's Application to Approve

Appointment of Chapter 11 Trustee filed in the above entitled case. It appearing H. Thomas

Moran II was selected by the United States Trustee after consulting with the appropriate parties-

in-interest, that H. Thomas Moran II appears to be qualified under 11 U.S.C. §321(a) to serve as

Chapter 11 Trustee in this case, and that H. Thomas Moran II represents that he has no

connection with the United States Trustee or any persons employed by the United States Trustee,

it is therefore

ORDERED, that the appointment of H. Thomas Moran II as Chapter 11 Trustee in this

case is approved.

# end of order #

Form of Order Prepared By:

Erin Marie Schmidt
Texas State Bar No. 24033042
Office of the United States Trustee
1100 Commerce St.,  Room 976
Dallas, TX  75242
Erin.Schmidt2@usdoj.gov
(214) 767-1075

# EXHIBIT 15

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 336 (Bankr. N.D. Tex. May 19, 2015)

David M. Bennett
Texas Bar No. 02139600
Richard Roper
Texas Bar No. 17233700
Katharine Battaia Clark
Texas Bar No. 24046712
**THOMPSON & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214.969.1700 (telephone)
214.969.1751 (facsimile)
david.bennett@tklaw.com
richard.roper@tklaw.com
katie.clark@tklaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 15-40289-RFN-11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| | § | **(JOINT ADMINISTRATION REQUESTED)** |
| | § | **CHAPTER 11** |
| **Debtor.** | § | |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. _____** |
| **LIFE PARTNERS, INC.,** | § | |
| | § | **(JOINT ADMINISTRATION REQUESTED)** |
| **Debtor.** | § | **CHAPTER 11** |
| | § | |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. _____** |
| **LPI FINANCIAL SERVICES, INC.,** | § | |
| | § | **(JOINT ADMINISTRATION REQUESTED)** |
| **Debtor.** | § | **CHAPTER 11** |
| | § | |

## EMERGENCY MOTION FOR JOINT ADMINISTRATION

**THE TRUSTEE AND THE SUBSIDIARY DEBTORS HAVE REQUESTED EMERGENCY CONSIDERATION OF THIS MOTION AND HAVE REQUESTED THAT A "FIRST DAY" HEARING BE HELD ON THIS MOTION AT THE COURT'S EARLIEST CONVENIENCE.   IF THE COURT IN FACT SETS THIS MOTION FOR AN EMERGENCY OR AN EXPEDITED "FIRST DAY" HEARING, THEN ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

H. Thomas Moran II ("Moran" or the "Trustee"), as chapter 11 trustee for Life Partners Holdings, Inc. ("LPHI")[1], pursuant to the Trustee's authority under this Court's *Order Authorizing the Trustee to Amend the Governing Documents and To File Voluntary Chapter 11 Petitions For Debtor's Subsidiaries* (the "Subsidiary Filing Order")[2], as the sole director of Life Partners, Inc. ("LPI") and LPI Financial Services, Inc. ("LPIFS", and together with LPI, the "Subsidiary Debtors"), files this *Emergency Motion for Joint Administration* (the "Motion").  In support of the Motion, the Trustee and the Subsidiary Debtors incorporate the *Declaration of H. Thomas Moran II in Support of Voluntary Petitions, First Day Motions, and Designation as Complex Bankruptcy Case* (the "Moran Declaration")[3] filed contemporaneously herewith.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue of this case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Case No. 15-40289-RFN-11.
[2] Dkt. No. 261.
[3] All capitalized terms not expressly defined herein shall have the same meaning as ascribed in the Moran Declaration.

3.      The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 105 and Rule 1015 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

4.      On January 20, 2015 (the "LPHI Petition Date"), LPHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") thereby commencing its bankruptcy case (the "LPHI Bankruptcy Case").

5.      On January 30, 2015, the Office of the United States Trustee (the "U.S. Trustee") formed an official committee of unsecured creditors (the "LPHI Committee") in the LPHI Bankruptcy Case.

6.      Shortly after the LPHI Petition Date, the Securities and Exchange Commission (the "SEC") filed its *Motion Under 11 U.S.C. § 1104(a) for Appointment of a Chapter 11 Trustee*.[4]  On January 26, 2015, the U.S. Trustee filed its *Motion for an Order Directing the Appointment of a Chapter 11 Trustee*.[5]  The LPHI Committee joined the SEC's and U.S. Trustee's requests to appoint a chapter 11 trustee and on March 10, 2015, the Court granted the request.[6]

7.      On March 13, 2015, the U.S. Trustee appointed Moran as the chapter 11 Trustee in the LPHI Bankruptcy Case,[7] and on Thursday, March 19, 2015, this Court affirmed the Moran's appointment.[8]

8.      On April 7, 2015, in the Subsidiary Filing Order, this Court authorized the Trustee to (a) take the necessary steps to install the Trustee as the sole director of LPI and LPIFS

---

[4] Dkt. No. 14.
[5] Dkt. No. 27.
[6] Dkt. No. 186.
[7] Dkt. No. 205.
[8] Dkt No. 225.  Dkt. No. 229.

and (b) take all steps necessary to place LPI, LPIFS, and any other direct or indirect subsidiaries or affiliates of LPHI as the Trustee determined appropriate to file voluntary chapter 11 bankruptcy petitions.[9]

9.      Upon entry of the Subsidiary Filing Order, the Trustee became the sole director of LPI and LPIFS.  Likewise, the business of LPHI and the Subsidiary Debtors (collectively, the "<u>Debtors</u>", "<u>Life Partners</u>", or the "<u>Company</u>") has continued to operate under the direction of the Trustee.[10]

10.     On May 19, 2015 (the "<u>Subsidiary Petition Date</u>"), certain direct and indirect subsidiaries of LPHI—namely the Subsidiary Debtors—filed  their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code, thereby initiating their bankruptcy cases (the "<u>Subsidiary Bankruptcy Cases</u>").  On the Subsidiary Petition Date, the Subsidiary Debtors filed their *Emergency Motion for Joint Administration* requesting that the Court jointly administer the LPHI Bankruptcy Case and the Subsidiary Bankruptcy Cases (collectively, these "<u>Cases</u>").

## <u>RELEVANT FACTUAL BACKGROUND</u>

### A.      Life Partners' Operations.

11.     LPHI is a publically traded company incorporated in Texas and its common stock has been delisted from the NASDAQ (formerly trading under the symbol "LPHI"), and is currently not eligible to be quoted on the over the counter markets.[11]   LPHI is a holding company and is the parent company, by virtue of being the 100% stock owner, of LPI.[12]  LPI was formed to engage in the secondary market for life insurance policies known generally as

---

[9] *See* Dkt. No. 261.
[10] *See* Dkt. No. 261.
[11] Moran Declaration at ¶ 18.
[12] *Id.* at ¶ 18.

"life settlements," involving the purchase of previously issued life insurance policies upon individuals (the "insureds").[13]

12.     From its inception in 1991 to the early 2000s, Life Partners dealt exclusively in the purchase and administration of life insurance policies held by persons who were thought to be terminally ill.[14] Those types of life settlements are specifically referred to as "viaticals" in the industry.[15] Over time, Life Partners transitioned into the purchase and administration of life insurance policies for which the insured is over the age of 65 (sometimes referred to as "senior life settlements").[16] In either instance (viaticals or senior life settlements), the existing policyholder would sell the policy to LPI and receive an immediate cash payment.[17]

13.     To build its portfolio of life insurance policies (the "Policy Portfolio"), LPI was generally contacted by holders of policies, or their representatives, to sell their policies.[18] LPI would then solicit money from investors (the "Investors") to fund its purchase of the policy. *Id.* In a life settlement transaction, the estimate of an Insured's life expectancy ("LE") is a critical factor in determining the purchase price that investors are willing to pay.[19]

14.     Once the purchase was completed, LPI recorded its ownership of the policy with the insurance company and would then designate an "escrow" company as the record beneficiary. [20]

15.     LPI purchased many types of life insurance policies, including group, term, universal life, and whole life.[21] As of the Subsidiary Petition Date, LPI is or was the record

---

[13] *Id.* at ¶ 19.
[14] *Id.* at ¶ 20.
[15] *Id.*
[16] *Id.*
[17] LPI is currently a licensed life settlement provider in several states.  A life insurance policy that has been purchased in the secondary market is sometimes referred to as a "life settlement policy."
[18] *Id.* at ¶ 21.
[19] *Id.* at ¶ 44.
[20] *Id.* at ¶ 22.

owner of approximately 3,600 life insurance policies (the "Policies") with an aggregate face value in excess of $2.4 billion. *Id.* Since the Trustee's appointment, Life Partners has not purchased any new life insurance policies.[22]

16.     Following LPI's purchase of a life insurance policy and related sale of investment contracts to its Investors, LPI is responsible for policy servicing and portfolio management, which now comprises the focus of Life Partners' business operation.[23]   Policy servicing and portfolio management includes all of the activities required to keep the Policies in force through maturity and receipt of their proceeds, including but not limited to: (a) maintaining policy files (and related Investor files, as applicable); (b) tracking (and optimizing) premium payments; (c) tracking the insured individuals; and (d) obtaining proof of death and submitting claims for payment of death benefits under the Policies.[24]  This also includes determining the frequency and amount of premiums to pay the insurance companies in order to keep each policy in force.[25] Historically, LPI has instructed so-called escrow agents to pay premiums in amounts and frequency LPI directed.[26]

17.     Prior to the Subsidiary Petition Date, LPI and its licensees also facilitated "resale" transactions (on which they collected additional fees) and, several years ago, LPI began to operate an online trading platform it called the "LP Market."[27]   Shortly after his appointment, the Trustee closed that market out of concern, among other things, that it involved the sale of unlicensed "securities."[28]

---

[21] *Id.* at ¶ 23.
[22] *Id.*
[23] *Id.* at ¶ 37.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.* at ¶ 39.
[28] *Id.*

**B.  Initial Findings of Trustee's Investigation.**

18.    Immediately upon the Trustee's appointment, the Trustee began to discharge his fiduciary duties, including launching an investigation into the business practices of Life Partners (which investigation is ongoing).[29]  In the in the matter *of SEC v. Life Partners Holdings, Inc., et al.*, pending in the federal district court for the Western District of Texas, Case No. 12-cv-00033-JRN (the "SEC Action"), the District Court found, among other things, that ". . . Defendants knowingly—or at least recklessly—violated securities laws of this nation."[30]

19.    The Trustee's investigation has included an analysis of the Life Partners business enterprise, and prior business practices, with a particular emphasis on investigating the allegations that resulted in the judgment entered in the SEC Action and led to his appointment. [31]

20.    As a result of his investigation to date, the Trustee concluded that Life Partners devised and executed a wide-ranging scheme to defraud its Investors. [32]

21.    The fraud, which took place over the course of a number of years, occurred in a number of ways, including, but not limited to:

- Use of artificially shortened life expectancies in the sale of its so-called "fractional investments";

- Material misrepresentation of the returns Investors could expect;

- Misrepresentations regarding whether policies had lapsed and resale of lapsed interests;

- Use of so-called "escrow companies," including one with the word "trust" in its name, as instrumentalities of, and cover for, the fraudulent scheme;

- Charging massive, undisclosed fees and commissions, the total amount of which, in many cases, exceeded the purchase price of the policies themselves;

---

[29] *Id.* at ¶ 40.
[30] Final Judgment Order, SEC Action, Dkt. No. 304. Id.
[31] *Id.* at ¶ 41.
[32] *Id.* at ¶ 42.

- Repeated misrepresentation of Life Partners' business practices in order to maneuver around securities regulatory regimes;

- Egregious and continuous self dealing by insiders;

- Failure to disclose CSV;

- Forcing Investors to abandon Contract Positions, many of which were then resold for personal gain;

- Systematic financial mismanagement, including improper payment of dividends;

- Faulty and inconsistent record keeping, including with respect to the purported "escrow" companies and "trusts";

- Commingling and unauthorized use of Investor monies;

- The offer and sale of unregistered securities;  and

- Implying the investment structure was a permissible investment for an IRA, and failing to disclose the risks if it was not.[33]

22.     Additional information regarding the Debtors' business, the fraud, and the events leading to these Chapter 11 Cases is contained in the Moran Declaration.

## <u>RELIEF REQUESTED</u>

23.     Pursuant to Bankruptcy Rule 1015(b), the Trustee requests that this Court enter an order directing (a) the joint administration of Cases for procedural purposes only under the case style *In re Life Partners Holdings, Inc., et al*, Case No. 15-40289-RFN-11, currently pending before this Court; and (b) the use of a consolidated caption by parties in interest for any pleading related to any of the jointly administered Cases.

24.     Bankruptcy Rule 1015(b) provides, "if two or more petitions are pending in the same court by or against…a debtor and an affiliate, this Court may order a joint administration of the estates" of such debtor and its affiliates.[34]

---

[33] *Id.*

25.     In the instant case, LPHI is the 100% owner, directly or indirectly of the Subsidiary Debtors.  Accordingly, all of the Debtors are "affiliates," as that term is defined by Bankruptcy Code Section 101(2).  Therefore, joint administration of these estates is appropriate.

26.     Further, joint administration of the cases will be an efficient use of this Court's and the Debtors' resources.  Numerous matters affecting the Debtors can be handled by the use of combined notice, motion, order or hearing.  Joint administration will permit the use of a single, general docket for the cases and combine notices to creditors and other parties in interest of the Debtors' respective estates.

27.     Joint administration of the Cases will also reduce the cost and burden of repetitive, duplicative and potentially confusing filings by permitting counsel for all parties-in-interest to (a) use a single consolidated caption on the numerous documents that will be filed and served in the Cases; and (b) file documents in only one of the Cases rather than in multiple Cases.

28.     Moreover, joint supervision of the administrative aspects of the Cases by the U.S. Trustee and the Court will be simplified.  As such, joint administration will promote the economical and efficient administration of the Cases to the benefit of the Debtors, their respective creditors, the U.S. Trustee, and this Court.

29.     The rights of the respective creditors of each of the estates will not be prejudiced by the joint administration of the Cases because the relief sought is procedural in nature and is not intended to affect substantive rights.  Pending any further order of this Court otherwise, each creditor will be entitled to file a proof of claim against the particular estate in which it allegedly has a claim and will retain whatever claims it has against the particular estate. Contemporaneously with this Motion, the Trustee will be filing a motion to retain and employ a

---

[34] FED. R. BANKR. P. 1015 (b).

noticing, soliciting, and balloting agent (the "Noticing and Balloting Agent") in these Cases pursuant to 28 U.S.C. § 156(c).  The Noticing and Balloting Agent will maintain the claims docket for each of the Debtors.  Further, all schedules of assets and liabilities and statements of financial affairs will be captioned and filed in each of the Debtors' respective case, as appropriate.

30.     Accordingly, the Trustee proposes that this Court establish the following consolidated official caption to be used by all parties in all pleadings in the Debtors' jointly administered Case, except as otherwise specifically provided herein:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| IN RE: | § | |
| --- | --- | --- |
| | § | **CASE NO. 15-40289-RFN-11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **(JOINTLY ADMINISTERED)** |
| | § | **CHAPTER 11** |
| Debtors. | § | |

31.     The Trustee submits that the use of the simplified caption designated above by all parties will eliminate cumbersome and confusing procedures and ensure a uniformity of pleading identification.

32.     The Trustee also requests that a docket entry, substantially similar to the one below, be entered on the docket of each Subsidiary Debtor's case to reflect the joint administration of the Chapter 11 Cases.

> An order has been entered in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure directing the procedural consolidation and joint administration of the chapter 11 cases of Life Partners Holdings, Inc., Life Partners, Inc., and LPI Financial Services, Inc.  The docket in Case No. 15-40289-RFN-11 should be consulted for all matters affecting this case.

33.     Finally, the Trustee seeks authority to file the monthly operating reports required by the U.S. Trustee Operating Guidelines on a consolidated basis.

## NOTICE

34.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Northern District of Texas, (b) the LPHI Committee, (c) the 30 largest unsecured creditors of LPI, (d) the 20 largest unsecured creditors of LPIFS, (e) the United States Attorney for the Northern District of Texas, (f) the Securities and Exchange Commission, (g) the Internal Revenue Service, (h) persons listed on the LPHI Master Service List, and (i) persons who have filed a request for notice pursuant to Bankruptcy Rule 2002 and such other government agencies to the extent required by the Bankruptcy Rules and Bankruptcy Local Rules.  The Trustee and the Subsidiary Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

35.     No prior request for the relief sought in this Motion has been made to this or any other court.

## PRAYER

**WHEREFORE**, the Trustee and the Subsidiary Debtors respectfully request that this Court (a) enter an order directing the joint administration of these chapter 11 Cases and (b) grant such other and further relief as this Court deems just and proper, both at law and in equity.

**DATED:** May 19, 2015

Respectfully submitted,

**THOMPSON & KNIGHT LLP**

By:    _/s/ Katharine Battaia Clark_

David M. Bennett
Texas Bar No. 02139600
Richard B. Roper
Texas Bar No. 17233700
Katharine Battaia Clark
Texas Bar No. 24046712

1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214/969-1700
Facsimile: 214/969-1751
David.Bennett@tklaw.com
Richard.Roper@tklaw.com
Katie.Clark@tklaw.com

**(PROPOSED) ATTORNEYS FOR CHAPTER 11
TRUSTEE H. THOMAS MORAN II**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 15-40289-RFN-11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| | § | **(JOINT ADMINISTRATION REQUESTED)** |
| Debtor. | § | **CHAPTER 11** |
| | § | |

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. _____** |
| **LIFE PARTNERS, INC.,** | § | |
| | § | **(JOINT ADMINISTRATION REQUESTED)** |
| Debtor. | § | **CHAPTER 11** |
| | § | |

IN RE:                                    §
                                          §    CASE NO. _____
LPI FINANCIAL SERVICES, INC.,             §
                                          §    (JOINT ADMINISTRATION REQUESTED)
        Debtor.                           §          CHAPTER 11
                                          §

---

## ORDER DIRECTING JOINT ADMINISTRATION OF CASES

Having considered the Trustee's *Emergency Motion for Joint Administration* (the "Motion")[1], the Moran Declaration, and the evidence and arguments presented at the hearing, the Court finds that: (a) jurisdiction over the matters in the Motion is proper pursuant to 28 U.S.C. §§1334 and 157; (b) venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409; (c) proper and adequate notice of the Motion has been provided and no further notice is needed; (d) the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors, and all parties-in-interest; and (e) good and sufficient cause exists for granting the relief requested in the Motion.  Accordingly, it is

**ORDERED** that the Motion is hereby **GRANTED**.  It is further

**ORDERED** that, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, the above-captioned chapter 11 Cases shall be consolidated for procedural purposes only and jointly administered under the Case styled *In re Life Partners Holdings, Inc., et al.*, Case No. 15-40289-RFN-11.  It is further

**ORDERED** that the joint caption of the Cases shall read as it appears immediately below:

---

[1] All capitalized terms not defined herein shall have the meaning ascribed in the Motion.

**ORDER DIRECTING JOINT ADMINISTRATION OF CASES - PAGE 2**
522202 000003 14562225.2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-40289-RFN-11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| Debtors. | § | |

It is further

      **ORDERED** that a docket entry shall be made in the Subsidiary Debtors cases substantially as follows:

> An order has been entered in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure directing the procedural consolidation and joint administration of the chapter 11 cases of Life Partners Holdings, Inc., Life Partners, Inc., and LPI Financial Services, Inc.  The docket in Case No. 15-40289-RFN-11 should be consulted for all matters affecting this case.

It is further

      **ORDERED** that the procedural consolidation pursuant to this Order shall be for administrative purposes only and shall not be a substantive consolidation.  It is further

      **ORDERED** that the Bankruptcy Clerk shall maintain one file for the Cases, except that all schedules of assets and liabilities and statements of financial affairs required by Bankruptcy Rule 1007 shall be captioned and filed in the docket of each separate case, as appropriate.  It is further

      **ORDERED** that the Noticing and Balloting Agent shall maintain separate claim registers for each case and all proofs of claim shall be filed in the case in which the claim is asserted.  It is further

      **ORDERED** that one disclosure statement and plan of reorganization and/or liquidation may be filed for all Cases by any plan proponent.

### End of Order ###

# EXHIBIT 16

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 367 (Bankr. N.D. Tex. May 22, 2015)

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS
ON THE COURT'S DOCKET
TAWANA C. MARSHALL, CLERK

D. Michael Lynn
U.S. Bankruptcy Judge

MAY 2 2 2015

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 15-40289-RFN-11 |
| LIFE PARTNERS HOLDINGS, INC., | § | |
| | § | (JOINT ADMINISTRATION REQUESTED) |
| Debtor. | § | CHAPTER 11 |
| | § | |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 15-41995 |
| LIFE PARTNERS, INC., | § | |
| | § | (JOINT ADMINISTRATION REQUESTED) |
| Debtor. | § | CHAPTER 11 |
| | § | |

IN RE:                              §
                                    §    CASE NO. 15-41996
LPI FINANCIAL SERVICES, INC.,       §
                                    §    (JOINT ADMINISTRATION REQUESTED)
     Debtor.                        §              CHAPTER 11
                                    §
                                    §

## ORDER DIRECTING JOINT ADMINISTRATION OF CASES

Having considered the Trustee's *Emergency Motion for Joint Administration* (the

"Motion")[1], the Moran Declaration, and the evidence and arguments presented at the hearing,

the Court finds that: (a) jurisdiction over the matters in the Motion is proper pursuant to 28

U.S.C. §§1334 and 157; (b) venue is proper in this Court pursuant to 28 U.S.C. §§1408 and

1409; (c) proper and adequate notice of the Motion has been provided and no further notice

is needed; (d) the relief sought in the Motion is in the best interests of the Debtors' estates,

their creditors, and all parties-in-interest; and (e) good and sufficient cause exists for granting

the relief requested in the Motion. Accordingly, it is

**ORDERED** that the Motion is hereby **GRANTED**. It is further

**ORDERED** that, pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy

Procedure, the above-captioned chapter 11 Cases shall be consolidated for procedural

purposes only and jointly administered under the Case styled *In re Life Partners Holdings,*

*Inc., et al.*, Case No. 15-40289-RFN-11. It is further

**ORDERED** that the joint caption of the Cases shall read as it appears immediately

below:

---

[1] All capitalized terms not defined herein shall have the meaning ascribed in the Motion.

**ORDER DIRECTING JOINT ADMINISTRATION OF CASES - PAGE 2**
522202 000003 14562225.2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE:                                    §
                                          §    CASE NO. 15-40289-RFN-11
LIFE PARTNERS HOLDINGS, INC.,             §
*et. al.*                                 §    JOINTLY ADMINISTERED
                                          §         (Chapter 11)
        Debtors.                          §

It is further

    **ORDERED** that a docket entry shall be made in the Subsidiary Debtors cases substantially as follows:

> An order has been entered in accordance with Rule 1015(b) of the Federal Rules of Bankruptcy Procedure directing the procedural consolidation and joint administration of the chapter 11 cases of Life Partners Holdings, Inc., Life Partners, Inc., and LPI Financial Services, Inc. The docket in Case No. 15-40289-RFN-11 should be consulted for all matters affecting this case.

It is further

    **ORDERED** that the procedural consolidation pursuant to this Order shall be for administrative purposes only and shall not be a substantive consolidation. It is further

    **ORDERED** that the Bankruptcy Clerk shall maintain one file for the Cases, except that all schedules of assets and liabilities and statements of financial affairs required by Bankruptcy Rule 1007 shall be captioned and filed in the docket of each separate case, as appropriate. It is further

ORDER DIRECTING JOINT ADMINISTRATION OF CASES - PAGE 3
522202 000003 14562225.2

**ORDERED** that the Noticing and Balloting Agent shall maintain separate claim registers for each case and all proofs of claim shall be filed in the case in which the claim is asserted.  It is further

**ORDERED** that one disclosure statement and plan of reorganization and/or liquidation may be filed for all Cases by any plan proponent.

### End of Order ###

# EXHIBIT 17

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 809 (Bankr. N.D. Tex. Aug. 20, 2015)

Neal Jacobson
Admitted *Pro Hac Vice*
New York Bar No. 2342772
U.S. Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-1409 (BDF)
(817) 978-4927 (fax)
*Jacobsonn@sec.gov*
Attorneys for Plaintiff Securities and
Exchange Commission

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

---------------------------------------------------------------

|  |  |
|---|---|
| In re: | : |
|  | :      Chapter 11 |
|  | : |
|  | :      Case No. 15-40289-RFN |
| LIFE PARTNERS HOLDINGS, INC. | : |
|  | : |
|  | : |
| Debtor. | : |

---------------------------------------------------------------

## NOTICE OF WITHDRAWAL

        Please take notice that the Securities and Exchange Commission's Amended Motion on consent for Order Approving Stipulation Extending Time to Take Action, to the Extent Necessary, to Determine the Nondischargeability of a Debt Owed to a Governmental Unit Pursuant to 11 U.S.C. § 1141(D)(6) [Dkt. #612], which was filed on the docket via the ECF system on July 15, 2015, is hereby withdrawn by the Securities and Exchange Commission.

Dated: August 20, 2015

                                                Respectfully submitted,

                                                */s/ Neal Jacobson*
                                                Neal Jacobson
                                                Admitted Pro Hac Vice
                                                New York Bar No. 2342772
                                                U.S. Securities and Exchange Commission
                                                New York Regional Office
                                                Brookfield Place
                                                200 Vesey St., Suite 400
                                                New York, NY 10281
                                                (212) 336-0095
                                                (212) 336-1329 (fax)
                                                Jacobsonn@sec.gov

# EXHIBIT 18

***In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,**

**Dkt. 3439 (Bankr. N.D. Tex. Nov. 1, 2016)**



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 1, 2016**

_____

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-40289-rfn-11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| Debtors. | § | |

---

### ORDER CONFIRMING REVISED THIRD AMENDED JOINT PLAN OF REORGANIZATION OF LIFE PARTNERS HOLDINGS, INC., ET AL PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

This matter having come before the Court to consider confirmation of the *Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc., et al. Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 2498] (the "Third Amended Plan"), which was filed with the Court on June 21, 2016 by plan proponents (collectively, the "Plan Proponents"), H. Thomas Moran II as Chapter 11 Trustee ("Moran" or the "Chapter 11 Trustee") of Life Partners Holdings, Inc. ("LPHI"), Life Partners, Inc. ("LPI"), LPI Financial Services, Inc. ("LPIFS"), and the official

committee of unsecured creditors appointed in the above-captioned, jointly administered Chapter 11 cases (the "Committee");[1] and

(a)     the Court having previously entered an order [Dkt. No. 2593], dated June 29, 2016, approving the Plan Proponents' disclosure statement [Dkt. No. 2500] (the "Disclosure Statement") in connection with the Third Amended Plan, and an order dated June 30, 2016 [Dkt. No. 2595] (the "Solicitation Order") approving (i) form of ballots and solicitation, and election procedures, (ii) procedures relating to the confirmation of the Third Amended Plan, (iii) temporary estimation of investor claims for voting purposes, and (iv) other relief; and

(b)     the Plan Proponents having filed a plan supplement (the "Plan Supplement") with the Court on August 2, 2016 [Dkt. No. 2856] and served notice of same, as provided for in the Solicitation Order; and

(c)     an Amended Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Plan (the "Ballot Certification") having been filed with the Court on August 26, 2016 [Dkt. No. 3215]; and

(d)     all classes entitled to vote under the Third Amended Plan, except for Class B2A and Class B3A, having voted to accept the Third Amended Plan by at least a majority in number and two-thirds of dollar amount of claims voting in each class; and

(e)     the only classes rejecting the Third Amended Plan ("Dissenting Classes") being (i) the Holders of Interests in each of the Debtors (Class A5, Class B6 and Class C4), which are all deemed to have rejected the Plan under 11 U.S.C. § 1126(g) because Holders of Interests in the Debtors are to receive no Distributions under the Third Amended Plan, and (ii) Classes B2A and B3A; and

---

[1]     LPHI, LPI and LPIFS are collectively referred to as the "Debtors." Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan.

(f)　　objections (the "Objections") to the Third Amended Plan having been filed by Transparency Alliance, LLC [Dkt. No. 3010], H. Steven Hufstetler, Sr. [Dkt. No. 2995]; Black Diamond Lifeplan Fund L.P., Evergreen II Lifeplan Fund L.P., Evergreen III Lifeplan Fund, L.P., Evergreen Lifeplan Fund, L.P., Pillar 3 Life Settlement Fund, L.P., Pillar 4 Life Settlement Fund, L.P., Pillar 5 Life Settlement Fund, L.P., Pillar II Life Settlement Fund, L.P., Pillar Life Settlement Fund I, L.P. [Dkt. No. 3007], Steven Fallen [Dkt. No. 3009], the Arbitration Objectors [Dkt. No. 3010]; Certain IRA Investors [Dkt. No. 3134], and Alexandra Agencies Limited, Carteya Limited, Robin Rock Limited and Shamrock Life Settlement [Dkt. Nos. 3135 and 3149]; and

(g)　　the Plan Proponents having filed a joint reply (the "Reply") in opposition to the Objections and in further support of confirmation of the Third Amended Plan on August 29, 2016 [Dkt. No. 3324]; and the Certain IRA Investors having filed a post-trial brief on October 5, 2016 [Dkt. No. 3374]; and the Plan Proponents having filed a response to the post-trial brief on October 6, 2016 [Dkt. No. 3381]; and

(h)　　the Court having entered its *Order Granting the Joint Motion to Compromise Class Action Controversies, to Approve Plan Support Agreement, and for Related Relief* [Dkt. No. 2295] (the "9019 Order"); and

(i)　　the District Court for the Northern District of Texas having entered its (i) *Order (I) Preliminarily Approving the Class Settlement Agreement; (II) Conditionally Certifying the Class and Appointing Class Counsel and Class Representatives; (III) Approving the Form and Manner of Notice to Class Members; (IV) Setting a Deadline for Objections to Such Preliminary and Conditional Actions; and (V) Scheduling a Hearing for the Final Consideration and Approval of Such Action*s [Dkt. No. 43 in Case No. 4:16-cv-00212-A] on June 6, 2016 (the

"Class Action Preliminary Approval Order"), and (ii) *Final Approval Order (Order Approving Class Settlement Agreement, Certifying Class and Appointing Class Counsel and Class Representatives)* [Dkt. No. 143 in Case No. 4:16-cv-00212-A] (the "Class Action Final Approval Order" and together with the Class Action Preliminary Approval Order, the "Class Action Approval Orders") on September 13, 2016; and

(j)       an evidentiary hearing on confirmation of the Plan having been held before this Court over a five-week period beginning August 29, 2016 (the "Confirmation Hearing"), and the Court finding that notice of the Confirmation Hearing was good and sufficient and consistent with the Solicitation Order; and

(k)       the Court having overruled the Objections to the extent not withdrawn or to the extent not expressly sustained as set forth in the October 7 Findings and Conclusions (as defined herein); and

(l)       the Court having considered the Third Amended Plan, the Disclosure Statement, the Ballot Certification, the Class Action Preliminary Approval Order, the Class Action Final Approval Order, the proposed modifications to the Third Amended Plan related to the Vida Plan Collaboration Agreement presented to the Court on Monday, September 26, 2016, the stipulations of certain parties announced at the Confirmation Hearing, including but not limited to the Term Sheet filed at Dkt. No. 3422 and the term sheet admitted into evidence at the Confirmation Hearing as Shamrock Life Settlements et al. Exhibit 8, the testimony and exhibits introduced into evidence at the Confirmation Hearing, the Objections, the Reply, the arguments of counsel, the post-trial briefing, and the record before it; and

(m)    the Court finding that the Plan Proponents, Vida, and their respective current officers, directors, and employees acted in good faith within the meaning of and with respect to all of the actions described in 11 U.S.C. § 1125(e); and

(n)    the Court having made the *Report and Recommendation Regarding the Joint Motion to (I) Preliminarily Approve Settlement Agreement; (II) Grant Class Certification Pursuant to Settlement Agreement; (III) Appoint Class Counsel and class Representative Pursuant to Settlement Agreement; (IV) Approve the Form and Manner of Notice to Class Members; (V) Set a Deadline for Objections to the Settlement; and (VI) Schedule Hearing for the Final Consideration and Approval of the Settlement* [Dkt. No. 55 in Case No. 15-04061-rfn] (the "Preliminary Report and Recommendation") and *Report and Recommendation with Respect to the Joint Motion to Approve Settlement Agreement, Grant Class Certification and Appoint Class Counsel and Class Representative* [Dkt. No. 71 in Case No. 15-04061-rfn] (the "Final Report and Recommendation," and together with the Preliminary Report and Recommendation, the "Reports and Recommendations"), which are incorporated fully herein by reference for all purposes; and

(o)    the Court having made the findings of fact and conclusions of law stated on the record on October 7, 2016, as clarified on the record on October 11, 2016 (collectively, the "October 7 Findings and Conclusions"), which October 7 Findings and Conclusions are incorporated fully herein by reference for all purposes; and

(p)    the Court having found that the Plan satisfies all of the applicable requirements for confirmation, including the requirements of 11 U.S.C. § 1129.

Accordingly, the Third Amended Plan, as revised at Docket No. 3427 (the "Plan") pursuant to the stipulations of certain parties, including but not limited to the Term Sheet filed at

Dkt. No. 3422 and the term sheet admitted into evidence at the Confirmation Hearing as

Shamrock Life Settlements et al. Exhibit 8, and in accordance with the Court's October 7

Findings and Conclusions, and inclusive of the Plan Documents, is confirmed as provided in this

order (the "Confirmation Order").

Now, therefore it is hereby ORDERED, ADJUDGED AND DECREED as follows:[2]

1.      **Confirmation of the Plan.**  The Plan shall be and hereby is confirmed.  The Plan

Documents and their terms are incorporated by reference into and are an integral part of the Plan

and this Confirmation Order.

2.      **Approved Modifications of the Plan.**  The revisions and modifications to the

Third Amended Plan reflected at Docket No. 3427 are hereby approved and are incorporated into

the Plan, as confirmed by this Confirmation Order.

3.      **Approval of the Vida Plan Collaboration Agreement.**  The Vida Plan

Collaboration Agreement at Dkt. No. 3428 is hereby approved in accordance with the Plan and

this Confirmation Order.

4.      **Approval of the Plan Documents.**  The Court hereby authorizes and approves

the execution, delivery, and performance by the Chapter 11 Trustee, Subsidiary Debtors,

Reorganized Debtors, Successor Entities, Successor Trustees, Trust Boards, and Advisory

Committee as applicable, of all of the agreements, documents, and instruments to be entered into

before, on, or as of the Effective Date, as contemplated by, and in furtherance of, the Plan

(including in each case all exhibits and attachments thereto and documents referenced therein)

---

[2] The findings of fact and conclusions of law set forth herein, in the Report and Recommendations, and the
October 7 Findings and Conclusions constitute the Bankruptcy Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent any of the findings of fact included herein or therein constitute conclusions of law, they are adopted as such.
To the extent any of the conclusions of law included herein or therein constitute findings of fact, they are adopted as
such.

(the "Plan Documents"), including but not limited to the following: (i) the Position Holder Trust Agreement [Exh A, Dkt. No. 3427], (ii) the Creditors' Trust Agreement [Exh. B, Dkt. No. 3427], (iii) the Servicing Agreement [Exh. A, Dkt. No. 3428], (iv) the New IRA Notes Indenture [Dkt. No. 2856-1], (v) the form of New IRA Note [Dkt. No. 2856-1], (vi) the New IRA Notes Security Agreement [Dkt. No. 2856-2], (vii) the Securities and Deposit Account Agreement and Securities and Deposit Account Control Agreement [Dkt. No. 2856-3], (viii) the Maturity Funds Security Agreement [Dkt. No. 2856-4], (ix) the Vida Plan Collaboration Agreement [Dkt. No. 3428], (x) the Exit Loan Facility Agreement [Dkt. No. 2856-6], (xi) the Revolving Line of Credit Agreement [Dkt. No. 2856-7], (xii) the Portfolio Information License Agreement [Dkt. No. 2856-18], (xiii) the amended and restated Governance Documents of Life Partners, Inc. [Dkt. No. 2856-19], (xiv) the amended and restated Governance Documents of Life Partners Holdings, Inc. [Dkt. No. 2856-20], (xv) the amended and restated Governance Documents of LPI Financial Services, Inc. [Dkt. No. 2856-21], (xvi) the IRA Partnership, LLC formation documents [Dkt. No. 2856-23], (xvii) the form of Statement of Maturity Account [Dkt. No. 2856-24], and (xviii) the Newco formation documents (to the extent necessary or appropriate to effectuate the transactions contemplated by the Vida Plan Collaboration Agreement).  Without need for further order or approval of this Court, the Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, Successor Trustees, and their respective successors are authorized and empowered to make any and all modifications to any and all of the Plan Documents that do not adversely affect in a material way the treatment of Holders of Claims or Interests and are consistent with the Plan and this Confirmation Order; *provided, however*, any modification to any such Plan Document that increases fees payable by Continuing Fractional Holders, or by the

Position Holder Trust in its capacity as the registered Holder of Beneficial Ownership in Policies, will be subject to Court approval.

5.      **Binding Effect.**  Subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind the Debtors, all current and former Holders of a Claim against or asserted against, or Interest in, the Debtors, including, without limitation, all Investors, and such Holders' respective successors and assigns, whether or not the Claims or Interests of such Holders are Impaired under the Plan, whether or not such Holders accepted the Plan, and whether or not such Holders are entitled to any Distribution under the Plan.

6.      **Incorporation of the October 7 Findings and Conclusions.**  The October 7 Findings and Conclusions are incorporated into this Confirmation Order as if fully set forth herein.

7.      **Incorporation of the Report and Recommendations.**  The Report and Recommendations are incorporated into this Confirmation Order as if fully set forth herein.

8.      **Incorporation of the Class Action Approval Orders.**  The Class Action Approval Orders and Class Action Settlement Agreement are incorporated into this Confirmation Order as if fully set forth herein.  The Class Action Settlement Agreement is approved as part of the Plan pursuant to 11 U.S.C. § 1123(b).

9.      **Distributions Under the Plan.**  Except as otherwise provided for in this Confirmation Order, all Distributions under the Plan shall be made in accordance therewith, including but not limited to Articles III and X of the Plan.

10.      **Deemed Substantive Consolidation for Distribution Purposes.**  The Debtors are deemed substantively consolidated solely for purposes of Distributions to be made under the Plan as set forth in Section 4.06 of the Plan.

11. **Administrative Claims.**

(a)     All requests for payments of Administrative Claims shall be Filed with the Court, and served on the parties as provided in the Plan, by the Administrative Claims Bar Date, which is: (i) 30 days after the Effective Date with respect to General Administrative Claims, including claims made by a creditor or entity described under 11 U.S.C. § 503(b)(3)(D) and/or related claims for professional fees under 11 U.S.C. § 503(b)(4), and (ii) 45 days after the Effective Date with respect to Professional Fee Claims.  Any requests for payment of Administrative Claims filed after the Administrative Claims Bar Date shall automatically be barred and disallowed without the need for any hearing or order of the Court.

(b)     Notwithstanding the foregoing, any claim of Vida, as lender under that certain financing (the "DIP Financing") approved by the *Order Granting: (A) Motion of The Trustee and Subsidiary Debtors for Order Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. § 364; (B) Security Interest and Superpriority Administrative Expense Claim and (C) Related Relief* [Dkt. No. 2924] (the "DIP Financing Order") shall be paid in full in cash on the Effective Date pursuant to the terms of the DIP Financing and DIP Financing Order, without the need for any further requests or orders of any kind.

(c)     All Administrative Claims that become Allowed Administrative Claims prior to or on the Effective Date shall be paid in full in cash on the Effective Date, and all Administrative Claims that become Allowed Administrative Claims after the Effective Date shall be paid in full in cash within ten (10) days after becoming an Allowed Administrative Claim; *provided, however*, (i)  that any General Administrative Claim that is based on a liability incurred by the Debtors in the ordinary course of business after the Petition Date may be paid pursuant to the terms and conditions of the particular transaction or agreement that gives rise to such General

Administrative Claim without any further notice to or approval by the Bankruptcy Court, and (ii) that the Interim Compensation Order shall govern any interim allowance and payment of fees and expenses of Professionals incurred on or before the Effective Date.  For the avoidance of doubt, Professionals shall continue to follow the Interim Compensation Order with respect to (A) any monthly fee statements for fees and expenses incurred on or before the Effective Date, and (B) the Interim Fee Applications due on November 14, 2016 (for fees and expenses incurred through September 2016); however, no further Interim Fee Applications shall be due after those due November 14, 2016.  To the extent any fees and expenses incurred by Professionals have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court, such fees and expenses shall be included in the respective Professionals' Final Fee Applications to be filed on or before the Administrative Claims Bar Date.

12.     **No Impairment of Class Action Litigants' Counsel Fees.**  Notwithstanding anything in the Plan or this Confirmation Order, Class Action Litigants' Counsel Fees shall be determined, awarded and paid in accordance with the Class Action Settlement Agreement and applicable court orders.  Nothing in the Plan or this Confirmation Order, including, without limitation, paragraph 48 of this Order, shall impair or limit the payment of Class Action Litigants' Counsel Fees, on account of a common fund or otherwise, from assets and property Distributed or to be Distributed under the Plan, in accordance with the Class Action Settlement Agreement and applicable court orders.

13.     **Post-Effective Date Professional Fees and Expenses.**  With respect to all professional fees and expenses incurred after the Effective Date in accordance with the Plan by the Chapter 11 Trustee, Reorganized Debtors, Position Holder Trust, IRA Partnership, Position Holder Trustee, and Position Holder Trust Governing Trust Board, as applicable, the Position

Holder Trust shall, in the ordinary course of business and without the necessity for any approval

by this Court, pay all such professional fees and expenses upon approval by the respective

fiduciary (or fiduciaries) on account of whom such services were rendered or fees were incurred.

With respect to all professional fees and expenses incurred after the Effective Date in accordance

with the Plan by the Creditors' Trust, the Creditors' Trustee, and the Creditors' Trust Governing

Trust Board, as applicable, the Creditors' Trust shall, in the ordinary course of business and

without the necessity for any approval by this Court, pay all such professional fees and expenses

upon approval by the respective fiduciary (or fiduciaries) on account of whom such services

were rendered or fees were incurred.

14.     **Implementation of the Plan.**

(a)     The Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities,

Successor Trustees, Trust Boards, and Advisory Committee are authorized and approved to take

all actions necessary to implement the Plan, and the Reorganization Transactions provided for in

the Plan are approved in all respects.

(b)     On the Effective Date, the Chapter 11 Trustee, Debtors, Reorganized Debtors,

Successor Entities, Successor Trustees, Trust Boards, and Advisory Committee are authorized to

sign all of the Reorganization Documents and take all other actions they determine to be

necessary or appropriate in order to effectuate and implement the Reorganization Transactions as

provided for in the Plan, the Plan Documents and this Confirmation Order.  The Chapter 11

Trustee, Debtors, Reorganized Debtors, Successor Entities, and Successor Trustees are hereby

authorized to grant, issue, execute, deliver, file, or record all such certificates, notes, contracts,

instruments, bills of sale, assignments, releases, and other documents and agreements, and to

take all such other actions as may be necessary to effectuate and further evidence the terms,

conditions, and consummation of the Plan, including all of the Reorganization Transactions provided for therein or herein, including, without limitation, executing and delivering, or causing to be executed and delivered: (i) all instruments, conveyances, bills of sale, assignments, and other documents and agreements necessary or appropriate to effectuate and implement all of the contributions and Distributions contemplated by the Plan, and the sale of assets contemplated by the Vida Plan Collaboration Agreement, and (ii) all Continuing Fractional Interest Certificates and New IRA Notes to be Distributed pursuant to the Plan, and any certificates representing Position Holder Trust Interests or IRA Partnership Interests requested by Investors entitled to receive them under the Plan and the Plan Documents.

(c)     As of the Effective Date, the Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, Successor Trustees, and their respective directors, officers, members, managers, agents, attorneys, financial advisors, and other professional advisors are authorized and empowered pursuant to 11 U.S.C. § 1142 and applicable state laws (i) to grant, issue, execute, deliver, file, or record any agreement, document, or instrument, including any of the Plan Documents, in substantially the form provided for in the Plan or this Confirmation Order, as applicable, as may be modified, amended, and supplemented as the Plan Proponents determine to be necessary or appropriate and in a manner consistent with this Confirmation Order; (ii) to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms; and (iii) to take or cause to be taken all corporate, trust, limited liability company, or other actions  necessary or appropriate to implement all provisions of, and to consummate, the Plan and all of the Reorganization Transactions provided for therein or herein prior to, on, and after the Effective Date.

(d)     Without limiting the generality of the authorizations and approvals set forth in this Confirmation Order, prior to the Effective Date, the Chapter 11 Trustee and the Debtors are authorized and, from and after the Effective Date, the Position Holder Trustee, the IRA Partnership Manager, and Reorganized LPI are authorized, to (i) take any action necessary or appropriate to effectuate and implement registration under the Securities and Exchange Act of 1934 (as amended, the "1934 Act") of the Continuing Fractional Interests, the Position Holder Trust Interests, and the IRA Partnership Interests, and, if required, the New IRA Notes and the Creditors' Trust Interests, including, but not limited to, filing any required registration statement, (ii) to cause such registration to be effective on or as soon after the Effective Date as reasonably practicable, and (iii) to otherwise comply with the 1934 Act and other federal and state securities laws, rules, and regulations as may be applicable to the Continuing Fractional Interests, the Position Holder Trust Interests, the IRA Partnership Interests, the New IRA Notes, and the Creditors' Trust Interests.

(e)     The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, or Successor Trustees, or their respective directors, officers, members, managers, agents, attorneys, financial advisors, or other professionals to take any and all actions necessary or appropriate to implement, effectuate, and consummate all of the Reorganization Transactions contemplated by the Plan or this Confirmation Order pursuant to 11 U.S.C. § 1142.  All such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court without further approval, act, or action under any applicable law, order, rule, or regulation.

(f)     Pursuant to 11 U.S.C. § 1142, to the extent that, under applicable non-bankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the members, managers, shareholders, or board of directors or board of managers of the Debtors, Reorganized Debtors, Successor Entities, or Successor Trustees, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the decision-making entity or individual of the Debtors, Reorganized Debtors, Successor Entities, or Successor Trustees; *provided, however*, that nothing herein is intended to modify, amend, or adversely affect the rights, powers, or duties of the Trust Boards as provided in the Plan or Successor Trust Agreements.

(g)     Any and all documents contemplated herein or in the Plan or any of the other Reorganization Documents shall be accepted by each Insurance Company (as defined in paragraph 15(f) below) and state filing offices, and recorded, if required, in accordance with applicable state law, and shall become effective in accordance with their terms and the provisions of state law.

15.     **Vesting of Certain Assets.**

(a)     On the Effective Date, (i) Beneficial Ownership of Continuing Fractional Interests registered in the name of Continuing Fractional Holders shall be vested in the Continuing Fractional Holders, subject to the terms of the Plan and the Position Holder Trust Agreement; (ii) the Vested Assets (including, but not limited to, legal title and the right to designate the holder of record title to all of the Policies (as defined herein) and the Continuing Position Holder Contributions) shall vest in the applicable Reorganized Debtors, free and clear of all Liens, Claims, and encumbrances, save and except for (A) the Maturity Funds Liens, if any (and only until all of the Maturity Funds Loans outstanding on the Effective Date are paid in full as

provided in the Plan), and the Continuing Fractional Interests outstanding after the Effective

Date, (B) the Liens on the New IRA Note Collateral to be established pursuant to the New IRA

Note Collateral Documents, and (C) the Liens to be established pursuant to the documentation

for the financing to be obtained pursuant to the Vida Plan Collaboration Agreement on and after

the Effective Date as provided for in the Plan (the "Exit Financing"), which will continue subject

to the terms of the Plan, the Position Holder Trust Agreement, the New IRA Note Collateral

Documents, the Maturity Funds Collateral Agreement, and the documents providing for the Exit

Financing (the "Exit Financing Agreements"); and (iii) the Maturity Funds Loans outstanding on

the Effective Date shall be assumed by the Position Holder Trust as provided in Section 4.02(b)

of the Plan, and (iv) the assumed contracts on the Assumed Executory Contract and Unexpired

Lease List (the "Assumed Contracts") shall be assumed by the applicable Successor Entities as

provided in Article XIII of the Plan and vest in the applicable Successor(s).  In addition,

following completion of the Catch-Up Reconciliation, all Beneficial Ownership related to

Fractional Positions with respect to which Position Holder Trust Elections are deemed to have

been made as provided in Section 4.13 of the Plan, or which relate to Disputed Claims or

Interests to the extent such Disputed Claims or Interest are ultimately disallowed as to any

Fractional Position, shall automatically vest in the Position Holder Trust, effective as of the

Effective Date.

(b)      Except as otherwise set forth in the Plan (including any of the Plan Documents) or

this Confirmation Order, from and after the Effective Date, (i) the respective Successor Entities

shall perform and pay when due liabilities under, or related to the ownership or operation of, the

Vested Assets, the Maturity Funds Loans, and the Assumed Contracts to be contributed to or

assumed by each of them as provided herein and therein, and (ii) none of the Successor Entities

shall be responsible for any liabilities relating to Vested Assets contributed to, or contracts assumed by, any other Successor Entity or for any liabilities of any of the Debtors or Reorganized Debtors, other than liabilities expressly assumed by a Successor Entity, for which a Successor Entity is otherwise expressly liable under the Plan, or relating to Vested Assets contributed to a Successor Entity. The Reorganized Debtors and the Successor Entities shall operate free of any restrictions of the Bankruptcy Code.

(c)    This Confirmation Order approves, authorizes, and directs the assignment or transfer of the Vested Assets, the Maturity Escrow Account, and the Escrowed Funds as provided in the Plan.

(d)    After the Effective Date, each Successor Trustee, as applicable, may present a copy of this Confirmation Order for Filing in the records of every county or governmental agency where the Vested Assets are or were located, or with any third party (including, without limitation, any Insurance Company) by whom record title to any of the Vested Assets or custody of any portion of the Maturity Escrow Account or the Escrowed Funds is maintained or that is obligated to pay any Maturity Funds that have not yet been paid, accompanied by instructions that provide that such property is to be (i) conveyed to or vested in the Reorganized Debtors or the Successor Entities, (ii) transferred to an account designated by the Position Holder Trustee for Distribution in accordance with the Plan, or (iii) transferred to (A) the Escrow Agent to be held in accordance with the terms of the Escrow Agreement and the Position Holder Trust Agreement or (B) the Securities Intermediary designated by the Position Holder Trustee to be held by the Securities Intermediary in accordance with the terms of the applicable Plan Document(s). Any Lien, Claim, encumbrance, or other interest in or as to any of the Vested Assets, funds in the Maturity Escrow Account, or Escrowed Funds is hereby extinguished,

except as expressly provided otherwise in the Plan and this Confirmation Order.  The Plan and

this Confirmation Order are hereby deemed adequate notice of (x) title to the Vested Assets, (y)

the Position Holder Trustee's rights to direct the assignment and transfer of record title to the

Policies, the funds in the Maturity Escrow Account, and the Escrowed Funds, and (z) the

extinguishment of any Lien, Claim, encumbrance, or other interest thereon or therein, and no

notice other than by this Confirmation Order need be or shall be given before the presentation of

such instructions.

      (e)    Any person having a Lien, Claim, encumbrance, or other interest against any

Vested Asset shall be conclusively deemed to have consented to the transfer, assignment, and

vesting of such Vested Assets free and clear to the Reorganized Debtors and through them to the

Successor Entities by failing to object to Confirmation of the Plan, except as otherwise provided

for in this Confirmation Order with regard to the Maturity Funds Liens to be outstanding from

time to time on and after the Effective Date, the Continuing Fractional Interests to be outstanding

from time to time after the Effective Date, the Liens on the New IRA Note Collateral to be

established pursuant to the New IRA Note Collateral Documents, and Liens to be established

pursuant to the Exit Financing Agreements, which will continue or be created on the Effective

Date subject to the terms of the Plan, the Position Holder Trust Agreement, the New IRA Note

Collateral Documents, the Maturity Funds Collateral Agreement, and the Exit Financing

Agreements.

      (f)    This Court finds that due and adequate notice of the transfer to the Position

Holder Trust of legal title to the life insurance policies acquired by LPI prior to the Petition Date

(the "Policies"), including, but not limited to, each life insurance policy identified on

**Exhibit "A"** attached hereto, and the transfer of record ownership of the Policies to the Position

Holder Trust (or to the Securities Intermediary designated by the Position Holder Trust) has been provided to all interested parties, including the insurers who issued or are currently obligated under such Policies (each an "Insurance Company"), and that no further notice or opportunity to object is required.

(g)     Without limiting the generality of the foregoing provisions of this Confirmation Order, the transfer of record ownership of the Policies to the Securities Intermediary on behalf of the Position Holder Trust shall be a legal, valid, and effective transfer of record ownership of the Policies and shall vest good and valid record title in the Securities Intermediary in and with respect to all of the Policies vested in the Position Holder Trust pursuant to the Plan and this Confirmation Order, subject to the Plan and the Plan Documents.   Other than the Reorganized Debtor, any person, including, without limitation, any holder of record or registered title to any Policy, any holder of any beneficial interest relating to any Policy, any irrevocable or other named beneficiary of any Policy, any employer with respect to a group Policy, any insured under any Policy, or any former holder of any interest in any Policy, and each Insurance Company or other entity that issued or is obligated under any Policy, and the successors and assigns of any of the foregoing asserting any ownership, Lien, Claim, encumbrance, or other interest of any kind or nature against any Policy arising out of, in connection with, or in any way relating to the Debtors, any Policy, or the transfer of the Policies to the Position Holder Trust or the Securities Intermediary on behalf of the Position Holder Trust, or any of their successors or assigns designated by the Position Holder Trust, shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such ownership, Lien, Claim, encumbrance, or other interest against the Position Holder Trust, Securities Intermediary, any employer with respect to a group Policy, or any Insurance Company, or any of their

respective successors or assigns, or any subsequent owner of any Policy, and from failing or refusing to recognize the Position Holder Trust or any Securities Intermediary the Position Holder Trust designates as the owner of record and named beneficiary of each Policy.

(h)    Each of the Insurance Companies is authorized and directed to record the Securities Intermediary designated by the Position Holder Trust (or any successor or assign designated by the Position Holder Trust) as the record owner/absolute assignee and named beneficiary of each of the Policies issued by such Insurance Company without the necessity of further instruction, consent (including the consent of any insured or beneficiary), or authorization, and each Insurance Company is authorized and directed to rely on this Confirmation Order as authority to do so without the necessity of signatures or consents from existing record owners/assignees and named beneficiaries, whether recorded on the Insurance Company's records as revocable or irrevocable beneficiaries, and whether or not any such beneficiary or any insured has consented to such change.    All Insurance Companies are authorized and directed to remit all proceeds of the Policies, including death claim proceeds, to the Securities Intermediary or other beneficiary designated by the Position Holder Trust.

(i)    Each Insurance Company shall recognize the authority of the servicing company designated by the Position Holder Trust from time to time (the "Servicing Company") to obtain information, to receive documents about, and generally service, maintain, and administer the Policies, and no Insurance Company shall refuse to work with, refuse to provide information to, or in any other way inhibit or hinder the ability of the Servicing Company, the Position Holder Trust, the Securities Intermediary, or any of their successors or assigns to service, maintain, or administer the Policies, or collect the death benefits or other maturity proceeds of the Policies. No Insurance Company shall require further or additional authorization from the Position Holder

Trust, the Securities Intermediary, or the Servicing Company with respect to any of such matters, other than this Confirmation Order.

16.     **Cancellation of Existing Liens.**

(a)     Save and except for the Maturity Funds Liens, and the Liens provided under the DIP Financing Order, which are treated in subsection (b) of this paragraph, and except as expressly provided otherwise in the Plan and this Confirmation Order with respect to (i) Allowed Claims in Classes A1, B1, and C1, (ii) the New IRA Note Collateral, and (iii) the Liens securing the Exit Financing, any Lien, Claim, or encumbrance encumbering any of the Debtors' property shall be deemed released and the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Reorganized Debtor) any collateral or other property of any Debtor (or Reorganized Debtor) held by or for such Holder, and any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

(b)     Upon payment of all outstanding Maturity Funds Loans and repayment of the DIP Financing, respectively, (i) any Lien or other security interest encumbering any of the Debtors' property pursuant to the Financing Order or the DIP Financing, respectively, shall be deemed released, (ii) any protections, benefits, and priorities granted pursuant to the Financing Order or the DIP Financing, respectively, shall be deemed satisfied, and (iii) the lender under the DIP Financing shall deliver to the applicable Debtor (or Reorganized Debtor) any termination statements, instruments of satisfaction, or releases of all Liens or other security interests with respect to its collateral securing repayment of the DIP Financing that may be reasonably required

in order to terminate any related financing statements, mortgages, or lis pendens, or other notice of the attachment or perfection of such Lien or security interest.

(c)     The Court finds and determines that there was never any transfer of ownership of any Fractional Interest, or other interest, in any Policy made to any Original IRA Note Issuer. The Court further finds and determines that none of the Original IRA Note Issuers held any property interest in any Fractional Interest or otherwise in any Policy, and therefore was not able to, and in fact did not, grant any Lien to any IRA Holder.  Therefore, no IRA Holder ever received any interest in any Policy by conveyance, Lien, security interest, or otherwise.

17.     **Payment of Maturity Funds Loans and Post-Effective Date Maturity Funds Facility.**  As provided in Section 4.04 of the Plan, and subject to Section 10.07 of the Plan, on or about the Effective Date, the Position Holder Trust shall pay in full all Maturity Funds Loans reflected on the Statements of Maturity Account provided to Current Position Holders who hold Fractional Positions relating to Matured Policies, plus interest calculated as provided in the Financing Order.  From and after the Effective Date, the procedures set forth in Section 4.04 of the Plan and the Maturity Funds Collateral Agreement shall govern the application of the Maturity Funds Facility.  Notwithstanding anything to the contrary contained in the Plan or in this Confirmation Order, until the Maturity Funds Loans outstanding on the Effective Date have been paid in full as provided in the Plan, the Financing Order and all of the liens, protections, benefits, and priorities provided thereunder shall survive and continue in full force and effect.

18.     **Survival of Provisions of DIP Financing Order.**  Notwithstanding anything to the contrary contained in the Plan or in this Confirmation Order, until the claims of the lender under the DIP Financing have been paid in full in cash, (i) the DIP Financing Order and all of the liens, protections, benefits, and priorities provided the lender thereunder and pursuant to the DIP

Credit Agreement (as defined in the DIP Financing Order) shall survive and continue in full force and effect, and (ii) the terms and conditions of the DIP Credit Agreement and other Financing Agreements (as defined in the DIP Financing Order) shall continue in full force and effect, including, but not limited to, the conditions of borrowing, interest rate, payment, collateral, priority of liens, events of default, and maturity date.

19. **Liens Securing Exit Financing.**  As of the Effective Date, all of the Liens or other security interests to be granted in accordance with the Exit Financing Agreements: (i) are hereby approved, (ii) are legal, binding, and enforceable first priority Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Financing Agreements, and (iii) shall be perfected as of the Effective Date, subject only to such prior Liens or other security interests as may be permitted under the Exit Financing Agreements; *provided, however*, that, with respect to any Fractional Interest related to a Fractional Position that is subject to the Catch-Up Reconciliation and/or that is subject to dispute resolution pursuant to Section 4.13(d) of the Plan as of the Effective Date, any and all such Liens or other security interests to be granted in accordance with the Exit Financing Agreements shall attach to the affected Fractional Interest if and only to the extent that the Beneficial Ownership of the affected Fractional Interest vests in the Position Holder Trust following the Catch-Up Reconciliation or resolution of the dispute.  The lender under the Exit Financing Agreements is hereby authorized, directly or through an agent, to make all filings and recordings, and to obtain governmental approvals and consents necessary, to establish and perfect such Liens or other security interests under the provisions of state, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically as of the Effective Date by virtue of the entry of this

Confirmation Order, and any such filings, recordings, approvals and consents shall not be required), and the Position Holder Trustee shall cooperate with the lender with respect to such actions.

20.    **Treatment of Certain Investor Claims.**

(a)    The Claims of Investors who owed a Pre-Petition Default Amount with respect to a Fractional Position shall be governed, with respect to such Fractional Position, by Section 4.13(c) and Section 14.06 of the Plan, as applicable, unless the Investor delivered voluntary abandonment instructions with respect to such Fractional Position. Notice of the Pre-Petition Default Payment Deadline shall be included in the Notice of Confirmation Order (defined herein below).

(b)    The Claims of Former Position Holders and/or all other Investors who are not Class Action Class Members with respect to one or more Fractional Positions shall be treated as Class B4 Claims, and the allowance or disallowance of such Claims shall be governed by the Plan with respect to General Unsecured Claims.

21.    **Assumption or Rejection of Executory Contracts and Unexpired Leases.**

(a)    The provisions of Article XIII of the Plan governing executory contracts and unexpired leases are hereby approved.

(b)    Except to the extent the Debtors, the Estates, or Chapter 11 Trustee (i) previously have assumed or rejected an Executory Contract or Unexpired Lease on or prior to the Effective Date (including, but not limited to, the building lease for the Waco headquarters of the Debtors), or (ii) prior to the Effective Date, have Filed or do File a motion to assume (or reject) an Executory Contract or Unexpired Lease on which the Bankruptcy Court has not ruled, the

Debtors' Executory Contracts and Unexpired Leases are hereby deemed rejected as of the Effective Date.

(c)     Unless otherwise provided by an order of the Bankruptcy Court,[3] any Proof of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases rejected or assumed pursuant to the Plan or otherwise must be Filed no later than the date that is thirty (30) days following the later of the Effective Date or the date a Final Order is entered granting such rejection; *provided, however*, any and all Claims for rejection damages resulting from the rejection of the Investment Contracts are hereby deemed satisfied by the Class Action Settlement and, therefore, no Claim may be filed on account of the rejection of any Investment Contract.  Any Proof of Claim arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases that is not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor, Reorganized Debtor, or Successor Trust, without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease is hereby deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary.  Any Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims asserted against the Estate of the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; *provided, however*, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any collateral or a right of offset that secures obligations under such rejected Executory Contract or Unexpired Lease, the

---

[3] This Confirmation Order does not extend any prior deadline that is, or was, otherwise applicable to the timely filing of a Proof of Claim, including but not limited to asserting Claims arising from the rejection, prior to the Effective Date, of any Executory Contract or Unexpired Lease with any Debtor.

Allowed Claim for rejection damages shall be treated as a Secured Claim to the extent of the value of such Holder's interest in the collateral or right of offset, with the deficiency, if any, treated as a General Unsecured Claim.

22. **<u>Approval of the Compromise.</u>**

(a)    The Compromise, including the Intercompany Settlement, embodied by the Plan: (i) is approved, and (ii) shall be binding on the Debtors, the Reorganized Debtors, all Current Position Holders, all other Holders of Claims and Interests, the Position Holder Trust, the Position Holder Trustee, the Creditors' Trust, the Creditors' Trustee, the IRA Partnership, the IRA Partnership Manager, and the Servicing Company.  To the extent not previously approved by separate Order, this Confirmation Order constitutes the Bankruptcy Court's approval of the Compromise and its determination that the Compromise is in the best interests of the Debtors, the Estates, and all Creditors and other parties in interest, is fair and equitable, and is a reasonable exercise of the Chapter 11 Trustee's and the Subsidiary Debtors' business judgment.

(b)    Certain of the Plan Documents providing for the Reorganization Transactions being completed as part of the Compromise contain specific releases and assignments of claims against one or more of the settling parties, which may be held by, among others, the Debtors, and/or the Holders of Claims and Interests.  The releases and assignments provided for in the Compromise are granted in consideration of, among other things, the settling parties' obligations under each of the agreements evidencing the Compromise (including the Reorganization Documents), which obligations and Compromise comprise essential and critical benefits provided to or for the Debtors and the Estates.  Upon the occurrence of the Effective Date, these releases and assignments shall be binding to the fullest extent set forth in the Plan Documents.

(c)     In exchange for the SEC's consent to the treatment of the SEC Claim under the Plan, within a reasonable time after the Effective Date, LPHI shall move to voluntarily dismiss its appeal of the SEC Judgment, which appeal is currently pending in the United States Court of Appeals for the Fifth Circuit.

23.     **The Position Holder Trust.**  The parties to the Position Holder Trust Agreement are hereby authorized and directed, on the Effective Date, to execute and enter into the Position Holder Trust Agreement, and the Position Holder Trust thereby shall be created pursuant to the Plan and the Position Holder Trust Agreement.   On and after the Effective Date, all of the Position Holder Trust Assets shall be transferred, assigned, and contributed to, and vested in, the Position Holder Trust as provided in the Plan, including, without limitation, Section 4.09, Section 5.02(b), and Section 5.02(d) of the Plan.   Upon the contribution of all of the Position Holder Trust Assets, the Position Holder Trust shall be in possession of, and have title to, all of the Position Holder Trust Assets.   On the Distribution Date, Position Holder Trust Interests shall be issued to the Holders of Allowed Claims entitled to receive Distributions of Position Holder Trust Interests as of the Distribution Record Date, and New IRA Notes shall be issued to the Holders of Allowed Claims entitled to receive Distributions of New IRA Notes as of the Distribution Record Date. The Position Holder Trust is hereby authorized to issue additional Position Holder Trust Interests and New IRA Notes after the Distribution Date as provided in the Plan and the Position Holder Trust Agreement.

24.     **New IRA Notes.**

(a)     The interest rate on the New IRA Notes shall be 3%.

(b)     The stated principal amount of each New IRA Note shall be an amount equal to 32% of the dollar amount of death benefits associated with the Beneficial Ownership represented

by the Fractional Interest related to the IRA Note with respect to which the Continuing Holder

Election to receive a New IRA Note was made.

25.     **The Position Holder Trustee.**  Effective as of the Effective Date, Mr. Eduardo S.

Espinosa is hereby appointed the Position Holder Trustee.  The Court finds and determines that

such appointment is consistent with the interests of Holders of Claims and Interests and with

public policy.

26.     **The Creditors' Trust.** The parties to the Creditors' Trust Agreement are hereby

authorized and directed, on the Effective Date, to execute and enter into the Creditors' Trust

Agreement, and the Creditors' Trust thereby shall be created pursuant to the Plan and the

Creditors' Trust Agreement.  On and after the Effective Date, all of the Creditors' Trust Assets

(except for any Cash contributions to be made by the Position Holder Trust after the Effective

Date pursuant to Section 6.02(b) of the Plan) shall be transferred, assigned, and contributed to,

and vested in, the Creditors' Trust, as provided in the Plan, the Class Settlement Agreement, and

the MDL Settlement Agreement.  Upon the contribution of all of the Creditors' Trust Assets, the

Creditors' Trust shall be in possession of, and have title to, all of the Creditors' Trust Assets.

Notwithstanding anything to the contrary herein, the transfer or assignment of claims to the

Creditors' Trust fully preserves, and does not diminish, any rights and defenses a defendant

would have if such claims had been retained by the Debtors.   On the Distribution Date,

Creditors' Trust Interests shall be issued to the Holders of Allowed Claims entitled to receive

Distributions of Creditors' Trust Interests as of the Distribution Record Date.  The Creditors'

Trust is hereby authorized to issue additional Creditors' Trust Interests after the Distribution

Date as provided in the Plan and the Creditors' Trust Agreement.

27.     **The Creditors' Trustee.**  Effective as of the Effective Date, Mr. Alan M. Jacobs is hereby appointed the Creditors' Trustee.  The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.

28.     **The IRA Partnership.** The parties to the IRA Partnership Agreement are hereby authorized and directed, on or before the Effective Date, to execute and enter into the IRA Partnership Agreement, and take all other necessary actions to cause the IRA Partnership to be formed as a Texas limited liability company.  On and after the Effective Date, the IRA Partnership shall (a) enter into all of the Reorganization Documents to which the IRA Partnership is a party, (b)(i) accept all contributions from Assigning IRA Holders and Continuing IRA Holders, and (ii) make all contributions to the Position Holder Trust provided for in the Plan, the IRA Partnership Agreement, and the Position Holder Trust Agreement, and (c) take all other actions necessary or appropriate to effectuate and consummate all of the Reorganization Transactions and implement other provisions of the Plan, all as provided in the Plan.  On the Distribution Date, IRA Partnership Interests shall be issued to the Holders of Allowed Claims entitled to receive Distributions of IRA Partnership Interests as of the Distribution Record Date. The IRA Partnership is hereby authorized to issue additional IRA Partnership Interests after the Distribution Date as provided in the Plan and the IRA Partnership Agreement.

29.     **Appointment of Initial IRA Partnership Manager.**  Effective as of the Effective Date, Mr. Eduardo S. Espinosa is hereby appointed the initial manager of the IRA Partnership.  The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.

30.    **Appointment of CFH Agent Under Securities and Deposit Accounts Agreement.**  Effective as of the Effective Date, Vida Capital, Inc. is hereby appointed the initial CFH Agent for purposes of the Securities and Deposit Accounts Agreement.  The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.  Thereafter, any vacancy in the CFH Agent position shall be filled by the Position Holder Trustee.

31.    **Discharge of the Chapter 11 Trustee From Duties.**  Following the occurrence of the Effective Date, and continuing until the filing of the notice of substantial consummation, the Chapter 11 Trustee's duties shall include: (i) the filing of the Notice of Substantial Consummation, (ii) review and approval of the Chapter 11 Trustee's professional's invoices, (iii) overseeing and assisting with the Catch-Up Reconciliation, (iv) preparing and filing any required Chapter 11 reports, (v) assisting with the transition of the Debtors' operations and vested assets in accordance with the Plan, Confirmation Order and Reorganization Documents to the Position Holder Trust, Creditors' Trust, and IRA Partnership, (vi) assisting with the transition of servicing of the Policies and administration of Investor accounts pursuant to the Servicing Agreement, and (vii) such other matters as requested by the Successor Trustees or IRA Manager, with Trust Board oversight in accordance with the applicable Plan Documents, to facilitate carrying out their duties in accordance with the Reorganization Documents.  The Chapter 11 Trustee shall be discharged from his duties in these Chapter 11 Cases upon the filing of a notice of substantial consummation in the Chapter 11 Cases as provided in Section 15.03 of the Plan, and the Chapter 11 Trustee's retention of professionals shall terminate effective as of such date.  The Chapter 11 Trustee, upon discharge, shall cancel his trustee bond.  Discharge of the Chapter 11 Trustee shall not affect or impair the Chapter 11 Trustee's right to seek a final ruling on any request for

statutory compensation and reimbursement of expenses made in connection with the LPHI

Chapter 11 Case, or any request for his compensation and reimbursement of expenses made in

connection with the LPI and LPIFS Chapter 11 Cases.

32.     **Dissolution of the Committee.**   The Committee shall continue in existence

through the Effective Date to exercise those powers and perform those duties specified in

11 U.S.C. § 1103.  Unless otherwise ordered by the Bankruptcy Court, on the Effective Date, (a)

the Committee shall be dissolved and their members shall be released of all their duties,

responsibilities, and obligations in connection with the Chapter 11 Cases, the Plan and the

implementation of the same, save and except for their respective duties, responsibilities, and

obligations as members of the Trust Boards under the Successor Trust Agreements, and (b) the

Committee's retention of Professionals shall terminate as of such date, other than with respect to

the submission and prosecution of applications for compensation and/or reimbursement by the

Committee's Professionals and/or its members.

33.     **Creation of Position Holder Trust Governing Trust Board.**  On the Effective

Date, the Position Holder Trust Governing Trust Board shall be formed pursuant to the Position

Holder Trust Agreement.

34.     **Appointment of Position Holder Trust Governing Trust Board.**  Effective as

the Effective Date, Bert Scalzo, Robert "Skip" Trimble, Mark Redus, Philip Loy, and Nate

Evans are appointed as members of the Position Holder Trust Governing Trust Board.  The Court

finds and determines that such appointment is consistent with the interests of Holder of Claims

and Interests and with public policy.

35.    **Creation of Creditors' Trust Governing Trust Board.**  On the Effective Date, the Creditors' Trust Governing Trust Board shall be formed pursuant to the Creditors' Trust Agreement.

36.    **Appointment of Creditors' Trust Governing Trust Board.**  Effective as of the Effective Date, Bert Scalzo, Robert "Skip" Trimble, Mark Redus, Philip Loy, and Nate Evans are appointed as members of the Creditors' Trust Governing Trust Board.  The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.

37.    **Creation of the Advisory Committee.**  On the Effective Date, the Advisory Committee shall be formed pursuant to the IRA Partnership Agreement.

38.    **Appointment of Advisory Committee.**  Effective as of the Effective Date, Bert Scalzo, Robert "Skip" Trimble, Mark Redus, Philip Loy, and Nate Evans are appointed as members of the Advisory Committee.  The Court finds and determines that such appointment is consistent with the interests of Holders of Claims Interests and with public policy.

39.    **Payment of Claim of the Texas Comptroller.**  Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the provisions of this paragraph will govern the treatment of the Second Amended Claim No. 24235 filed by the Texas Comptroller of Public Accounts (the "Texas Comptroller") in the Life Partners Holdings, Inc. case and the affiliated First Amended Claim No. 1492 filed in the Life Partners, Inc. case (collectively, the "Texas Comptroller's Claim"), and any Allowed administrative expense priority claim the Texas Comptroller may file.  The provisions of the Plan and this Confirmation Order supplement these terms where not inconsistent herewith.

(a)    Nothing provided in the Plan or this Confirmation Order shall: (1) affect or impair any statutory or common law setoff rights of the Texas Comptroller in accordance with 11 U.S.C. § 553, (2) affect or impair any rights of the Texas Comptroller to pursue any non-debtor third parties other than the Successor Entities for tax debts or claims, or (3) be construed to preclude the payment of interest on the Texas Comptroller's Allowed administrative expense priority claims, if any.

(b)    To the extent that interest is payable with respect to any Allowed administrative expense, priority, or secured tax claim of the Texas Comptroller, the interest rate shall be the applicable statutory rate of interest.

(c)    The Texas Comptroller is not required to file a motion or application for payment of administrative expense priority claims, as the Texas Comptroller's administrative expense priority claims are Allowed upon Filing pursuant to 11 U.S.C. § 503(b)(1)(D), subject to objection on substantive grounds.

(d)    Allowed Priority Tax Claims of the Texas Comptroller shall be paid in full within sixty (60) months of the Subsidiary Petition Date. Payments shall be in monthly installments of principal and accrued interest. The first installment is due within thirty (30) days after any such Claim becomes an Allowed Claim. The Texas Comptroller's Allowed Priority Tax Claims, if any, shall accrue interest at the applicable statutory rate from the Effective Date until paid in full.

(e)    The automatic stay under 11 U.S.C. § 362 and the injunction contained in the Plan are hereby modified to allow the Texas Comptroller and its agents to proceed with the administrative hearing(s) for the liability that is the subject of the Texas Comptroller's Claim. The Debtors' and their Estates' rights and defenses with respect to any allegations and claims asserted against the Debtors or their Estates arising from or related to the Texas Comptroller's

Claim are hereby preserved and, notwithstanding the Texas Comptroller's Claim, the final
Allowed Claim amount shall be determined based on the outcome of the resolution of the
redetermination request filed by Debtors for the tax periods included in the Texas Comptroller's
Claim.

40.     **Compliance With the Requirements of the Texas Department of Insurance.**
Before any Servicing Company may begin servicing the Policies, the Servicing Company shall
agree in the Servicing Agreement to comply with all applicable non-bankruptcy laws, including,
without limitation, Texas life settlement laws and all applicable privacy laws and regulations,
and will hold a life settlement broker license or a life settlement provider license granted by the
Texas Department of Insurance ("TDI").  During any transition period prior to retention of a
properly licensed Servicing Company, servicing of the Policies (to the extent it involves
regulated activities) must be performed by either (i) Reorganized LPI only to the extent that it is
entitled to do so under applicable nonbankruptcy law, using its existing amended license from
TDI, or (ii) another properly licensed life settlement broker or provider.

41.     **Approval of Compensation and Reimbursement of Expenses for Persons
Appointed Pursuant to the Plan.**  The Court finds and determines that the provisions of the
Plan and the Plan Documents providing for the post-Effective Date payment of compensation
and reimbursement of expenses to the Position Holder Trustee, Creditors' Trustee, IRA
Partnership Manager, Position Holder Trust Governing Trust Board, Creditors' Trust Governing
Trust Board, and Advisory Committee are fair and reasonable for the services to be provided and
are hereby approved in the best interests of the Estates, the Reorganized Debtors, and all
creditors.

42. **Payment of Statutory Fees.** All fees due and payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by this Court, shall be paid on the Effective Date without the need to file any applications with this Court.  The Position Holder Trustee shall (a) continue to pay all fees due and payable pursuant to Section 1930 of Title 28 of the United States Code until the closing, conversion, or dismissal of the Chapter 11 Cases, and (b) provide the required post-confirmation reporting to the U.S. Trustee until the Chapter 11 Cases are closed.

43. **Governmental Approvals Not Required.**  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan Documents, the Disclosure Statement, and any amendments or modifications thereto.

44. **Exemption From Transfer Taxes.**  Pursuant to 11 U.S.C. § 1146(a), the issuance, transfer, or exchange of a security, or delivering an instrument of transfer, including any transfers effected pursuant to the Plan or by any of the Reorganization Documents from the Debtors or the Reorganized Debtors to the Position Holder Trust, the Creditors' Trust, Vida, or any other Person or Entity pursuant to the Plan, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and all appropriate state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

45. **Exemption From Securities Registration.** The issuance of the Trust Interests, the IRA Partnership Interests, and the New IRA Notes, to the extent they involve the issuance of "securities" for purposes of the Securities Act, are entitled to the exemption from registration provided under 11 U.S.C. § 1145 for securities issued pursuant to the Plan by a Successor to the Debtors in exchange for Claims against the Debtors. The terms of the Plan declaring the ownership of the Continuing Fractional Interests and the issuance of the Fractional Interest Certificates representing them, to the extent the Fractional Interests are "securities" for purposes of the Securities Act, is hereby deemed an issuance of securities pursuant to the Plan for purposes of the exemption from registration under the Securities Act provided under 11 U.S.C. § 1145, for securities issued by a successor to the Debtors in exchange for Claims against the Debtors.

46. **Satisfaction of Claims Against the Debtors.**

(a)     The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for, and in complete satisfaction of, all Claims and Interests against the Reorganized Debtors, the Estates, and their assets, properties, or interests in property, whether known or unknown, including demands, liabilities, and Causes of Action that arose before the Effective Date, and all debts of the kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i), in each case, whether or not: (i) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to 11 U.S.C. § 501; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to 11 U.S.C. § 502; or (iii) the Holder of such a Claim or Interest has accepted the Plan. Subject to the terms of the Plan, and/or this Confirmation Order, any default by the Debtors with respect to any Claim or Interest

that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be

deemed satisfied as to the Reorganized Debtors and the Estates on the Effective Date.

(b)     Except as otherwise provided in the Plan, the Financing Order, the DIP Financing

Order, the Class Settlement Agreement, the MDL Settlement Agreement, and/or this

Confirmation Order, on the Effective Date, all Claims and Interests shall be deemed satisfied

against the Reorganized Debtors and Estates, and the terms of the Plan, the Financing Order, the

DIP Financing Order, the Class Settlement Agreement, the MDL Settlement Agreement, and/or

this Confirmation Order shall be a judicial determination of the satisfaction of all liabilities of the

Reorganized Debtors and the Estates.

(c)     Nothing in the Plan or this Confirmation Order shall be construed to release,

impair, compromise, waive, relinquish, or limit in any way the Assigned Causes of Action, the

Additional Assigned Causes of Action, or any of the Investor Causes of Action and other Causes

of Action that will be assigned or transferred to the Creditors' Trust or the Position Holder Trust,

as applicable, including the right of the Creditors' Trust or Position Holder Trust, as applicable,

to prosecute, compromise, settle, assign, receive proceeds from, or otherwise control those

Causes of Action, pursuant to the terms of the Plan, the Class Settlement Agreement, or the

MDL Settlement Agreement.

47.     **Releases/Permanent Injunction Relating to Claims/Interests.**

(a)     <u>Releases by Debtors and Estates</u>.  Except as otherwise expressly provided in this

Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest

extent permissible under applicable law, each of the Debtors and the Reorganized Debtors on its

own behalf and as the representative of its respective Estate, shall and is hereby deemed to

completely and forever release, waive, void, extinguish, and discharge unconditionally each and

all of the Chapter 11 Trustee, the Committee and its current and former members (collectively,

the "Exculpated Parties") of and from any and all Claims, Causes of Action, other obligations,

suits, demands, judgments, damages, debts, rights, remedies, and liabilities of any nature

whatsoever, and/or any Interest, or other right of a Holder of an equity security or other

ownership interest that is terminated, whether liquidated or unliquidated, fixed or contingent,

matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter

arising, in law, equity or otherwise, that are or may be based in whole or part on any act,

omission, transaction, event, or other circumstance taking place or existing on or before the

Effective Date (including before the Petition Date) in connection with or related to any of the

Debtors, the Reorganized Debtors, or their respective assets, property, and Estates, the Chapter

11 Cases, proposed financing or the financing transaction evidenced by the Financing Motion

and Financing Order, the DIP Financing Order, or the proposal, negotiation, or pursuit of

confirmation of the Plan or any other potential plan of reorganization (or approval of a related

disclosure statement), including, but not limited, to the Term Sheet, the Reorganization

Transactions, or the Vida Plan Collaboration Agreement or the transactions contemplated

thereby, that may be asserted by or on behalf of any of the Debtors, the Reorganized Debtors, or

their respective Estates, except insofar as they are assigned to the Creditors' Trust or the Position

Holder Trust, as applicable, pursuant to the terms of the Plan, the Class Action Settlement

Agreement, and/or the MDL Settlement Agreement.  Notwithstanding the foregoing or any other

provision of this paragraph, no Exculpated Party shall be released from any acts constituting

criminal conduct, willful misconduct, fraud, or gross negligence that proximately causes

damages.

(b) <u>Releases by Holders of Claims and Interests</u>.  Except as otherwise expressly

provided in this Confirmation Order, on the Effective Date, for good and valuable consideration,

to the fullest extent permissible under applicable law, each Person that has held, currently holds

or may hold a Claim, Cause of Action, or any other obligations, suits, demands, judgments,

damages, debts, rights, remedies, or liabilities of any nature whatsoever, and/or any Interest, or

other right of a Holder of an equity security or other ownership interest that is terminated, shall

be deemed to completely and forever release, waive, void, extinguish and discharge

unconditionally each and all of the Exculpated Parties of and from any and all Claims, Causes of

Action, or any other obligations, suits, demands, judgments, damages, debts, rights, remedies, or

liabilities of any nature whatsoever (including, without limitation, those arising under the

Bankruptcy Code), and/or any and all Interests or other rights of a Holder of an equity security or

other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in

law, equity, or otherwise that are or may be based in whole or part on any act, omission,

transaction, event, or other circumstance taking place or existing on or before the Effective Date

(including before the Petition Date) in connection with or related to any of the Debtors, the

Reorganized Debtors, or their respective assets, property, and Estates, the Chapter 11 Cases,

proposed financing or the financing transactions evidenced by the Financing Motion and

Financing Order, the DIP Financing Order, or the proposal, negotiation, or pursuit of

confirmation of the Plan or any other potential plan of reorganization (or approval of a related

disclosure statement), including, but not limited to, the Term Sheet, the Reorganization

Transactions, or the Vida Plan Collaboration Agreement or the transactions contemplated

thereby, except insofar as they are assigned to the Creditors' Trust or the Position Holder Trust,

as applicable, pursuant to the terms of the Plan, the Class Action Settlement Agreement, and/or the MDL Settlement Agreement.  Notwithstanding the foregoing or any other provision of this paragraph, no Exculpated Party shall be released from any acts constituting criminal conduct, willful misconduct, fraud, or gross negligence.

(c)     Nothing in the Plan or this Confirmation Order shall be construed to release, impair, compromise, waive, relinquish, or limit in any way the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action and other Causes of Action that will be assigned or transferred to the Creditors' Trust or the Position Holder Trust, as applicable, including the right of the Creditors' Trust or Position Holder Trust, as applicable, to prosecute, compromise, settle, assign, receive proceeds from, or otherwise control those Causes of Action, pursuant to the terms of the Plan, the Class Settlement Agreement, or the MDL Settlement Agreement.

(d)     <u>No Governmental Releases</u>.  Nothing in this Confirmation Order or the Plan shall discharge, release, resolve, exculpate, preclude, or enjoin any action with respect to any liability to the United States or any state or local authority that is not a "claim" as defined in 11 U.S.C. § 101(5), including, but not limited to, a claim for violation of any criminal laws of the United States or any state or local authority against any party or person, and nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory power to interpret this Confirmation Order or to adjudicate any defense asserted under this Confirmation Order; *provided, however*, that the claims of the Texas Comptroller relating to pre-petition tax periods shall be governed by paragraph 39 of this Confirmation Order and claims of the Internal Revenue Service relating to pre-petition tax periods shall be limited to the proofs of claim filed by the Internal Revenue Service and their resolution shall be governed by the Plan

and the Form 870-AD, Offer to Waiver Restrictions on Assessment and Collection of Tax

Deficiency and to Accept Overassessment, accepted by the Internal Revenue Service on

September 6, 2016, for the withholding tax issues and by the settlement that is in process on the

income tax issues following the Appeals Conference held on June 30, 2016.

48.    **Permanent Injunction Relating to Assets Transferred Pursuant to the Plan.**

(a)    Except as provided in this Confirmation Order, as of the Effective Date: (i) all

Persons or Entities that hold, have held, or may hold a Claim or any other obligation, suit,

judgment, damages, demand, debt, right, remedy, Cause of Action, or liability of any nature

whatsoever, or any Interest or other right of a Holder of an equity security or other ownership

interest relating to any of the Debtors or the Reorganized Debtors or any of their respective

assets, property, and Estates; and (ii) all other parties in interest are, and shall be, permanently,

forever, and completely stayed, restrained, prohibited, barred, and enjoined from taking any of

the following actions, whether directly or indirectly, derivatively or otherwise, on account of or

based on the subject matter of such Claims or other obligations, suits, judgments, damages,

debts, rights, remedies, Causes of Action, or liabilities of any nature whatsoever, or any Interests

or other right of a Holder of an equity security or other ownership interest:

> (A)    commencing, conducting, or continuing in any manner, directly or
> indirectly, any suit, action, or other proceeding (including, without limitation, any
> judicial, arbitral, administrative, or other proceeding) in any forum against the
> Debtors, the Reorganized Debtors, the Chapter 11 Trustee, the Committee or its
> current or former members, any Successor Entity, or any other party that seeks a
> determination of the ownership or any other rights as of the Effective Date or any
> prior date, of the Policies or any property of the Estates or any Fractional Positions or
> other property transferred or assigned to the Reorganized Debtors, Position Holder
> Trust, Creditors' Trust, IRA Partnership, or Vida pursuant to the terms of the Plan
> and the Plan Documents;

> (B)    enforcing, attaching (including, without limitation, any prejudgment
> attachment), collecting, or in any way seeking to recover any judgment, award,
> decree, or other order that may be enforced against assets that are to be transferred or

assigned by any of the Debtors, Reorganized Debtors, or Successor Entities, or are to be administered under the Plan or any Plan Document;

(C)     creating, perfecting, or in any way enforcing in any manner, directly or indirectly, any Lien against assets that are to be Distributed, contributed or otherwise assigned or transferred by the Debtors, Reorganized Debtors, or Successors Entities, or are to be administered under the Plan or any Plan Document;

(D)     setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any property to be Distributed, contributed or otherwise transferred or assigned by the Debtors, Reorganized Debtors, or Successor Entities, or are to be administered under the Plan or any Plan Document;

(E)     commencing or continuing in any manner any judicial, arbitration, or administrative proceeding in any forum against the Debtors or any Exculpated Parties that does not comply with, or is inconsistent with, the provisions of the Plan, any Plan Document, and/or this Confirmation Order; and

(F)     the taking of any act in any manner and/or in any place that is inconsistent with, conflicts with, or violates the provisions of the Plan, any Plan Document, and/or this Confirmation Order.

(b)     Nothing in the Plan or this Confirmation Order shall be construed to release, impair, compromise, waive, relinquish, or limit in any way the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action and other Causes of Action that will be assigned or transferred to the Creditors' Trust or the Position Holder Trust, as applicable, including the right of the Creditors' Trust or Position Holder Trust, as applicable, to prosecute, compromise, settle, assign, receive proceeds from, or otherwise control those Causes of Action, pursuant to the terms of the Plan, the Class Settlement Agreement, or the MDL Settlement Agreement.

49.     **Exculpation and Permanent Injunction Relating to Exculpated Parties.**

(a)     Notwithstanding anything to the contrary contained in this Confirmation Order, and to the maximum extent permitted by applicable law, the Exculpated Parties shall not have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with,

related to, or arising out of, or be liable for any claims or Causes of Action in connection with, related to, or arising out of any matter related to the Chapter 11 Cases, including, without limitation: (i) negotiations regarding or concerning the Plan, the Term Sheet, the Disclosure Statement, and any and all alternate plans of reorganization (and related disclosure statements), or underlying transactions, whether or not actually proposed by any Person in these Chapter 11 Cases, (ii) the Vida Plan Collaboration Agreement and the transactions contemplated thereby, (iii) proposed financing transactions or financing transactions actually entered into by the Chapter 11 Trustee, the Debtors or any Successor Entity, (iv) any settlement or agreement in the Chapter 11 Cases, (v) the pursuit of confirmation of the Plan or opposing any other plan, (vi) the consummation of the Plan, including, with respect to the Chapter 11 Trustee, carrying out duties following the Effective Date, (vii) the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan, whether or not such distribution occurs following the Effective Date, (viii) the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action or other Causes of Action that will be transferred or assigned to the Successor Entities, or (ix) the administration of the Plan or property to be distributed under the Plan, except for actions found by Final Order to be willful misconduct, gross negligence, fraud, breach of fiduciary duty, or criminal conduct, any of which proximately causes damages. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b)      Except as otherwise expressly provided in the Plan, the Financing Order, or this Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against, or Interests in, the Debtors are permanently enjoined, as of and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after

the Effective Date, from commencing or continuing in any manner any claim or Cause of Action

against any of the Exculpated Parties for any act or omission in connection with, related to, or

arising out of any matter related to the Chapter 11 Cases, including, without limitation: (i)

negotiations regarding or concerning the Plan, the Term Sheet, the Disclosure Statement, and any

and all alternate plans of reorganization and related disclosure statements, or underlying

transactions, whether or not actually proposed by any Person in these Chapter 11 Cases, (ii) the

Vida Plan Collaboration Agreement and the transactions contemplated thereby, (iii) proposed

financing transactions or financing transactions actually entered into by the Chapter 11 Trustee,

the Debtors, or any Successor Entity, (iv) any settlement or agreement in the Chapter 11 Cases,

(v) the pursuit of confirmation of the Plan or opposing any other plan, (vi) the consummation of

the Plan, including, with respect to the Chapter 11 Trustee, carrying out duties following the

Effective Date, (vii) the offer, issuance, and distribution of any securities issued or to be issued

pursuant to the Plan, whether or not such distribution occurs following the Effective Date, (viii)

the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor

Causes of Action or other Causes of Action that will be transferred or assigned to the Successor

Entities, or (ix) the administration of the Plan or property to be distributed under the Plan, except

for actions found by Final Order to be willful misconduct, gross negligence, fraud, breach of

fiduciary duty or criminal conduct, any of which proximately causes damages.

50. **Preservation of Rights and Causes of Action.**

(a) In accordance with 11 U.S.C. § 1123(b), except to the extent such rights, Claims,

Causes of Action, defenses, and counterclaims are expressly and specifically released in

connection with the Plan, any settlement agreement approved during the Chapter 11 Cases

(including, but not limited to, the Class Action Settlement and the MDL Settlement), any

contract, instrument, release, indenture or other agreement entered into in connection with the

Plan and/or this Confirmation Order: (i) any and all rights, Claims, Causes of Action (including

Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates

shall be automatically preserved, reserved, assigned, and/or transferred to the Creditors' Trust (or

the Position Holder Trust, to the extent that such Causes of Action are included in the Policy

Related Assets), whether or not litigation relating thereto is pending on the Effective Date,

whether or not such rights, Claims, Causes of Action, defenses, and counterclaims may be

asserted or assertable against the Holder of an Allowed Claim, and whether or not any such

rights, Claims, Causes of Action, defenses and counterclaims have been scheduled, listed, or

referred to in the Plan, the Disclosure Statement, the Plan Supplement, the Bankruptcy

Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court; and

(ii) neither the Creditors' Trustee nor the Position Holder Trustee waives, relinquishes, or

abandons (nor shall either be estopped or otherwise precluded from asserting) any right, Claim,

Cause of Action, defense, or counterclaim that constitutes property of the Estates, the Position

Holder Trust, or the Creditors' Trust, or any of them, by transfer, assignment, or otherwise,

whether or not: (A) such right, Claim, Cause of Action, defense, or counterclaim has been,

scheduled, listed, or referred to in the Plan, the Disclosure Statement, the Plan Supplement, the

Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the

Bankruptcy Court, (B) such right, Claim, Cause of Action, defense, or counterclaim is currently

known to the Debtors, or (C) a defendant in any litigation relating to such right, Claim, Cause of

Action, defense, or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice

of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the

Plan, or received or retained any consideration under the Plan.

(b)      Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue or claim preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, Cause of Action, defense, or counterclaim, in the Plan, the Disclosure Statement, the Plan Supplement, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court, and/or the scheduling of a Claim in the Bankruptcy Schedules as undisputed, liquidated, and noncontingent, shall in no manner waive, eliminate, adversely impact, modify, release, prevent, or alter any Estate's or either Successor Trust's right to commence, prosecute, defend against, compromise, settle, assign, receive proceeds from, realize upon, or otherwise control any right, Claim, Cause of Action, defense, or counterclaim that a Debtor or its Estate has, or may have, as of the Effective Date.  The Creditors' Trustee may, subject to the Plan and the Creditors' Trust Agreement, commence, prosecute, defend against, compromise, settle, assign, receive proceeds from, realize upon, or otherwise control any right, Claim, Cause of Action, defense, and counterclaim assigned, transferred, and/or contributed to it, as provided in the Plan, the Class Action Settlement Agreement, the MDL Settlement Agreement, and the Creditors' Trust Agreement, in accordance with what is in the best interests, and for the benefit, of the Creditors' Trust Beneficiaries.  The Position Holder Trustee may, subject to the Plan and the Position Holder Trust Agreement, commence, prosecute, defend against, compromise, settle, assign, receive proceeds from, realize upon, or otherwise control any right, Claim, Cause of Action, defense, and counterclaim included in the Policy Related Assets, as provided in the Plan and the

Position Holder Trust Agreement, in accordance with what is in the best interests, and for the benefit, of the Position Holder Trust Beneficiaries.

51. **Modification of the Plan.** Subject to the restrictions set forth in 11 U.S.C. § 1127 and to the October 7 Findings and Conclusions, the Plan Proponents have reserved, and are hereby granted, the right to alter, amend, or modify the Plan and the other Reorganization Documents at any time after Confirmation and before the Plan is substantially consummated (subject to the terms of the Reorganization Documents, as applicable). Prior to substantial consummation, appropriate technical adjustments and modifications to the Plan and other Reorganization Documents may be made without further order or approval of this Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests (subject to the terms of the Reorganization Documents, as applicable); *provided, however*, any such modification to the Reorganization Document that increases fees payable by Continuing Fractional Holders, or by the Position Holder Trust in its capacity as the registered Holder of Beneficial Ownership in Policies, will be subject to Court approval.

52. **Notice of Entry of Confirmation Order.** Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Claims Agent shall file and serve notice of entry of this Confirmation Order (the "Notice of Confirmation Order") on all parties entitled to receive notice in the Chapter 11 Cases by causing the Notice of Confirmation Order to be delivered to such parties by first-class mail, postage prepaid, within ten (10) Business Days after entry of this Confirmation Order; *provided, however*, that the Notice of Confirmation Order shall not be served on any person or entity to whom the Plan Proponents were excused from serving the Confirmation Hearing Notice by the *Order Approving (I) Form of Ballots and Solicitation,*

*Voting, Balloting, and Election Procedures; (II) Procedures Relating to the Confirmation of the Amended Plan; (III) Temporary Estimation of Investor Claims for Voting Purposes; and (IV) Other Relief Relating to the Plan Solicitation and Plan Confirmation Process* [Dkt. No. 2595] and any person or entity for which the Confirmation Hearing Notice was returned by the United States Postal Service or other carrier as undeliverable (collectively, the "Undeliverable Address Parties"), unless the Debtors have been informed in writing by such person or entity of that person or entity's new address. The Notice of Confirmation Order shall include the Pre-Petition Default Payment Deadline, which runs 30 days after the Confirmation Date. Such notice of the entry of the Confirmation Order is adequate under the particular circumstances and no other or further notice is necessary.

53.    **Notice of Effective Date.** Within three (3) Business Days after the occurrence of the Effective Date, the Chapter 11 Trustee shall file notice of the occurrence of the Effective Date (the "Notice of Effective Date") and shall serve a copy of same on all parties entitled to receive notice in the Chapter 11 Cases; *provided, however*, that the Notice of Effective Date shall not be served on any Undeliverable Address Party, unless the Chapter 11 Trustee has been informed in writing by such person or entity of that person or entity's new address. The Notice of Effective Date shall include notice regarding the deadlines fixed by the Effective Date, which include: (a) the Distribution Record Date, (b) the deadline to file proofs of claim with respect to the rejection of executory contracts or unexpired leases, (c) the Administrative Claims Bar Date, (d) the Catch-Up Cutoff Date, and (e) the Claims Objection Deadline. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

54.    **Conditions to Confirmation.**  All conditions precedent to Confirmation set forth in Section 15.01 of the Plan have been satisfied or waived in accordance with Section 15.04 of the Plan.

55.    **Conditions to Effective Date.**  The Plan shall not become effective unless and until the conditions set forth in Section 15.02 of the Plan have been satisfied or waived in accordance with Section 15.04 of the Plan.  The determination to make any such waiver shall be in the discretion of the Plan Proponents and shall not require any further notice, approval, or order of the Court.  To the extent the Plan Proponents determine to waive any condition set forth in Section 15.02 of the Plan, not less than three days prior to the anticipated Effective Date, the Plan Proponents shall File a notice of waiver to clarify what condition has been waived; *provided, however*, such notice shall be served only via CM/ECF.

56.    **Retention of Jurisdiction.**

(a)    Upon the Effective Date, this Court may properly retain, and, if appropriate, shall exercise jurisdiction over the matters set forth in Article XVII of the Plan and 11 U.S.C. § 1142.

(b)    The Court hereby further retains exclusive jurisdiction to consider any and all claims against any of the Exculpated Parties or Professionals involving or relating to: (i) the administration of the Chapter 11 Cases, (ii) any rulings, orders, or decisions in the Chapter 11 Cases, (iii) any aspects of the Debtors' Chapter 11 Cases, including, without limitation, the decision to commence the Chapter 11 Cases, the development, implementation, or rejection of any potential chapter 11 plan or restructuring transaction, including not limited to the Plan, the Vida Plan Collaboration Agreement and the transactions contemplated thereby, the proposed financing transactions or financing transactions actually entered into by the Chapter 11 Trustee or the Debtors and actions taken or not taken during the Chapter 11 Cases, (iv) any asserted

claims based upon or related to prepetition obligations, Claims or Interests administered in the

Chapter 11 Cases, and (v) ownership of the Fractional Positions, including, without limitation,

any claims related to any determination whether Fractional Positions belong to the Debtors'

estates, the Position Holders Trust or any other parties.

(c)    The Court hereby further retains jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation, and/or enforcement of this

Confirmation Order.

57.    **Enforceability.**  Each term and provision of the Plan, as it may have been altered

or interpreted by this Court, is valid and enforceable pursuant to its terms.

58.    **Conflicts Between Confirmation Order, the Plan, and Plan Documents.**  The

failure to specifically include any particular provision of the Plan in this Confirmation Order, the

Class Action Final Approval Order, or any further order of this Court contemplated by this

Confirmation Order will not diminish the effectiveness of such provision, it being the intent of

this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.  The

provisions of the Plan Documents, the Class Action Final Approval Order, this Confirmation

Order, and any further order of this Court contemplated by this Confirmation Order shall be

construed in a manner consistent with each other so as to effect the purposes of each; *provided,*

*however*, that if there is any inconsistency between the provisions of the Plan, the Plan

Documents, the Class Action Final Approval Order, this Confirmation Order, or any further

order of this Court contemplated by this Confirmation Order, the terms and conditions contained

in the Class Action Final Approval Order, this Confirmation Order, or such further order of this

Court shall govern and shall be deemed a modification to the Plan and shall control and take

precedence.  The provisions of this Confirmation Order are integrated with each other and are

non-severable and mutually dependent, unless expressly stated by further order of this Court, and the titles, captions, and headings contained in this Confirmation Order have been included only as a matter of convenience.

59.    **Immediate Effectiveness of Confirmation Order.**    The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived.    This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062, or otherwise.

##End of Order##

# EXHIBIT 19

*In re Life Partners Holdings, Inc.*, No. 15-40289-mxm11,

Dkt. 4626 (Bankr. N.D. Tex. Nov. 23, 2022)

Joshua L. Shepherd (Texas Bar No. 24058104)
QUILLING SELANDER LOWNDS
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
E-mail: jshepherd@qslwm.com

**COUNSEL FOR MICHAEL J. QUILLING, AS**
**TRUSTEE OF THE LIFE PARTNERS POSITION**
**HOLDER TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-40289-mxm11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| **Reorganized Debtors.** | § | |
| | § | |

## POSITION HOLDER TRUST'S FINAL REPORT, WITH REQUEST FOR
## (i) DISCHARGE, AND (ii) AUTHORITY TO DEPOSIT FUNDS
## INTO THE REGISTRY OF THE COURT

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT THE ELDON B. MAHON U.S. COURTHOUSE, 501 W. 10TH ST., RM. 147, FORT WORTH, TX 76102-3643, BEFORE CLOSE OF BUSINESS ON DECEMBER 14, 2022, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW the Life Partners Position Holder Trust (the "PHT"), on behalf of the Reorganized Debtors under the terms of the Plan (as defined below), confirmed by this Court in the above-captioned, jointly administered, Chapter 11 bankruptcy cases (the "Bankruptcy Cases") of Life Partners Holdings, Inc. ("LPHI") and its affiliated debtors (collectively the "Subsidiary Debtors", and then with LPHI, the "Reorganized Debtors"), by and through Michael J. Quilling, in his capacity as the Trustee of the PHT (the "Trustee"), and files this *Position Holder Trust's Final Report with Request for (1) Discharge, and (ii) Authority to Deposit Funds into the Registry of the Court* (the "Final Report"), and respectfully states as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157, and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is section 350(b) of title 11 of the United States Code (the "Bankruptcy Code").

## II.      BACKGROUND

2.      LPHI filed its voluntary petition for relief under Chapter 11 of Title 11, United States Code, §§ 101 et seq. (as amended, the "Bankruptcy Code"), with this Court on January 20, 2015 ("LPHI Petition Date"), thereby commencing LPHI's Bankruptcy Case (the "Lead Case").

3.      On November 1, 2016, through its Confirmation Order [Dkt. No. 3439] (the "Confirmation Order"), this Court confirmed the *Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc. et. al., Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 3427] (as modified and including each of its exhibits, the "Plan").

4.      On December 9, 2016, the Plan became effective (the "Effective Date"). *See* Docket

No. 3615.

5.      On June 7, 2017, the Chapter 11 Trustee filed his *Notice of Substantial Consummation* of the Plan. *See* Dkt. No. 4013.

6.      Pursuant to the Plan, the PHT was established through the *Trust Agreement for Life Partners Position Holder Trust* (the "Trust Agreement") dated December 9, 2016. Plan, Dkt. No. 3427, at Article V, and Position Holder Trust Agreement, at pp. 126-163; and Confirmation Order, Dkt. No. 3439, at ¶¶ 23-25. The Life Partners IRA Holder Partnership (the "IRA Partnership") was also established through the *Company Agreement of Life Partners IRA Holder Partnership, LLC* (the "Company Agreement"), and also dated December 9, 2016. Plan, Dkt. No. 3427, at Article VII; and Confirmation Order, Dkt. No. 3439, at ¶¶ 28-29. The Trust Agreement and Company Agreement, along with the Plan and Confirmation Order will collectively be referred to as the "Plan Documents".

7.      Effective December 13, 2018, the Trustee became the successor trustee of the PHT[1], taking over the position from Mr. Eduardo Espinosa (the "Original Trustee"), and he continues to serve in that capacity.

8.      Under the terms of the Plan, the Trustee, as a Successor Trustee, is vested with the authority to act on behalf of the Reorganized Debtors with respect to matters relevant to the administration of the PHT. Plan, Dkt. No. 3427, at §§ 4.07, 4.10, 19.04, Appx. A (219, 234, 236, 237).

9.      Accordingly, on March 3, 2021, the Trustee, acting on behalf of the Reorganized Debtors, filed the (i) *Position Holder Trust's Amended Post-Confirmation Report and Joinder in*

---

[1] For purposes of this Final Report, references to administration of the PHT also include management of the IRA Partnership.

*Amended Application for Final Decree Closing Bankruptcy Cases* [Dkt. No. 4546] (collectively
with the *Creditors' Trustee's Final Report and Amended Application for Final Decree Closing
Bankruptcy Cases and Related Relief* [Dkt. No. 4545], the "Applications for Final Decree"). The
Applications for Final Decree requested that the Court close the Bankruptcy Cases.

10.     On March 29, 2021, the Court granted the Applications for Final Decree and
entered its *Order Approving: (1) Creditors' Trustee's Final Report and Amended Application for
Final Decree Closing Bankruptcy Cases and Related Relief; and (II) Position Holder Trust's
Amended Post-Confirmation Report and Joinder in Amended Application for Final Decree
Closing Bankruptcy Cases* [Dkt. No. 4554] (the "Final Decree").

11.     On May 23, 2022, the Trustee filed the *Position Holder Trust's Motion to Reopen
Bankruptcy Case* [Dkt. No. 4558] (the "First Motion"). Through the First Motion, the Trustee
sought to reopen the Lead Case for the purpose of seeking the Court's approval of the Trustee's
intended winddown of the PHT, including the sale of the PHT's non-cash, policy related, assets.
On June 16, 2022, the Court entered its *Order Granting Position Holder Trust's Motion to Reopen
Bankruptcy Case* [Dkt. No. 4560], thereby reopening the Lead Case on that date.

12.     With the Lead Case reopened, on June 21, 2022, the Trustee filed the *Position
Holder Trust's Motion to Approve Plan Construction in Furtherance of Liquidation and Final
Distribution* [Dkt. No. 4562] (the "Winddown Motion"). As part of the Winddown Motion, the
Trustee sought to have the Lead Case immediately re-closed upon entry of the Court's Order on
that Motion.

13.     After conducting an evidentiary hearing on the Winddown Motion, on July 27,
2022, the Court entered its *Order Granting Position Holder Trust's Motion to Approval Plan
Construction in Furtherance of Liquidation and Final Distribution* [Dkt. No. 4616] (the

"Winddown Order"). The Winddown Order re-closed the Lead Case effective July 27, 2022.

14.    In anticipation of filing this Final Report, on November 16, 2022, the Trustee filed the *Position Holder Trust's Second and Final Motion to Reopen Bankruptcy Case* [Dkt. No. 4623] (the "Second Motion") requesting that the Lead Case again be re-opened.

15.    On November 17, 2022, the Court entered its *Order Granting Position Holder Trust's Second and Final Motion to Reopen Bankruptcy Case* [Dkt. No. 4624], thereby reopening this Lead Case.

### III.    FINAL REPORT AND REQUEST FOR RELATED RELIEF

16.    Pursuant to the Plan Documents, the Trustee, acting on behalf of the Reorganized Debtors, files this Final Report and respectfully requests the Court grant relief necessarily attendant to the Final Report, as outlined herein. Section 5.09 of the Plan mandates that "[u]pon the occurrence of the termination of the Position Holder Trust, the Position Holder Trustee shall File with the Bankruptcy Court, a report thereof, seeking to be discharged from his duties." Plan, Dkt. No. 3427, at Section 5.09.

### A.    Final Report

17.    Administration of the PHT for the benefit of its investors and other creditor beneficiaries has concluded. Specifically, the sale of the PHT's non-cash, policy related, assets – as outlined within the Winddown Motion and approved by the Winddown Order – closed on September 6, 2022 (the "Sale"). Thereafter, on September 15, 2022, the PHT made a final distribution to its Investors[2] in the total amount $265,532,960.05 (the "Final Distribution").

---

[2] The PHT previously had beneficiaries who were: (1) holders of Position Holder Trust Interests ("Units"); and (2) holders of IRA Partnership Interests ("Partnership Interests"). These Unit holders and holders of Partnership Interests are each referred to as an "Investor", and collectively, the "Investors".

18.     As reported in the Windown Motion, at inception of the PHT, the assets and the records relating to those assets were in a state of disarray. The Trustee immediately undertook efforts to correct those deficiencies, including through the optimization of policy premiums. Those corrections were accomplished, resulting in an increase in the value of the PHT's assets. Moreover, there were also many accomplishments with respect to the PHT's finances. For instance, all debt was eliminated, all unnecessary vendors were eliminated or replaced with better, more cost-efficient options, operating expenses were greatly reduced, and cash reserves were brought to proper levels.

19.     The results of these efforts allowed the previous distribution of excess funds to investors each year as contemplated under the Plan Documents. These efforts also allowed for the Sale, which itself provided a resounding benefit to the Investors. Most of these Investors made their investment more than a decade ago, were elderly, and were suffering from significant investment fatigue. Virtually none of them wanted to still be holding their investment in 2022 (or beyond). The prospect of the Trust operating for another 9 to 10 years was very frustrating.

20.     Instead, the Sale allowed the PHT to make the Final Distribution well earlier than originally contemplated by the Plan Documents - - adding to overall success of the PHT's administration. Specifically, since its inception to present, including the Final Distribution, the PHT has paid a total of $360,532,960.05 in distributions to its Investors, a total of $35.9 million to holders of New IRA Notes[3], and an excess of $340 million to the Continuing Fractional Holders. A successful outcome for all involved.

---

[3] As that term is defined within the Plan Documents. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms within the Plan Documents.

## B.    Request to discharge Trustee and Trust Board

21.    The results obtained by the PHT, as outlined above, were based upon the efforts of the Trustee and the Position Holder Trust Governing Trust Board (herein, the "Trust Board"). In connection with this fulfilment of their respective duties, the Plan Documents state:

> The duties, responsibilities and powers of the Position Holder Trust shall terminate after all Position Holder Trust Assets have been fully resolved, abandoned or liquidated and the Position Holder Trust Assets have been distributed in accordance with this Plan and the Position Holder Trust Agreement…

Plan, Dkt. No. 3427, at Section 5.09.

> No Personal Liability. Any Persons dealing with the Position Holder Trust must look solely to the Position Holder Trust for the enforcement of any claims against the Position Holder Trust or to satisfy any liability incurred by the Trustee to such Persons in carrying out the terms of this Position Holder Trust, and neither the Trustee nor the Settlor or any other Person shall have any personal liability or individual obligation to satisfy any such liability, except to the extent that such liability of the Trustee is finally adjudicated by a court of competent jurisdiction to be the result of the Trustee's willful misconduct, gross negligence, or fraud.

Plan, Dkt. No. 3427, Position Holder Trust Agreement, at pp. 126-163, Section 6.9.

> No Personal Liability. Neither the Trust Board nor any member shall have any personal liability or individual obligation to satisfy any liability incurred by the Trustee, the Position Holder Trust, the IRA Partnership or its Manager, except to the extent that such liability is finally adjudicated by a court of competent jurisdiction to be the result of the Trust Board's, or its relevant member's, willful misconduct, gross negligence, or fraud.

Plan, Dkt. No. 3427, Position Holder Trust Agreement, at pp. 126-163, Section 7.12.

22.    In connection with this Final Report, and as contemplated by the Plan Documents, the Trustee respectfully requests that the Court release and discharge the Trustee, the Original Trustee, and the Trust Board of and from any and all further duties, obligations, and liabilities with respect to the administration of the PHT, including but not limited to the discharge of and from any and all potential liability of the Trustee, the Original Trustee, Trust Board, and any current or former member of the Trust Board, for any debt of or liability arising from the administration of

the Plan Documents or PHT.

**C.    Request to deposit the Unclaimed Funds into the registry of the Court**

23.    Upon closing of the Sale and prior to the Final Distribution, by letter dated September 9, 2022, the Trustee provided an update to each of the Investors with respect to the then imminently forthcoming Final Distribution (the "Distribution Notice"). Within this Distribution Notice, the Trustee provided the following notice to Investors:

> Checks will be placed in the mail on Thursday, September 15, 2022. The checks will be valid for 60 days and no longer. If you do not cash your check within 60 days your funds will be placed in the registry of the Bankruptcy Court, and you will then have to undertake a long and potentially expensive process to retrieve those funds. **MAKE SURE YOU CASH YOUR CHECK DURING THE 60 DAY PERIOD.**

24.    Thereafter, and in connection with the Final Distribution, each distribution check contained the following notice (the "Check Notice"):

> **\*\*PLEASE DEPOSIT IMMEDIATELY\*\***
> THIS CHECK IS VALID FOR <u>60 DAYS</u> FROM THE DATE OF ISSUE. If you do not deposit this check by November 15, 2022, then you will have to ask the Bankruptcy Court for the money. Funds from all uncashed final distribution checks will be deposited with the US Bankruptcy Court for the Northern District of Texas, Fort Worth Division, under Case No. 15-40289-MXM-11, once the 60-day period is over. *In that event, you may have to hire your own lawyer to help you file the claim forms found on the Court's website at*:
>     https://www.txnb.uscourts.gov/forms/all-forms/unclaimed_funds

25.    The Distribution Notice coupled with the Check Notice had their desired effect as virtually all of the Final Distribution payments were timely deposited by the Investors. November 14, 2022 was the 60th day following the September 15th issuance of the Final Distribution checks. On November 16, 2022, after allowing for the clearance of every check received by the PHT's bank on November 15th, the Trustee closed the last of the PHT's bank accounts and obtained a cashier's check for the total remaining and uncashed portion of the Final Distribution – a total of $3,294,399.05 (the "Remaining Funds"). The cashier's check constituting the Remaining Funds is

made payable to: "Clerk, US Bankruptcy Court".

26.     Since closing the sole remaining PHT bank account and obtaining the cashier's check of the Remaining Funds, the Trustee received two checks, each in the amount of $1,389.21, from an IRA administrator constituting return of Final Distribution funds that were originally wired by the PHT to the administrator on behalf of the two Investors (collectively, the "Returned Funds"). The Trustee is currently holding the total $2,778.42 of Returned Funds for deposit into the Court's registry.

27.     As contemplated by General Order 2016-03[4], the Trustee respectfully requests that the Court enter an order allowing for the deposit by the Trustee into this Court's registry of (i) the Remaining Funds; (ii) the Returned Funds; and (iii) any and all additional returned funds that the PHT may receive from original recipients (collectively, with the Remaining Fund and the Returned Funds, the "Unclaimed Funds"). Based upon the PHT's records, the list of claimants to the Remaining Funds and Returned Funds are reflected on **Exhibit "1"**, attached hereto and incorporated fully by reference herein.

**D.     Request to re-close the Lead Case**

28.     As reflected herein, there are no remaining outstanding matters for the PHT, the Trustee, or the Trust Board in the Bankruptcy Cases. The PHT has been fully administered.

29.     Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Rule 3022 of the Bankruptcy Rules, pursuant to which Bankruptcy Code section 350 is

---

[4] General Order 2016-03 of the United States Bankruptcy Court for the Northern District of Texas (*at*: https://www.txnb.uscourts.gov/content/general-order-2016-03 (last accessed November 21, 2022)).

implemented, provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

30.    Re-closing these Lead Case, as requested herein, is appropriate, and the Trustee respectfully requests that the Court's Order approving this Final Report (the "Final Order") effectuate that closure. The Trustee further respectfully requests the Court's expedient consideration and approval of this Final Report, as entry of the Final Order needs to occur prior to December 31st, so as to avoid any question that the PHT terminated its existence prior to the new calendar year (and alleviate any requirement of tax or other filings attendant thereto). For the short while this Lead Case remains open, the PHT will file the requisite operating report and pay the corresponding quarterly fee to the Office of the United States Trustee.

## IV.    PRAYER

WHEREFORE, the Trustee respectfully requests that the Court enter an order (a) approving this Final Report; (b) discharging the Trustee, the Original Trustee, the Trust Board, and its members, as requested herein; (c) authorizing the deposit of the Unclaimed Funds into the registry of the Court and instructing the Clerk of Court to accept such funds; (d) immediately re-closing this Lead Case upon entry of the Final Order; and (c) granting the PHT, Trustee, Trust Board such other and further relief as to which they may be justly entitled, whether general, special, at law or in equity.

*[**Remainder of page left intentionally blank**]*

Dated: November 23, 2022.                    Respectfully submitted,

                                             **QUILLING SELANDER LOWNDS
                                             WINSLETT & MOSER, P.C.**
                                             2001 Bryan Street, Suite 1800
                                             Dallas, Texas 75201
                                             Telephone: (214) 871-2100
                                             Facsimile: (214) 871-2100

                                             By: */s/ Joshua L. Shepherd*
                                                   Joshua L. Shepherd
                                                   Texas Bar No. 24058104
                                                   E-mail: jshepherd@qslwm.com

                                             **COUNSEL   FOR   MICHAEL   J.
                                             QUILLING, AS TRUSTEE OF THE
                                             LIFE PARTNERS POSITION HOLDER
                                             TRUST**

**MICHAEL J. QUILLING, TRUSTEE**

*/s/ Michael J. Quilling*
Date: November 23, 2021

## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that on November 23, 2022, a true and correct copy of
the foregoing document was served by electronic transmission via the Court's CM/ECF system
upon all parties registered to receive electronic notice in this bankruptcy case, and by first-class
mail, postage prepaid, upon those shown on the attached service list.

                                               */s/ Joshua L. Shepherd*
                                             Joshua L. Shepherd

# CERTIFICATE OF COMPLIANCE

I hereby certify as follows:

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 244 words as counted using Microsoft Office Word 2010.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-Point Century Schoolbook.

/s/ Stephen G. Yoder
STEPHEN G. YODER
Senior Appellate Counsel

Dated:  December 11, 2023

# CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2023, I electronically filed the foregoing motion with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, which will effectuate service on counsel of record for all parties in this petition for review.

/s/ Stephen G. Yoder
STEPHEN G. YODER
Senior Appellate Counsel

Dated:  December 11, 2023